UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 0 2000

MICHAEL N. MILBY CLERK

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND | § | |
| MOLLY GOCHMAN | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 00-126 |
| | § | JURY |
| | § | |
| KEN OAKLEY, THE | § | |
| CITY OF PORT ARANSAS, TEXAS, | § | |
| URBAN ENGINEERING, AND | § | |
| STANLEY A. STARRETT, JR. | § | |
| | § | |
| Defendants | § | |

**DEFENDANTS' AMENDED LIST OF STATE COURT PLEADINGS**

**CAUSE NO. 99-01336-00-0-C**

1.   Plaintiff's Original Petition (3/9/99)

2.   Citation of Stanley A. Starrett, Jr. (3/12/99)

3.   Original Answer: Stanley A. Starrett, Jr. (4/27/99)

4.   Defendant Starrett's Unopposed Motion to Consolidate (10/12/99)

5.   Defendant Starrett's Opposition to Plaintiffs' Motion to Consolidate (12/2/99)

6.   Defendant Starrett's First Amended Counterclaim (12/16/99)

7.   Plaintiff's First Amended Petition (2/23/00)

8.   Citation of Ken Oakley (2/29/00)

9.   Citation City of Port Aransas (2/29/00)

10.   Citation of Urban Engineering (2/29/00)

11.   Defendant Starrett's Motion in Opposition to Alternative Dispute Resolution (3/6/00)



EXHIBIT
"A"

6.

Cause No. *99-1336-B*

| | | |
|---|---|---|
| **ARTHUR GOCHMAN** | § | **IN THE DISTRICT COURT** |
| **& MOLLY GOCHMAN** | § | |
| | § | |
| **VS.** | § | *117* **TH JUDICIAL DISTRICT** |
| | § | |
| **STANLEY A. STARRETT, JR.** | § | **NUECES COUNTY, TEXAS** |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, **ARTHUR GOCHMAN** and **MOLLY GOCHMAN**, herein after called PLAINTIFFS, complaining of **STANLEY A. STARRETT, JR.**, hereinafter called DEFENDANT, and for cause of action would respectfully show the Court as follows:

### I.

Your PLAINTIFF, **ARTHUR GOCHMAN**, is a resident of Harris County, Texas.

The PLAINTIFF, **MOLLY GOCHMAN**, is a resident of Nueces County, Texas. And presently attends Guilford College and her residence address is Founder's Number 197, Guilford College, 5800 West Friendly, Greensboro, North Carolina.

The DEFENDANT, **STANLEY A. STARRETT, JR.**, P. O. Box 1287, is a resident of Port Aransas, Nueces County, Texas 78373, where service of citation may be made upon the DEFENDANT.

This is a Level 2 case, subject to the discovery limitations provided by Rule 190.2 of the Texas Rules of Civil Procedure unless modified by order pursuant to Rule 190.5 of the Texas Rules of Civil Procedure.

## II.

On or about the 15th day of May, 1997, the PLAINTIFF, **ARTHUR GOCHMAN**, entered into a written agreement (the contract) for the sale by the DEFENDANT to the PLAINTIFF of property owned and developed by the DEFENDANT on Mustang Island, Nueces County, Texas, within the city limits of the City of Port Aransas, Texas, described as follows:

Lots 24, 25, and 26, Block 1, Beach Walk Addition to the City of Port Aransas, Nueces County, Texas.

An executed copy of the contract is attached as "Exhibit A" and incorporated herein by reference as the fully set out and herein detail.

Immediately prior to the execution of the contract, ("Exhibit A" attached) the PLAINTIFF, **ARTHUR GOCHMAN**, met with the DEFENDANT, **STANLEY A. STARRETT, JR.** at his office on the project premises at Port Aransas, Texas.

They discussed at length, the issue of any building being built in the future to the immediate north and east of the Lot 24 which would in fact cause Lot 24 to lose all or part of its view to the immediate north and east seaward to the Gulf of Mexico and the Gulf Beach, while in the office, the DEFENDANT, **STANLEY A. STARRETT, JR.** showed the PLAINTIFF, **ARTHUR GOCHMAN,** a plat showing the property lines, which clearly showed the vegetation line as it came inland from Lot 24, 25 and 26. DEFENDANT, **STANLEY A. STARRETT, JR.** stated to PLAINTIFF, **ARTHUR GOCHMAN,** that this plat showed that no one could ever build closer to the beach than at the location of the house that he would build because of the location of the vegetation line and dunes which were further inland than the subject Lot 24, all of which would clearly show that no house would be built in front of Lots 24, 25, and 26 which would obstruct their view of the Gulf of Mexico and the Gulf Beach. DEFENDANT, **STANLEY A. STARRETT, JR.** specifically stated and showed that no one could ever build closer to the beach than PLAINTIFF, **ARTHUR GOCHMAN,** near to the said Lot 24, and thus obstruct his view.

During this meeting and negotiating for the purchase of Lots 24, 25, and 26. DEFENDANT, **STANLEY A. STARRETT, JR.** showed and advised the PLAINTIFF, **ARTHUR GOCHMAN** where he had planned to buy property for

3

Beachwalk II. DEFENDANT, **STANLEY A. STARRETT, JR**. advised

PLAINTIFF, **ARTHUR GOCHMAN**, that the two subdivisions would not be

attached and even pointed out where new lots would be some distance from

Beachwalk I and the subject property Lots 24, 25, and 26 subsequently purchased

by PLAINTIFF, **ARTHUR GOCHMAN**. DEFENDANT, **STANLEY A.**

**STARRETT, JR.** stated and made it specifically clear that Beachwalk II would be

and was a completely unattached and unrelated development to Beachwalk I.

Subsequently, on or about  May 30th, 1997, the PLAINTIFF, **MOLLY**

**GOCHMAN,** was conveyed Lots 24, 25, and 26 by DEFENDANT, **STANLEY A.**

**STARRETT, JR.** by the deed filed in the Deed Records of Nueces County, Texas,

for a consideration of Three Hundred Thousand Dollars ($300,000.00).  As an

inducement to the PLAINTIFF, **ARTHUR GOCHMAN**, to enter into the contract

for sale, the DEFENDANT, **STANLEY A. STARRETT, JR.** represented to the

PLAINTIFF, **ARTHUR GOCHMAN**, that no one would be able to build seaward

of his lots such as to obstruct his view of the Gulf of Mexico and the Gulf Beach.

In reliance on the representations made by the DEFENDANT, **STANLEY A.**

**STARRETT, JR.,** the PLAINTIFF, **ARTHUR GOCHMAN**, entered into the

contract for the purchase of the Lots 24, 25, and 26 purchased for consideration of

Three Hundred Thousand Dollars ($300,000.00).  The property was conveyed by

4

the DEFENDANT, **STANLEY A. STARRETT, JR.** to PLAINTIFF, **MOLLY GOCHMAN,** on or about May 30th, 1997. A copy of the contract executed by the parties is attached hereto and is marked "Exhibit A".

### III.

At the time the DEFENDANT, **STANLEY A. STARRETT, JR.** made the representations concerning buildings to the immediate north and east and seaward of the Lot 24 the DEFENDANT, **STANLEY A. STARRETT, JR.,** knew the true facts, was aware of the true facts, and had made a false and fraudulent statement to the PLAINTIFF, **ARTHUR GOCHMAN.** The DEFENDANT, **STANLEY A. STARRETT, JR.,** did all of this with the intention that the PLAINTIFF, rely on it and enter into the contract.

### IV.

As proximate result of the DEFENDANT'S, **STANLEY A. STARRETT, JR.'S** fraud, the PLAINTIFF, **ARTHUR GOCHMAN,** and/or **MOLLY GOCHMAN,** has incurred the following expense: (1) He has purchased the Lots 24, 25, and 26 from the DEFENDANT, **STANLEY A. STARRETT, JR.,** for Three Hundred Thousand Dollars ($300,000.00); (2) he has built a residence upon the Lot 24 at a cost of One Million Three Hundred Thousand Dollars ($1,300,000.00), and (3) he has incurred legal expenses and fees, negotiating and

5

drawing contracts, and bringing this suit, and other incidental legal services related to this transaction, all of which were reasonably necessary and are customary charges for similar services in the community an amount of at least Twenty-Five Thousand Dollars ($25,000.00), all of which damages are greater than the minimum jurisdictional limits of this Court.

## V.

PLAINTIFF, **ARTHUR GOCHMAN,** will further show that the conduct of the DEFENDANT, **STANLEY A. STARRETT, JR.,** as described above was fraudulent and malicious.  As a result, the PLAINTIFF, **ARTHUR GOCHMAN,** is entitled to recover exemplary damages to deter such fraudulent conduct by others in the DEFENDANT'S situation.  In this connection, PLAINTIFF, **ARTHUR GOCHMAN,** would show that as a result of the DEFENDANT'S, **STANLEY A. STARRETT, JR.'S,** conduct the PLAINTIFF, **ARTHUR GOCHMAN,** has suffered losses of time and other expenses, including attorney's fees incurred in the investigation and prosecution of this action and other actions.

Accordingly, PLAINTIFF, **ARTHUR GOCHMAN,** requests that exemplary damages be awarded against the DEFENDANT, **STANLEY A. STARRETT, JR.,** in a sum within the jurisdictional limits of the Court.

WHEREFORE PREMISES CONSIDERED, the PLAINTIFFS, **ARTHUR**

6

GOCHMAN and **MOLLY GOCHMAN**, request that DEFENDANT, **STANLEY A. STARRETT, JR.**, be cited to appear and answer herein, that on final hearing hereof the PLAINTIFFS, have:

1.    Judgment against the DEFENDANT, for compensatory damages in a sum within the jurisdictional limits of the Court, together with prejudgment interest as allowed by law.

2.    Judgment against the DEFENDANT for exemplary damages in a sum within the jurisdictional limits of the Court .

3.    Post judgment interest.

4.    Costs of suit.

5.    Such other and further relief both in law and in equity to which PLAINTIFFS may be justly entitled.

Respectfully submitted,

MAX J. LUTHER, III, P.C.
& Associates
1350 Frost Bank Plaza
802 North Carancahua
Corpus Christi, Texas  78470
State Bar No. 12706000
Telephone:  (512)888-5544
Facsimile:   (512)887-6835

BY: _____
MAX LUTHER, III
ATTORNEY FOR THE PLAINTIFFS,
ARTHUR GOCHMAN AND
MOLLY GOCHMAN

C:\DATA\GEN\ORGPET2.GOC

8

CVisPDF - www.fenito.com

## VERIFICATION

STATE OF TEXAS     §
           §
COUNTY OF NUECES   §

    **BEFORE ME**, the undersigned Notary Public, on this day personally appeared

**ARTHUR GOCHMAN**, who being by me duly sworn on his oath, deposed and said that he has

read the above and forgoing **PLAINTIFFS' ORIGINAL PETITION** and that every statement

and fact contained therein is with his personal knowledge, and is true and correct.

_____
**ARTHUR GOCHMAN**
**PLAINTIFF**

    SUBSCRIBED AND SWORN TO BEFORE ME on this the 8th day of

_____, 1999.

GEORGIA A. EDGAR
Notary Public, State of Texas
Commission Expires 12-28-2002

_____
Notary Public in and for the
State of Texas

## VERIFICATION

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF NUECES** | § |

BEFORE ME, the undersigned Notary Public, on this day personally appeared **MOLLY GOCHMAN**, who being by me duly sworn on her oath, deposed and said that she has read the above and forgoing **PLAINTIFFS' ORIGINAL PETITION** and that every statement and fact contained therein is with her personal knowledge, and is true and correct.


