United States District Court
Southern District of Texas
FILED

JUN 01 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN & MOLLY GOCHMAN | § § § § | CIVIL ACTION NO.-00-126 JURY |
| vs. | § § | |
| STANLEY A. STARRETT, JR., KEN OAKLEY, URBAN ENGINEERING, A PARTNERSHIP, THE PERALLA CORPORATION, URBAN CONSULTING Engineers, INC. AND THE CITY OF PORT ARANSAS, | § § § § § § § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME, ARTHUR GOCHMAN ("Arthur") AND MOLLY GOCHMAN ("Molly"), hereafter, "Plaintiffs", complaining of KEN OAKLEY ("Oakley"), URBAN ENGINEERING ("Urban"), a Texas general partnership, consisting of THE PERALLA CORPORATION, AND URBAN CONSULTING ENGINEERS, INC. (the "PARTNERS"), JAMES URBAN ("James"), THE CITY OF PORT ARANSAS (the "City"), and STANLEY A. STARRETT, JR. ("Starrett"), all such named persons, including the Partners being Defendants herein, and for cause of action would respectfully show the Court the following:

I

All parties to this cause named above have appeared and are before the Court, by pleading and represented by Counsel, except for Urban Consulting Engineers, Inc. Counsel for Urban Consulting Engineers, Inc. has advised that such defendant will make an appearance

promptly upon filing of this amended complaint joining it as defendant, and service of a copy thereof upon counsel by first class mail.

Plaintiff's will move the Court that Defendants, Victoria Engineering, Inc., Dan Urban, Eugene Urban, and Larry J. Urban be dismissed without prejudice from this suit, and Plaintiff's will no longer seek relief against such parties in their individual capacities, based on representations of Counsel for such parties, that none of them participated in the transactions and events described herein, except vicariously through the actions of others acting as agents or corporate officers or employees.

II.

## PLAINTIFFS' PURCHASE

On or about the 15th day of May, 1997, Arthur, entered into a written agreement (the "Contract") to purchase from Starrett certain property (the "Home Lots").

> Lots 24, 25 & 26, Block 1, Beachwalk I Addition to the City of Port Aransas, Nueces County, Texas

The Contract was subsequently closed and the purchase price of the Home Lots paid to Starrett by Plaintiffs. Before closing Molly became a party, as Purchaser, to the extent of Lot 24, which was conveyed to Molly at closing, and Molly paid her share of the purchase price.

III.

## THE DUNE PROTECTION ACT

The Commissioner's Court of Nueces County, Texas, issued an Order, dated October 23, 1973, pursuant to Section 63.011 of the Texas Natural Resources Code, establishing a dune

Page 2

protection line ("Dune Line") on Mustang Island, where the Home Lots and the Lot 35, Beachwalk II Addition to the City of Port Aransas ("Oakley Lots") are located. The Dune Protection Act, Sections 63.011 through 63.152 of the Texas Natural Resources Code ("The Act") was passed to protect the property on the Coastal Shoreline of Texas from the effects of high wind and water. The Act provides:

> Section 63.091, Conduct Prohibited.
>
> Unless a permit is properly issued authorizing the conduct, no person may damage, destroy, or remove a sand dune or portion of a sand dune seaward of a dune protection line or within a critical dune area or kill, destroy, or remove in any manner any vegetation growing on a sand dune seaward of a dune protection line or within critical dune area

## IV.

## PLAINTIFFS DID NOT SEEK PERMISSION FOR PROHIBITED CONDUCT

Following their purchase from Starrett, Plaintiffs built a home (the "Home") on Lot 24 of the Home Lots  Construction of the Home was in accordance with the Act, with <u>no permit</u> ("Dune Permit") sought by Plaintiffs for "Prohibited Conduct." Arthur became owner of a leasehold interest of the Home, which is owned by Molly.

## V.

## <u>THE DUNE PROTECTION PERMITS</u>

The Coastal Management Plan (the "Plan") adopted by the City of Port Aransas ("City"), prepared by Urban, its City Engineer, pursuant to statute, deals with the requirements imposed by the City for a Dune Permit. The Act contains other requirements.

