IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

JUL 17 2000

Michael N. Milby, Clerk

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND | § | |
| MOLLY GOCHMAN | § | |
| | § | |
| VS. | § | C.A. NO. C-00-126 |
| | § | JURY |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| ET. AL. | § | |

## DEFENDANT AND COUNTER-PLAINTIFFS,
## KEN AND ANDREA OAKLEY'S,
## MOTION FOR SUMMARY JUDGMENT

Now comes Ken Oakley, a Defendant, and joined herein by his wife Andrea

Oakley, in their capacity as Counter-Plaintiffs, and move for summary judgment pursuant

to Rule 56, Federal Rules of Civil Procedure, and in support of this motion respectfully

show the Court as follows:

### I - FACTUAL BACKGROUND

### PLATS - BEACHWALK AND BEACHWALK UNIT TWO

Beachwalk and Beachwalk Unit Two are residential real estate subdivisions

located in Port Aransas, Nueces County, Texas, that have been developed by Defendant

Stan Starrett (hereinafter called Starrett). Copies of the plats for the Beachwalk

subdivision (which will be referred to as BW I), and the Beachwalk Unit Two subdivision

(which will be referred to as BW II) are attached to this motion respectively as Exhibits

"1" and "2".

The plat for BW I was filed of record with the Nueces County Clerk on March 7,

1997, and the BW II plat was filed on June 3, 1998. The Planning and Zoning

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 1*

Commission of the City of Port Aransas (hereinafter referred to as "Port A") recommended both plats for approval by the Port A City Council, and the City Council subsequently approved each plat for filing.

## STARRETT'S WARRANTY DEEDS TO PORT A

### LOT SIXTY-SEVEN (67) IN BW I

On May 20, 1997, Starrett executed and delivered a "Correction Warranty Deed", and conveyed all of lot sixty-seven (67) in BW I to Port A. Starrett reserved a fifty foot wide beach access easement in order to build a structure for pedestrian traffic across the lot. A copy of Starrett's May 20, 1997, deed to Port A is attached as Exhibit "3".

### LOT SEVENTY-SIX (76) IN BW II

On April 9, 1999, Starrett executed and delivered another warranty deed, and conveyed all of lot seventy-six (76) in BW II to Port A. As in the May 20, 1997, deed Starrett reserved a fifty foot wide beach access easement across the lot. A copy of Starrett's April 9, 1999, deed to Port A is attached as Exhibit "4".

### STARRETT'S WARRANTY DEEDS TO THE GOCHMANS

On May 30, 1997, Starrett executed and delivered a warranty deed, and conveyed lot twenty-four (24) in BW I to Plaintiff Molly Gochman. A true and correct copy of Starrett's May 30, 1997 deed to Ms. Gochman is attached as Exhibit "5". On May 30, 1997, Starrett executed and delivered a warranty deed, and conveyed lots twenty-five (25) and twenty-six (26) in BW I to Plaintiff Arthur Gochman, Molly Gochman's father. A true and correct copy of Starrett's May 30, 1997 deed to Arthur Gochman is attached as Exhibit "6".

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 2*

## STARRETT'S WARRANTY DEED TO OAKLEY

On July 10, 1998, Starrett executed and delivered a warranty deed, and conveyed lot thirty-five (35) in BW II to Defendant Ken Oakley. A true and correct copy of Starrett's July 10, 1998, deed to Mr. Oakley is attached as Exhibit "7".

## CONSTRUCTION OF THE HOMES

After buying their lots from Mr. Starrett, Molly Gochman constructed a "beach house" on lot twenty-four (24) in BW I. The Gochmans have not constructed any improvements to lots twenty-five (25) or twenty-six (26). The Oakleys built their home on lot thirty-five (35). Two photographs depicting the homes are attached as Exhibit "8". Molly Gochman's house is the big one, and the Oakley home is the smaller blue one depicted to the left of the Gochman house. As can be seen in the photographs the Oakleys and Molly Gochman are neighbors.

