# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND MOLLY GOCHMAN | § § § | |
| Plaintiffs | § § | |
| VS. | § § § | CIVIL ACTION NO. 00-126 JURY |
| KEN OAKLEY, THE CITY OF PORT ARANSAS, TEXAS, URBAN ENGINEERING, AND STANLEY A. STARRETT, JR. | § § § § § | |
| Defendants | § | |

United States District Court
Southern District of Texas
FILED

JUL 17 2000

Michael N. Milby, Clerk

## DEFENDANT'S, CITY OF PORT ARANSAS, TEXAS, MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW the City of Port Aransas, Texas, a Defendant in the above entitled and numbered cause, and file this its Motion for Summary Judgment and respectfully requests that this Court grant such Motion in its favor as to each of Plaintiff's causes of action, and for same would show this Court as follows:

## I. Statement of the Case

Plaintiffs, Arthur and Molly Gochman, have, pursuant to 42 U.S.C.A. § 1983, filed suit against the City of Port Aransas[1] (hereinafter the "City") alleging that the City violated their rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution, the Texas Dune Protection Act, and Texas Constitution. In specific, Plaintiffs

---

[1] Plaintiffs have also filed suit against Stanley A. Starrett, Jr., Ken Oakley, Urban Engineering, and James Urban.



assert that the City violated their rights by (a) illegally and improperly issuing dune permits without notice to them, as littoral owners, as required by the Texas Dune Protection Act; (b) illegally and improperly issuing dune permits without a public hearing as required by the Texas Dune Protection Act; (c) depriving their statutory right to appeal; (d) depriving their right to an impartial tribunal's determination of the grounds for granting the permits; and, (e) conspiring to deny their rights. Plaintiffs seek (a) to recover economic damages; (b) an injunction voiding the permits *ab initio* and mandating relocation of Oakley's house on the lot and restoration of the invaded dune; and (c) mandamus of the City to enforce the Dune Protection Act and the Port Aransas Coastal Management Plan with respect to the Oakley lot.

For the reasons set forth below, Plaintiffs' claim against the City are meritless and a summary judgment that Plaintiffs take nothing is appropriate.

## II. Factual Summary

### A. Development of Beachwalk I

Starrett, a developer, owned unimproved, raw land on Mustang Island, a barrier island, adjacent to the Gulf Beach, within the City's limits. He applied to the City for dune permits to develop his property as Beachwalk I, a residential subdivision.[2] His applications were reviewed by the Port Aransas Planning & Zoning Commission (hereinafter "Commission") in accordance with Section VII. of the City/County Dune Protection Permitting Interlocal Agreement (hereinafter "Interlocal Agreement) and § 16-59 and 16-59 of the Port Aransas Coastal Management Plan (hereinafter "Management Plan"). After investigation and hearing, Starrett's

---

[2] Two permits were sought, the first for roads and utilities and the second for construction of houses.

2

permits were recommended for approval by the Commission on January 27, 1997 and were approved by the City Council on February 20, 1997. As part of Starrett's development plan, Starrett conveyed to the City a strip of Beachwalk I property extending the full length along the beach and inland some distance.[3] None of the Beachwalk I property, except the portion owned by the City, is adjacent to the Gulf shore.

On or about May 15, 1997, Arthur Gochman entered into a written agreement with Starrett to purchase Lots 24, 25 and 26 of Beachwalk I. At closing, Arthur Gochman purchased only Lots 25 and 26, and Molly Gochman purchased Lot 24. Subsequent to her purchase of Lot 24, Molly Gochman built a home on the lot. The home is located in the middle of Lot 24 as opposed to closer to the Gulf.

### B. Development of Beachwalk II

Defendant Starrett also owned land north of and adjacent to Beachwalk I. The land was adjacent to the Gulf Shore and within the City's limits. Starrett applied to the City for dune permits for the land to be developed as Beachwalk II.

