IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

**ORIGINAL**

United States District Court
Southern District of Texas
FILED

**JUL 17 2000**

Michael N. Milby, Clerk

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND<br>MOLLY GOCHMAN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CV ACTION NO. C-00-126 |
| STANLEY A. STARRETT, JR.<br>KEN OAKLEY, URBAN ENGINEERING,<br>A PARTNERSHIP, THE PERALLA<br>CORPORATION, URBAN CONSULTING<br>ENGINEERS, INC., JAMES URBAN AND<br>THE CITY OF PORT ARANSAS, TEXAS, | § § § § § § § | |
| Defendants. | § § | |

## URBAN ENGINEERING'S, THE PERALLA CORPORATION'S, URBAN CONSULTING ENGINEERS, INC.'S AND JAMES URBAN'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

Matthew J. Sullivan
State Bar No. 19488325
Andrea L. Sloan
State Bar No. 90001678

HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1600
Austin, Texas 78701
512/867-8400 - telephone
512/867-8470 - telecopier

ATTORNEYS FOR
URBAN ENGINEERING, THE PERALLA
CORPORATION, URBAN CONSULTING
ENGINEERS, INC. AND JAMES URBAN

# TABLE OF CONTENTS

**PAGE**

I.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY JUDGMENT MOTION AND EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  GROUNDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   SUMMARY JUDGMENT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      A.    The Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      B.    The Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      C.    The State Law Conspiracy Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            1.    The Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            2.    Urban was not acting as City Engineer . . . . . . . . . . . . . . . . . . . . . . 10
            3.    The permitting process requires many levels of approval-but approval
                  by the City Engineer is not required . . . . . . . . . . . . . . . . . . . . . . . . 12
            4.    The City complied with the statutory requirements regarding notice
                  and hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            5.    There was no unlawful, overt act . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            6.    Arthur and Molly have not shown proximate cause for their damages,
                  if any . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      D.    The Section 1983 Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            1.    The basis of the claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            2.    Arthur and Molly were not deprived of any rights by anyone acting
                  under color of state law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            3.    Arthur and Molly have not identified a protected "life, liberty, or
                  property" interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      E.    No Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.   PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

-i-

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE

*Amoco Product Co. v. Horwell Energy, Inc.*, 969 F.2d 146 (5th Cir. 1992) . . . . . . . . . . . . . . 10

*Brown v. City of Galveston*, 870 F. Supp. 155 (S.D. Tex. 1994) . . . . . . . . . . . . . . . . . . . . 18, 19

*Brown v. Texas A&M University*, 804 F.2d 327 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . 10

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) . . . . . . . . . . . . . . . . . . . . 21

*Daniels v. Williams*, 474 U.S. 327 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Green v. Touro Infirmry*, 992 F.2d 537 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lugar v. Edmonson Oil Co*, 457 U.S. 922 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Maine v. Thiboutout*, 448 U.S. 1 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mathews v. Eldridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Meadowbriar Home, Inc. v. Gunn*, 81 F.3d 521 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 10

*Price v. Digital Equipt. Corp.*, 846 F.2d 1026 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Resident Council of Allen Parkway Village v. HUD*, 980 F.2d 1043 (5th Cir. 1993) . . . . . . . . 18

*Rideau v. Jefferson County*, 899 F. Supp. 298 (E.D. Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . 18

*San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . 20

*Jones v. Diamond*, 594 F.2d 997 (5th. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.) *cert. denied*, 1954 U.S. 1125 (1992) . . . . . . . . 10

*Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp.2d 825 (S.D. Tex. 1999) . . . . . . . 19

*West v. Atkins*, 487 U.S. 42 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATE CASES

*Alford v. Dallas*, 738 S.W.2d 312 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818
(Tex. App. – Corpus Christi 1988, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Corpus Christi v. Davis*, 622 S.W.2d 640 (Tex. App.-Austin 1981, writ ref'd n.r.e.) . . 23

*Double I Limited Partnership v. Plan & Zoning Commission of Glastonbury*,
588 A.2d 624 (Conn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*First State Bank v. Keilman*, 851 S.W.2d 914 (Tex. App.-Austin 1993, writ denied) . . . . . . . . 16

*Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex. 1983) . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Mayes v. Stewart*, 11 S.W.3d 440 (Tex. App. - Houston [14th Dist.] 2000, pet. denied] . . . . . . 11

*Nelson v. American Natal Bank of Gonzales*, 921 S.W.2d 411
(Tex. App.-Corpus Christi 1996, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Operation Rescue-Natal v. Planned Parenthood of Houston and Southwest Texas, Inc.*, 975
S.W.2d 546 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL STATUTES

42 U.S.C.A. §1983 (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## STATE STATUTES

*Tex. Admin. Code* §15.3(a)(3), (s)(6) (Vernon 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tex. Civ. Prac. & Rem. Code Ann.* § 16.003(a) (Vernon Supp.1999) . . . . . . . . . . . . . . . . . . 11

*Tex. Gov't. Code Ann.* § 551.002 (Vernon 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tex. Gov't. Code Ann.* § 551.041 (West 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tex. Gov't. Code Ann.* § 551.043 (West 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tex. Nat. Res. Code Ann.* § 63.091 (West 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND<br>MOLLY GOCHMAN, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CV ACTION NO. C-00-126 |
| STANLEY A. STARRETT, JR.<br>KEN OAKLEY, URBAN ENGINEERING,<br>A PARTNERSHIP, THE PERALLA<br>CORPORATION, URBAN CONSULTING<br>ENGINEERS, INC., JAMES URBAN AND<br>THE CITY OF PORT ARANSAS, TEXAS, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**URBAN ENGINEERING'S, THE PERALLA CORPORATION'S,
URBAN CONSULTING ENGINEERS, INC.'S AND JAMES URBAN'S
BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Urban Engineering ("Urban"), The Peralla Corporation, Urban Consulting