_Molly Gochman_
**MOLLY GOCHMAN**
**PLAINTIFF**


SUBSCRIBED AND SWORN TO BEFORE ME on this the 8th ___ day of

_March_ , 1999.


GEORGIA A. EDGAR
Notary Public, State of Texas
Commission Expires 12-28-2002

_Georgia A. Edgar_
Notary Public in and for the
State of Texas



UNIMIT...ED PROPERTY EARNEST M...L.. CONTRACT

10-2

## PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

NOTICE: This Contract Is Limited To Transactions Where Intended Use Is For One To Four Family Residences

1. **PARTIES:** _____ Stan Stanrell _____ (Seller) agrees to
and convey to _Arthur Gochman or Assigns_ (Buyer) and Bu...
agrees to buy from Seller the property described below. Lot 24 + 2558 Beachwalk E
3 Lots #9 257 + 25 + 26          26 Beachwalk B

2. **PROPERTY: Lot** _9 257 + 25 + 26_, **Block** _1_ _Beachwalk B_
Addition, City of _Port Aransas_ _Nueces_ County, Tex.
known as _Beachwalk lane Port Aransas, T_ (Address), or as described on attach
exhibit, (the Property). The Property ☐ is ☐ is not subject to mandatory membership in an owners' association and
assessments and requirements.

3. **SALES PRICE:**
   A. Cash portion of the Sales Price payable by Buyer. . . . . . . . . . . . $ _____
   B. Sum of all financing described below. . . . . . . . . . . . . . $300,000 $ _____
   C. Sales Price (Sum of A and B). . . . . . . . . . . . . . . . . $ 22,500

4. **FINANCING:** The portion of the Sales Price not payable in cash shall be paid as follows: (Check applicable boxes below)
   ☐ A. **ASSUMPTION:**
       ☐ (1)   Buyer shall assume the unpaid principal balance of a first lien promissory note payable to _____
                    which unpaid balance at closing will be $_____
                The total current monthly payment including principal, interest and reserve deposits is $_____
                Buyer's initial payment shall be the first payment due after closing.
       ☐ (2)   Buyer shall assume the unpaid principal balance of a second lien promissory note payable to _____
                    which unpaid balance at closing will be $_____
                The total current monthly payment including principal, interest and reserve deposits is $_____
                Buyer's initial payment shall be the first payment due after closing.
       Buyer's assumption of an existing note includes all obligations imposed by the deed of trust securing the note.
       If the unpaid balance(s) of any assumed loan(s) as of the Closing Date varies from the loan balance(s) stated above, the ☐
       cash payable at closing ☐ sales price shall be adjusted by the amount of any variance; provided, if the total principal balanc...
       of all assumed loans varies in an amount greater than $350.00 at closing, either party may terminate this contract and th...
       Earnest Money shall be refunded to Buyer unless either party elects to eliminate the excess in the variance by an appropriat...
       adjustment at closing. If the noteholder requires (a) payment of an assumption fee in excess of $_____ '
       in A(l) above, or $_____ in A(2) above and Seller declines to pay such excess or (b) an increase in the interes...
       rate to more than _____ % in A(l) above, or _____ % in A(2) above, or (c) any other modification of the loan...
       documents, Buyer may terminate this contract, and the Earnest Money shall be refunded to Buyer. A vendor's lien and deed...
       of trust to secure assumption shall be required, which shall automatically be released on execution and delivery of a release...
       by noteholder. If Seller is released from liability on any assumed note, the vendor's lien and deed of trust to secure assumption...
       shall not be required.
       NOTICE TO BUYER: The monthly payments, interest rates or other terms of some loans may be adjusted by the lender a...
       or after closing. If you are concerned about the possibility of future adjustments, do not sign this contract without examining...
       the notes and deeds of trust.
       NOTICE TO SELLER: Your liability to pay the note assumed by Buyer will continue unless you obtain a release of liabilit...
       from the lender. If you are concerned about future liability, you should use TREC Release of Liability Addendum.
   ☐ B. **THIRD PARTY FINANCING:**
       ☐ (1)   A third party first lien note of $_____ , due in full in _____ year(s), with interest not to
                exceed _____ percent per annum for the first _____ year(s) of the loan.
       ☐ (2)   A third party second lien note of $_____ , due in full in _____ year(s), with interest not to
                exceed _____ percent per annum for first _____ year(s) of the loan.
   ☐ C. **SELLER FINANCING:** A promissory note from Buyer to Seller of $_____ , bearing _____ %
       interest per annum, secured by vendor's and deed of trust liens, in accordance with the terms and conditions set forth i...
       the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Selle...
       with a mortgage policy of title insurance.
   ☐ D. **CREDIT APPROVAL ON ASSUMPTION OR SELLER FINANCING:** Within _____ days after the effective date o...

Initialed for identification by Buyer _____ and Seller _____     **EXHIBIT "A"**     TREC NO.

Case 2:00-cv-00126  Document 6  Filed in TXSD on 04/10/2000  Page 13 of 64

Unimproved Property Earnest Money C_____ cerning_____Berclua_____Page Two
(Address c_____, _)

this contract, Buyer shall deliver to Seller ☐ credit report ☐ verification of employment, including salary ☐ verifi of funds on deposit in financial institutions ☐ current financial statement to establish Buyer's creditworthine assumption approval or seller financing and ☐ _____

If Buyer's documentation is not delivered within the specified time, Seller may terminate this contract by notice to within 5 days after expiration of the time for delivery, and the Earnest Money shall be paid to Seller. If this cont not so terminated, Seller shall be deemed to have accepted Buyer's credit. If the documentation is timely delivere Seller determines in Seller's sole discretion that Buyer's credit is unacceptable, Seller may terminate this contract by : to Buyer within 5 days after expiration of the time for delivery and the Earnest Money shall be refunded to Buyer. If does not so terminate this contract, Seller shall be deemed to have accepted Buyer's credit. Buyer hereby authoriz credit reporting agency to furnish to Seller at Buyer's sole expense copies of Buyer's credit reports.

Within _____ days after the effective date of this contract Buyer shall apply for all third party financing or noteho approval of any assumption and shall make every reasonable effort to obtain financing or assumption approval. Financi assumption approval shall be deemed to have been obtained when the lender has determined that Buyer has satisfied all of le financial conditions (those items relating to Buyer's ability to qualify for assumption approval or a loan). If financing or assum approval is not obtained within _____ days after the effective date hereof, this contract shall terminate and the Ea Money shall be refunded to Buyer. Each note to be executed hereunder shall be secured by vendor's and deed of trust lie

5. **EARNEST MONEY:** Buyer shall deposit $ ~~3,000~~  as Earnest Money with  First Ame Title  at  Port Arscses                    (Addres Escrow Agent, upon execution of this contract by both parties. ☐ Additional Earnest Money of $_____ be deposited by Buyer with Escrow Agent on or before _____, 19_____. If Buyer fails to deposit the Ea Money as required by this contract, Buyer is in default.

6. **TITLE POLICY, ABSTRACT AND SURVEY:**

☑ A. TITLE POLICY: Seller shall furnish to Buyer at Seller's expense an Owner Policy of Title Insurance (the Title Pol issued by _____ (the Title Company) in amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Pol subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptio

   (1) Restrictive covenants common to the platted subdivision in which the Property is located.
   (2) The standard printed exception for standby fees, taxes and assessments.
   (3) Liens created as part of the financing described in Paragraph 4.
   (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is locat
   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writi
   (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary li encroachments or protrusions, or overlapping improvements.
   (7) The standard printed exception as to marital rights.
   (8) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment Title Insurance (the Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidenc exceptions in the Commitment other than the standard printed exceptions. Seller authorizes the Title Company to mail hand deliver the Commitment and related documents to Buyer at Buyer's address shown below. If the Commitment is delivered to Buyer within the specified time, the time for delivery shall be automatically extended up to 15 days. Bu shall have 5 days after the receipt of the Commitment to object in writing to matters disclosed in the Commitment. Bu may object to existing building and zoning ordinances and items 6(A)(1) through (8) above if Buyer determines that s such ordinance or items prohibits the following use or activity: _____

_____

☐ B. ABSTRACT OF TITLE: Within 30 days after the Abstract Company receives a copy of this contract, Seller shall furn to Buyer at Seller's expense an Abstract of Title certified by abstract company (a) from the sovereignty to the effective d of this contract (Complete Abstract) and (b) supplemented to the Closing Date (Supplemental Abstract). The Compl Abstract and Supplemental Abstract shall be examined at Buyer's expense by an attorney selected by Buyer. Buyer sh have 30 days after the receipt of the Complete Abstract required by this contract to object in writing to matters disclo in the Complete Abstract.

☑ C. SURVEY REQUIRED: (Check one box only)
☑ (1) Within  30  days after Buyer's receipt of a survey plat furnished to a third-party lender at the exper

Initialed for identification by Buyer_____ and Seller_____

of ☐ Buyer ☐ Seller, Buyer may object in writing to any matter shown on the plat which constitutes a defect encumbrance to title.

☐ (2) Within _____ days after the effective date of this contract, Buyer may object in writing to any matter which constitu a defect or encumbrance to title shown on a survey plat obtained by Buyer at the expense of ☐ Buyer ☐ Seller. The survey shall be made by a Registered Professional Land Surveyor acceptable to the title company and any lender. plat shall: (a) identify the Property by metes and bounds or platted lot description; (b) show that the survey was made staked on the ground with corners permanently marked; (c) set forth the dimensions and total area of the property; (d) sh the location of all improvements, highways, streets, roads, railroads, rivers, creeks or other waterways, fences, easements rights of way on the Property with all easements and rights of way referenced to their recording information; (e) show discrepancies or conflicts in boundaries, any visible encroachments, and any portion of the Property lying within the 100 y floodplain as shown on the current Federal Emergency Management Agency map; and (f) contain the surveyor's certific that the survey as shown by the plat is true and correct.

☐ (3) Within _____ days after the effective date of this contract, Buyer may object in writing to any matter whi constitutes a defect or encumbrance to title shown on Seller's existing survey plat of the Property da _____, 19_____. The plat ☐ shall ☐ shall not be recertified to a date subsequent to effective date of this contract at the expense of ☐ Buyer ☐ Seller.

Utility easements created by the dedication deed and plat of the subdivision in which the Property is located shall not be a ba for objection.

Buyer's failure to object under 6A, 6B or 6C within the time allowed shall constitute a waiver of Buyer's right to object; exce that the requirements in Schedule C of the Commitment shall not be deemed to have been waived. If objections are made Buyer, or any third party lender, Seller shall cure the objections within 20 days after the date Seller receives them and t Closing Date shall be extended as necessary. If objections are not cured by the extended Closing Date, this contract shall termin: and the Earnest Money shall be refunded to Buyer unless Buyer elects to waive the objections.

NOTICE TO SELLER AND BUYER:
(1) Broker advises Buyer to have an Abstract covering the Property examined by an attorney of Buyer's selection, or Buy should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be prompt reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
(2) If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood contr facilities and services, Chapter 50 of the Texas Water Code requires Seller to deliver and Buyer to sign the statutory noti relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
(3) Buyer is advised that the presence of wetlands, toxic substances including lead-base paint or asbestos and wastes or oth environmental hazards or the presence of a threatened or endangered species or its habitat may affect Buyer's intended u of the Property. If Buyer is concerned about these matters, an addendum either promulgated by TREC or required by t parties should be used.
(4) If the Property adjoins and shares a common boundary with the tidally influenced submerged lands of the state, Sectic 33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contrac An addendum either promulgated by TREC or required by the parties should be used.