Page 3

Following Plaintiffs' purchase of the Home Lots, two (2) applications for Dune Permit were filed by Starrett, Exhibits 4 and 5. These were for Beachwalk Unit No. II, Permit No. 97-0008 for roadways and utilities (the "Road Permit"), and No. 97-0010 for "Residential." The Application for the Road Permit represented:

> To avoid impact to the critical dunes, the limit of construction for the proposed subdivision <u>will not extend any further seaward than it was for the first unit of Beachwalk directly to the south</u>. This philosophy keeps all construction - <u>even the development of the residential lots to be applied for in a future permit</u> - landward of the critical dune's bridge structures and out of the erosion zone defined in the Port Aransas Plan ('Plan'). The proposed layout attempts to maximize the use of areas without critical dunes and to avoid the use of areas with critical dunes where possible. (Our Emphasis)

This representation was false.

The Residential Permit sought approval for Protected Activities on Lots 1 through 74 of Beachwalk II, as follows:

> Finally, lot areas 34 and 35 will impact the landward edges of a critical dune complex as shown on Attachment #2. Most of the impacts to these dunes will be the result of burying the dune with fill brought in to raise the existing ground elevations to the final elevations shown and provide drainage of the lot area to the street. These areas are landward of the ridge dunes and are out of the erosion zone, so construction should not affect the natural flood or storm surge protection of the property. <u>This construction will impact 348 cubic yards of critical dune volume and vegetation which will be mitigated for in Mitigation Site #3.</u> (Our Emphasis)

Both of these dune permits (the "Permits") were illegally and improperly issued by the City without notice to Plaintiffs, as littoral owners, and without public hearing, as required by the Act, and the impact on the Critical Dune as set out above and, as acted upon by Oakley, ultimately violated the Act by destroying the Critical Dune. This was contrary to the purposes and

Page 4

requirements of the Act. Plaintiffs' rights, under the Act and under the 14th Amendment to the Constitution of the United States to due process and equal protection, were violated, as well as similar rights under the Texas Constitution violated also.

VI.

### THE BIAS AND CONFLICTS OF THE CITY ENGINEER

Moreover, the applications for the Permits were prepared by URBAN, acting by and through JAMES, an employee (and principal of) of Urban Engineering and officer of Urban Consulting Engineers Inc. Urban prepared the Plan for the City, then prepared the applications for the Permits for Starrett, and was consulted by the City as its City Engineer, in the determination of whether the Permits should be granted. Urban recommended the Permits be granted, and the City followed Urban's recommendation. This deprived Plaintiffs of their right to an impartial tribunal to determine Plaintiffs' rights, a fundamental civil right of Plaintiffs. Starrett, James, the City, and Urban acting under color of law, thereby conspired to deny and the City did deny Plaintiffs their statutory and constitutional rights, both State and Federal, and in violation of 42 U.S.C.A. 1983.

In February, 1999, Oakley proceeding ostensibly pursuant to the Permits, began construction of a house ("Oakley House") on the Oakley Lot, first destroying a major portion of a Critical Dune, in preparation of his homesite. Such destruction is contrary to the Act and contrary to the representations in the applications of Starrett for the Dune Permits. Moreover, the Residential Permit was not properly issued, since it was purportedly for a multiplicity of lots, and

Page 5

only one lot may be the subject of a Dune Permit. Transfer of the Dune Permit from Starrett to Oakley was not authorized by the Act, also making it improper for Oakley to use the Dune Permits as assignee.

VII.