## II - THE OAKLEYS' MOTION FOR SUMMARY JUDGMENT AS TO THE GOCHMANS' LAWSUIT

### A -THE GOCHMANS HAVE NO RIGHT TO MAINTAIN A PRIVATE ACTION FOR ALLEGED DUNE PROTECTION ACT VIOLATIONS

The applicable version of the Texas Dune Protection Act (hereinafter DPA) is codified at Tex. Nat. Res. Code Ann., section 63.001, et. seq., and the rules and regulations implementing the DPA are at 31 Tex. Admin. Code, section 15.1, et. seq. It is important to note that Port A submitted its dune protection and beach access plan to the Texas General Land Office (hereinafter GLO) over five years ago. <u>The Port A plan has been certified by the GLO as being consistent with state law since February 15, 1995.</u> (emphasis added). 31 Tex. Admin. Code, section 15.11 (a) (3).

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 3*

The basis of the Gochmans' complaints as to the Oakleys is that the Oakleys allegedly destroyed a major portion of a critical sand dune in connection with the construction of their home. The Gochmans contend this alleged sand dune destruction violated the DPA, or the dune permit issued Starrett by Port A in connection with the development of BW II. The Gochmans seek money damages against all Defendants, including Oakley. The Gochmans also seek an injunction mandating the relocation of the Oakley home. In their current pleading the Gochmans request a judgment which would: prevent the Oakleys from further destroying the critical dune on their lot (assuming any such thing was illegally done in the first place); prohibit the Oakleys from maintaining their home on their lot; and require the Oakleys to move their home. A review of their current petition shows that the gravamen of the Gochmans' complaints, as to the Oakleys, is that the Oakleys supposedly violated the DPA or the dune permit when they built their home.

The Gochmans' dilemma is that they do not have the right to prosecute a private cause of action for the Oakley's alleged DPA or permit violations. The right to bring suit for violations of the DPA rests with and is granted to specified governmental state entities. Tex. Nat. Res. Code Ann., section 63.181 provides, " The attorney general, individually or at the request of the commissioner, or any county attorney, district attorney, or criminal district attorney shall file in a district court of Travis County or in the county where the violation occurred a suit to obtain either a temporary or permanent court order or injunction to prohibit and remedy any violation of this chapter or any rule, permit or order under this chapter and to collect damages to natural resources injured by the violation and to recover civil penalties." The Gochmans do not fall within this

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 4*

CutePDF - www.fevia.com

statutory classification of individuals or entities that have been authorized or given the right to bring suit for violations of the DPA. Additionally, a review of the applicable regulations, as promulgated by the GLO, reveals there is no rule conferring a right to maintain or prosecute a private right of action for alleged DPA violations to anyone, including the Gochmans.

The only basis the Gochmans arguably have for contending that they have the right to maintain this "private" lawsuit is that they are "littoral" owners. The relevant statute provides that an aggrieved littoral owner has the right to appeal a commissioners court or a municipal decision under the DPA. Tex. Nat. Res. Code Ann., section 63.151. However, and contrary to their assertions, the Gochmans are not now, and have never been, littoral owners. A littoral owner is "... the owner of land adjacent to the shore and includes a lessee, licensee or anyone acting under the littoral owner's authority." Tex. Nat. Res. Code Ann., section 61.001 (6). (emphasis added). The "shore" refers to that strip of land between mean low-tide and mean high-tide, which is ascertained at any place from the average height of the water at that place over a considerable period of time. *Humble Oil and Refining Co. vs. Sun Oil Co.,* 190 F2d 191, 194 (5th Cir. 1951). Moreover, under the civil law the "shore line" boundary of lands adjoining navigable waters is the line marked by the highest tide. Blacks, 5th Ed., 1979.