### 1. Dune Permit No. 97-008

On September 23, 1997, Starrett filed Dune Permit No. 97-008 for roadways and utilities.[4] See attached hereto as **Exhibit B** a true and correct copy of the dune permit. On

---

[3] Starrett conveyed the property by Warranty Deed dated May 20, 1997 filed of record under Document No. 1997018671 and Correction Warranty Deed dated May 23, 1997 filed of record under Document No.1997018997 in the records of the Nueces County Clerk. See attached hereto as **Exhibit A** a true and correct copy of the Correction Warranty Deed.

[4] James Urban of Urban Engineering prepared the permit applications on behalf of

3

September 29, 1997, at the regular meeting of the Planning and Zoning Commission, the Commission considered Dune Permit 97-008 for approval. Stephen Grunewald of Urban Engineering, representative for Starrett, was present to answer any questions from the Commission. Following a presentation by Starrett, the Commission recommended approval of the permit. See attached hereto as **Exhibit C** a true and correct copy of the Commission's September 29, 1997 minutes. On October 16, 1997, the City Council granted the permit. See attached hereto as **Exhibit D** a true and correct copy of the Council's October 16, 1997 minutes.

Pursuant to and in accordance with Section VI of the City/County Interlocal Agreement on September 30, 1997, the City forwarded the permit to the County Engineer. Also, on September 30. 1997, pursuant to and in accordance with Section 16-61 of the Management Plan and § 63.056[5] of the Dune Protection Act, the City forwarded to the General Land Office and Attorney General copies of the dune permit application and provided both with notice of a public hearing regarding the permit. See attached hereto as **Exhibit V** true and correct copies of the letters to the County Engineer, General Land Officer, and Attorney General.

2. **Dune Permit No. 97-010**

On November 18, 1997, Starrett filed Dune Permit No. 97-010 for residential. See attached hereto as **Exhibit E** a true and correct copy of the dune permit. On November 24, 1997, at the regular meeting of the Planning and Zoning Commission, the Commission considered

---

Starrett.

[5] Section 63.056 of the Dune Protection Act provides that the Commissioner of the General Land Office may submit any written or oral comments regarding the effect of the proposed activity on the dunes that protect State owned land, shores, and submerged land.

4

Dune Permit 97-010 for approval. Stephen Grunewald of Urban Engineering was present to answer any questions from the Commission. Following a presentation by Starrett, the Commission recommended approval of the permit. See attached hereto as **Exhibit F** a true and correct copy of the Commission's November 24, 1997 minutes.

Pursuant to and in accordance with Section VI of the City/County Interlocal Agreement on November 25, 1997, the City forwarded the permit to the County Engineer. See **Exhibit G**. Also, on November 25, 1997, pursuant to and in accordance with Section 16-61 of the Management Plan and § 63.056[6] of the Dune Protection Act, the City forwarded to the General Land Office and Attorney General copies of the dune permit application and provided both with notice of a public hearing regarding the permit. See attached hereto as **Exhibits H** and **I** a true and correct copy of the letters.

On December 4, 1997, the General Land Office forwarded a letter to the City regarding the permit. Said comment was not related to the construction on Lot 25. See **Exhibit J**. On December 11, 1997, the Attorney General acknowledged receipt of the permit and stated that it had no comment on the proposed construction. See **Exhibit K**.

On December 18, 1997, the City Council granted the permits. See attached hereto as **Exhibit L** a true and correct copy of the Council's December 18, 1997 minutes. As done with Beachwalk I, by Warranty Deed dated April 9, 1999 and filed under Document No. 199029481 in the records of the Nueces County Clerk, Starrett conveyed the strip of Beachwalk II property

---

[6] Section 63.056 of the Dune Protection Act provides that the Commissioner of the General Land Office may submit any written or oral comments regarding the effect of the proposed activity on the dunes that protect State owned land, shores, and submerged land.

lying adjacent to the Gulf shore to the City. Accordingly, none of the Beachwalk II property, except the portion owned by the City, is adjacent to the Gulf Shore. On December 22, 1997, the City forwarded notice to the General Land Office that the permit had been approved. See **Exhibit M**.