Engineers, Inc. and James Urban (collectively the "Urban Defendants") file this their Brief in Support

of Motion for Summary Judgment (the "Brief"), and would respectfully show the Court as follows:

**I.**

**SUMMARY OF ARGUMENT AND GENERAL BACKGROUND**

This is a case of spite masquerading as a claim about constitutional rights and alleged

complaints against a developer, homeowner, the City of Port Aransas, and an engineering firm that

prepared applications for permits to allow certain construction activities in the development.

Plaintiff Molly Gochman ("Molly") and Defendant Ken Oakley ("Oakley") own neighboring

beachfront properties in Port Aransas, Texas. In 1997, Molly's father, Arthur Gochman ("Arthur"),

bought three lots from Stan Starrett, the developer of the Beachwalk I and II subdivsions which front

the Gulf of Mexico in Port Aransas, Texas. Evidently, Arthur gave Molly lot 24 and still owns lots

25 and 26 next door to Molly. All three of the Gochman lots are located in the Beachwalk I

subdivision. For the Court's reference, Attachment "1" provides the general orientation of the

properties. Oakley owns lot 35, which is located in the Beachwalk II subdivision next door to

Beachwalk I.

Mr. Starrett hired Urban Engineering to provide certain engineering services in connection

with the Beachwalk I project, and then subsequently requested Urban to provide services in

connection with the Beachwalk II project. One of the services that Urban provided on both projects

was the preparation of applications for dune permits to allow for construction activities on various

lots, including but not limited to those lots that subsequently were sold by Mr. Starrett to the

Gochmans and the Oakleys. In accordance with applicable law and following the state procedures,

the City of Port Aransas issued dune permits for the Beachwalk I and II subdivisions during open

meetings of the City Council.

During the design of Molly's house, she, along with her father and the architect, decided to

locate her house roughly in the middle of lot 24 based on their misinterpretation of the Beachwalk

I dune permit. Shortly after Molly started construction of her house in approximately October of

1997, the Oakleys' began construction of their house. Nonplused to find the Oakleys building closer

to the Gulf of Mexico, Arthur retained various lawyers to send demand letters to the Oakleys

demanding that they stop construction. The Gochmans also complained to the City and the Texas

General Land Office that the Oakleys were violating the Dune Protection Act. After investigating the Gochmans' complaints, both the City and State determined that the Oakleys were building in accordance with the dune permit.

In response, the Gochmans filed two lawsuits against the Oakleys and Starrett alleging a variety of claims, including fraud, DTPA, and seeking an injunction. Mr. Starrett requested Jim Urban to serve as an expert in those lawsuits. Arthur and Molly then sued the City and the Urban Defendants alleging a vast conspiracy to deprive them of certain constitutional rights on which they base numerous, disjointed claims. They make vague accusations of due process violations under section 1983. They also assert what appears to be a state law conspiracy claim against the City, Starrett, and the Urban Defendants. Apparently, Molly and Arthur claim that Urban was acting as the City Engineer in connection with the Beachwalk II dune permit at the same time that it was assisting Mr. Starrett with preparation of the application for the Beachwalk II dune permit. However, Urban was not acting as the City Engineer on the Beachwalk II project–and made that very clear to the City. Nor did Urban conspire with the City and Starrett–or anyone else for that matter–to deprive the Gochmans of any rights.

As more fully explained in the Motion and the Brief, the Urban Defendants are entitled to summary judgment against Arthur and Molly as a matter of law.

## II.

## SUMMARY JUDGMENT MOTION AND EVIDENCE

In support of their Motion for Summary Judgment (the "Motion"), the Urban Defendants rely upon true and correct copies of the following summary judgment evidence:

A.      Affidavit of James Urban and its attachments including the following:

      1.      Dune Permit and Beachfront Construction Certificate number 97-010 (the "Permit");

      2.      Exhibit 11 to Stanley Starrett's deposition- including December 11, 1997 correspondence from the Texas Attorney General's Office regarding review of Dune Permit and Beachfront Construction Certificate number 97-010;

      3.      December 4, 1997 correspondence from the Texas General Land Office regarding review of Dune Permit and Beachfront Construction Certificate number 97-010.

B.      Transcript of Excerpt from Audiotape of Planning and Zoning Commission Regular Meeting on July 28, 1997.

C.      Transcript of Excerpt from Audiotape of Planning and Zoning Commission Regular Meeting on November 24, 1997.

D.      Transcript of Excerpt from Audiotape of Regular City Council Meeting on December 18, 1997.

E.      Exhibit 80 to Arthur Gochman's deposition--February 16, 1999 correspondence from Stephen Thompson to Jamie Mitchell of the Texas General Land Office.

F.      Excerpts from the deposition transcript of Molly Gochman taken in this case on June 8, 2000.

G.      Agenda for Public Hearing and City Council Meeting, September 18, 1997.

H.      Agenda for Planning and Zoning Commission Regular Meeting, August 25, 1997.

I.      Agenda for Public Hearing and City Council Meeting, August 21, 1997.

J.      Agenda for Planning and Zoning Commission Regular Meeting, July 28, 1997.

K.      Agenda for Planning and Zoning Commission Regular Meeting, November 24, 1997.

L.      Exhibit 51 to Arthur Gochman's Deposition, a Correction Warranty Deed from Arthur Gochman to the City of Port Aransas.