7. PROPERTY CONDITION: Buyer accepts the Property in its present condition, subject only to _____ N/A ____

8. BROKERS' REPRESENTATION AND FEES: _Caldwell Bnker – As Agreed –_
(Listing Broker) represents ☐ Seller only ☐ Seller and Buyer. Any other broker represents:
☐ Seller as Listing Broker's subagent; or
☐ Buyer only as Buyer's agent.        _No Broker's Fee_
Seller shall pay Listing Broker: (check A or B)
☐ A. The fee specified by separate agreement between Listing Broker and Seller; OR
☐ B. If there is no separate agreement, a total cash fee of either $ _____ or _____% of the total Sale Price in _____ County, Texas on closing of this sale, or on termination of this contrac except as permitted by its terms, or if the closing is prevented by Seller's default. Upon Buyer's default, Escrow Agen is authorized to pay Listing Broker one-half of any Earnest Money which Seller receives under Paragraph 15, not t exceed the amount of the cash fee.
9. CLOSING: The closing of the sale shall be on or before _May 11_, 19_97_, or within 7 days after objections t title and survey have been cured, whichever date is later (the Closing Date); however, if financing or assumption approval ha

nitialed for identification by Buyer _____ and Seller _S or S_        TREC NO.

*been obtained pursuant to Paragraph 4,* the Closing Date shall be extended up to 15 days only if necessary to comply with lende closing requirements (for example, survey, closing documents). If either party fails to close this sale by the Closing Date, the nc defaulting party shall be entitled to exercise the remedies contained in Paragraph 14. At closing Seller shall furnish tax statemer or certificates showing no delinquent taxes and a General Warranty Deed conveying good and indefeasible title showing additional exceptions to those permitted in Paragraph 6.

10. **POSSESSION:** The possession of the Property shall be delivered to Buyer at closing.

11. **SPECIAL PROVISIONS:** [Insert only factual statements and business details applicable to this sale. A licensee shall not add a promulgated earnest money contract form factual statements or business details for which a contract addendum, lease or oth form has been promulgated by TREC for mandatory use. 22 TAC §537.11 (d).]

*Buyer has free option until 4(1/97 —*

12. **SALES EXPENSES:** The following expenses shall be paid at or prior to closing:
    A. Appraisal fees shall be paid by _____.
    B. The total of the loan discount and buydown fees shall not exceed _____% of the loan of which Seller shall pay th first _____% of the loan and Buyer shall pay the remainder.
    C. Seller's Expenses: Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan lia bility; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses stipulated to be paid b; Seller under other provisions of this contract.
    D. Buyer's Expenses: Application, origination, processing and commitment fees; loan assumption costs; preparation and recordin; of deed of trust to secure assumption; expenses incident to new loan(s) (for example, preparation of any note, deed of trus and other loan documents, recording fees, tax service and research fees, warehouse or underwriting fees, copies of restriction and easements, amortization schedule, premiums for mortgagee title policies and endorsements required by lender; credi reports, photos); any required reserve deposits for ad valorem taxes and special governmental assessments; interest on al monthly installment payment notes from date of disbursements to one month prior to dates of first monthly payments; one-hal of escrow fee and expenses stipulated to be paid by Buyer under other provisions of this contract.
    E. If any sales expense exceeds the amount stated in this contract to be paid by either party, either party may terminate this contract unless either party agrees to pay such excess.

13. **PRORATIONS AND ROLLBACK TAXES:**
    A. PRORATIONS: Interest on any assumed loan, current taxes, any rents, maintenance fees and assessments shall be prorated through the Closing Date. If the amount of ad valorem taxes for the year in which the sale is closed is not available on the Closing Date, proration of taxes shall be made on the basis of taxes assessed in the previous year.
    B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes for periods prior to closing, the additional taxes shall be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in the assessment of additional taxes for periods prior to closing, the additional taxes shall be the obligation of Seller. Obligations imposed by this paragraph shall survive closing.

14. **DEFAULT:** If Buyer fails to comply with this contract, Buyer shall be in default. Seller may ~~either (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b)~~ terminate this contract and receive the Earnest Money as liquidated damages, thereby releasing both parties from this contract. If Seller is unable without fault to deliver the Commitment or the Complete Abstract within the time allowed, Buyer may either terminate this contract and receive the Earnest

Initialed for identification by Buyer _____ and Seller _____ 

TREC NO. 9
Nᵒ   032

Money as the sole remedy or extend the time for performance up to 15 days and the Closing Date shall be extended as necessary. If Seller fails to comply with this contract for any other reason, Seller shall be in default and Buyer may either (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the Earnest Money, thereby releasing both parties from this contract.

15. **ATTORNEY'S FEES:** If Buyer, Seller, Listing Broker, Other Broker or Escrow Agent is a prevailing party in any legal proceeding brought under or with relation to this contract, such party shall be entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorneys' fees.

16. **ESCROW:** The Earnest Money is deposited with Escrow Agent with the understanding that Escrow Agent is not (a) a party to this contract and does not have any liability for the performance or non-performance of any party to this contract, (b) liable for interest on the Earnest Money or (c) liable for any loss of Earnest Money caused by the failure of any financial institution in which the Earnest Money has been deposited unless the financial institution is acting as Escrow Agent. If either party makes demand for the payment of the Earnest Money, Escrow Agent has the right to require from all parties and brokers a written release of liability of Escrow Agent for disbursement of the Earnest Money. Any refund or disbursement of Earnest Money under this contract shall be reduced by the amount of unpaid expenses incurred on behalf of the party receiving the Earnest Money, and Escrow Agent shall pay the same to the creditors entitled thereto. At closing, the Earnest Money shall be applied first to any cash down payment, then to Buyer's closing costs and any excess refunded to Buyer. Demands and notices required by this paragraph shall be in writing and delivered by hand delivery or by certified mail, return receipt requested.

17. **REPRESENTATIONS:** Seller represents that as of the Closing Date (a) there will be no liens, assessments, Uniform Commercial Code or other security interests against any of the Property which will not be satisfied out of the Sales Price unless securing payment of any loans assumed by Buyer and (b) assumed loans will be without default. If any representation in this contract is untrue on the Closing Date, this contract may be terminated by Buyer and the Earnest Money shall be refunded to Buyer. All representations contained in this contract and an agreement for mediation shall survive closing.

18. **NOTICES:** All notices shall be in writing and effective when mailed to or hand-delivered at the addresses shown below.

19. **FEDERAL TAX REQUIREMENT:** If Seller is a "foreign person", as defined by applicable law, or if Seller fails to deliver an affidavit that Seller is not a "foreign person", then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service, together with appropriate tax forms. IRS regulations require filing written reports if cash in excess of specified amounts is received in the transaction.

20. **USE AND UTILITIES:** The intended use of the Property by Buyer is ☑ single family dwelling ☐ multiple family dwelling of _____ units ☐ mobile home. Utilities required at the Property for such use are ☑ water ☑ sanitary sewer ☐ gas ☑ electricity ☐ telephone ☐ and ☑ _Public TV_

If Buyer ascertains that applicable zoning ordinances, easements, restrictions or governmental laws, rules or regulations prevent such intended use or that such required utilities are not available, or that the Property is located within the 100 year flood plain as shown on the current Federal Emergency Management Agency map, and Buyer so notifies Seller within _____days after the effective date of this contract, the same shall terminate and the Earnest Money shall be refunded to Buyer. Buyer's failure to give the notice within the required time shall constitute Buyer's acceptance of the Property.

21. **DISPUTE RESOLUTION:** It is the policy of the State of Texas to encourage the peaceable resolution of disputes through alternative dispute resolution procedures. The parties are encouraged to use an addendum approved by TREC to submit to mediation disputes which cannot be resolved in good faith through informal discussion.

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (list):_____
_____
_____

23. **CONSULT YOUR ATTORNEY:** Brokers cannot give legal advice. This is intended to be a legally binding contract. READ IT CAREFULLY. If you do not understand the effect of this contract, consult your attorney BEFORE signing.

initialed for identification by Buyer_____ and Seller_____     TREC NO. 9

No    03

Unimproved Property Earnest Money Contract ...rning_____ Deachener _____ ._____ Page Six   10-25-

(Address of '

Buyer's
Attorney:_____

Seller's
Attorney:_____

EXECUTED in multiple originals the _____ day of _____, 19_____ *(THE EFFECTIVE DATE*
*(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE AND THE PARTIES' ADDRESSES)* .

X _____
Buyer

_____
Seller

_____
Buyer

_____
Seller                                    572

1800 N. Mason Rd.
Buyer's Address              Phone No.
Katy, Texas 77449

P. O. Box 1287
Seller's Address              Phone No.
Port Aransas, TX
78373

The form of this contract has been approved by the Texas Real Estate Commission. Such approval relates to
this contract form only. No representation is made as to the legal validity or adequacy of any provision in any
specific transaction. It is not suitable for complex transactions. Extensive riders or additions are not to be
used. (10-93) TREC NO. 9-2. This form replaces TREC NO. 9-1.

## AGREEMENT BETWEEN BROKERS

Listing Broker agrees to pay Coldwell Banker _____, Other
Broker, a fee of A... C... of the total sales price when the Listing Broker's fee is received. Escrow Agent is authorized
and directed to pay Other Broker from Listing Broker's fee at closing.

_____        _____
Other Broker           License No.      Listing Broker           License No.

By:_____        By:_____

_____        _____
Other Broker's Address   Phone No.      Listing Broker's Address  Phone No.

## RECEIPT

Receipt of ☐ Contract and ☐ $ 3,000 Earnest Money in the form of check
is acknowledged.

Escrow Agent: _____     By:_____

Date: _____, 19____.          _____
                                        Address

_____
                        City              State              Zip

TREC NO. 9
No       037

WCID/MUD        ICE TO PURCHASER

The real property, described below, which you are about to
purchase is located in the Nueces County Water Control and
Improvement District Number Four (4).  The district has taxing
authority separate from any other taxing authority, and may,
subject to voter approval, issue an unlimited amount of bonds and
levy an unlimited rate of tax in payment of such bonds.  As of
this date, the rate of taxes levied by the district on real
property located in the district is $0.077850 on each 100 of
assessed valuation.  If the district has not yet levied taxes,
the most recent projected rate of debt service tax, as of this
date, is $N/A on each 100 of assessed valuation.  The total
amount of bonds which has been approved by the voters and which
have been or may, at this date, be used is $5,505,000.00, and the
aggregate initial principal amount of all bonds issued for one or
more of the specified facilities of the district and payable in
whole or in part from property taxes of $5,505,000.00.

The district has the authority to adopt and impose a standby
fee on property in the district that has water, sewer, sanitary
or drainage facilities and services available but not connected
and which does not have a house, building, other improvement
located thereon and does not substantially utilize the utility
capacity available to the property.  The district may exercise
the authority without holding an election on the matter.  as of
this date the amount of the standby fee is $0.00.  An unpaid
standby fee is a personal obligation of the person that owned the
property at the time of imposition and is secured by a lien on
the property.  Any person may request a certificate form the
district stating the amount, if any, of unpaid standby fees on a
tract of property in the district.

The purpose of this district is to provide water, sewer,
drainage, or flood control facilities and services within the
district through the issuance of bonds payable in whole or in
part from property taxes.  The cost of these utility facilities
is not included in the purchase price of your property, and these
utility facilities are owned or to be owned by the district.  The
legal description of the property which your are acquiring is as
follows:

DATE:                         _____
                              (Seller)


                              _____
                              (Seller)

PURCHASER IS ADVISED THAT THE INFORMATION SHOWN ON THIS FORM IS
SUBJECT TO CHANGE BY THE DISTRICT AT ANY TIME.  THE DISTRICT
ROUTINELY ESTABLISHES TAX RATES DURING THE MONTHS OF SEPTEMBER
THROUGH DECEMBER OF EACH YEAR, EFFECTIVE FOR THE YEAR IN WHICH
THE TAX RATES ARE APPROVED BY THE DISTRICT.  PURCHASER IS ADVISED
TO CONTACT THE DISTRICT TO DETERMINE THE STATUS OF ANY CURRENT OR
PROPOSED CHANGES OF THE INFORMATION SHOWN ON THIS FORM.