<u>STATUTORY AND CONSTITUTIONAL VIOLATIONS</u>

Plaintiffs' property rights and statutory rights were, therefore, taken without due process of law in violation of statutes of the State of Texas and of the United States, of lawful regulations of the State of Texas and of the Constitution of the State of Texas and the United States. Plaintiffs, as littoral owners, have statutory rights of appeal to the state district courts from the City's ruling on the Permits, under the Act, rights which they were unable to exercise since they received no notice of the applications  The public hearings, called for by the Act, were never held, for either of the Permits  Plaintiffs were entitled as littoral owners, under due process and equal protection, to an impartial tribunal determining grounds for granting the Permits.  Instead, Urban appeared on "both sides of the table," first preparing the Plan for the City, then preparing the Applications for Starrett, and then, as City Engineer, advising the City as to the merits of Starrett's Applications, to the advantage of Starrett and disadvantage of Plaintiffs and other littoral owners.  The approval of the Permits by the City is a nullity, as to both. The erection of the Oakley Home was a violation of the Act.  Plaintiffs sue under the Act and under Article 1983, of 42 U.S.C.A. (the "Civil Rights Act"), for damages from Starrett, Urban, Urban's Partners, the City, James and Oakley, and for injunction voiding the Permits, *ab initio*, and mandating relocation of

the house on the Oakley Lot and restoration of the invaded dune, and mandamus to the City to enforce the Dune Protection Act

## VIII.

## MISREPRESENTATIONS

Starrett made misrepresentations to Arthur prior to Plaintiffs' purchase of the Home Lots, stating unequivocally no adjacent lot owner could ever build closer to the beach than Plaintiffs' building area, because the Line of Critical Dunes (the "Critical Dune Line") between the Home Lots and the water was the furthest seaward allowed for building of homes, a line extending through the Oakley Lot property. No house to the North of the Home lots, therefore, according to Starrett, could be built further seaward than the area qualified for building on Lot 24 of the Home Lots which, otherwise, would obstruct Plaintiffs' view from Lot 24 of the Gulf of Mexico and the Gulf Beach from the Home Lots. This is because the regulations governing building on that part of the beach Starrett represented would preserve the seaward view from the Home Lots. Moreover, they would enjoy the protection of the Critical Dune Line from storm damage and erosion to the beach, including that in front of the Home Lots.

Starrett also represented that if he bought property to the north and developed it that any such development project would have no relation to Beachwalk I either in location or development.

Page 7

X.

PLAINTIFFS PURCHASED FROM STARRETT

In reliance on the representations made by Starrett, Plaintiffs purchased the Home Lots for Three Hundred Thousand Dollars ($300,000.00). Lot 24, where the Home was built, was conveyed to Molly by Starrett, as designee of Arthur, acting on behalf of both, on or about May 30, 1997; and Arthur then received, as intended, a leasehold interest of twenty (20) years on Lot 24 of the Home Lots, along with an outright conveyance of the remaining two Home Lots. Plaintiffs sue herein , therefore, as purchasers of the legal fee and possessory interest in and to all of the Home Lots.

XI.

STARRETT KNOWINGLY MISREPRESENTED FACTS, RELIED UPON BY PLAINTIFFS

When Starrett made the misrepresentations, Starrett knew the true facts, was aware of the true facts, and made false and fraudulent statements to Arthur with the intention that the Plaintiffs rely on it and purchase the Home Lots. Plaintiffs relied thereon, purchased the Home Lots and erected the Home

Page 8

## XII.

## PLAINTIFFS HAVE INCURRED DAMAGES

As a proximate result of Starrett's fraud, Plaintiffs have incurred the following costs and expenses: (1) purchase price of the Home Lots, Three Hundred Thousand Dollars ($300,000.00); (2) building costs of the residence upon the Home Lots, One Million Three Hundred Thousand Dollars ($1,300,000.00), total $1,600,000, the fair market value of the Home Lots, as of the end of Plaintiffs' construction of the Home. As a result of the misrepresentations and actions of Starrett and the construction of the Oakley House, the Home Lots have, instead, a value of $650,000 less than as represented, with such improvements included, to Plaintiffs' damage in such amount.

## XIII.

## STARRETT'S MISREPRESENTATIONS VIOLATED THE TEXAS FRAUD ACT

Starrett was also fraudulent and malicious in such misrepresentations. As provided in Article 27 01 of the Texas Commerce and Business Code (the "Fraud Act"), Plaintiffs are, therefore, entitled to recover exemplary damages. Plaintiffs have also incurred expenses, including attorney's fees and other legal expenses incurred in the investigation and prosecution of this action, all of which Plaintiffs are entitled to recover from Starrett, pursuant to the Fraud Act, and the Civil Rights Act.