A review of the plats for BW I and BW II, and Starrett's May 20, 1997 and April 9, 1999, deeds conveying lots sixty-seven (67) and seventy-six (76) to Port A clearly shows that Port A is the littoral owner. At all times material hereto Port A has owned the land that is located between the Gochman and Oakley lots and the Gulf of Mexico. At all times material to this lawsuit Port A has been the owner of the land adjacent to the shore,

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 5*

not the Gochmans or anyone else, except for Starrett. In their current petition the Gochmans allege that they have rights as littoral owners which all or some of the Defendants have violated, or have conspired to violate. Clearly, the Gochmans' contentions regarding their littoral ownership rights lack any merit whatsoever, and were without any factual or legal foundation when this lawsuit was brought. Any reasonable inquiry into the applicable law and the relevant facts would have revealed that the Gochmans are not, and have never been, littoral owners.

## B - THERE IS NO EVIDENCE THE
## OAKLEYS VIOLATED THE DPA
## OR MR. STARRETT'S DUNE PERMIT

After construction of the Oakley home began one of Mr. Gochman's attorneys complained to Port A that the Oakley construction violated either the DPA or the Starrett dune permit. In response, Port A's building inspector, Mr. Steve Thompson, investigated the complaint and found that it lacked any merit. Instead, Mr. Thompson's investigation concluded that the Oakley construction did not constitute a violation. Mr. Thompson sent his finding to the GLO, and the GLO arrived at the same conclusion. A copy of Mr. Thompson's December 3, 1999, deposition is attached in its entirety as Exhibit "9", and the Court is referred to pages 27 through 28; 30 through 39; 42 through 43; and 68 through 69 of Mr. Thompson's deposition. Additionally, attached as Exhibit "10" is a copy of a February 19, 1999, letter sent by Mr. Tommy M. Brooks, Port A's City Manager, to Mr. Gochman's attorney advising that Port A had determined there was no violation with respect to the Oakley construction.

In connection with the development of BW I and BW II, Starrett retained the services of Urban Consulting Engineers, Inc. (hereinafter referred to as Urban). Urban

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 6*

assisted Starrett by preparing dune permit applications, and attending meetings with the Port A Planning and Zoning Commission and City Council in connection with the permits. Urban prepared the necessary applications for Dune Permits and Beachfront Construction Certificates for both BW I and BW II. The Port A Planning and Zoning Commission considered and recommended that the City Council approve all of these permits. The permits were then reviewed and accepted by the GLO and the Texas Attorney General. After receipt of the GLO and AG approvals the Port A City Council considered and approved the permits. In the opinion of Urban Engineering the permits were valid, and did not result in activity that violated the DPA. A true, genuine and correct copy of a July 12, 2000, report from Mr. James L. Urban, P.E. (exclusive of exhibits), and Mr. Urban's CV are attached collectively as Exhibit "11". The Urban report and CV have been provided to all parties in discovery.

### C – THERE IS NO EVIDENCE THAT THE OAKLEYS' ALLEGED VIOLATIONS OF THE DPA OR DUNE PERMIT HAVE CREATED ANY UNDUE RISK IN THE EVENT OF A STORM SURGE

With respect to the alleged destruction of the sand dune, the Gochmans contend they have suffered an irreparable injury, have no adequate remedy at law, that their injuries and losses are continuing and in the event of a storm surge could be disastrous. (See generally Paragraphs XVIII and XIX of the Plaintiffs' First Amended Complaint). Based on this the Gochmans are asking the Court to issue an injunction mandating the removal of the Oakley's home – a home that cost the Oakleys more than $200,000.00 to build, not including the $125,000.00 the Oakleys paid to buy their lot. True and correct copies of the September 29, 1997, Oakley and Starrett earnest money contract, which evidences the cost of the lot, and the December 16, 1998, construction contract