### C. Oakley's Home Construction & Plaintiffs' Complaint

In July of 1998, Starrett sold and conveyed Lot 35 in Beachwalk II to Ken Oakley. Lot 35 is adjacent to and northeast of Plaintiffs' Lot 24. Oakley, thereafter, entered into a contract with a builder to construct a home on Lot 35. On January 21, 1999, Oakley secured a building permit from the City for construction of the home.

On February 15, 1999, apparently in reaction to a power pole being placed on Oakley's property, Plaintiffs' attorney, Don Fefferman, wrote a letter to Tommy Brooks, the City Manager, complaining that "... the rear portion of the dune which goes across Lot 35 has been leveled in order to permit pilings to be installed on the lot" and that Oakley's construction violated Starrett's permit. See attached hereto as **Exhibit N** a true and correct copy of the letter. A copy of the letter was sent to the General Land Office. In response to Plaintiffs' complaint, the City's Building Official, Stephen M. Thompson, investigated and determined that there had been no violation of Dune Permit No. 97-010. After investigating, the City wrote Plaintiffs' counsel on February 19, 1999 advising that it was the City's position that Oakley's construction did not violate Starrett's permit. See **Exhibit O**.

On July 13, 1999, Plaintiffs' counsel wrote to the Texas General Land Office again, complaining about destruction of dunes in the subdivision "which destruction was neither described in the permit applications nor permitted when the permits were granted." See attached

6

hereto as **Exhibit P** a true and correct copy of the letter. On August 23, 1999, the General Land Office wrote Plaintiffs' counsel advising that the "...staff carefully reviewed the material you submitted..." and "[t]he permit application for construction on Lot 35 in the Beachwalk II subdivision clearly indicates that dunes will be impacted and includes a mitigation plan to compensate for the impacts...Based upon all the information reviewed, referral to the Office of the Attorney General is not warranted at this time". See attached hereto as **Exhibit Q** a true and correct copy of the General Land Office's August 23, 1999 correspondence.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), the movant bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the summary judgment record] which it believes demonstrates the absence of a genuine issue of material fact." FED. R. CIV. P. 56; Celotex Corp. vs. Catrett, 477 U.S. 317, 323 (1986). Once this burden is satisfied, the burden shifts to the non-movant to establish the existence of a genuine issue of material fact for trial. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825. Whether the record supports a genuine issue of material fact is a question of law for the Court to decide.

### IV. Arguments and Authorities in Support of Summary Judgment

The City is entitled to summary judgment as a matter of law as to Plaintiffs' claims. The City, in compliance with the Texas Dune Protection Act and the Port Aransas Coastal Management Plan, legally and properly issued the Beachwalk II dune permits to Starrett. As such, the permits are valid and are not void *ab initio*. Accordingly, Plaintiffs' claims that the City violated their rights to due process and equal protection are without any merit. Moreover, Plaintiffs claim that the City

7

conspired to violate their rights is without any merit.

Moreover, the City asserts that the Plaintiffs do not have standing to sue the City to compel it to enforce that Act generally. Further, Plaintiffs do not have standing to bring this suit against the City. Section § 63.151 of the Act is the exclusive method for contesting the City's decision to issue a dune permit to Starrett or a decision of the City regarding Oakley's construction within the dunes. Moreover, § 63.151 requires that the complainant be littoral owner and Plaintiffs are not littoral owners.

### A. Texas Dune Protection Act

**Purpose of the Act.** Chapter 63 of the Texas Natural Resources Code known as the Texas Dune Protection Act (hereinafter referred to as the "Act"), provides for the protection of dunes on barrier islands in order to protect the general public from the harmful effects of high wind and water generated by storms. It does this, in part, by imposing controls on construction within a defined area near the Gulf Waters. Tex. Nat. Res. Code, 63.001 et seq.

**Dune Protection Line.** Section 63.011(a) of the Act requires that the county commissioner's court establish a dune protection line while section 63.012 provides that the line shall not be located further landward than a line drawn parallel to and 1,000 feet landward of the line of mean high tide of the Gulf of Mexico. Tex. Nat. Res. Code §§ 63.011 and 63.012. Pursuant to §§ 63.011(a) and 63.012 and by Commissioner's Court Order dated July 14, 1993, the Nueces County Commissioner's Court established the dune protection line as a line running parallel to the beach 1,000 feet landward of mean high tide of the Gulf.[7]

**Nueces County/Port Aransas Interlocal Agreement.** Section 63.011(b) and (c) provide

---

[7] See attached hereto as **Exhibit R** a true and correct copy of the Interlocal Agreement.