### III.

### GROUNDS FOR SUMMARY JUDGMENT

The Urban Defendants are entitled to summary judgment on the following grounds:

**1.      Plaintiffs' Claims are Barred by the Statute of Limitations.**

Although Plaintiffs' vague pleading makes it difficult to determine if they are complaining solely about a conspiracy to deprive them of rights alleged under title 42, section 1983 of the United States Code or are coupling that claim with a separate claim of civil conspiracy, under either or both theories, the statute of limitations has expired. There is a two year statute of limitations applicable to Arthur's and Molly's conspiracy claims under a state law civil conspiracy or a conspiracy under section 1983. The statute started to run, at the latest, on December 18, 1997--the date the dune permit for Beachwalk II was issued, which allowed the Oakleys to build slightly into an existing sand dune. Arthur and Molly filed this lawsuit against the Urban Defendants (except Urban Consulting

Engineers) on February 23, 2000– well after the two year statute had run. *See* Urban affidavit for chronology. The claim against Urban Consulting Engineers, Inc. were filed several months later on June 1, 2000.

### 2.     Plaintiffs' Section 1983 Civil Conspiracy Claims Must Fail.

The Urban Defendants can conclusively negate several essential elements of the conspiracy claims brought under section 1983 and state law–and they only need to negate one element in order to receive summary judgment.

### a.     No Section 1983 Claim.

Arthur and Molly did not identify a protected "life, liberty, or property" interest as required to maintain a section 1983 claim based on the denial of due process. Further, there is no evidence that the Urban Defendants were "acting under color of law" in a conspiracy to deprive the Gochmans of any rights.

### b.     No Civil Conspiracy.

The evidence conclusively establishes no civil conspiracy. Specifically, the affidavit of James Urban proves that the Urban Defendants were not involved in any alleged conspiracy and were not engaged in any unlawful acts in furtherance of the alleged conspiracy.

### c.     No Evidence of Civil Conspiracy.

Moreover, there is no evidence that the Urban Defendants, or any of the other defendants, engaged in any unlawful acts in furtherance of the alleged conspiracy.

d.      **No Proximate Cause.**

Finally, there is no evidence that any conduct by the Urban Defendants proximately caused any of Arthur's and Molly's claimed damages.

3.      **Plaintiffs lack standing to bring their claims under the Dune Protection Act.**

Arthur and Molly are complaining about alleged violations of their rights under the Dune Protection Act (the "Act"), which provides a right of appeal to littoral owners that are aggrieved by a decision made pursuant to the Act. Arthur and Molly are not littoral owners. They ceased to be littoral owners when they deeded the land in between their lots and the Gulf of Mexico to the City of Port Aransas. Because they are not "littoral" owners, Arthur and Molly do not have standing to bring claims under the Act.

### IV.

### SUMMARY JUDGMENT FACTS

1.      Defendant Stanley Starrett ("Starrett") is the developer of two residential subdivisions, Beachwalk I and Beachwalk II, in Port Aransas, Texas. Urban Engineering was hired by Starrett to provide certain engineering services in connection with the development of the subdivisions. *See* Exhibit "A" at ¶4. Arthur and Molly now complain about Urban's involvement on the Beachwalk II development (the "Project").

2.      Arthur and Molly purchased three lots (Lots 24, 25, and 26) from Starrett in the Beachwalk I subdivision. Molly owns Lot 24 and built a house on it. Arthur owns lots 25 and 26. Oakley purchased one lot (Lot 35) from Starrett in the Beachwalk II subdivision.

3.      As part of the Project, Starrett sought and obtained approval on Dune Permit and Beachfront Construction Certificate number 97-010 (the "Permit") under the Dune Protection Act. The Permit authorized a variance that allowed Oakley to build his home where it is now built. *See* Attachment 1 to Exhibit "A." Molly built her home on her lot in the Beachwalk I subdivision and decided to locate her house in the middle of her lot instead of locating it closer to the Gulf of Mexico. As a result, Oakley's house is closer to the water than Molly's.

4.      The Planning and Zoning Commission of the City of Port Aransas, pursuant to the mandates of the Coastal Management Plan for the City of Port Aransas[1], recommended approval of the Permit to the City on November 24, 1997 at its regular meeting. *See* Exhibit "C" at pp. 6-7. The City of Port Aransas approved the Permit on December 18, 1997 at its Regular City Council Meeting. *See* Exhibit "D" at pp. 2-3.

5.      Prior to approval by the City Council, the Texas General Land Office and the State Attorney General's Office reviewed the permit application and recommended approval of the Permit. *See* attachments 1 and 2 to Exhibit "A."

6.      Arthur, upset because the Permit was issued, requested that the City of Port Aransas inspect the construction on Oakley's lot for possible violation of the Permit. Stephen Thompson, the Building Official for the City of Port Aransas, inspected the development on Oakley's lot and found no violation of the permit. *See* Exhibit "E."

---

[1] The Coastal Management Plan for the City of Port Aransas has been certified by the General Land Office, pursuant to Section 15.11 of Title 31 of the Texas Administrative Code, as a plan that complies with the relevant statutory requirements. The Urban Defendants request that the Court take judicial notice of this fact.