The undersigned purchaser hereby acknowledges receipt of the
foregoing notice at or prior to execution of a binding contract
for the purchase of the real property described in such notice or
at closing of purchase of the real property.

Date:                         _____
                              (Purchaser)


                              _____
                              (Purchaser)



ATED BY THE TEXAS REAL ESTATE COI   ( (TREC)
P.O. BOX 12188, AUSTIN, TX 78711-21..

# ADDENDUM FOR
## PROPERTY LOCATED SEAWARD OF THE
## GULF INTRACOASTAL WATERWAY

### ADDENDUM TO EARNEST MONEY CONTRACT BETWEEN THE UNDERSIGNED PARTIES
### CONCERNING THE PROPERTY AT

Lots 24 & 25 &26 Beachwalk

(Location of Property)

**IN ACCORDANCE WITH SECTION 61.025, TEXAS NATURAL RESOURCES CODE, THE FOLLOWING STATEMENT IS INCLUDED AS PART OF THE CONTRACT:**

The real property described in this contract is located seaward of the Gulf Intracoastal Waterway to its southernmost point and then seaward of the longitudinal line also known as 97 degrees, 12', 19" which runs southerly to the international boundary from the intersection of the centerline of the Gulf Intracoastal Waterway and the Brownsville Ship Channel. If the property is in close proximity to a beach fronting the Gulf of Mexico, the purchaser is hereby advised that the public has acquired a right of use or easement to or over the area of any public beach by prescription, dedication, or presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

The extreme seaward boundary of natural vegetation that spreads continuously inland customarily marks the landward boundary of the public easement. If there is no clearly marked natural vegetation line, the landward boundary of the easement is as provided by Sections 61.016 and 61.017, Natural Resources Code.

State law prohibits any obstruction, barrier, restraint, or interference with the use of the public easement, including the placement of structures seaward of the landward boundary of the easement. STRUCTURES ERECTED SEAWARD OF THE VEGETATION LINE (OR OTHER APPLICABLE EASEMENT BOUNDARY) OR THAT BECOME SEAWARD OF THE VEGETATION LINE AS A RESULT OF NATURAL PROCESSES ARE SUBJECT TO A LAWSUIT BY THE STATE OF TEXAS TO REMOVE THE STRUCTURES.

The purchaser is hereby notified that the purchaser should seek the advice of an attorney or other qualified person before executing this contract or instrument of conveyance as to the relevance of these statutes and facts to the value of the property the purchaser is hereby purchasing or contracting to purchase.

Buyer _____        Seller _____

Buyer _____        Seller _____

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such ap relates to this form only. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It suitable for complex transactions. (12-94) TREC No. 34-0

(TAR-073) Rev  12/5/94

## ADDENDUM TO UNIMPROVED PROPERTY EARNEST MONEY CONTRACT
## BETWEEN STAN STARRETT, SELLER
## AND ARTHUR GOCHMAN OR ASSIGNS, BUYER

24. The Seller's social security number is ꓕ ᴏ ꓔ - ꓔ ᴄ - ꓖ ꓢ ꓔ ꓖ

25. The Buyer's social security number is 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.

26. Paragraph 6(6) relating to standard printed exceptions in the Title Policy are deleted and Buyer is to pay for the cost of deletion of those exceptions.

27. SELLER'S OBLIGATION AT CLOSING:  Seller shall at closing:

   (a)   Execute, acknowledge and deliver to Buyer a general warranty deed (the Deed") conveying to Buyer good and indefeasible title in fee simple absolute to the Land, the Improvements and the Appurtenances.

   (b)   Cause to be furnished and delivered to Buyer, at the sole cost and expense of Seller, the Title Policy heretofore described, issued by First American Title Company, insuring good and indefeasible fee simple title to the Property in Buyer in a face amount equal to the purchase price, and comply with the remaining provisions of paragraph 6.

28. POSSESSION:  Possession of the Property shall be unconditionally delivered to Buyer at Closing.

29. REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE PROPERTY AND SELLER:  Seller represents and warrants to Buyer as followings:

   (a)   *Title.*  Seller has good and indefeasible title to the Property, free and clear of all mortgages, liens, encumbrances, security interests, leases, tenancies, covenants, conditions, restrictions, rights-of-way, easements, judgments and other matters affecting title, except the Permitted Exceptions.

   (b)   *Condemnation.*  There is no pending condemnation or similar proceeding affecting the Property, or any portion thereof, nor does Seller have any knowledge that any such action is presently contemplated.

   (c)   *Pending Litigation.*  There are no legal actions, suits or other legal or administrative proceedings pending or, to the best of Seller's knowledge, threatened against the Property or Seller, and Seller is not aware of any facts which might result in any such action, suit or other proceeding.

1 of 4

# ADDENDUM TO UNIMPROVED PROPERTY EARNEST MONEY CONTRACT
## BETWEEN STAN STARRETT, SELLER
## AND ARTHUR GOCHMAN OR ASSIGNS, BUYER

(d)     *Parties in Possession.* There are no parties in possession of any portion of the Property as lessees, tenants at will or at sufferance, trespassers or otherwise, and no person or party other than Buyer has any right or option to lease, purchase, occupy, use or possess the Property, or any portion thereof or any interest therein.

(e)     *Federal Flood Protection Act.* The Property is not within any area determined by the Department of Housing and Urban Development to be "flood plain" or "flood prone" or another type of special flood hazard area under the Federal Flood Protection Act of 1973, as amended.

(f)     *No Violations.* Seller has no knowledge of any violation of any ordinance, regulations, law or statute of any governmental or quasi-governmental authority pertaining to the Property, or any portion thereof.

(g)     *No Special Ad Valorem Tax Classification.* During the past five (5) years, neither the Property nor any portion thereof has been classified as "agricultural" property, "open space" property or any other classification authorized by law to obtain a special low ad valorem tax rate.

(h)     *No Commitments.* No commitments have been made to any governmental or quasi-governmental authority, utility company, utility district, school board, church or other religious body, homeowners or property owners association, or to any other individual, entity, organization or group relating to the Property which would impose an obligation upon Buyer, or its successors or assigns, to make any contribution or dedication of money or land, or to construct, install or maintain any improvements of a public or private nature on or off of the Property. Additionally, no governmental or quasi-governmental authority has imposed any requirement that any developer of the Property pay, whether directly or indirectly, any special fees or contributions, or incur any expenses or obligations, in connection with any development of the Property, or any portion thereof.

(i)     *Liens and Debts.* Any and all liens and security interests affecting title to all or any portion of the Property shall, at Seller's sole cost and expense, be paid and fully released on or before the Closing Date. There are no unpaid charges, debts, liabilities, claims or obligations as a result of the construction, occupancy, ownership, use or operation of the Property which could give rise to any mechanic's, materialman's or other statutory lien against the Property, or any portion thereof. Seller has received no notice and has no knowledge

2 of 4

# ADDENDUM TO UNIMPROVED PROPERTY EARNEST MONEY CONTRACT
## BETWEEN STAN STARRETT, SELLER
## AND ARTHUR GOCHMAN OR ASSIGNS, BUYER

of any pending improvements, liens or special assessments to be made against the Property, or any portion thereof, by any governmental or quasi-governmental authority.

(j)   *Access to Property.*  The Property has full and free access to and from public streets, highways or roads, and, to the best of Seller's knowledge and belief, there is no pending or threatened governmental proceeding which would impair or limit the normal usage or access to the Property.

(k)   *Soil Conditions.*  To Seller's knowledge, no portion of the Land has ever been used as a landfill or dump area, nor is Seller aware of any unusual soil conditions related to the Land.

(l)   *Termination of Certain Agreements.*   Any landscape management, maintenance and/or service agreements currently in force with respect to the Property that Buyer does not elect to purchase shall be terminated as of the Closing Date and all money due by Seller pursuant to such agreements shall be paid in full at or prior to Closing.

(m)   *Zoning.  The Land is currently zoned under applicable local ordinances to allow general retail uses.*

(n)   *Hazardous Materials Conditions.*  To Seller's knowledge, no portion of the Property has ever been used for the generation, processing, collection, storage, treatment or disposal of Hazardous Materials or in such a way as to create any environmental condition that is actionable under any Applicable Environmental Law.  During the period of Seller's ownership of the Property, (1) no Hazardous Materials have been present, used, generated, processed, collected, stored, treated, released, emitted, discharged, disposed or transported on, under, in, above, to or from the Property, (2) Seller has not performed or undertaken any investigation, monitoring, clean-up, containment, removal, restoration or other remedial work required by any Applicable Environmental Laws, or by any Environmental Authority, insofar as such work shall have pertained to the presence, use, generation, processing, collection, storage, treatment, release, emission, discharge, disposal or transportation of any Hazardous Materials on, under, in, above, to or from the Property, (3) neither Seller nor the Property have been subject to any existing,

3 of 4



## ADDENDUM TO UNIMPROVED PROPERTY EARNEST MONEY CONTRACT
## BETWEEN STAN STARRETT, SELLER
## AND ARTHUR GOCHMAN OR ASSIGNS, BUYER

pending or threatened investigation or inquiry  by any Environmental Authority or to any obligations to perform any investigation, monitoring, clean-up, containment, removal, restoration or other remedial work under any Applicable Environmental Laws and (4) Seller has not obtained and is not required to obtain, and Seller has no knowledge of any reason Buyer will be required to obtain, any permits, licenses or similar authorizations to own, occupy, operate or use the Property, or any portion thereof, by reason of any Applicable Environmental Laws.  To the best of Seller's knowledge, the Property is not restricted by wetlands and does not contain toxic substances including lead based paint or asbestos, and waste, or other environmental hazards.

(o)   *Endangered Species.*  To the best of Seller's knowledge, no Endangered Species (as hereinafter defined) are present in, on or about the Property, and no Endangered Species have been present in, on or about the Property at any time during Seller's ownership thereof, nor is there located in, on or about the Property any "critical habitat" (as such term is defined and used in the federal Endangered Species Act), nor any other habitat, the destruction or alteration of which would constitute the "taking" of an Endangered Species within the meaning of the federal Endangered Species Act, the regulations promulgated thereunder, or the judicial decisions construing same.  As used herein, the term "Endangered Species" shall mean and refer to any individual or specimen of a species of plant or animal of any type whatsoever which has been designated, or has been proposed to be designated, as an endangered or threatened species by any governmental authority, including, without limitation, the U.S. Fish and Wildlife Service, pursuant to any applicable law, rule, regulation or order, whether federal, state or local, relating to the preservation or protection of endangered or threatened species or their habitat, including, without limitation, the federal Endangered Species Act.

30.   The Seller knows of no restrictions that prohibit the Buyer from building a house on any of these lots of 3,000 sq. ft. or more each, as long as it is within the setback lines and knows of no restrictions preventing the house from being at least four floors high and/or 45' high and Buyer is not prohibited from building a flat roof on a portion of the property up to 1,000 ft.