Page 9

## XIV.

## PLAINTIFFS WERE CONSUMERS UNDER THE DTPA

At all times relevant to this suit, the Plaintiffs were acting as consumers as defined in Section 17.45, et seq, of the Texas Business and Commerce Code ("the DTPA") and Defendant was engaged in "Trade and Commerce" as defined by the DTPA, in Nueces County, Texas.

## XV.

## PLAINTIFFS SUE UNDER THE DTPA

This suit is filed pursuant to the DTPA on the grounds that the acts and conduct of Starrett described in this Petition are prohibited by the DTPA, and Plaintiffs may recover under the provisions of the DTPA for such violations. Starrett made the misrepresentations referred to in the paragraphs above with the intent to induce the Plaintiffs to purchase a consumer item, namely the Home Lots and with the knowledge that Plaintiff would rely on the statements of Starrett. Plaintiffs relied on the truth and/or accuracy of Starrett's statements and representations and, as a result of that reliance, Plaintiffs purchased the Home Lots. Plaintiffs would not have entered into the transaction but for Starrett's statements and misrepresentations regarding the same.

As a direct and proximate result of the misrepresentations made, Plaintiffs have suffered extensive, direct, and consequential damages in the amount stated above, and incurred reasonable attorneys fees and legal expenses incurred in the prosecution of this action, for which Plaintiffs pray recovery.

## XVI.

## PLAINTIFF ARE ENTITLED TO ADDITIONAL DAMAGES UNDER THE DTPA

As a result of Starrett's violation of the DTPA described above, and as a result of Starrett's willful and knowing false misrepresentations referred to above, Starrett is liable to the Plaintiffs for additional and exemplary damages of two times of the amount of the actual damages under One Thousand Dollars ($1,000.00) and three times the amount of the Plaintiffs' actual damages over One Thousand Dollars ($1,000.00) under Section 17.50 of the Texas Deceptive Trade Practice Act, and two times the amount of the actual damages which Plaintiffs have sustained pursuant to Section 27.091© of the Texas Business and Commerce Code.

## XVII.

## PLAINTIFFS ARE ENTITLED TO RECOVER ATTORNEYS FEES

Plaintiffs have made demand on Starrett for payment of these amounts for more than sixty (60) days prior to filing of this Petition, and Plaintiffs will show the Court that recovery of reasonable attorney's fees is authorized by the provisions of the Fraud Act, the Texas Deceptive Trade Practice Act and by Section 38.001 et seq., of the Texas Civil Practice and Remedies Code.

## XVIII.

Respecting the injury to the dune attacked by Oakley, the Plaintiffs have irreparable injury with no adequate remedy at law for the injuries described. The injuries and losses are continuing and in the event of storm surge could be disastrous. The real property

rights involved are unique and irreplaceable, and it is difficult to accurately measure in monetary terms the damages caused by Oakley's conduct. It is possible that the losses to Plaintiffs from Oakley's conduct are likely to exceed the financial worth of Oakley, money damages being, therefore, unable to provide adequate compensation to the Plaintiffs even if money damages were a sufficient remedy.

### XIX.

Oakley should be prevented from continuing further destruction of the Critical Dune on the Oakley Lot, and from maintenance of the Oakley House on the Oakley Lot, violative of the Critical Dune protected by the Act, weakening the Critical Dune Line as a defense against erosion and storm damage, and erected in violation of the Act, and pursuant to unconstitutional and invalid acts of the City, all as alleged above, mandating removal and relocation of the Oakley House, which is a relocatable structure.

### XX.

The City of Port Aransas, Texas, Defendant herein, should be mandamused by order of this Court to enforce the Dune Protection Act, and The Port Aransas Coastal Management Plan, and to further require removal of the Oakley House by the Oakley Lot, erected in violation of the Port Aransas Dune Management Plan and the Dune Protection Act, all to the irreparable injury to the Plaintiffs.

## XXI.

All conditions precedent to the recovery of the Plaintiffs of the relief prayed for herein have been performed or have occurred, including actual damages, prejudgment interest, reasonable attorneys' fees, and exemplary damages, and the other damages alleged above.