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 7*

specifications entered into between Oakley and Keystone Company, the Oakley's general contractor, which evidences the cost to construct the Oakley home, are attached respectively as Exhibits "12" and "13". In short, the Gochmans are asking the Court, in the exercise of its equitable discretion, to deprive the Oakleys of a $330,000.00 investment in their homestead, all on the basis of some speculative and vague and ambiguous allegation that a "storm surge could be disastrous." The truth is that the Oakley's general contractor, in accordance with and as allowed by the terms of the dune permit issued by Port A to Starrett, removed some sand from a dune on Oakley's property in order to place the pilings supporting the home. Subsequently, all of the sand was replaced onto the dune, and the dune was vegetated. The Court is again referred to the deposition of Mr. Steve Thompson attached hereto as Exhibit "9", at pages 35 through 39. Additionally, the Court is referred to pages 70 through 74 of the December 14, 1999, deposition of Mr. Stan Starrett which is attached hereto in its entirety as Exhibit "14". Further, the Court is again referred to the July 12, 2000, report of Jim Urban, P.E. attached hereto as Exhibit "11". There is no evidence to support the Gochmans allegations that they have sustained an irreparable injury with no adequate remedy at law, and that their injuries and losses are continuing and in the event of a storm surge could be disastrous.

## D - ARTHUR GOCHMAN DID NOT PURCHASE LOT TWENTY-FOUR (24) IN BW I

Although Arthur Gochman signed an earnest money contract for the purchase of three lots in BW I - lots twenty-four (24), twenty-five (25) and twenty-six (26), it is undisputed that he did not buy lot twenty-four (24) when the contract closed. Instead,

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 8*

Molly Gochman, Arthur Gochman's daughter, purchased and took title to lot twenty-four (24), as shown by Exhibit "5" which is attached hereto.

As a matter of law Arthur Gochman cannot claim damages with respect to lot twenty-four (24) since he has never been the owner of this property. Additionally, Arthur Gochman cannot demonstrate that he paid any money for the purchase of lot twenty-four (24), or that he paid for the construction of the beach house on the lot. Accordingly, and to the extent Arthur Gochman is seeking damages from them, the Oakleys are entitled to summary judgment that Arthur Gochman recover nothing with respect to lot twenty-four (24).

## E - ARTHUR GOCHMAN HAS SUSTAINED NO DAMAGES AS TO LOTS TWENTY-FIVE (25) AND TWENTY-SIX (26) IN BW I

The affidavits of Terrence Wood, a real estate appraisal expert, which are attached to Starrett's motion for summary judgment as Exhibits "D" and "E" are adopted by the Oakleys and incorporated herein to the extent allowed by summary judgment procedure, establish that lots twenty-five (25) and twenty-six (26) have a current value far in excess of the $100,000.00 that Arthur Gochman paid for each lot. Accordingly, and with respect to these two lots, Arthur Gochman has not been damaged. Alternatively, there is no evidence that Arthur Gochman has sustained any monetary loss or damage as a result of any alleged wrongful act of the Oakleys, or of anyone else for that matter.

## F- PLAINTIFFS CANNOT ESTABLISH STATE ACTION BY OAKLEY NECESSARY TO MAINTAIN SUIT UNDER 42 U.S.C. SECTION 1983

Although it is difficult to tell from their pleadings, it appears the Plaintiffs may have asserted a claim against Oakley under 42 U.S.C. Section 1983. To the extent Plaintiffs have made this claim Oakley moves for summary judgment. Section 1983 does

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 9*

not create substantive rights, but rather provides a remedy for deprivations of federal constitutional or statutory rights by state officials or those acting under color of state law. *See San Jacinto Sav. & Loan v. Kacal,* 928 F.2d 697, 700 (5th Cir. 1991). Thus, a claim under Section 1983 requires proof of <u>state action</u> connected with the deprivation of a constitutional right. Oakley is entitled to summary judgment on Plaintiffs' Section 1983 claims because Plaintiffs have failed to raise a genuine issue of material fact as to whether Oakley acted under color of state law.

To maintain an action under Section 1983, a Plaintiff must establish that "some person, acting under state or territorial law, has deprived him of a federal right." *Cinel v. Connick,* 15 F.3d 1338, 1342 (5th Cir. 1994). Because of the state action requirement, a private party like Oakley may be held liable under Section 1983 only if he is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27 (1980); *see also Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 387 (5th Cir. 1985).