8

that a county may delegate its authority to administer the Act to a municipality within the county and may enter into an interlocal agreement with a municipality for the administration of the Act. Nueces County by Interlocal Agreement dated April 22, 1994 delegated to the City of Port Aransas such authority as to land within its limits. The City is, therefore, the enforcement and permitting authority as to lands within its limits.

**Permit Requirement.** Section 63.051 of the Act provides that a landowner who desires to perform any act prohibited by § 63.091 must apply for a permit from the enforcement authority. Pursuant to the Interlocal Agreement, a landowner seeking to perform an act prohibited by § 63.091 must apply to the City for a permit.

**Port Aransas Coastal Management Plan: Permit Review.** Section 63.054 provides that the City, the enforcement authority, will evaluate the permit application and grant the permit if, after full investigation, the City determines that the particular conduct proposed will not materially weaken the dune or materially damage vegetation on the dune or reduce its effectiveness as a means of protection from the effects of high wind and water. Tex. Nat. Res. Code § 63.054(a) and (b). Section 63.054(c) of the Act also requires that the City establish procedures and requirements governing review and approval of dune permits. Tex. Nat. Res. Code § 63.054(c). On February 15, 1995, exercising its authority, the City adopted the Port Aransas Coastal Management Plan (hereinafter referred to as "Management Plan").[8] The Management Plan sets forth the procedures and requirements governing the review and approval of dune permits. See attached hereto as **Exhibit S** a true and correct copy of relevant portions of the Management Plan. See also attached

---

[8] The Port Aransas Coastal Management Plan, Ordinance 95-2, is codified at Chapter 16, Article III. of the Port Aransas Code.

9

hereto as **Exhibit T** a true and correct copy of a graph depicting the dune permit application process attached to the Management Plan as attachment #6. In accordance with § 63.054(c), the Management Plan was submitted to and approved by the General Land Office and the Attorney General as consistent with state law.[9]

Section 63.091 of the Act provides that "[u]nless a permit is properly issued authorizing the conduct, no person may damage, destroy, or remove a sand dune or a portion of a sand dune seaward of a dune protection line or within a critical dune area or kill, destroy or remove in any manner any vegetation growing on a sand dune seaward of a dune protection line or within a critical dune area". Tex. Nat. Res. Code § 63.091.

### B. Plaintiffs' Claims

### 1. Plaintiffs' Procedural Due Process Claim Must Fail.[10]

Plaintiffs assert that the City violated their right to procedural due process. Plaintiffs' due process claim is without merit, and the City is, therefore, entitled to summary judgment.

In support of their claim, Plaintiffs assert that the City (a) illegally and improperly issued the dune permits without notice to them, as littoral owners, as required by the Texas Dune Protection

---

[9] The Port Aransas Coastal Management Plan has been certified by the General Land Office, pursuant to § 15.11 of Title 31 of the Texas Administrative Code, as a plan that is consistent with the relevant statutory requirements. The City seeks that this Court take judicial notice of this fact.

[10] Although Plaintiffs fail to specifically state in their First Amended Complaint that they assert only a violation of procedural due process, a liberal analysis of Plaintiffs' complaint indicates that Plaintiffs do not assert a violation of substantive due process.

10

Act; (b) illegally and improperly issued the dune permits without a public hearing as required by the Texas Dune Protection Act; (c) deprived them of their statutory right to appeal; and, (d) deprived them of their right to an impartial tribunal. See Plaintiffs' First Amended Complaint at Section VI.