**URBAN ENGINEERING'S, THE PERALLA CORPORATION'S, URBAN CONSULTING ENGINEERS, INC.'S AND JAMES URBAN'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**
A-99519.3                                                                                                                              Page  8

7.      Arthur and Molly filed their First Amended Petitions (State Court lawsuits) naming Urban Engineering, the Peralla Corporation, James Urban and other Urban relatives and an unrelated entity on February 23, 2000.  Urban Consulting Engineers, Inc. was added as a party in Plaintiffs' First Amended Complaint on or about June 1, 2000.  The Urban Defendants request that the Court take Judicial Notice of these dates.

## V.

## ARGUMENT AND AUTHORITIES

Arthur and Molly allege that the Urban Defendants conspired with the City to deprive them of certain constitutional rights.  It is unclear whether they are bringing their conspiracy claims under 42 U.S.C. Section 1983 or whether they are asserting a civil conspiracy claim.[2]  In either case, the claims against the Urban Defendants are apparently based on the erroneous contention that Urban was acting as the City Engineer during the Project.  Arthur and Molly claim that, in that capacity, Urban somehow improperly influenced the City's decision to approve the permits, thus denying Arthur's and Molly's alleged rights to an "impartial tribunal."  Arthur and Molly also make vague assertions relating to lack of notice and hearing related to approval of the Permit.  The notice and hearing claims are presumably claims intended to be brought under Section 1983.  To the extent that Arthur and Molly are alleging conspiracy claims against the Urban Defendants under both state law and Section 1983, the Urban Defendants will show that there is no genuine issue of material fact concerning these claims and that they are entitled to judgment as a matter of law.   FED. R. CIV. P.

---

[2] During the scheduling conference before this court, Mr. Luther, attorney for Arthur and Molly, stated that Plaintiffs were asserting a civil conspiracy claim.  However, in Section VI of the First Amended Complaint, Plaintiffs appear to be attempting to trigger Section 1983 by stating that "Starrett, James, the City, and Urban *acting under color of law*" (emphasis added) conspired to deprive them of their "statutory and constitutional rights, *both state and federal, and in violation of 42 U.S.C.A. 1983"* (emphasis added).

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Meadowbriar Home, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996).

## A.    The Summary Judgment Standard

Summary judgment is proper in any case where there in no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324; *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987) (citations omitted). A defendant need not negate the elements of the plaintiff's case. *Celotex*, 477 U.S. at 323. Once the moving party has initially shown its entitlement to judgment by tendering competent evidence, "the non-movant cannot rest on the pleadings." *Green v. Touro Infirmry*, 992 F.2d 537, 538-39 (5th Cir. 1993).

If a defendant seeks summary judgment and initially shows entitlement to it, the plaintiff must point the court to "specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to negate the defense" offered by movant. *Brown v. Texas A&M University*, 804 F.2d 327, 333 (5th Cir. 1986). If a rational trier of fact, based upon the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992). Such a finding may be supported by the absence of evidence necessary to establish an essential element of the non-moving party's case. *See Celotex* at 322; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.) *cert. denied*, 1954 U.S. 1125 (1992). A conclusory assertion made in an affidavit or in a deposition is simply not enough evidence to raise a genuine issue of material fact. *See Lechuga v. Southern Pacific Transportation Co.*, 949 F.2d 790, 798 (5th Cir. 1992) (conclusory statements and affidavits do not

provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment).

**B.      The Statute of Limitations**

The statute of limitations for a state law conspiracy claim is two years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp.1999); *Mayes v. Stewart,* 11 S.W.3d 440, 453 (Tex. App.–Houston [14th Dist.] 2000, pet. denied]; *Cathey v. First City Bank of Aransas Pass,* 758 S.W.2d 818, 822 (Tex. App.--Corpus Christi 1988, writ denied). The two year statute begins to run at each invasion of a plaintiff's interest causing loss and damage in a conspiracy case. *Nelson v. American Natal Bank of Gonzales,* 921 S.W.2d 411, 415 (Tex. App.–Corpus Christi 1996, no writ). Thus, any act committed more than two years prior to the filing of a conspiracy action would be barred by limitations and not recoverable at trial. *Cathey,* 758 S.W.2d at 822. Likewise, the statute of limitations for claims brought under Section 1983 is two years. *Price v. Digital Equipt. Corp.,* 846 F.2d 1026, 1028 (5th Cir. 1988).

Arthur's and Molly's only claim against the Urban Defendants is that they allegedly conspired to deprive them of an "impartial tribunal" and/or notice and hearing during the permitting process. *See* Plaintiffs' First Amended Complaint at Section VI. The Permit was recommended for approval by the Planning and Zoning Commission of the City of Port Aransas on November 24, 1997. *See* Exhibit "C" at pp. 6-7 and Exhibit "A." The City approved the permit on December 18, 1997, at an open meeting of the City Council. *Id.* Exhibit "D" at pp. 2-3 and Exhibit "A." Accordingly, the statute of limitation began to run on Arthur's and Molly's conspiracy claims on, at the latest, December 18, 1997 when the Permit was approved by the City. Arthur and Molly filed this lawsuit

against the Urban Defendants on February 23, 2000–well after the two year statute had run.

Therefore, Arthur's and Molly's civil conspiracy claims are barred by the statute of limitations and

the Urban Defendants are entitled to judgment as a matter of law.