_____   _____
SELLER                      BUYER

4 of 4

CAUSE NO. 99-1336-B

| | | |
|---|---|---|
| ARTHUR GOCHMAN & MOLLY GOCHMAN, | § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | |
| VS. | § § | NUECES COUNTY, TEXAS |
| STANLEY A. STARRETT, JR., | § § | |
| DEFENDANT | § | 117TH JUDICIAL DISTRICT |

**************************************

CAUSE NO. 99-2725-F

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND MOLLY GOCHMAN, | § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | |
| VS. | § § | NUECES COUNTY, TEXAS |
| STANLEY A. STARRETT, JR., | § § | |
| DEFENDANT | § | 214TH JUDICIAL DISTRICT |

## DEFENDANT STANLEY A. STARRETT, JR.'S
## UNOPPOSED MOTION TO CONSOLIDATE

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Stanley A. Starrett, Jr. ("Starrett" herein), Defendant in the above-entitled and numbered cause and files this his Unopposed Motion to Consolidate and, in support thereof, would respectfully show unto the Court the following:

I.

Defendant Stanley A. Starrett, Jr. files this Unopposed Motion to Consolidate pursuant to Rule 174 of the Texas Rules of Civil Procedure and pursuant to Rule 3 of the Local Rules of



Nueces County, Texas.

## II.

On March 9, 1999, Plaintiffs filed Cause No. 99-1336-B, <u>Arthur Gochman & Molly Gochman vs. Stanley A. Starrett, Jr.</u>, in the 117th District Court of Nueces County, Texas.

On May 17, 1999, Plaintiffs filed Cause No. 99-2725-F, <u>Arthur Gochman and Molly Gochman vs. Stanley A. Starrett, Jr.</u>, in the 214th District Court of Nueces County, Texas.

Both lawsuits involve common questions of law and facts and arise out of the same transaction or occurrence. Defendant denies all liability to Plaintiffs. However, under Rule 174 of Tex.R.Civ.P., and under Rule 3 of the Local Rules of Nueces County, Texas, both lawsuits should be consolidated, for all purposes, into the first filed case, i.e., Cause No. 99-1336-B, <u>Arthur Gochman & Molly Gochman vs. Stanley A. Starrett, Jr.</u>, pending in the 117th District Court of Nueces County, Texas.

WHEREFORE, PREMISES CONSIDERED, Defendant Stanley A. Starrett, Jr. prays that this Court grant Defendant Stanley A. Starrett, Jr.'s Unopposed Motion to Consolidate and that it enter an order consolidating, for all purposes, Cause No. 99-1336-B and Cause No. 99-2725-F into Cause No. 99-1336-B; Defendant Stanley A. Starr, Jr. further prays for such other and further relief, legal or equitable, general or special, to which he may be entitled.

2

Respectfully submitted,

The Law Offices of Jorge C. Rangel, P.C.
719 S. Shoreline Blvd.
Shoreline Terrace, Suite 501
P. O. Box 2683
Corpus Christi, Texas  78403-2683
(361) 883-8500
(361) 883-2611 (Facsimile)

By: _____

Jorge C. Rangel
State Bar No. 16543500

Edwin Randolph Fleuriet
State Bar No. 07145500
The Fleuriet Schell Law Firm, LLP
621 E. Tyler
Harlingen, Texas  78550
(956) 428-3030
(956) 421-4339 (Facsimile)

ATTORNEYS FOR DEFENDANT STANLEY A.
STARRETT, JR.


## CERTIFICATE OF CONFERENCE

I hereby certify that on October 12th, 1999, Jorge C. Rangel, counsel for Stanley A. Starrett, Jr., conferred with Max J. Luther, III, counsel for Plaintiffs regarding the disposition of this Motion, and Mr. Luther stated that he is not opposed to the Motion.

_____

Jorge C. Rangel

3

## CERTIFICATE OF SERVICE

I, Jorge C. Rangel, hereby certify that I have forwarded a true and correct copy of the foregoing instrument to all counsel of record shown below, in accordance with the Texas Rules of Civil Procedure, on this _12__ day of October, 1999:

> Max J. Luther, III
> Max J. Luther, III, P.C. & Associates
> 1350 Frost Bank Plaza
> 802 North Carancahua
> Corpus Christi, Texas  78470

Jorge C. Rangel

4

CAUSE NO. 99-1336-B

| | | |
|---|---|---|
| ARTHUR GOCHMAN | § | IN THE 117TH JUDICIAL |
| & MOLLY GOCHMAN | § | |
| | § | |
| v. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| STANLEY A. STARRETT, JR. | § | NUECES COUNTY, TEXAS |

### DEFENDANT STANLEY A. STARRETT, JR.'S OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Stanley A. Starrett, Jr., opposing Plaintiffs' Motion to Consolidate into this cause another action pending in the 347th Judicial District Court for Nueces County, Texas styled *Arthur Gochman and Molly Gochman v. Ken Oakley and the City of Port Aransas, Texas,* Cause No. 99-1891-H, showing the Court the following.

### I.

Plaintiffs Gochman have invoked Rule 174 T.R.C.P. by summarily asserting that "these lawsuits involve common questions of fact and law" without ever showing this Court what such common questions of fact and law may be. Indeed, the questions of fact and law in the two lawsuits are entirely different.

## II.

Plaintiffs originally filed three lawsuits, two against Mr. Starrett and one against Mr. Oakley and the City of Port Aransas, Texas. Now Plaintiffs want to reverse the initial decision they made to file three lawsuits and bring all three together in a consolidated action. Consolidation is not proper because the questions of law and fact in each of the two actions are different.

## III.

In the two lawsuits Plaintiffs chose to file against Stanley A. Starrett, Jr. they have asserted as a basis for their claims alleged "misrepresentations" made by Mr. Starrett in the sale of three lots in Beachwalk I to Arthur Gochman and Molly Gochman. They have asserted, variously, causes of action for misrepresentation, fraud and breaches of the DTPA. The Gochmans have sought money damages against Mr. Starrett.

The lawsuit filed by the Gochmans against Mr. Oakley and the City of Port Aransas, Texas is entirely different. No money damages are sought by the Gochmans. No misrepresentations are alleged to have been made by either Mr. Oakley or the City of Port Aransas. The Gochmans are suing these two Defendants because of certain alleged modifications Mr. Oakley made to his lot as he built his house in Beachwalk II adjacent to the Gochmans' house. Plaintiffs seek injunctive relief against Mr. Oakley to keep him from "destroying a portion of a critical sand dune adjoining the Plaintiffs' Real Property", claiming that he and the City of Port Aransas violated the Dune Protection Act and further claiming that removal of a

portion of the sand dune on Mr. Oakley's lot will "affect the drainage onto Plaintiffs' property, endanger their beach house, etc., etc."

Thus the causes of action in the two lawsuits are entirely different. There is not one cause of action that is common to both. The damages sought (injunctive relief against Mr. Oakley and the City of Port Aransas versus monetary legal damages against Mr. Starrett) are entirely different. Plaintiffs have two separate battles to fight, not one. Consolidation is improper.

WHEREFORE, Defendant Starrett prays that Plaintiffs' Motion to Consolidate be denied.

Respectfully submitted,

THE FLEURIET SCHELL LAW FIRM LLP
621 E. Tyler
Harlingen, TX 78550
956-428-3030
956-421-4339 (fax)

BY: _____

E. R. Fleuriet
State Bar No. 07145500

Jorge C. Rangel
State Bar No. 16543500
THE LAW OFFICES OF JORGE C. RANGEL, P.C.
719 S. Shoreline Blvd., Suite 501
Corpus Christi, TX 78401
361-883-8500
361-883-2611 (Fax)

Attorneys for Defendant

DEFENDANT STANLEY A. STARRETT, JR.'S OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE - 3

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was served upon Max J. Luther, III, attorney for Plaintiffs, at 1350 Frost Bank Plaza, 802 North Carancahua, Corpus Christi, Texas 78470 by certified mail, return receipt requested on this the ___)___ day of December, 1999.

E. R. Fleuriet

DEFENDANT STANLEY A. STARRETT,
JR.'S OPPOSITION TO PLAINTIFFS'
MOTION TO CONSOLIDATE - 4

CAUSE NO. 99-1336-C

| | | |
|---|---|---|
| ARTHUR GOCHMAN | § | IN THE 94TH JUDICIAL |
| & MOLLY GOCHMAN | § | |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| | § | |
| STANLEY A. STARRETT, JR. | § | NUECES COUNTY, TEXAS |

## DEFENDANT'S FIRST AMENDED COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Stanley A. Starrett, Jr., Defendant in the above-entitled and numbered cause, and files this his First Amended Original Counterclaim and in this connection would show the Court as follows:

### I.
### COUNTERCLAIM

1.01   Defendant Stanley A. Starrett, Jr. files this Counterclaim against Plaintiffs Arthur Gochman and Molly Gochman pursuant to § 17.50(c) of the Texas Deceptive Trade Practices Act and would show this Court that Plaintiffs' action under § 17.50 Texas Business and Commerce Code is groundless in fact and in law. Plaintiffs' action is also brought in bad faith.  Plaintiffs' action is also brought for the purpose of harassment of Defendant whom Plaintiff Arthur Gochman threatened to ruin financially, this suit all being a part of Plaintiffs' claim to make good the threat of Plaintiff Arthur Gochman. Defendant Starrett therefore requests this Court to award him reasonable and necessary attorneys' fees and court costs

ChiPDF - www.fastio.com

against Plaintiffs Arthur Gochman and Molly Gochman, for which relief Defendant herein now prays.

1.02.   Defendant Stanley A. Starrett, Jr. would further show this Court that his claim for attorneys' fees against Plaintiffs Arthur Gochman and Molly Gochman arises out of a written contract or contracts, to wit:  the Earnest Money Contract for the purchase and sale of the three lots in question to the Plaintiffs which read as follows:

> 15.   ATTORNEY'S FEES:   If Buyer, Seller, Listing Broker, Other Broker or Escrow Agent is a prevailing party in any legal proceeding brought under or with relation to this contract, such party shall be entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorneys' fees.

Since this action filed by Plaintiffs is a legal proceeding either brought under or with relation to the Earnest Money Contract, Defendant Starrett is entitled to recover from Plaintiffs all costs of Court and reasonable attorneys' fees, for which fees and costs he herein now sues.

1.03   Pleading further Defendant Starrett would show this Court that he is entitled to recover his reasonable attorneys' fees from Plaintiffs Arthur Gochman and Molly Gochman pursuant to Chapter 38 Texas Civil Practice & Remedies Code since his claim for attorneys' fees is based upon a written contract described above in 1.02.

WHEREFORE, Defendant prays judgment of the Court that he have and recover his reasonable attorneys' fees as well as his reasonable and necessary

DEFENDANT'S FIRST AMENDED COUNTERCLAIM - 2

attorneys' fees and Court costs and such other relief to which Defendant Starrett may be entitled.

Respectfully submitted,

THE FLEURIET SCHELL LAW FIRM LLP
621 E. Tyler
Harlingen, TX 78550
956-428-3030
956-421-4339 (fax)

BY: _____
E. R. Fleuriet
State Bar No. 07145500

Jorge C. Rangel
State Bar No. 16543500
THE LAW OFFICES OF JORGE C.
RANGEL, P.C.
719 S. Shoreline Blvd., Suite 501
Corpus Christi, TX 78401
361-883-8500
361-883-2611 (Fax)

Attorneys for Defendant

## JURY DEMAND

TO THE HONORABLE DISTRICT CLERK:

Defendant Stanley A. Starrett, Jr. continues to demand a jury in this cause.

_____
E. R. Fleuriet

<u>DEFENDANT'S FIRST AMENDED COUNTERCLAIM</u> - 3

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument was served upon Max J. Luther, III, attorney for Plaintiffs, at 1350 Frost Bank Plaza, 802 North Carancahua, Corpus Christi, Texas 78470 by certified mail, return receipt requested on this the __15__ day of December, 1999.