## PRAYER FOR RELIEF

Plaintiffs pray that on final trial hereof this court order judgment for Plaintiffs as follows:

1. That Oakley, his servants, agents, employees and contractors be permanently enjoined from, directly or indirectly causing further damage to the dune upon the Oakley Lot, and for an order ordering Oakley to remove and relocate the Oakley Home, and restore the Critical Dune to its condition prior to the construction of the Oakley Home, and for such other orders as the Court shall deem proper.

2. That the City of Port Aransas through its agents, servants and employees be enjoined and mandamused by order of this Court to enforce The Port Aransas Coastal Management Plan and the Dune Protection Act with respect to the Oakley Lot, and that the Permits issued by the City to Starrett allowing Prohibited Activities as defined in the Act be voided and cancelled, *ab initio*.

3. Plaintiffs recover against Starrett, Oakley, Urban, James Urban, The Peralla Corporation, Urban Consulting Engineers, Inc. and the City of Port Aransas an award of economic damages in an amount within the jurisdictional limits of the Court;

4. Plaintiffs recover, resulting from Starrett's knowing and intentional conduct, additional damages as allowed by the DTPA, and exemplary damages under the Fraud Act;

5. Plaintiffs recover Prejudgment interest from all defendants as provided by law;

6. Plaintiffs recover Attorney's fees and other legal expenses herein from all defendants as provided by law;

7. Plaintiffs recover Post judgment interest from all defendants as provided by law;

8. Plaintiffs recover Costs of suit from all defendants; and

9. Plaintiffs recover such other and further relief from all defendants to which Plaintiffs may be justly entitled.

Respectfully submitted,

MAX J. LUTHER, III, P.C. & Associates
1350 Frost Bank Plaza
802 North Carancahua
Corpus Christi, Texas 78470
State Bar No. 12706000
Federal I.D. No. 298
Telephone: (512) 888-5544
Facsimile: (512) 887-6835

By _____
MAX LUTHER, III
ATTORNEY FOR THE PLAINTIFFS

and

**EDMUND L. COGBURN**
DOW, COGBURN, & FRIEDMAN, P.C.
9 Greenway Plaza
Houston, Texas 77046
Telephone: (713)940-6000
Telecopier: (713)940-6099
Federal I.D. No.: 2105
State Bar No. 04501000
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of June, 2000, Max Luther, counsel for Plaintiffs in the above cause, forwarded a true and correct copy of the foregoing pleading to list therein via certified mail, return receipt requested.

MAX J. LUTHER, III

EDMUND L. COGBURN
Dow, Cogburn & Friedman, P.C.
9 Greenway Plaza
Houston, Texas 77046
**VIA CMRRR# 7099 3220 0001 4298 4189**

FRED D DREILING
Attorney at Law
Bank of America
500 North Water St., Suite 714
Corpus Christi, Texas 78471
**VIA CMRRR# 7099 3220 0001 4298 4196**

JAMES F. MCKIBBEN, JR.
Barger, Hermansen, McKibben
   & Villarreal, L.L.P.
800 N. Shoreline Blvd., Ste. 2000 N. Tower
Corpus Christi, Texas 78401
**VIA CMRRR# 7099 3220 0001 4298 4202**

MICHAEL GENE MORRIS
Attorney at Law
5350 S Staples, Suite 222
Corpus Christi, Texas 78411
**VIA CMRRR# 7099 3220 0001 4298 4219**

MATTHEW J. SULLIVAN
Haynes and Boone, L.L.P.
1600 One American Center
600 Congress Avenue
Austin, Texas 78701
**VIA CMRRR# 7099 3220 0001 4298 4226**

E. R. FLEURIET
The Fleuriet Schell Law Firm, L.L.P.
621 E. Tyler
Harlingen, Texas  78550
**VIA CMRRR# 7099 3220 0001 4298 4233**

JORGE C. RANGEL
The Law Offices of Jorge C. Rangel, P.C.
P. O. Box 2683
Corpus Christi, Texas  78403-2683
**VIA CMRRR# 7099 3220 0001 4298 4240**

c \data\rel\2compl goc kc