The basis for Plaintiffs' Section 1983 claim is that the construction of the Oakley residence destroyed a critical dune in violation of permits issued by Port A and in violation of state law. (Plaintiffs First Amended Complaint at Paragraph VI). Plaintiffs allege in their complaint that "Starrett, James, the City and Urban acting under color of law, thereby conspired to deny and the City did deny Plaintiffs their statutory and constitutional rights, both State and Federal, and in violation of 42 U.S.C.A. 1983." (First Amended Complaint at Paragraph VI). Plaintiffs further allege a violation of their procedural due process rights by Port A's failure to hold a public hearing prior to the issuance of the permits. (First Amended Complaint at Paragraph VI).

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 10*

Based on these allegations, to support their Section 1983 claim, if any, against Oakley, Plaintiffs must produce evidence that suggests: (1) an agreement between Oakley and Port A to commit an illegal act; and (2) an actual deprivation of constitutional rights. *Cinel v. Connick*, 13 F.3d at 1343. However, Plaintiffs cannot produce any evidence that suggests that Oakley conspired with Port A or its agents in obtaining the permits at issue. More importantly, Plaintiffs cannot produce any evidence that suggests that Oakley and Port A conspired to deprive them of their civil rights or to commit any other illegal act.

### III - THE OAKLEYS' MOTION FOR SUMMARY JUDGMENT ON THEIR COUNTERCLAIM

Pursuant to Rule 56(a), Federal Rules of Civil Procedure, Ken and Andrea Oakley, now acting in their capacity as Counter-Plaintiffs, move for summary judgment, or, in the alternative, partial summary judgment, on certain of their counterclaims against Arthur Gochman and Molly Gochman, and as grounds therefore would show the Court as follows.

### THE GOCHMANS NOTICE OF LIS PENDENS FILINGS AS TO THE OAKLEY PROPERTY

On July 10, 1998, Oakley purchased lot thirty-five (35) in BW II from Starrett. A copy of Oakley's deed is attached as Exhibit "7".

On April 7, 1999, Arthur Gochman and Molly Gochman filed their original petition against Ken Oakley and Port A in the 347th District Court, Nueces County, Texas under Cause Number 99-1891-H. A copy of the Gochmans' Original Petition for Injunction and Mandamus is attached as Exhibit "15".

On September 9, 1999, the Gochmans, acting through their attorney, filed a Notice of Lis Pendens as to the Oakley property in the real property records of the Nueces

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 11*

County Clerk's Office. A copy of the Gochmans' September 9, 1999, Notice of Lis Pendens is attached as Exhibit "16".

On September 28, 1999, Oakleys' counsel began to write a series of letters to counsel for the Gochmans, and demanded that the Gochmans cancel and release the September 9, 1999, Notice of Lis Pendens so that the Oakleys could close on their construction loan and permanent mortgage and move into their home. Additionally, Oakley's counsel made it clear that it was the Oakley's position that the September 9, 1999, Notice of Lis Pendens filing was illegal, violated Tex. Prop Code Ann., section 12.007 and was contrary to the opinion of the Texas Supreme Court in *Flores vs. Haberman*, 915 SW 2nd 477, (Tex. 1995). Copies of counsel's correspondence to Gochmans' counsel, dated September 28, 1999, October 13, 1999, October 25, 1999, October 27, 1999, and October 28, 1999, are attached collectively as Exhibit "17". Subsequently, the Gochmans cancelled the September 9, 1999, Notice of Lis Pendens, but only if the Oakleys would sign the October 29, 1999, release which is attached as Exhibit "18".

On February 1, 2000, Arthur Gochman filed a brand new Notice of Lis Pendens as to the Oakley property with the Nueces County Clerk's Office. A copy of Arthur Gochman's February 1, 2000, Notice of Lis Pendens is attached as Exhibit "19". Arthur Gochman filed this Notice of Lis Pendens four months after his attorney had been advised by Oakley's counsel that such filing was illegal, and Arthur Gochman filed this new Notice of Lis Pendens with full knowledge of its illegality.