To establish a procedural due process violation, a plaintiff must: (1) identify a protected "life, liberty, or property" interest; (2) prove that government action resulted in a depravation of that interest. *Id*; and (3) show that the government did not provide the proper procedural protection that was due in the particular situation. *See* San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (citing Baker v. McCollan, 443 U.S. 137, 140 (1979)); Mathews v. Eldridge, 424 U.S. 319, 334 (1976).[11]

Plaintiffs have failed to identify a protected "life, liberty or property interest." Moreover, Plaintiffs cannot establish that the City failed to provide proper procedural protection.

### a. No Right to Notice or Hearing

Plaintiffs claim a statutory right to notice, a hearing, and appeal of the City's decision under the Dune Protection Act. However, said rights (if rights at all) are not protected property interests. As a matter of law, "a party seeking to demonstrate a property interest entitled to protection under the due process clause cannot 'simply rely upon the procedural guarantees of state law or local ordinance.'" Double I Limited Partnership v. Plan & Zoning Comm'n of Glastonbury, 588 A.2d 624, 631 (Conn. 1991) (quoting *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541-3 (1985). To have a procedural due process cause of action, Plaintiffs must establish a protectable property interest separate and apart from the [procedural] rules themselves. Alford v. Dallas, 738 S.W.2d 312, 316-17 (Tex. 1987) (citing Board

---

[11] As discussed above, the City complied with the applicable provisions of the Open Meetings Act with respect to the permitting process.

11

of Regents v. Roth, 408 U.S. 564, 570 (1972)). Plaintiffs are not littoral landowners as alleged in their Complaint. Thus, Plaintiffs must specifically identify the substantive property interest that underlies the vague reference to a "public meeting" in § 63.056(a) of the Dune Protection Act.

Moreover, the available summary judgment evidence demonstrates that the City, in compliance with the Dune Protection Act and the Management Plan, properly issued the dune permits. The Dune Protection Act neither dictates a notice or public hearing requirement specific to the permitting process. Accordingly, the rules of the Open Meetings Act apply. The Open Meetings Act requires that "every regular, special, or called meeting of a governmental body shall be open to the public, except as provided for by this chapter." Tex. Gov't. Code Ann. § 551.002 (Vernon 1994). The Open Meetings Act further requires that the public be given written notice of the date, hour, place, and subject of each meeting and requires that notice must be posted in a place readily accessible to the general public at all times for at least 72 hours prior to the scheduled meeting time. Tex. Gov't. Code Ann. §§ 551.041 and 551.043 (Vernon 1994).

The City acted in accordance with the foregoing provisions of the Open Meetings Act. The hearings in which the permits were recommended and approved were listed on the agendas for the meetings at which the action occurred and the agendas were posted prior to meetings. See attached hereto as **Exhibit U** true and correct copies of the agendas. Accordingly, Plaintiffs were notified of the meetings but failed to attend.

**b. No Right to Appeal**

Plaintiffs claim a statutory right to appeal the City's decisions under the Dune Protection Act. However, said rights (if rights at all) are not protected property interests. Moreover, sections 63.091 and 63.152 of the Dune Protection Act makes it abundantly clear that Plaintiffs, as non-littoral

12

owners, cannot claim a statutory entitlement to a right to appeal. It is exclusively the responsibility of the Land Commissioner and Attorney General to investigate and enforce the Dune Protection Act. Neither the Land Commission nor the Attorney General determined that an appeal of the permits was warranted.

### c. Right to Impartial Tribunal

Plaintiffs claim that they were, ". . . entitled as littoral owners, under due process and equal protection, to an impartial tribunal determining grounds for granting the Permits." There is, however, no evidence that the permitting process was not impartial. Urban was not acting as City Engineer. The permit applications were reviewed and approved by the Planning and Zoning Commission, the City Council, the General Land Office and the Texas Attorney General's Office. Moreover, the permits were considered in meetings held in compliance with the Open Meetings Act. As such, the permits are not void *ab initio* and there is no basis upon which to support a mandamus of the City to enforce the Dune Protection Act and the Port Aransas Coastal Management Plan.