## C.    The State Law Conspiracy Claim

### 1.    The Elements.

The Texas Supreme Court defined civil conspiracy in *Massey v. Armco Steel Co.*, 652 S.W.2d

932, 934 (Tex. 1983), as follows:

> An actionable civil conspiracy is a combination by two or more
> persons to accomplish an unlawful purpose or to accomplish a lawful
> purpose by unlawful means.  The essential elements are: (1) two or
> more persons; (2) an object to be accomplished; (3) a meeting of the
> minds on the object or course of action; (4) one or more unlawful,
> overt acts; and (5) damages as the proximate result.

*Id. See also, Operation Rescue-Natal v. Planned Parenthood of Houston and Southwest Texas, Inc.*,

975 S.W.2d 546, 553 (Tex. 1998).

### 2.    Urban was not acting as City Engineer.

Arthur and Molly are suing the Urban Defendants based on their mistaken belief that James

Urban was acting as City Engineer at the same time Urban Engineering was working on the permit

applications with Starrett.[3]  They allege that this supposed "conflict of interest" was part of a larger

conspiracy to deny them of certain rights.  Section VI of Plaintiffs' First Amended Complaint states:

---

[3] It is unclear from the Plaintiffs' Complaint whether they are claiming that James Urban or Urban
Engineering was acting as City Engineer. *See* Plaintiffs' First Amended Complaint at Section VI.  In any event,
neither James Urban nor Urban Engineering was the City Engineer on the Beachwalk II project, in general, or in
connection with the application for dune permit, in particular.

URBAN ENGINEERING'S, THE PERALLA CORPORATION'S, URBAN CONSULTING ENGINEERS, INC.'S AND
JAMES URBAN'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
A-99519.3                                                                                    Page 12

"Starrett, James, the City, and Urban acting under color of law, thereby conspired to deny and the City did deny Plaintiffs' their statutory and constitutional rights, both State and Federal."

It is unclear from the Complaint whether Arthur and Molly are contending that the Urban Defendants conspired with the City and others to get the Permit approved, or whether they believe the Urban Defendants conspired to deprive them of notice of the meetings on the Permits. Under either scenario, the cornerstone of Arthur's and Molly's conspiracy complaint is that Urban was acting as City Engineer on the Project. Molly stated in her deposition that if Urban was not acting as City Engineer, she would not have a complaint against them. The following is an excerpt from Molly's deposition:

> Q:    And if Urban Engineering was only working for Mr. Starrett and not acting as city engineer you wouldn't have a complaint against them; is that correct?
>
> A:    Correct.

Exhibit "F" at p. 91, lines 19-23.

Urban was not acting as City Engineer during the Project. *See* Exhibit "A" at ¶ 4. James Urban made that clear to the City in connection with his services on the Project when he informed the Planning and Zoning Commission that Randy Thompson was the City Engineer involved in the Project. James Urban stated:

> First of all, something we haven't been doing in the past and I want to make sure everybody realizes is that, as you know, I act for the City as a City Engineer. And in the past, Tom has asked me to notify the City on ones I'm acting on behalf of Mr. Starrett. Randy Thompson is acting as y'all's engineer (inaudible).

*See* Exhibit "B" at p. 6; Exhibit "A" at ¶ 5.

Later in that same meeting, the Chairman of the Planning and Zoning Commission, Mike Hall, stated with respect to the Project "Now, as Jim Urban pointed out, this project has been looked over by Mr. Thompson as our City Engineer." *See* Exhibit "B" at p. 13.[4]

The evidence offered by the Urban Defendants conclusively shows that Urban was not acting as City Engineer. Further, and in the alternative, Arthur and Molly have brought forward no evidence, other than the conclusory assertions in their First Amended Complaint, to refute this. The Urban Defendants are, therefore, entitled to judgment as a matter of law against Plaintiffs' conspiracy claim.

### 3. The permitting process requires many levels of approval-but approval by the City Engineer is not required.

The conspiracy Arthur and Molly allege must necessarily extend beyond the meeting rooms of the City Council and Planning and Zoning Commission of Port Aransas. Although neither the Port Aransas Coastal Management Plan nor the Dune Protection Act require the review of an application for a dune permit by a City Engineer, review by the General Land Office and the State Attorney General's Office is required. 31 TEX. ADMIN. CODE §15.3(s)(6); Exhibit "A" at ¶ 6. Before the City Council took even one vote to approve the Permit, the permit application had been reviewed by both the Texas General Land Office and the State Attorney General's office. Both the General Land Office and the Attorney General's Office independently recommended that the City approve the permit. The General Land Office recommended approval on December 4, 1997. *See* attachment 1 to Exhibit "A." The Attorney General's Office recommended approval on December 11, 1997. *See*

---

[4] The Urban Defendants anticipate that Arthur and Molly may suggest that others were acting as City Engineer. However, we direct the Court's attention to the transcripts of hearings referenced above where the City acknowledged that Randy Thompson was acting as City Engineer.

attachment 2 to Exhibit "A." Nowhere in their complaint do Arthur and Molly allege any corruption or wrongdoing on the part of either of those agencies, therefore the court should assume that the decisions of those bodies are valid.

It is apparent that Arthur and Molly have concocted a conspiracy theory that is devoid of method or motive. First, since approval by the City Engineer is not required in getting the Permit issued, it is hard to imagine what kind of substantive impact Urban's blessing (assuming for the sake of argument only that Urban was acting as City Engineer) would have had on the approval process. Likewise, other than the conclusory assertions made in the First Amended Complaint, Arthur and Molly have presented no evidence of any kind of agreement between the Urban Defendants and any other party to deny Arthur and Molly notice or a hearing on the Permit.