E. R. Fleuriet

CAUSE NO. 99-1336-C

| | | |
|---|---|---|
| ARTHUR GOCHMAN & MOLLY GOCHMAN, | § § § | IN THE DISTRICT COURT OF |
| PLAINTIFFS | § § | |
| VS. | § § | NUECES COUNTY, TEXAS |
| STANLEY A. STARRETT, JR., | § § | |
| DEFENDANT | § | 94TH JUDICIAL DISTRICT |

## DEFENDANT STANLEY A. STARRETT, JR.'S
## MOTION IN OPPOSITION TO ALTERNATIVE DISPUTE RESOLUTION

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Stanley A. Starrett, Jr. ("Starrett" herein), Defendant in the above-entitled

and numbered cause and files this his Motion In Opposition to Alternative Dispute Resolution and,

in support thereof, would respectfully show unto the Court the following:

I.

Defendant Stanley A. Starrett, Jr. files this Motion In Opposition to Alternative Dispute

Resolution pursuant to § 154.022, Texas Civil Practice & Remedies Code.

II.

On January 7, 2000, this Court entered a Discovery Control Plan and Scheduling Order. This

Court, on its own motion, has referred this matter to alternative dispute resolution (¶ 5 of Discovery

Control Plan and Scheduling Order). The Court set a deadline of August 17, 2000, which the parties

have to file an objection to Alternative Dispute Resolution.

III.

Defendant Starrett does not believe that this is a case suitable for Alternative Dispute



Resolution, because Defendant Starrett is not willing to offer any money to settle Plaintiffs' claims, which are groundless and without merit. Defendant Starrett further believes that the referral to Alternative Dispute Resolution would not benefit the parties and that the requested referral would only result in unnecessary expenses to the parties and delay getting this case to trial.

WHEREFORE, PREMISES CONSIDERED, Defendant Stanley A. Starrett, Jr. prays that this Court grant Defendant Stanley A. Starrett, Jr.'s Motion In Opposition to Alternative Dispute Resolution and withdraw its Order of this case to Alternative Dispute Resolution; Defendant Stanley A. Starrett, Jr. further prays for such other and further relief, legal or equitable, general or special, to which he may be entitled.

Respectfully submitted,

The Law Offices of Jorge C. Rangel, P.C.
615 Upper N. Broadway
Suite 900 - WF238
P. O. Box 2683
Corpus Christi, Texas  78403-2683
(361) 883-8500
(361) 883-2611 (Facsimile)

By: _____
Jorge C. Rangel
State Bar No. 16543500

Edwin Randolph Fleuriet
State Bar No. 07145500
The Fleuriet Schell Law Firm, LLP
621 E. Tyler
Harlingen, Texas  78550
(956) 428-3030
(956) 421-4339 (Facsimile)

ATTORNEYS FOR DEFENDANT STANLEY A. STARRETT, JR.

2

## CERTIFICATE OF SERVICE

I, Jorge C. Rangel, hereby certify that I have forwarded a true and correct copy of the foregoing instrument to all counsel of record shown below, in accordance with the Texas Rules of Civil Procedure, on this ___6ᵗʰ___ day of March 2000.

       Max J. Luther, III
       Max J. Luther, III, P.C. & Associates
       1350 Frost Bank Plaza
       802 North Carancahua
       Corpus Christi, Texas  78470

       Jorge C. Rangel

3

CAUSE NO. <u>99-181-H</u>

| | | |
|---|---|---|
| **ARTHUR GOCHMAN and<br>MOLLY GOCHMAN** | § | **IN THE DISTRICT COURT** |
| **vs.** | § | <u>347</u> **TH JUDICIAL DISTRICT** |
| **KEN OAKLEY and THE CITY OF<br>PORT ARANSAS, TEXAS** | § | **NUECES COUNTY, TEXAS** |

## PLAINTIFFS' ORIGINAL PETITION<br>FOR INJUNCTION AND MANDAMUS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **ARTHUR GOCHMAN and MOLLY GOCHMAN**, hereinafter called PLAINTIFFS, complaining of **KEN OAKLEY**, hereinafter called DEFENDANT, **and THE CITY OF PORT ARANSAS**, DEFENDANT, and sometimes jointly referred to herein as DEFENDANTS and for cause of action would respectfully show the Court as follows:

I.

The PLAINTIFF, **ARTHUR GOCHMAN**, is a resident of Harris County, Texas.

The PLAINTIFF, **MOLLY GOCHMAN**, is a resident of Nueces County, Texas but presently attends Guilford College, and her resident address is Founder's No. 197 in Guilford College, 58 West Friendly, Greensroad, North Carolina.

The DEFENDANT, **KEN OAKLEY**, is a resident of Port Aransas, Nueces County, Texas, where service of citation may be had upon the DEFENDANT, and may also be served at 7400 West Arrowhead, Club House Drive #3042, Glendale, Arizona 85308.

The DEFENDANT, **THE CITY OF PORT ARANSAS TEXAS,** is an incorporated city within Nueces County in the State of Texas, and service of process may be made upon the City Secretary, City Hall, Port Aransas, Nueces County, Texas.

<u>LEVEL 2 CASE</u>

This is a Level 2 case, subject to the discovery limitations provided by Rule 190.2 of the Texas Rules of Civil Procedure, unless modified by order pursuant to Rule 190.5 of the Texas Rules of Civil Procedure.

II.

The PLAINTIFFS are the owners of certain real property or rights threatened with irreparable injury by the conduct of the DEFENDANT, **KEN OAKLEY**.

In particular, the PLAINTIFFS are the owners of the following described property in Port Aransas, Texas:      Lots 24, 25 and 26, Block 1, Beachwalk Addition 1 to the City of Port Aransas, Nueces County, Texas.

The DEFENDANT **OAKLEY** is the owner of Lot 35, Beachwalk II Addition to the City of Port Aransas, Nueces County, Texas, which  Lot (Lot 35) adjoins the

2

Dune Permit Applications were filed for Beachwalk in Unit II, as a replat of Lots 4 and 5, Mustang Island, Section 3, Port Aransas, Texas which involved two Dune Permits, Permit No. 97-008 for roadways into the said Boardwalk Unit II, and Permit No. 97-010 for a residential lot construction. The Application for a Dune Permit was approved by the City of Port Aransas, Texas; however, the Application stated that the effect of the Sand Dunes on Lots 34 and 35, Beachwalk II would be impacted only by burying the dunes with land fill to raise their elevation.

In February 1999, DEFENDANT, **KEN OAKLEY,** began construction of a residence on Lot 35, Beachwalk II. Prior to construction and the setting of numerous foundation poles, the DEFENDANT **OAKLEY** caused to be removed, and leveled a major portion of the Sand Dune on the said Lot 35, on the landward side of the effected dune contrary to the terms of the Application for a Dune Permit. The Port Aransas Coastal Management Plan requires that the Application for Dune Permit state that the activity will not result in run off, or drainage patterns that aggravate shoreline erosion. PLAINTIFFS believe that such activity by the DEFENDANT and the removal of a good portion of the dune contrary to the Application, will factually effect drainage of Beachwalk I and Beachwalk II, and that the drainage for each of the subdivisions could be severely and seriously changed, and that the removal of a large portion of the Dunes next to and immediately northeast of the PLAINTIFFS, Lot 24, Beachwalk I, will

4

PLAINTIFFS Lot 24, Beachwalk I to the immediate north, and east seaward toward the Gulf of Mexico). The line of vegetation runs generally north and south with the Gulf of Mexico on Mustang Island, and crosses the PLAINTIFFS' Lot 24, Beachwalk I in front of their house and crosses north into the DEFENDANT **OAKLEY'S** Lot 35, Beachwalk. The line of vegetation is further east and seaward on the DEFENDANT **OAKLEY'S** Lot 35 than the vegetation line on the PLAINTIFFS Lot 24. The line of vegetation is a natural line created by the tidal effects of the Gulf of Mexico, and is the line which the law of the State of Texas prohibits building across and seaward of. The line of vegetation is the extreme leeward boundary of natural vegetation which spreads continuously inland. The line of vegetation is typically used to determine the leeward extent of the Public Beach and thus is typically the boundary between private land and the Public Beach.

The PLAINTIFF, **MOLLY GOCHMAN,** has constructed a new and large home on Lot 24, Beachwalk I addition at a cost estimated to be in excess of ONE MILLION THREE HUNDRED THOUSAND DOLLARS ($1,300,000.00). The residence of the PLAINTIFF is built west of and landward of the line of vegetation on the said Lot 24, and such construction has not caused damage to, nor destroyed the sand dunes, or crossed over and seaward east of the vegetation line. Such construction has therefore violated no laws of the State of Texas.

3

seriously effect the drainage and cause damage to the PLAINTIFFS' Lots 24, 25 and 26, Beachwalk I, and especially damage to the residence and structure on the PLAINTIFFS' Lot 24, Beachwalk I.

The actual effect of the removal of a portion of the Sand Dune on Lot 35, Beachwalk II materially effects the PLAINTIFFS on the adjoining Lot 24, Beachwalk I, and endangers the structures on Lot 24 from tidal action from the Gulf of Mexico, and effects the drainage of Beachwalk I and Beachwalk II, to the PLAINTIFFS damage, greatly in excess of the minimum jurisdictional limits of this Court.

### III.

There is incorporated herein by reference The Port Aransas Coastal Management Plan, as though the same were copied herein verbatim.

### IV.

There is incorporated herein by reference in The Dune Protection Act, as though the same were copied herein verbatim.

### V.

It is the obligation of the City of Port Aransas to enforce The Dune Protection Act. This is done in association with, and by and through the Port Aransas Coastal Management Plan. The Dune Protection Permit was approved by the Planning and Zoning Commission of the City of Port Aransas, Texas, and was approved by the

5

Mayor of the City of Port Aransas.  The Dune Permit required that the proposed activity (building on Lot 35, Beachwalk II) would not materially weaken critical dunes or materially damage critical dune vegetation based on the application of technical standards under Subsection VI. E  "Technical Standards for Determination of Material Weakening" of the Port Aransas Coastal Management Plan.  The application must further state that the Applicant's Mitigation Plan will adequately minimize, mitigate and/or compensate for any unavoidable adverse effects, as provided by Subsection VI.G, "Mitigation" of the Port Aransas Coastal Management Plan.

The application must state that the proposed activity is not a prohibited activity as defined in Subsection VI. D, "Prohibited Activities" of The Port Aransas Coastal Management Plan.

The original application, as herein before alleged, provided that the dunes would be impacted only by an acceptable fill and covering of the  dune, thus raising the dune level.  When the DEFENDANT, **KEN OAKLEY,** began construction of his residence on Lot 35, Boardwalk II, he, his agents or contractor leveled, destroyed and removed a substantial portion of the major dune upon the said Lot 35, Boardwalk II, in violation of law, in particular the Dune Protection Act, and The Port Aransas Coastal Management Plan.  Although requested to do so, the City of Port Aransas, through its agents and employees, and especially the City of Port Aransas Building Official, has

6

refused to enforce the Dune Protection Act as it relates to  the said Lot 35, Boardwalk II, and the partial destruction of the dunes thereon, all in violation of activities prohibited by The Port Aransas Coastal Management Plan.

The DEFENDANT, **KEN OAKLEY,** his agents or contractors have by moving sand from the dune to a location landward of the critical dune and the dune protection line is an activity that is likely to result in the temporary or permanent removal of sand, a portion of the Beach dune system located on or adjacent with the construction site and such removal will result in a finding of material weakening or material damage to the dune and the City, by the terms of the Act should not approve application for construction, when the activity will result in the potential for increased flood damage, to the proposed construction site or adjacent property.  The PLAINTIFFS own the adjacent property Lot 24, Boardwalk I, on which they have constructed in the very strict observance of law, every requirement of the Dune Protection Act and The Port Aransas Coastal Management Plan, and the removal of substantial portion of a critical dune in the adjoining property Lot 35, Boardwalk II, should be prohibited, and such action should not have been approved by the City of Port Aransas, Texas in violation of accepted law.