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 12*

## A - THE GOCHMANS' NOTICES OF
## LIS PENDENS ARE ILLEGAL UNDER
## THE TEXAS PROPERTY CODE

Neither Arthur Gochman or Molly Gochman have ever had an ownership interest in the Oakley property. Neither Arthur Gochman or Molly Gochman have ever had any kind of title, interest, mortgage or encumbrance as to the Oakley property. Additionally, the Gochmans' lawsuit, as originally filed or as currently plead, has not involved an action or a claim involving title to the Oakley's property. The Court is referred to the July 15, 2000, affidavit of Ken Oakley which is attached hereto as Exhibit "20".

A party's right to file a notice of lis pendens is governed by Tex. Prop. Code Ann., section 12.007. Under this statute a party to an action who is seeking affirmative relief may file a notice that the action is pending during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property. The Gochman lawsuit involves none of these situations. In interpreting section 12.007 of the Property Code, the Texas Supreme Court has held that a party may file a lis pendens during the pendency of an action involving: (1) title to real property; (2) the establishment of an interest in real property; or (3) the enforcement of an encumbrance against real property. *Flores vs. Haberman*, 915 SW 2nd 477, (Tex. 1995). In short, the interest asserted in the lawsuit must be one of the three articulated in section 12.007. If it is not, the lis pendens notice should be cancelled.

Accordingly, the Oakleys request that the Court grant summary judgment that the September 9, 1999, and February 1, 2000, Notices of Lis Pendens are, as a matter of law, illegal; that such Notices be immediately cancelled and considered null, void and of no further force and effect; and further, that Plaintiffs be ordered to execute and deliver to

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 13*

the Oakleys an appropriate instrument canceling and voiding said Notices of Lis Pendens. The Oakley's further request that actual and punitive damages for the illegal and wrongful act, together with attorney's fees, be determined at trial.

### B - THE GOCHMANS' NOTICES OF LIS PENDENS ARE FRAUDULENT DOCUMENTS OR INSTRUMENTS

Tex. Gov't Code Ann., section 51.901, et. seq. provides that a document or instrument is presumed to be fraudulent if it purports to create a lien or assert a claim against real or personal property, or an interest in real or personal property, and is not a document or instrument provided for by the constitution or laws of Texas or the United States.

The Gochmans' Notices of Lis Pendens assert, on their face, a claim against the Oakley's property. Moreover, since it is only lawful for a party to file a lis pendens notice in one of the three instances articulated in section 12.007(a) of the Property Code, it follows that the Gochmans' Lis Pendens Notices are not documents or instruments provided for by state or federal law.

Accordingly, the Oakleys request that the Court grant summary judgment that the Gochmans' September 9, 1999, and February 1, 2000, Notices of Lis Pendens are fraudulent documents or instruments as a matter of law. The Oakleys further request that their actual and punitive damages, together with their attorney's fees, be determined at trial.

### FRED D. DREILING AFFIDAVIT

Finally, the Court is referred to the Affidavit of Oakleys' counsel which is attached hereto as Exhibit "21". In this Affidavit Oakleys' counsel certifies and swears

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 14*

that the exhibits attached to this motion are true, genuine and correct copies of the plats,

deeds, photographs, depositions, correspondence, reports, resumes, contracts, pleadings,

notices of lis pendens and affidavits, as applicable.  Counsel further affirms that such

documentation and material has been exchanged by the parties in connection with

discovery in this matter.

WHEREFORE, PREMISES CONSIDERED, Defendant and Counter-Plaintiffs,

Ken and Andrea Oakley, request that this Motion  for Summary Judgment be, in all

respects, granted.

Respectfully submitted,

**LAW OFFICE OF FRED D. DREILING**
**BANK OF AMERICA BUILDING**
**500 NORTH SHORELINE, SUITE 714**
**CORPUS CHRISTI, TEXAS 78471-1007**
**E-MAIL: DREILINGFD@AOL.COM**
**TELEPHONE: 361-883-0186**
**FACSIMILE:  361-882-4112**

**FRED D. DREILING**
**FEDERAL I.D. NO. 19239**
**STATE BAR NO. 06115100**

**ATTORNEY IN CHARGE FOR**
**KEN AND ANDREA OAKLEY**

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 15*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered to the following counsel of record in accordance with the Federal Rules of Civil Procedure this 17th day of July 2000.