### 2. Plaintiffs' Equal Protection Claim Must Fail.

Plaintiffs claim that the City violated their rights to equal protection. Plaintiffs' equal protection claim is without any merit, and the City is entitled to summary judgment. The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental action that works to treat similarly situated individuals differently. *See* John Corp. v. the City of Houston, 2000 W.L. 758347, * 3 (5th Cir. (Tex.)); Rolf v. City of San Antonio, 77 F.3d. 823, 828 (5th Cir. 1996). Accordingly, a court may conduct an equal protection inquiry only if "the challenged governmental action classifies or distinguishes between two or more relevant groups." Rolf, 77 F.3d at 828 *citing* Qutb v. Strauss, 11 F.3d 488 (5th Cir. 1993), *cert. denied,* 511 U.S. 1127, 114 S.Ct. 2134 (*citing* City

13

of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 105 S.Ct. 3249 (1985)). There is no evidence that the City acted in a manner such that Plaintiffs were treated differently than similarly situated individuals

### 3. Plaintiffs' § 1983 Civil Conspiracy Claim Must Fail.

Plaintiffs assert that the City, in violation of § 1983, conspired with Defendants Starrett, James Urban, and Urban Engineering to deny them their statutory and constitutional rights. Refer to page 5, paragraph VI. of Plaintiffs' First Amended Complaint.[12] The City is entitled to summary judgment as to Plaintiffs' claim as it can conclusively negate the essential elements of Plaintiffs' conspiracy claim.

In order to prevail on a § 1983 civil conspiracy claim, Plaintiffs must establish (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the *specific intent* to violate the aforementioned right. Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999); Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994); Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990). The summary judgment evidence does not establish the existence of a conspiracy.

### a. No Violation of a Right Protected by § 1983

To prove the existence of a conspiracy, Plaintiffs are first required to show an actual violation by the City of a right protected under § 1983. Plaintiffs cannot establish that the City violated any of their statutory or constitutional rights. In specific, Plaintiffs have failed to identify a protected

---

[12] Plaintiffs' complaint is vague making it unclear whether Plaintiffs are seeking a state law civil conspiracy claim. To the extent that Plaintiffs assert a state law claim of conspiracy there is similarly no evidence to support a conspiracy.

14

"life, liberty, or property" interest as required to maintain a § 1983 claim based on the denial of due process. The available summary judgment evidence establishes that the City, in compliance with and pursuant to the Dune Protection Act, issued the dune permits to Starrett. See discussion *supra* at paragraphs B.1 and B.2. Absent proof of a violation of their rights, Plaintiffs cannot establish that the City conspired to violate their rights. *See* Kerr, 171 F.3d at 340; Pfannstiel, 918 F.2d at 1187; Copsey v. Swearingen, 36 F.3d 1336, 1346 (5th Cir. 1994) (recognizing that where no constitutional right was violated plaintiff could not claim there was a conspiracy to violate his constitutional rights).

### b. No Evidence of a Conspiracy

To establish the existence of a civil conspiracy, Plaintiffs are also required to demonstrate that actions were taken in concert by the City and Defendants Starrett, James Urban, and Urban Engineering with the specific intent to violate their rights protected under § 1983. There is no evidence that the City acted in concert with any defendant with the specific intent to violate Plaintiffs' rights. Plaintiffs' subjective belief and mere conclusory allegations that the City conspired to violate their rights is insufficient to support a § 1983 claim of civil conspiracy and survive summary judgment.

The available summary judgment evidence, however, conclusively establishes that the City did not conspire with any defendant. Also, the Affidavit of James Urban, attached as Exhibit A to Defendant Urban's Motion for Summary Judgment, establishes that the Urban Defendants were not involved in any alleged conspiracy with the City. Moreover, his affidavit and the Commissions' meeting minutes establish that James Urban was not acting as the City Engineer during the Beachwalk II project. Accordingly, Plaintiffs' claim that the supposed "conflict of interest" was part

of a larger conspiracy to deny their rights is without any merit.

### 4. No Standing

Plaintiffs claim that the Permit was improperly issued by the City and that they are, therefore, entitled to an appeal under the Dune Protection Act. *See* Plaintiffs' First Amended Complaint at Section VII. Section 63.151 of the Act provides a right of appeal to state district court to a littoral owner aggrieved by a decision of the governing body of a municipality made under the Act.