4.    **The City complied with the statutory requirements regarding notice and hearings.**

Because no special provisions in the Dune Protection Act dictate notice or public hearing requirements specific to the permitting process, the default rules of the Open Meetings Act apply. Those rules mandate that, "every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T. CODE ANN. § 551.002 (Vernon 1994). "A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV'T. CODE ANN. § 551.041. "The notice of a meeting of a governmental body must be posted in a place readily accessible to the general public at all times for at least 72 hours before the scheduled time of the meeting . . . ." TEX. GOV'T. CODE ANN. § 551.043. The hearings in which the Permit was recommended and approved were held in full compliance with the Open Meetings Act. Any action related to the Permit was listed on the agenda

for the meetings at which the action occurred and the agendas were posted prior to the meeting. *See* Exhibits "G" through "K." Arthur and Molly could have attended the meetings, but elected not to do so. Arthur and Molly apparently argue that the Dune Protection Act obligated the City Council to give them personal notice. However, nowhere in the language or legislative history of the Act is the requirement that an individual in Arthur's or Molly's position receive personal notice of another individual's application for a dune permit.

### 5.     There was no unlawful, overt act.

When the purpose to be accomplished in a conspiracy is lawful, the means to accomplish it must be unlawful. *First State Bank v. Keilman*, 851 S.W.2d 914, 925 (Tex. App.–Austin 1993, writ denied). Arthur and Molly have presented no evidence that the Urban Defendants undertook any act to deny them notice or a hearing on the Permit. Arthur and Molly, therefore, are left to contend in a vacuum that the City, the Urban Defendants and the other Defendants were conspiring to get the Permit approved–a lawful act. Arthur and Molly must therefore prove "unlawful means." In furtherance of the conspiracy, they contend that Urban recommended approval of the Permit to the City while it was acting as City Engineer. Putting aside the fact that Urban was not acting as City Engineer for a moment, Arthur and Molly have still not alleged any unlawful act by any of the Defendants. Assuming for the sake of argument that Urban was the City Engineer and that it also recommended approval of the Permit, Arthur and Molly have not pled any statutory or common law violation arising out of that alleged conduct. Arthur and Molly simply attempt to conjure a conspiracy out of coincidental, but inconsequential, facts, and ask the court to make unqualified inferences based on inaccurate assumptions. Arthur and Molly must present evidence of specific

unlawful acts taken in furtherance of the conspiracy. They have not done this. The specious conspiracy claim must fail as a matter of law.

> ### 6. Arthur and Molly have not shown proximate cause for their damages, if any.

Arthur and Molly have presented no evidence that any damages they claim were caused by the alleged conspiracy between the City and the Urban Defendants. In order to prevail on a conspiracy claim, the plaintiff must show that its damages were a proximate result of the conspiracy. *See Massey*, 652 S.W.2d at 934. As stated above, both the General Land Office and the State Attorney General's Office independently recommended approval of the Permit to the City Council. Arthur and Molly have presented no evidence that the outcome would have been any different had they attended the hearings on the Permit. In fact, the statute required that both the General Land Office and the State Attorney General's Office review the Permit before it was approved. Both of those agencies accepted the Permit.

For the above reasons, the Urban Defendants are entitled to judgment as a matter of law on the state law conspiracy claim.

### D. The Section 1983 Claims

> ### 1. The basis of the claim.

Section 1983 provides a remedy for violations of the United States Constitution and certain United States statutes. *Maine v. Thiboutout*, 448 U.S. 1 (1979). The basis for Arthur's and Molly's Section 1983 claim is apparently that the Urban Defendants conspired with the City to get the Permit

approved and, in the process, their procedural due process rights were violated. Specifically, they claim, they were deprived of an impartial tribunal with respect to issuance of the Permit.[5]

Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . .subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. §1983 (West 2000).

To prevail on their Section 1983 conspiracy claim, Arthur and Molly must establish 1) the existence of a conspiracy involving state action and 2) a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Brown v. City of Galveston*, 870 F. Supp. 155, 160 (S.D. Tex. 1994) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1186 (5th Cir. 1990)).

## 2. Arthur and Molly were not deprived of any rights by anyone acting under color of state law.

To state a claim under Section 1983, the plaintiff must show that the alleged depravation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds)); *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Resident Council of Allen Parkway Village v. HUD*, 980 F.2d 1043 (5th Cir. 1993); *Rideau v. Jefferson County*, 899 F. Supp. 298, 303-4 (E.D. Tex. 1995).

In an attempt to meet the "color of law" requirement, Arthur and Molly rely on the theory that

---

[5] Plaintiffs' allegations of depravation under the Dune Protection Act and the Texas Constitution are not, standing alone, protected by Section 1983. *See Jones v. Diamond*, 594 F.2d 997, 1011 (5th. Cir. 1979) (holding mere violations of state law to be insufficient to uphold a claim under Section 1983).