## V.

The action of the DEFENDANT **KEN OAKLEY,** by his actions and the failure

7

of The City of Port Aransas to enforce the Dune Protection Act, and The Port Aransas Coastal Management Plan has threatened irreparable harm to the PLAINTIFFS' real property by removing a substantial part of a critical sand dune next to the PLAINTIFFS' land which materially effects the drainage between the subdivisions, and damage to the PLAINTIFFS' land, and could have disastrous impact under tidal conditions and high tide or a tidal surge in storm or hurricane conditions in the Gulf of Mexico, thereby severely damaging the PLAINTIFFS' real property and buildings on PLAINTIFFS' Lot 24.

VI.

DEFENDANT, **KEN OAKLEY'S**, conduct is completely without right and entitlement in that he is in violation of the Application for a Dune Permit in that he has destroyed in part and damaged a critical dune on his Lot 35, that materially effects the PLAINTIFFS' Lot 24, to their damage.

VII.

The PLAINTIFFS have and will continue to be damaged and injured by the DEFENDANT **OAKLEY'S** conduct in destroying a portion of a critical sand dune adjoining the PLAINTIFFS' real property, and that the PLAINTIFFS could suffer under storm conditions permanent injury by the loss of their newly constructed home in excess of ONE MILLION DOLLARS ($1,000,000.00), and other damages, including

8

damage to their real property.

## VIII.

The PLAINTIFFS have no adequate remedy at law for the injuries described. The injuries and losses are continuing and in the event of storm surge could be disastrous. The real property rights involved are unique and irreplaceable, and it is difficult to accurately measure in monetary terms the damages caused by the DEFENDANT **OAKLEY'S** conduct. It is possible that the loss to the PLAINTIFFS from the DEFENDANT **OAKLEY'S** conduct are likely to exceed the financial worth of the DEFENDANT **OAKLEY**, whereas to prevent any adequate compensation to the PLAINTIFFS even if money damages were a sufficient remedy.

## IX.

For the reasons stated in this pleading, the PLAINTIFFS request that after trial that this Court permanently enjoin the DEFENDANT **OAKLEY** from continuing further destruction the sand dune on Lot 35, Boardwalk II, that the Court permanently enjoin construction of the house of the DEFENDANT **OAKLEY** on the Lot 35, Boardwalk II, because the same is violative of the vegetation line as defined herein, and for such other reasonable orders as the Court may determine to permanently enjoin the DEFENDANT **OAKLEY** from causing further damage to this PLAINTIFF.

9

## X.

It is essential that this Court immediately and temporarily restrain the DEFENDANT, **KEN OAKLEY**, from continuing the conduct described in this petition. It is essential that the Court act immediately, prior to notice on the DEFENDANT **OAKLEY**, and hearing had on the matter because the DEFENDANT **OAKLEY** continues to build on a daily basis, causing injury to the PLAINTIFFS; continues to violate the Dune Protection Act, and the Port Aransas Coastal Management Plan and continues the destruction of the dune on Lot 35 by his very presence upon the dune and the construction activity connected with the building of a residence upon the said Lot 35 seaward of the vegetation line and in violation of law.

## XI.

In order to preserve the status quo and the property rights of the PLAINTIFFS during the pendency of this cause of action, the DEFENDANT **OAKLEY** should be cited to appear and show cause why he should not be temporarily restrained during the pendency of this action from continuing the construction of his residence, in violation of the Dune Protection Act and the Port Aransas Coastal Management Plan and causing further damage to the PLAINTIFFS.

## XII.

The City of Port Aransas, Texas, DEFENDANT herein, should be mandamused

10

by order of this Court to enforce the Dune Protection Act, and The Port Aransas
Coastal Management Plan, and to enforce those laws and to further stop construction
by the DEFENDANT **OAKLEY** on Lot 35, Beachwalk II, in violation of the Port
Aransas Dune Management Plan and the Dune Protection Act, all to the damage of the
PLAINTIFFS', and real property owners nearby.

XIII.

It has been necessary that the PLAINTIFFS in this cause retain the undersigned
law firm to represent them in this proceeding, and they have contracted and agreed to
pay said attorney his reasonable attorney's fees, for which the PLAINTIFFS should
have judgment against the DEFENDANT **OAKLEY** and The City of Port Aransas,
Texas, and each of them, in the amount of their reasonable attorney's fees, as may be
determined by the Court under the evidence in this cause, which the PLAINTIFFS
allege to be a minimum fee of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)
or such other sum as the Court shall determine proper.

PRAYER FOR RELIEF

1.     For these reasons, the PLAINTIFFS request a Temporary Restraining
Order issued without notice to the DEFENDANT **OAKLEY**, restraining the
DEFENDANT, **OAKLEY**, his agents, servants and employees from directly or
indirectly causing further damage to the PLAINTIFFS, by continuing construction of

11

the building on Lot 35, Beachwalk II, and by further damaging the sand dune upon the said Lot 35, and for such other orders as the Court shall deem proper.

2. A Temporary Injunction be issued after notice to this DEFENDANT OAKLEY and hearing, restraining the DEFENDANT, **KEN OAKLEY,** and his agent, servants, employees and contractors, directly or indirectly causing further damage to the PLAINTIFFS, by continuing construction of the building on Lot 35, Beachwalk II, by further damaging the sand dune upon the Lot 35, and for such other orders as the Court shall deem proper.

3. A permanent injunction be issued on the final trial of this cause enjoining the DEFENDANT **OAKLEY,** his servants, agents, employees and contractors, directly or indirectly causing further damage to the PLAINTIFFS, by continuing construction of the building on Lot 35, by further damaging the sand dune upon the Lot 35, and for an order ordering the removal of the building, such other orders as the Court shall deem proper.

4. That the City of Port Aransas through its agents, servants and employees be mandamused by order of this Court to enforce The Port Aransas Coastal Management Plan and the Dune Protection Act, and to stop construction on the house and destruction of the dune on Lot 35, Boardwalk II, by DEFENDANT **OAKLEY.**

5. Cost of suit, including reasonable attorney's fees.

12

6.      Such other and further relief which the PLAINTIFFS may be justly

entitled, including but not limited to damages within the jurisdictional limits of this

Court, together with prejudgment and post judgment interest as allowed by law.

Respectfully submitted,

Max J. Luther, III, P.C. & Associates
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, Texas 78470-0165
Telephone: (361) 888-5544
Telecopier: (361) 887-6835

BY: _____
       MAX J. LUTHER, III
       State Bar No. 12706000
       Attorney for PLAINTIFFS,
       **ARTHUR GOCHMAN**
       and **MOLLY GOCHMAN**

13

## VERIFICATION

STATE OF TEXAS                  §
                                §
COUNTY OF NUECES                §

BEFORE ME, the undersigned Notary Public, on this day personally appeared

ARTHUR GOCHMAN, who being by me duly sworn on his oath, deposed and said that he has

read the above and forgoing PLAINTIFFS' ORIGINAL PETITION and that every statement

and fact contained therein is with his personal knowledge, and is true and correct.


_____
ARTHUR GOCHMAN
PLAINTIFF


SUBSCRIBED AND SWORN TO BEFORE ME on this the 8th day of

_____, 1999.


GEORGIA A. EDGAR
Notary Public, State of Texas
Commission Expires 12-28-2002

_____
Notary Public in and for the
State of Texas

## VERIFICATION

STATE OF TEXAS           §
                         §
COUNTY OF NUECES         §


BEFORE ME, the undersigned Notary Public, on this day personally appeared **MOLLY GOCHMAN**, who being by me duly sworn on her oath, deposed and said that she has read the above and forgoing **PLAINTIFFS' ORIGINAL PETITION** and that every statement and fact contained therein is with her personal knowledge, and is true and correct.


MOLLY GOCHMAN
PLAINTIFF


SUBSCRIBED AND SWORN TO BEFORE ME on this the 8th day of

March , 1999.


GEORGIA A. EDGAR
Notary Public, State of Texas
Commission Expires 12-28-2002

Notary Public in and for the
State of Texas

CAUSE NO. 99-1891-H

| | | |
|---|---|---|
| Arthur Gochman and | $ | IN THE DISTRICT COURT OF |
| Molly Gochman    Plaintiff | | NUECES COUNTY, TEXAS |
| Ken Oakley and The City of | $ | 347th JUDICIAL DISTRICT |
| Port Aransas, Texas  Defendant | | |

COUNTY COURT-AT-LAW ___
OF NUECES COUNTY, TEXAS

## CIVIL CASE INFORMATION SHEET

This form must be completed and filed with every original petition, and a copy attached to every original petition served. The information should be the best available at the time of filing, understanding that such information may change before trial. This form does not constitute a discovery request, response, or supplementation, and is not admissible at trial.

Service must be obtained promptly. Notice is hereby given as per Rule 165a R.C.P. that any case in which no answer has been filed or default judgment signed SIX (6) MONTHS from filing will be eligible for DISMISSAL FOR WANT OF PROSECUTION.

Type of Action: Check all claims pled: []Commercial []Personal Injury   []Death   [X]Other

| | | | |
|---|---|---|---|
| [] Account due | [] Defamation | [] Fraud | [] Product Liability | [] Asbestos |
| [] Admiralty | [] Disbarment | [] Garnishment | [] Post Judgment | [] Assault |
| [] Discrimination | [] Injunction/TRO | [] Railroad | [] Ins. bad faith | [] Dram Shop |
| [] Auto | [] DTPA | [] Malicious prosecutio | [X] Real Estate | [] Bill of Review |
| [] Employment discharge | [] Malpractice/Legal | [] Sequestration | [] Business dissolution | [] Environmental tort |
| [] Malpractice/Medical | [] Silicone implant | [] Conspiracy | [] Expunction | [] Malpractice/other |
| [] Tax | [] Contract | [] False Imprisonment | [] Name Change | [] Deed restriction |
| [] Foreclosure | [] Note | [] Trespass | [] Declaratory judgment | [] Forfeiture |
| [] Premises liability | [] Workers compensation | | [] Other | |

Has this dispute previously been in the Nueces County Courts? [X]NO   [] YES. in the following court: _____

Monetary damages sought:   [] less than $50,000   [X] greater than $50,000

Desired discovery level:   [] Level 1 (TRCP 190.2)   [X] Level 2 (TRCP 190.3)   [] Level 3 (TRCP 190.4)*
*A case will remain in Level 1. If applicable. or else Level 2 unless and until the court enters an order establishing a Level 3 discovery plan.  See TRCP 190.4 & cmt. o. The court may enter a Level 3 plan sua sponte or the parties may request entry of such a plan by separate motion. id.