Mr. Max J. Luther, III             **Hand Delivery** *and*
*Law Office of Max J. Luther, III*   **C.M. #Z 100 888 434**
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, Texas 78470-0165

Mr. Michael G. Morris          **U.S.P.S. Regular Delivery**
Attorney at Law
5350 South Staples, Suite 222
Corpus Christi, Texas 78411

Mr. Ed Cogburn             **Federal Express**
*Dow, Cogburn & Friedman, P.C.*
9 Greenway Plaza
Houston, Texas 77046

Mr. E.R. Fleuriet           **U.S.P.S. Regular Delivery**
*The Fleuriet Schell Law Firm, L.L.P.*
621 East Tyler
Harlingen, Texas 78550

Mr. James F. McKibben, Jr.     **U.S.P.S. Regular Delivery**
*Barger, Hermansen, McKibben & Villarreal, L.L.P.*
1100 Tower II
555 North Carancahua
Corpus Christi, Texas 78478

Mr. Jorge C. Rangel          **U.S.P.S. Regular Delivery**
*The Law offices of Jorge C. Rangel*
P.O. Box 2683
Corpus Christi, TX 78403-2683

Mr. Matthew J. Sullivan         **U.S.P.S. Regular Delivery**
*Haynes and Boone, L.L.P.*
1600 One American Center
600 Congress Avenue, Suite 1600
Austin, TX 78701-3236

**FRED D. DREILING**

*Ken and Andrea Oakley's Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 16*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND | § | |
| MOLLY GOCHMAN | § | |
| | § | |
| VS. | § | C.A. NO. C-00-126 |
| | § | JURY |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| ET. AL. | § | |

## <u>DEFENDANT AND COUNTER-PLAINTIFFS,</u>
## <u>KEN AND ANDREA OAKLEY'S,</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>
## <u>EXHIBITS TABLE OF CONTENTS</u>

1.  03/17/97  PLAT – BW I

2.  06/03/98  PLAT – BW II

3.  05/20/97  DEED – STAN STARRETT TO PORT A, LOT 67, BW I

4.  04/09/99  DEED – STAN STARRETT TO PORT A, LOT 76 BW II

5.  05/30/97  DEED – STAN STARRETT TO MOLLY GOCHMAN, LOT 24 BW II

6.  05/30/97  DEED  - STAN STARRETT TO ARTHUR GOCHMAN, LOTS 25 & 26 BW I

7.  07/10/98  DEED – STAN STARRETT TO KEN OAKLEY LOT, 35 BW II

8.  07/15/98  PHOTOS –2 OF THE HOMES

9.  12/03/99  DEPOSITION – STEVE THOMPSON

10.  02/19/99  LETTER – BROOKS TO FEFERMAN

11.  07/12/00  REPORT/CV – JIM URBAN

12.  09/29/97  EARNEST MONEY CONTRACT – STAN STARRETT TO OAKLEY

13.  12/10/98  BUILDER'S SPECS – OAKLEY/KEYSTONE

14.  12/14/99   **DEPOSITION – STAN STARRETT**

15.  04/07/99   **PLAINTIFFS' ORIGINAL PETITION – 347TH DISTRICT COURT**

16.  09/09/99   **NOTICE OF LIS PENDENS**

17.  09/28/99   **FRED D. DREILING LETTERS TO MAX J. LUTHER, III**
     10/28/99

18.  10/29/99   **RELEASE**

19.  02/01/00   **NOTICE OF LIS PENDENS**

20.  07/15/00   **KEN OAKLEY AFFIDAVIT**

21.  07/17/00   **FRED D. DREILING AFFIDAVIT**

# EXHIBITS NOT IMAGED