Plaintiffs are evidently attempting to create standing to bring their claims by referring to themselves as "littoral owners." *See* Id. Plaintiffs, however, are not littoral owners. Littoral rights are rights concerning properties that abut an ocean, sea or lake. BLACK'S LAW DICTIONARY 645 (6th ed. 1991); *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 646 (Tex. App.–Austin 1981, writ ref'd n.r.e.); Plaintiffs do not own the property abutting the Gulf. As part of the Beachwalk I and Beachwalk II development plans, Starrett conveyed all of the Beachwalk I and II property abutting the Gulf to the City.[13] Accordingly, the City alone owns the Beachwalk I and II property adjacent to/abutting the Gulf. As such, the City of Port Aransas, not Plaintiffs, are the littoral owners protected by the Act. Therefore, Plaintiffs lack standing to bring their claims under the Texas Dune Protection Act.

---

[13] Starrett conveyed the Beachwalk I property by Warranty Deed dated May 20, 1997 filed of record under Document No. 1997018671 and Correction Warranty Deed dated May 20, 1997 filed of record under Document No.1997018997 in the records of the Nueces County Clerk. By Warranty Deed dated April 9, 1999 and filed under Document No. 199029481 in the records of the Nueces County Clerk, Starrett conveyed the strip of Beachwalk II property lying adjacent to the Gulf shore to the City.

16

## V. **Prayer for Relief**

WHEREFORE, PREMISES CONSIDERED, Movant, City of Port Aransas, Texas, respectfully requests that this Court grant its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56; dismiss, with prejudice, all of Plaintiffs' claims; award costs of court and attorneys' fees to Defendant; and, order such other and further relief that the Court deems appropriate.

Respectfully submitted,

By: *James F. McKibben, Jr.* *Signed with permission by Liza Marie Aguilar*
James F. McKibben, Jr.
State Bar No. 13713000
Federal ID No. 914
One Shoreline Plaza
800 N. Shoreline Blvd.
Suite 2000 - North Tower
Corpus Christi, Texas 78401
(361) 882 - 6611 - Telephone
(361) 866 - 8039 - Telecopier

*State Bar No. 24006741*
*Federal ID No. 23222*

ATTORNEY-IN-CHARGE FOR
DEFENDANT CITY OF PORT
ARANSAS, TEXAS

OF COUNSEL:

*BARGER, HERMANSEN, McKIBBEN & VILLARREAL, L.L.P.*
Liza Marie Aguilar
State Bar No. 24006741
Federal ID No. 23222
One Shoreline Plaza
800 N. Shoreline Blvd.
Suite 2000 - North Tower
Corpus Christi, Texas 78401
(361) 882 - 6611 - Telephone
(361) 866 - 8039 - Facsimile

17

# CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing Motion for Summary Judgment and Order was served on counsel of record by the method indicated below on this the 17th day of July, 2000:

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Max J. Luther, III
*Max J. Luther, III, P.C. & Associates*
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, Texas   78470-0165

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Edmund L. Cogburn
*Dow, Cogburn & Friedman, P.C.*
9 Greenway Plaza
Houston, Texas 77046

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Fred Dreiling
*Law Offices of Fred D. Dreiling*
Bank of America
500 North Water St. - Suite 714
Corpus Christi, Texas 78471

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
E.R. Fleuriet
*The Fleuriet Schell Law Firm LLP*
621 E. Tyler
Harlingen, Texas 78550

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Jorge C. Rangel
*The Law Offices of Jorge C. Rangel, P.C.*
P.O. Box 2683
Corpus Christi, Texas 78403-2683

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
Matthew J. Sullivan
*Haynes & Boone, L.L.P.*
1600 One American Center
600 Congress Avenue
Austin, Texas 78701

**U.S. FIRST CLASS MAIL**
Michael Gene Morris
Attorney at Law
5350 S. Staples, Suite 222
Corpus Christi, Texas 78411

James F. McKibben, Jr.

*signed with permission by Lisa Marie Aguilar*
*State Bar No. 24006741*
*Federal ID No. 23222*

19