Urban conspired with Starrett and the City to get the Permit approved while Urban was acting as City Engineer.  As discussed in detail above, Urban was not acting as City Engineer on the Project.  If Urban was not acting as City Engineer, Arthur and Molly must prove that Urban was involved in a conspiracy involving state action.  *Brown*, 870 F. Supp. at 160.  In other words,  Arthur and Molly must show the "existence of an agreement between private and public defendants to commit an illegal act."  *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp.2d 825, 853-4 (S.D. Tex. 1999). The allegations in the Complaint do not support this conspiracy claim.  Plaintiffs' First Amended Complaint alleges that Urban prepared the City of Port Aransas Coastal Management Plan.  Recital of this fact adds no weight to the section 1983 claim.  Indeed, the State of Texas has reviewed and certified the Port Aransas Coastal Management Plan. 31 TEX. ADMIN. CODE § 15.11 (a)(3) (Texas General Land Office, Coastal Area Planning).   The General Land Office determined that the Port Aransas Coastal Management Plan, along with several others, was consistent with state law.  *Id.*

Arthur and Molly further claim that Urban prepared applications for dune permits for Starrett. Urban admits it assisted with preparation of the permits.  However, Urban was acting in a private, individual capacity when preparing the permits.  *See* Exhibit "A" at ¶ 4.  The single "depravation" alleged by Arthur and Molly is the violation of procedural due process based on failure to receive notice and/or a public hearing under the Dune Protection Act.  Arthur and Molly must produce evidence to show that Urban came to an agreement with the City to deprive them of the notice required by statute.  The Permit was considered in public meetings before both the Planning and Zoning Commission and the City Council.  Exhibit "A" at ¶¶ 5-6.  The meeting at which the Permit was approved  was conducted in full compliance with the Open Meetings Act.

3.     **Arthur and Molly have not identified a protected "life, liberty, or property" interest.**

Arthur and Molly are alleging violations of their procedural due process rights as the foundation for their Section 1983 claim.  To prove a procedural due process violation, a plaintiff must: (1) identify a protected "life, liberty, or property" interest; *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th. Cir. 1991) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)); (2) prove that government action resulted in a depravation of that interest.[6]  *Id*; and (3) show that the government did not provide the proper procedural protection that was due in the particular situation. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).[7]

Arthur and Molly have not identified a protected "life, liberty or property interest."  They claim that they were, ". . . entitled as littoral owners, under due process and equal protection, to an impartial tribunal determining grounds for granting the Permits" *See* Plaintiffs First Amended Complaint at Section VI.  They further allege that, "the injuries and losses are continuing and in the event of storm surge could be disastrous.  The real property rights involved are unique and irreplaceable, and it is difficult to accurately measure in monetary terms the damages caused by Oakley's conduct." *Id*. at Section 18.  Arthur's and Molly's vague declarations can be broken down into three alleged property rights: (1) the general right to an "impartial tribunal;" (2) the statutory right to a public hearing under the Dune protection Act; and (3) the right to enjoy property without a neighboring landowner engaging in activity that causes a "weakening of the Critical Dune Line."

---

[6]  The government action part of the inquiry collapses into the "color of law" requirement, and was addressed above. *See Lugar v. Edmonson Oil Co*, 457 U.S. 922 (1982).

[7]     As discussed above, the City did comply with the applicable provisions of the Open Meetings Act with respect to the permitting process.

With respect to the general right of an impartial tribunal, as discussed above, there is no evidence that the permitting process was not impartial. Urban was not acting as City Engineer. The application for the Permit was reviewed by the Planning and Zoning Commission for the City of Port Aransas, the City Council, the General Land Office and the Texas Attorney General's Office and considered in meetings held in compliance with the Open Meetings Act. Simply stated, Arthur and Molly cannot prevail on this claim.

Arthur and Molly claim a statutory right to a hearing under the Dune Protection Act. However, a right to a hearing (if one exists at all), is not a protected property interest. As a matter of law, "a party seeking to demonstrate a property interest entitled to protection under the due process clause cannot 'simply rely upon the procedural guarantees of state law or local ordinance.'" *Double I Limited Partnership v. Plan & Zoning Comm'n of Glastonbury*, 588 A.2d 624, 631 (Conn. 1991) (quoting *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541-3 (1985). In other words, to have a procedural due process cause of action, the plaintiff must establish a protectable property interest separate and apart from the [procedural] rules themselves. *Alford v. Dallas*, 738 S.W.2d 312, 316-17 (Tex. 1987) (citing *Board of Regents v. Roth*, 408 U.S. 564, 570 (1972)). Indeed, the Gochmans are not littoral landowners as alleged in their Complaint. Thus, Arthur and Molly must specifically identify the substantive property interest that underlies the vague reference to a "public meeting" in § 63.056(a) of the Dune Protection Act.

Plaintiffs claim the right to enjoy property without a neighboring landowner engaging in activity that causes a "weakening of the Critical Dune Line." "Critical Dune Line" is not defined in

the Dune Protection Act, the City of Port Aransas Coastal Management Plan, or the Texas Administrative Code. Plaintiffs cite § 63.091 of the Dune Protection Act, which reads as follows:

> *Unless a permit is properly issued authorizing the conduct,* no person may damage, destroy, or remove a sand dune or portion of a sand dune seaward of a dune protection line or within a critical dune area or kill, destroy, or remove in any manner any vegetation growing on a sand dune seaward of a dune protection line or within a critical dune area.

TEX. NAT. RES. CODE ANN. § 63.091 (Vernon 1999) (emphasis added).

The italicized phrase that begins the above section makes it abundantly clear that Arthur and Molly cannot claim a statutory entitlement to prevention of activity that impacts a sand dune. If a permit is properly issued, the person given the permit can engage in precisely the activity that Arthur and Molly complain of. Arthur and Molly's only avenue is to claim that the Permit was not "properly" issued. It is exclusively the job of the Land Commissioner and Attorney General to investigate and enforce the Dune Protection Act. Since Arthur and Molly have not named either of those parties as co-conspirators, the court should assume that the decisions of both the Land Commissioner and Attorney General are valid. Even if the City Council actually conspired with Urban, the independent judgment of the Land Commissioner and Attorney General that the permit was properly issued should conclusively establish that fact and negate any entitlement whatsoever.