Estimate time needed for discovery: [] 0-3 months   [] 4-6 months   [X] 7-12 months   [] Other

Estimate time needed for trial:   [] 1-2 days   [X] 3-5 days   [] 6-10 days   [] 7 10 days

Is there a likelihood of experts other than treating physicians or experts on attorney's fees? [X]Yes   [] No

Is immediate ADR requested?   [X] Yes   [] No

Name of party filing this cover sheet:   Plaintiff, Arthur Gochman and Molly Gochman

Signature of attorney or pro se filing cover sheet: _____
Name printed   : MAX J. LUTHER, III
Phone No.:   : (361) 888-5544   Bar No.: 12706000

FOR COURT USE ONLY:
Tract assigned:   [] Track 1   [] Track 2   [] Track 3

Court Coordinator: _____   Date: _____

Citation for Personal Service – RESIDENT

Lit. Seq. # 5.004.0

No. 99-01891-00-0-H

# THE STATE OF TEXAS

NOTICE TO _____ DEFENDANT _____: You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO:
THE CITY OF PORT ARANSAS TEXAS
MAY BE SERVED BY SERVING THE CITY SECRETARY
CITY HALL
PORT ARANSAS, NUECES COUNTY, TEXAS
the _____ DEFENDANT _____, GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION FOR INJUNCTION AND MANDAMUS

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court, 347th Judicial District of Nueces County, Texas at the Courthouse of said County in Corpus Christi, Texas.  Said _____ PETITION _____ was filed on _____ APRIL 07, 1999 _____.  A copy of same accompanies this citation.

The file number of said suit being No. 99-01891-00-0-H.
The style of the case is:

GOCHMAN, ARTHUR, ET AL
VS.
OAKLEY, KEN, ET AL

Said petition was filed in said court by _____ MAX J. LUTHER, III _____
(Attorney for _____ PLAINTIFF _____), whose address is
802 NORTH CARANCAHUA, SUITE 1350, CORPUS CHRISTI TX  78470-0165

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Corpus Christi, Texas, this the _9th_ day of _APRIL_, A.D. 1999.



_____ OSCAR SOLIZ _____, DISTRICT CLERK
Nueces County, Texas
901 Leopard
(P.O. Box 2987)
Corpus Christi, Texas 78403-2987

By: _Gracie Cantu_ , Deputy
GRACIE CANTU

## CAUSE NO. 99-1891-H

| | | |
|---|---|---|
| **ARTHUR GOCHMAN and** | § | **IN THE DISTRICT COURT** |
| **MOLLY GOCHMAN** | § | |
| | § | |
| **VS.** | § | **347TH JUDICIAL DISTRICT** |
| | § | |
| **KEN OAKLEY and THE CITY OF** | § | |
| **PORT ARANSAS, TEXAS** | § | **NUECES COUNTY, TEXAS** |

## DEFENDANT KEN OAKLEY'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **KEN OAKLAY,** Defendant in the above styled and numbered cause, and files his Original Answer, in response to Plaintiffs' Original Petition on file herein and for such answer would respectfully show the Court as follows:

I.

Defendant denies each and every, all and singular, the allegations contained in Plaintiffs' Original Petition and demands strict proof thereof.

WHEREFORE, **KEN OAKLEY,** Defendant herein, prays that Plaintiffs take nothing by their suit and that Defendant **KEN OAKLEY** recover his costs of court expended therein, together with such other and further relief to which the Defendant may show himself justly entitled.

Respectfully submitted,

**LAW OFFICE OF FRED D. DREILING**
**BANK OF AMERICA BUILDING**
**500 NORTH SHORELINE, SUITE 714**
**CORPUS CHRISTI, TEXAS 78471-1007**
**TELEPHONE: [361] 883-0186**
**FACSIMILE: [361] 882-4112**

**FRED D. DREILING**
State Bar No. 06115100
**ATTORNEY FOR DEFENDANT**
**KEN OAKLEY**

*Defendant Ken Oakley's Original Answer – Page 1*

## CERTIFICATE OF SERVICE

I, **FRED D. DREILING**, do hereby certify that a true and correct copy of the above and foregoing Defendant Ken Oakley's Original Answer has been served upon Mr. Max J. Luther III, *MAX J. LUTHER III & ASSOCIATES,* 1350 Frost Bank Plaza, 802 N. Carancahua, Corpus Christi, Texas 78470, and on Mr. Michael Morris, Attorney at Law, 5350 S. Staples, Suite 222, Corpus Christi, Texas 78411, by U. S. Certified Mail, Return Receipt Requested, on this the 9th day of September, 1999.

FRED D. DREILING

## CAUSE NO. 99-1891-H

ARTHUR GOCHMAN       §       **IN THE DISTRICT COURT**
AND MOLLY GOCHMAN     §
      §
vs.       §       **347TH JUDICIAL DISTRICT**
      §
KEN OAKLEY AND THE CITY    §
OF PORT ARANSAS, TEXAS    §      **NUECES COUNTY, TEXAS**

## CAUSE NO. 99-1336-B

ARTHUR GOCHMAN       §       **IN THE DISTRICT COURT**
AND MOLLY GOCHMAN     §
      §
vs.       §       **117TH JUDICIAL DISTRICT**
      §
STANLEY A. STARRETT, JR.    §      **NUECES COUNTY, TEXAS**

## PLAINTIFFS, ARTHUR GOCHMAN AND MOLLY GOCHMAN, MOTION TO CONSOLIDATE

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **ARTHUR GOCHMAN and MOLLY GOCHMAN**, PLAINTIFFS in the

above-entitled and numbered Cause 99-1891-H and files this Motion to Consolidate and in support

thereof would respectfully show the Court the following:

I.

The PLAINTIFF, **ARTHUR GOCHMAN and MOLLY GOCHMAN**, files this Motion

to Consolidate pursuant to Rule 174 of the Texas Rules of Civil Procedure, and pursuant to Rule 3

of the Local Rules of Nueces County, Texas.

II.

On March 9, 1999, the PLAINTIFFS filed Cause No. 99-1336-B; Arthur Gochman and Molly

Gochman vs. Stanley A. Starrett, Jr. in the 117th District Court of Nueces County, Texas.

On May 17, 1999, the PLAINTIFFS filed under Cause No. 99-2725-F; Arthur Gochman and Molly Gochman vs. Stanley A. Starrett, Jr.; In the 214th District Court.

On or about October 12, 1999, the Court granted the <u>Motion to Consolidate</u> in Cause No. 99-1336-B and Cause No. 99-2725-F into Cause No. 99-1336-B, pending in the 117th District Court of Nueces County, Texas.

III.

On or about the 7th day of April, 1999, the PLAINTIFFS filed suit in Cause No. 99-1891-H styled, Arthur Gochman and Molly Gochman vs. Ken Oakley and The City of Port Aransas, Texas; In the 347th District Court of Nueces County, Texas.

Each of these lawsuits involve common questions of fact and law and arise out of the generally same transaction and/or occurrences. The DEFENDANT in the earlier case is **STANLEY A. STARRETT, JR.**, the developer of Boardwalk Subdivision and Boardwalk II Subdivisions to The City of Port Aransas, Texas. The DEFENDANT, **KEN OAKLEY**, purchased property from the DEFENDANT, **STANLEY A. STARRETT, JR.** and built a residence upon information and belief of the PLAINTIFFS, in violation of The Dune Protection Act which the DEFENDANT **THE CITY OF PORT ARANSAS, TEXAS** had the duty to enforce.

The DEFENDANTS in each cause **KEN OAKLEY** and **THE CITY OF PORT ARANSAS,** and **STANLEY A. STARRETT, JR.,** deny all liabilities to the PLAINTIFF.

IV.

Under Rule 174 of the Texas Rules of Civil Procedure and under Rule 3 of the Local Rule of Nueces County, Texas, these cases should be consolidated for all purposes into the first filed case, Cause No. 99-1336-B, styled Arthur Gochman and Molly Gochman vs. Stanley A. Starrett, Jr.

2

pending in the 117th District Court of Nueces County, Texas.

V.

This Motion to Consolidate is not opposed by the DEFENDANT, **KEN OAKLEY and THE CITY OF PORT ARANSAS, TEXAS,** in the said  Cause No. 99-1891-H.

The DEFENDANT in Cause No. 99-1336-B; **STANLEY A. STARRETT, JR.**  opposes the Motion for Consolidation.

Wherefore premises considered, the PLAINTIFFS, **ARTHUR GOCHMAN and MOLLY GOCHMAN** prays that the Court grant the Plaintiffs Motion to Consolidate and that this Court enter its order consolidating for all purposes Cause No. 99-1891-H; Arthur Gochman and Molly Gochman vs. Ken Oakley and The City of Port Aransas, Texas, into Cause No. 99-1336-B; Arthur Gochman and Molly Gochman vs. Stanley A. Starrett, Jr.; In the 117th District Court of Nueces County, Texas.

The PLAINTIFFS further pray for such other and further relief, both in law and in equity to which they may be entitled.

Respectfully submitted,

Max J. Luther, III, P.C. & Associates
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, Texas 78470-0165
Telephone: (361) 888-5544
Telecopier: (361) 887-6835

By: _____
Max J. Luther, III
State Bar No. 12706000

Attorney for the PLAINTIFFS,
**ARTHUR GOCHMAN and
MOLLY GOCHMAN**

3

## CERTIFICATE OF CONFERENCE

I hereby certify that on this the _27TH_ day of _November_ 1999, Max J. Luther, III,

counsel for PLAINTIFFS, **ARTHUR GOCHMAN and MOLLY GOCHMAN** conferred with

Fred Dreiling and Michael Morris, counsel for Ken Oakley and The City of Port Aransas,

respectively, and they stated that they are not opposed to the Motion for Consolidation.  Mr.  E.  R.

Fleuriet, attorney for the Defendant, Stanley A. Starrett, Jr. is opposed to the motion.

Max J. Luther, III

4

# CERTIFICATE OF SERVICE

I Max J. Luther, III, certify that I have forwarded a true and correct copy of the foregoing instrument to all counsel of record shown below in accordance with the Texas Rules of Civil Procedure on this the _____ day of _____, 1999.

Max J. Luther, III

Mr. Fred D. Dreiling                          **VIA CMRRR#Z-470-999-379**
Attorney at Law
Bank of America
500 North Water St., Suite 714
Corpus Christi, Texas 78471

Mr. E. R. Fleuriet                            **VIA CMRRR#Z-470-999-380**
The Fleuriet Schell Law Firm, L.L.P.
621 East Tyler
Harlingen, Texas 78550

Mr. Michael Gene Morris                       **VIA CMRRR#Z-470-999-381**
Attorney at Law
5350 S. Staples, Suite 222
Corpus Christi, Texas 78411

Mr. Jorge C. Rangel                           **VIA CMRRR#Z-470-999-382**
Law Office of Jorge C. Rangel, P.C.
P. O. Box 2683
Corpus Christi, Texas 78403-2683

C:\DATA\GEN\MOTCONS.GOC:NAC

5

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **ARTHUR GOCHMAN AND** | § | |
| **MOLLY GOCHMAN** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. 00-126** |
| | § | **JURY** |
| **KEN OAKLEY, THE** | § | |
| **CITY OF PORT ARANSAS, TEXAS,** | § | |
| **URBAN ENGINEERING, AND** | § | |
| **STANLEY A. STARRETT, JR.** | § | |
| | § | |
| **Defendants** | § | |

## ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE ADDITIONAL STATE COURT PLEADINGS TO NOTICE OF REMOVAL

On this _____ day of _____ , 2000, came on to be heard in the above entitled and numbered cause the Unopposed Motion for Leave to File Additional State Court Pleadings to Notice of Removal filed by Defendants, the City of Port Aransas, Texas, Ken Oakley, and Stanley A. Starrett, Jr..  Having considered the Unopposed Motion for Leave, it appears to this Court that the Defendants' Motion should in all things be GRANTED.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that Defendants' Motion for Leave to File Additional State Court Pleadings to Notice of Removal is GRANTED. Accordingly, it is ORDERED, ADJUDGED, AND DECREED that the additional state court pleadings and Defendants' Amended Notice of State Court Pleadings may be filed to Defendants' Notice of Removal.

SIGNED this _____ day of _____ , 2000.


_____
UNITED STATES DISTRICT JUDGE

2

ChkPDF - www.fastio.com