Urban is, therefore, entitled to judgment as a matter of law on the Section 1983 claim, because (1) Urban was not acting as City Engineer; (2) Arthur and Molly have not presented evidence of any agreement between private and public defendants to commit and illegal act, 3) Arthur and Molly have not shown the depravation of a protected right, and (4) Arthur and Molly rely on mere conclusory allegations of conspiracy which are insufficient to survive a motion for summary

judgment.  For the above reasons, the Urban Defendants are entitled to summary judgment as a matter of law on the Section 1983 conspiracy claim.

**E.      No Standing**

Arthur and Molly have claimed that the Permit was improperly issued by the City and that they are, therefore, entitled to an appeal under the Dune Protection Act.  *See* Plaintiffs' First Amended Complaint at Section VII.  Section 63.151 of the Act provides a right of appeal to state district court to a littoral owner aggrieved by a decision of the governing body of a municipality made under the Act.

Arthur and Molly are evidently attempting to create standing to bring their claims by referring to themselves as "littoral owners." *See* Id. Arthur and Molly are not littoral owners.  Littoral rights are rights concerning properties that abut an ocean, sea or lake.  *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 646 (Tex. App.–Austin 1981, writ ref'd n.r.e.);  BLACK'S LAW DICTIONARY 645 (6th ed. 1991).  Arthur and Molly do not own the property abutting the Gulf.  When Arthur bought the lots, he deeded that property to the City of Port Aransas. *See* Exhibit "L." As such, the City of Port Aransas, not Arthur and Molly, are the littoral owners protected by the Act. *See* Exhibit "A" at ¶ 8. Therefore, Arthur and Molly do not have standing to bring their claims under the Dune Protection Act.

## VI.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Urban Engineering, The Peralla Corporation, Urban Consulting Engineers, Inc. and James Urban respectfully request that this Court:

1.      Grant their Motion in its entirety;

2.      Dismiss all claims by Plaintiffs against Urban Engineering, the Peralla Corporation,

Urban Consulting Engineers, Inc. and James Urban;

3.      Tax all costs of court against Plaintiffs; and

4.      Award Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc.

and James Urban such other and further relief, both at law or in equity, to which they may show

themselves justly entitled.

                        Respectfully submitted,


                        Matthew J. Sullivan
                        Attorney-In-Charge
                        State Bar No. 19488325
                        Andrea L. Sloan
                        State Bar No. 90001678

                        HAYNES AND BOONE, LLP
                        600 Congress Avenue, Suite 1600
                        Austin, Texas 78701
                        512/867-8400 - telephone
                        512/867-8470 - telecopier

                        ATTORNEYS FOR
                        URBAN ENGINEERING, THE PERALLA
                        CORPORATION, URBAN CONSULTING
                        ENGINEERS, INC. AND JAMES URBAN

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served on the following parties by certified mail, return receipt requested, in accordance with the Federal Rules of Civil Procedure on the 17 day of July, 2000:

Max J. Luther, III, Esq.
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, TX 78470-0165

Edmund Cogburn, Esq.
Dow, Cogburn & Friedman, PC
9 Greenway Plaza
Houston, TX 77046

Jorge C. Rangel, Esq.
The Law Offices of Jorge C. Rangel, P.C.
P.O. Box 2683
Corpus Christi, TX 78403-2683

E.R. Fleuriet, Esq.
The Fleuriet Schell Law Firm, L.L.P.
621 East Tyler
Harlingen, TX 78550

James F. McKibben, Jr., Esq.
Barger, Hermansen, McKibben & Villarreal, L.L.P.
800 North Shoreline Blvd.
Suite 2000 - North Tower
Corpus Christi, TX 78401

Michael Gene Morris, Esq.
5350 S. Staples, Suite 222
Corpus Christi, TX 78411

Fred Dreiling, Esq.
Law Offices of Fred D. Dreiling
Bank of America, Suite 714
500 North Water Street
Corpus Christi, TX 78471

_____
Matthew J. Sullivan

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND | § | |
| MOLLY GOCHMAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | CV ACTION NO. C-00-126 |
| STANLEY A. STARRETT, JR. | § | |
| KEN OAKLEY, URBAN ENGINEERING, | § | |
| A PARTNERSHIP, THE PERALLA | § | |
| CORPORATION, URBAN CONSULTING | § | |
| ENGINEERS, INC., JAMES URBAN AND | § | |
| THE CITY OF PORT ARANSAS, TEXAS, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING URBAN ENGINEERING'S, THE PERALLA CORPORATION'S, URBAN CONSULTING ENGINEERS, INC.'S AND JAMES URBAN'S MOTION FOR SUMMARY JUDGMENT

The Court has considered the Motion for Summary Judgment and argument filed by Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc., and James Urban, the evidence submitted in support thereof, the Response, the evidence submitted in support thereof and the record herein. The Court finds that there is no genuine issue of material fact and that such Motion should be granted as a matter of law.

It is, accordingly, ORDERED, ADJUDGED AND DECREED that Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc., and James Urban (the "Urban Defendants") be, and hereby are, granted summary judgment

ORDER GRANTING URBAN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT                      Page 1
a-100587 1

dismissing with prejudice all of the causes of action asserted against the Urban

Defendants by Arthur and Molly Gochman, that Plaintiffs take nothing by their

claims against the Urban Defendants, and that Urban recover all costs of court.

Signed this ____ day of _____, 2000.


_____
Janis Graham Jack
United States District Judge