United States District Court
Southern District of Texas
FILED

AUG -7 2000

Michael N. Milby, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **ARTHUR GOCHMAN AND** | § | |
| **MOLLY GOCHMAN** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-00-126** |
| | § | **JURY** |
| | § | |
| **STANLEY A. STARRETT, JR.,** | § | |
| **ET. AL.** | § | |

## COUNTER-PLAINTIFFS,
## KEN AND ANDREA OAKLEYS' RESPONSE TO,
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Ken and Andrea Oakley, in their capacity as Counter-Plaintiffs, respond to Plaintiffs' summary judgment motion pursuant to Rule 56, Federal Rules of Civil Procedure, and in support hereof would respectfully show the Court as follows:

### HISTORY

Beachwalk (BW I) and Beachwalk Unit Two (BW II) are residential real estate subdivisions located in Port Aransas (hereinafter Port A), Nueces County, Texas, that have been developed by Defendant Stan Starrett (hereinafter Starrett).

On May 30, 1997, Starrett conveyed lot twenty-four in BW I to Plaintiff Molly Gochman. On the same day, Starrett conveyed lots twenty-five and twenty-six in BW I to Plaintiff Arthur Gochman, Molly Gochman's father. On July 10, 1998, Starrett conveyed lot thirty-five in BW II, the subdivision adjacent to BW I, to Ken Oakley. Copies of Starrett's deeds to Ms. Gochman, Mr. Gochman and Mr. Oakley are attached respectively as Exhibits "1", "2" and "3".

Molly Gochman constructed a "beach house" on lot twenty-four. The Gochmans have not made any improvements to lots twenty-five or twenty-six. The Oakleys built their home on lot

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 1*

55.

thirty-five. Two photographs depicting the homes are attached as Exhibit "4". Molly Gochman's house is the big one, and the Oakley home is the smaller blue one depicted to the left of the Gochman house.

## THE GOCHMANS' STATE COURT LAWSUIT

On April 7, 1999, Arthur Gochman and Molly Gochman filed suit against Ken Oakley and Port A in the 347th District Court, Nueces County, Texas, under Cause Number 99-1891-H. A copy of the Gochmans' Original Petition for Injunction and Mandamus is attached as Exhibit "5". A review of the Gochmans' state court petition reveals that their claims did not include or involve an action involving title to real property; the establishment of an interest in real property, or the enforcement of an encumbrance against real property.     Instead,     the     Gochmans alleged that Ken Oakley destroyed a major portion of a critical sand dune in connection with the construction of the Oakley home. The Gochmans claimed that this alleged sand dune destruction violated the Texas Dune Protection Act (DPA) and/or the dune permit Port A had issued Starrett in connection with the development of BW II.

## THE GOCHMANS' LIS PENDENS FILINGS

On September 9, 1999, and in spite of the fact that their lawsuit did not involve any of the claims delineated by the Texas Lis Pendens Statute, the Gochmans filed a notice of lis pendens against the Oakley property with the Nueces County Clerk. In their lis pendens notice, the Gochmans notified one and all that they had filed suit against Ken Oakley and Port A; that they were seeking damages and the removal of structures built in violation of the DPA; and that they were seeking mandamus to enforce the DPA against the Oakley property, which was specifically identified in the notice. A copy of the September 9, 1999, lis pendens is attached as Exhibit "6".

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 2*

On September 28, 1999, Oakleys' counsel began to write a series of letters to counsel for the Gochmans, demanding that the Gochmans cancel their lis pendens so that the Oakleys could close on their construction loan and permanent mortgage, and move into their new home. Oakleys' counsel made it clear that the lis pendens was illegal, violated Tex. Prop Code Ann., Section 12.007(a) and was contrary to the opinion of the Texas Supreme Court in *Flores vs. Haberman*, 915 SW 2nd 477, (Tex. 1995). Copies of counsel's correspondence to Gochmans' counsel, dated September 28, 1999, October 13, 1999, October 25, 1999, October 27, 1999, and October 28, 1999, are attached collectively as Exhibit "7".

Subsequently, the Gochmans cancelled their illegal lis pendens notice, but only if the Oakleys would sign the October 29, 1999, release which is attached as Exhibit "8". The Oakleys had no choice. A refusal would have proved ruinous. The Gochmans' demand that the Oakleys sign a release before the Gochmans would lift the illegal lis pendens gave new meaning to the, "I'll make him an offer he can't refuse.", negotiating technique. The Gochmans' demand for the release would only have been more coercive if made at gunpoint.

The Gochmans' illegal lis pendens filings did not end on October 29, 1999. Four months after his lawyer had been told by Oakleys' counsel that the September 9, 1999, lis pendens filing was illegal, Mr. Gochman did it again. On February 1, 2000, Mr. Gochman filed a brand new lis pendens against the Oakley property with the Nueces County Clerk. The latest notice is identical to the first, with one curious difference - the new notice is signed by Mr. Gochman instead of his lawyer. The February 1, 2000, lis pendens is attached as Exhibit "9".

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 3*

## THE GOCHMANS' NOTICES OF
## LIS PENDENS ARE ILLEGAL AND VOID
## UNDER THE TEXAS PROPERTY CODE

Arthur Gochman and Molly Gochman have never had an ownership interest in the Oakley property. Arthur Gochman and Molly Gochman have never had any kind of interest, mortgage or encumbrance as to the Oakley property. The Gochmans' lawsuit, as originally filed or as currently pled, has never involved an action or claim involving title, interest or encumbrance as to the Oakley property. The Court is referred to the July 15, 2000, affidavit of Ken Oakley which is attached as Exhibit "10".

A party's right to file a notice of lis pendens is governed by Tex. Prop. Code Ann., Section 12.007(a). A party to an action who is seeking affirmative relief may file a notice that the action is pending <u>during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property</u>. (emphasis added). The Gochman lawsuit involves none of these situations. In interpreting Section 12.007(a) of the Property Code, the Texas Supreme Court has held that a party may file a lis pendens during the pendency of an action involving: (1) title to real property; (2) the establishment of an interest in real property; or (3) the enforcement of an encumbrance against real property. *Flores vs. Haberman*, 915 SW 2nd 477, (Tex. 1995). See *Texas Extrusion Corp. vs. Lockheed Corp.,* 844 F.2nd 1142, 1152 (5th Cir. 1988). In short, the interest asserted in the lawsuit must be one of the three articulated in Section 12.007(a). If it is not, the lis pendens should be cancelled.

Both of the Gochman lis pendens notices are void as a matter of law because the doctrine of lis pendens does not apply where only collateral questions are involved which might ultimately affect the interest of the parties to the involved property. *Flores vs. Haberman, supra.,*

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 4*

915 S.W. 2nd *at* 477;  *Garza vs. Pope*, 949 S.W. 2nd 7, 8, (Tex. App. – San Antonio, 1997, no

writ);  *Olbrich vs. Touchy*, 780 S.W. 2nd 6,7,  (Tex. App. – Houston [14th Dist.] 1989, no writ);

*Khraish vs. Hamed,* 762 S.W. 2nd 906, 907 – 908, (Tex. App. – Dallas 1989, writ denied);  *Moss*

*vs. Tennant,* 722 S.W. 2nd 762, 763, (Tex. App. – Houston [14th Dist.] 1987, no writ);  *Helmsley*

*–Spear of Texas, Inc., vs. Blanton,* 699 S.W. 2nd 643, 645, (Tex. App.. – Houston [14th Dist.]

1985, no writ);  *Milberg Factors, Inc., vs. Hurwitz Nordlicht Joint Venture,* 676 S.W. 2nd 613,

616, (Tex. App.. - Austin, 1984, writ ref'd, n.r.e.,); and *Lane vs. Fritz,* 404 S.W. 2nd 110, 111,

(Tex. Civ. App..- Corpus Christi 1966, no writ).

*Olbrich v. Touchy,* supra., at 780 S.W. 2nd 6, is illustrative of a lis pendens notice being

merely collateral to the issues involved in an underlying lawsuit.  In *Olbrich*, the developers of a

subdivision were sued by adjoining property owners who sought invalidation of the subdivision

and the subdivision plats due to alleged violations of city ordinances and state statutes.  In

connection with their suit the property owners filed lis pendens notices against the subdivision

property.  After the trial court refused to cancel the notices the developers sought mandamus.

In ordering the trial court to cancel the lis pendens notices, the Houston court held that the

property owners could justify the application of the lis pendens statute only if (1) they had an

interest in the subdivision property, or (2) the alleged violations of the city ordinances and state

statute prohibiting the subdivision constituted an encumbrance on the subdivision.

The appellate court noted that the property owners' claims were unsupported by title,

interest, or encumbrance.  In rejecting the property owners' argument that they had an interest in

the subdivision property, the court held that, "Section 12.007(a) suggests that an interest in

property is less than title, but nothing in the statute indicates that an interest extends so far as to

encompass a mere third-party concern about the property." Id. at page 7.  Additionally, the court

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 5*

refused to define an "encumbrance" as broadly as the property owners advocated. Instead, the court held that the adjoining property owners' stake in the subdivision property was only collateral, and although concerned about the subdivision, they had no title, interest, nor any right to encumber subdivision property.  Consequently, the court held that the adjoining property owners had no standing to employ the restrictions of Property Code, Section 12.007(a), and no right to bind the developers' property with a lis pendens notice.

In the same vein, the Gochmans' claims are unsupported by title, interest or encumbrance. The Gochmans' mere concerns regarding the Dune Protection Act and/or permit violations they claim do not rise to the level of an "interest" or "encumbrance" as contemplated by Property Code, Section 12.007(a). The Gochmans' "stake" in the Oakley property is merely collateral to the litigation. The Gochmans, property owners in a subdivision adjacent to BW II, have no standing to employ the restrictions of the lis pendens statute, and have never had the right to bind the Oakleys' property with a lis pendens notice.

**THE FRAUDULENT RECORDS STATUTES -**
**TEX. CIV. PRAC. & REM. CODE ANN.,**
**SECTION 12.001, ET. SEQ. AND**
**TEX. GOV'T. CODE ANN., SECTION 51.901, ET. SEQ.**

In 1997 the Texas Legislature enacted a statute that has, as its central purpose, the imposition of liability for the filing of a fraudulent lien or claim against real property. Tex. Civ. Prac. and Rem. Code Ann., Section 12.001, et. seq.  The Act  applies to a cause of action that accrues on or after its effective date - May 21, 1997.

In relevant part, Section 12.002(a) of the Act provides that a person may not make, present, or use a document or other record: (1) with knowledge that the document is a fraudulent lien or claim against real property or an interest in real property; (2) with intent that the document

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 6*

CutePDF - www.fonine.com

be given the same legal effect as a court record or document of a constitutionally created court or another entity listed in Section 37.01 of the Texas Penal Code, that evidences a valid lien or claim against real property or an interest in real property; and (3) with intent to cause another person to suffer physical injury, financial injury, mental anguish or emotional distress. (Section 37.01 (2) of the Texas Penal Code provides that a, "Governmental record means: anything . . . received by, or kept by government for information, including a court record". This definition is broad enough to include an illegal lis pendens notice filed with the Nueces County Clerk).

Section 12.002 (b) provides that a person who violates the Act is liable to each injured person for their actual damages or $10,000.00, whichever is greater; court costs, reasonable attorney's fees and exemplary damages as determined by the court. Ken and Andrea Oakley fall squarely within the classification of individuals entitled to sue for damages for violations of the Act. Tex. Civ. Prac. and Rem. Code Ann., Section 12.003(8).

Section 12.006 requires a trial court to award costs of bringing the action if the plaintiff prevails; and if the court finds that at the time the defendant caused the recorded document to be recorded or filed, the defendant knew or should have known that the recorded document was fraudulent, as defined by Section 51.901(c) of the Texas Government Code. Costs include all court costs, attorney's fees, and related expenses of bringing the action, including investigative expenses.

The Texas Government Code provides that a document or instrument will be presumed to be fraudulent if it purports to create a lien or assert a claim against real property or an interest in real property, and is not a document or instrument provided for by the constitution or laws of Texas or the United States. Tex. Gov't. Code Ann., Section 51.901(c)(2)(A). Additionally, a document will be presumed to be fraudulent if it purports to create a lien or assert a claim against

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 7*

real property <u>or an interest in real property,</u> and is not created by implied or expressed consent or agreement of the owner of the  real property.  Tex. Gov't. Code Ann. Section 51.901(c)(2)(B). Finally, a document will be presumed to be fraudulent if it purports to create a lien or <u>assert a claim against real property or an interest in real property</u>, and is not an equitable, constructive or other lien imposed by a constitutionally created state or federal court.  Tex. Gov't. Code Ann., Section 51.901 9(c)(2)(C). (emphasis added). Section 51.901, et. seq., of the Government Code became effective on May 21, 1997.

The Gochman lis pendens notices fall squarely within the confines of the fraudulent records provisions of the Civil Practices and Remedies Code and Government Code. The notices are illegal and void since the Gochmans' claims are not supported by title, interest or encumbrance as to the Oakley property. Accordingly, the notices fall far outside the parameters of Section 12.007(a) of the Property Code.

As a matter of law the Gochman lis pendens notices are fraudulent because the notices clearly fall within the definitions of presumed fraudulent documents or instruments under Tex. Gov't Code Ann., Section 51.901(c)(2)(A),(B) and (C). The Gochman lis pendens notices, on their face, purport to assert a claim or an interest against the Oakley property. Since it is only lawful to file lis pendens in one of the three instances articulated in Section 12.007(a) of the Property Code, it logically follows that the Gochman notices are not documents or instruments provided by state or federal law. Additionally, The Gochmans cannot argue that their first lis pendens was created by any implied or express agreement with Ken and Andrea Oakley. Given the coercive nature of the Gochman release "agreement", any argument that the second lis pendens was obtained with the Oakleys' agreement or consent would be ludicrous. Finally,

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 8*

neither of the Gochman lis pendens notices constitute an "equitable, constructive or other lien" imposed by a constitutionally created state or federal court.

All individuals are charged with notice and knowledge of state and federal law. Accordingly, the Gochmans cannot take the position that they did not know they were asserting a fraudulent claim against the Oakley property in violation of the Civil Practices and Remedies Code and Government Code provisions cited above. When they filed their notices with the Nueces County Clerk it was clearly the Gochans' intention to represent to the public that their lis pendens notices evidenced some type of valid claim or interest against the Oakley property.

Did the Gochmans intend to cause Ken and Andrea Oakley mental anguish, mental distress or financial injury? When the first lis pendens was filed the Oakley home was nearing the end of construction, and closing was scheduled for late October 1999. At closing the Oakleys were going to pay off their construction loan, secure their permanent mortgage financing and move into their new home.  None of these essential transactions would have been possible with a lis pendens notice in place against the property. Everyone knows that, "The effect of a lis pendens on the owner of property is, however, constraining. For all practical purposes, it would be <u>virtually impossible</u> to sell or mortgage the property because the interest of a purchaser or mortgagee would be subject to the eventual outcome of a lawsuit." *Beefy King International, Inc. vs. Veigle*, 464 F.2nd 1102, 1104 (5th Cir. 1972). (emphasis added).

Let's face the facts. By filing lis pendens the Gochmans were trying to secure the benefits of a temporary injunction without taking on the responsibilities of notice, due process, an evidentiary hearing before a live judge, and the burden of posting a bond in the unlikely event they prevailed. The Gochmans should not be rewarded for their "sharp practices". The Gochmans

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 9*

intended to ruin the Oakleys – emotionally and financially – and any argument otherwise would be insulting.

## "CONTRARY" CASE LAW

The Oakleys concede that case law exists that supports the proposition that the filing of a lis pendens notice is privileged. *Bayou Terrace Investment Corp. vs. Lyles,* 881 S.W.2nd 810, (Tex. App. – Houston [1st Dist.] 1994, no writ); *Prappas vs. Meyerland Community Improvement Association,* 795 S.W.2nd 794, (Tex. App. – Houston [14th Dist.] 1990, writ denied); *Sharif-Munir-Davidson Development Corp. vs. Bell,* 788 S.W.2nd 427, (Tex. App. – Dallas 1990, writ denied); *Griffin vs. Rowden,* 702 S.W.2nd 692, (Tex. App. – Dallas 1986, no writ); *Kropp vs. Prather,* 526 S.W.2nd 283, (Tex. Civ. App. – Tyler 1975, writ ref'd n.r.e.); and *Manders vs. Manders,* 897 F. Supp. 972, (S.D. Texas – 1995).

However, these cases were decided before the enactment of the fraudulent records provisions of Section 12.001, et. seq., of the Texas Civil Practices and Remedies Code, and Section 51.901, et. seq., of the Texas Government Code. None of the "contrary" cases were concerned with or even considered the application of the fraudulent records statutes to an illegally filed notice of lis pendens. The effect of the fraudulent records statutes is to strip the Gochmans of the safe harbor of privilege in connection with their illegal lis pendens filings, and the Oakleys urge the Court to give full effect to the intent of the Texas Legislature in enacting these statutes.

Moreover, the majority of the "contrary" cases involve situations where the party who filed the lis pendens notice had an arguable right to do so under the provisions of Section 12.007(a) of the Property Code. Accordingly, these cases are further distinguishable due to the

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 10*

fact that it is undisputed that the Gochmans' lis pendens filings fit none of the three classifications delineated in Section 12.007(a), i.e., title, interest or encumbrance.

In *Bayou Terrace*, supra., at 881 S.W. 2nd 810, the plaintiff had a valid argument that he had an interest in the property at issue. The suit involved an action arising from an agreement to transfer real estate to a holding company. After transferring his real estate to the holding company in exchange for various financial promises the plaintiff sued the holding company alleging fraud, conspiracy to defraud and breach of contract. In connection with his suit the plaintiff filed notices of lis pendens against the property he had conveyed to the holding company, and against another parcel that was intertwined with the underlying agreement. Clearly, the plaintiff in *Bayou Terrace* was acting within the confines of Section 12.007(a) when he filed his lis pendens notices, i.e., he had an arguable claim of title, interest or encumbrance – a claim the Gochmans do not have.

The decision in *Sharif-Munir-Davidson Development Corp. vs. Bell*, 788 S.W.2nd 427, (Tex. App. – Dallas 1990, writ denied) has to be read in conjunction with the underlying suit and opinion in *Bell vs. Sharif-Munir-Davidson Development Corp.*, 738 S.W.2nd 326, (Tex. App. – Dallas 1987, writ denied). In the underlying case, Bell, acting as the guardian of his incompetent father, filed suit against numerous parties seeking to void a real estate conveyance his father had entered into on the grounds that the deed was forged, and the defendants engaged in fraud, overreaching, misrepresentation, forgery, undue influence and deception in acquiring the real estate from Bell's father. In connection with his suit Bell filed a notice of lis pendens against the property his father had conveyed. In filing lis pendens, Bell, unlike the Gochmans, was clearly acting within the parameters of Section 12.007(a) of the Property Code.

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 11*

The opinion in *Griffin vs. Rowden*, 702 S.W.2nd 692, (Tex. App. – Dallas 1986, writ ref'd n.r.e.) fails to specify the circumstances under which the lis pendens notice at issue was filed. The notice itself was not entered into evidence, and there was no evidence of the contents of the notice, its recording date or where it was recorded. In any event, *Griffin* stands for the proposition that a lis pendens filing is privileged in an action for tortious interference with contract, i.e., the filing of a lis pendens notice does not constitute evidence of probative value to support a finding of tortious interference. This issue is not involved in the instant case as the Oakleys' claims do not involve tortious interference.

*Kropp vs. Prather,* 526 S.W.2nd 283, (Tex. Civ. App. – Tyler 1975, writ ref'd n.r.e.) involved a shareholders' derivative suit alleging mismanagement and embezzlement. As part of their suit the shareholders alleged that management had embezzled corporate funds, and invested the money in a tract of land. Claiming equitable title the shareholders filed a lis pendens notice against the real estate that management had purchased with the allegedly embezzled funds. Clearly, the shareholders' allegations fell within the classifications of title, interest or encumbrance, and were within the confines of Section 12.007(a) of the Property Code. Again, this is an argument the Gochmans cannot make.

In *Prappas vs. Meyerland,* 795 S.W.2nd 794, (Tex. App. – Houston [14th Dist] 1990, writ denied), a divided Houston court held that an unauthorized lis pendens filing is privileged, and cannot serve as the basis for a suit for slander of title or tortious interference with contract.

The majorities' reasoning in *Prappas* is inherently flawed and unpersuasive. First, the statutory procedure for canceling a lis pendens, as set out in Section 12.008 of the Property Code, is burdensome to a petitioner, and the extra-statutory relief is, at best, uncertain. Further, in a case

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 12*

such as *Prappas*, where a lis pendens filing occurs on the eve of a real estate closing, it is unlikely that any judicial relief would come in time to save the day.

As for the majorities' concern that Texas courts would become enmeshed in determining whether filings are authorized under the lis pendens statute, such exercises in statutory interpretation are precisely the business of the courts. In any event, seeking the type of judicial relief advocated by the *Prappas* majority will require the courts to engage in the very same exercise the majority was concerned with. Further, there was absolutely no reason why the *Prappas* majority could not have limited an application to an illegal lis pendens. The *Prappas* majority could have made it clear that a ruling denying a privilege to one filing an illegal lis pendens notice was in no way meant to affect other litigation related oral or written communications.

The real danger posed by the *Prappas* decision is not the erosion of the open courts' principle, the doctrine upon which *Prappas* is tenuously based. The real danger is the untrammeled abuse of the lis pendens process resulting in innocent parties suffering significant and unrecoverable damages as a result of an illegal lis pendens filing. Followed to its logical conclusion the *Prappas* holding approaches absurdity. Under the rationale of the *Prappas* two judge majority a party suing another for a sore neck injury sustained in a car accident could, without fear of retribution, file a notice of lis pendens against the defendant's property in connection with a personal injury negligence suit. Under the *Prappas* holding such a filing would be absolutely privileged, even if it deprived the defendant of a multi-million dollar profit from a pending real estate transaction that could not close because of the lis pendens filing.

The Oakleys find Chief Justice Brown's dissent in *Prappas* persuasive. Justice Brown noted that M.C.I.A., the tortfeasor, waited until the last possible minute to record the lis pendens,

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 13*

and did so with the intent to stop the land sale. Justice Brown saw no reason to provide tortfeasors with a privilege to commit a tort. *Prappas* at 795 S.W. 2nd 800. Justice Brown argued that M.C.I.A. could have availed itself of the protections of a temporary injunction, but chose, by the use of lis pendens, to obtain the benefits of an injunction without the burdens of posting a bond. Justice Brown advocated, rightly, that it is simply bad policy to reward the sharp practices employed by a tortfeasor such as M.C.I.A. with a privilege. It was Justice Brown's view that a lis pendens filing fails to qualify as a judicial proceeding, i.e., the hands-on administration of justice in a courtroom by a live judge.

The Fifth Circuit has weighed in on this issue as well. In an opinion which specifically referred to and cited *Prappas vs. Meyerland* and *Griffin vs. Rowden*, the Fifth Circuit stated that it <u>was not</u> persuaded that a lis pendens filing is privileged. *International Shortstop, Inc. vs. Rally's, Inc.,* 939 F.2nd 1257, 1269, (5th Cir. 1991). (emphasis added).

*Manders vs. Manders,* 879 F.Supp. 972, (S.D.Tex-1995), authored by a magistrate, also stands for the proposition that a lis pendens filing is privileged, and that the privilege precludes a property owners' recovery on claims of slander of title and interference with business relationships. However, and as with the cases previously discussed, *Manders* was not concerned with, nor did it consider, the application of the fraudulent records provisions of the Texas Civil Practices and Remedies Code and the Texas Government Code.

Moreover, Magistrate Crone's opinion was based in large part on the *Prappas vs. Meyerland* and *Griffin vs. Rowden* opinions – holdings that were criticized by the Fifth Circuit in *International Shortstop, Inc. vs. Rally's, Inc.,* supra, 939 F.2nd at 1269. (It does not appear that the Fifth Circuit's criticism was brought to Judge Crone's attention). Additionally, the arguments regarding the reasoning and persuasiveness previously made to the Houston court's decision in

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 14*

*Prappas* apply with equal force to *Manders*. In any event, the opinion of a magistrate, no matter how learned, does not operate as binding precedent on this Court.

The Gochmans' argument that privilege protects them from liability for their illegal lis pendens filings flies in the face of their demand for a release of liability. How can the Gochmans seriously argue that a privilege protects them? It was the Gochmans who demanded a release of liability from the Oakleys before lifting their September 9, 1999, lis pendens filing. Why would the Gochmans demand a release from damage claims if they were truly convinced the Oakleys could not maintain a suit for damages over the wrongful lis pendens filings?

## DECLARATORY RELIEF

In their First Amended Counterclaim the Oakleys have invoked the Texas Uniform Declaratory Judgments Act, and seek a declaration from the Court that : (1) the Gochmans' September 9, 1999, and February 1, 2000, lis pendens notice filings constitute a slander and cloud on the Oakleys' title, and were illegal and therefore null, void and of no force and effect; (2) any filing of a lis pendens notice by the Gochmans after September 9, 1999, constitutes a slander and cloud on the Oakleys' title, and is illegal and therefore null, void and of no force and effect; (3) the release the Gochmans forced on the Oakleys before the Gochmans would release their illegal lis pendens notice is null, void and of no force and effect; (4) the Oakleys have not, in any significant manner, violated any material provision of the Texas Dune Protection Act or the Coastal Management Plan; (5) in connection with the construction of their new home, the Oakleys substantially complied with all material provisions of the Texas Dune protection Act and Coastal Management Plan; and (6) the Gochman lawsuit is frivolous, groundless, brought in bad faith and for purposes of harassment.

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 15*

The purpose of the Texas Uniform Declaratory Judgments Act (U.D.J.A) is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal obligations. The U.D.J.A. is to be liberally construed and administered. Tex. Civ. Prac. and Rem. Code Ann., Section 37.002(b). (emphasis added). The U.D.J.A. provides that a court has the power to declare rights, status, and other legal relations. Further, an action or proceeding is not open to objection on the ground that a declaratory judgment is prayed for. Tex. Civ. Prac. and Rem. Code Ann., Section 37.003(a). (emphasis added).

In relevant part, the U.D.J.A. provides that a person interested under a deed, written contract, or other writings constituting a contract or whose rights, status or other legal relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising under the instrument, statute, ordinance or contract and obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. and Rem. Code Ann., Section 37.004. The enumerations of Section 37.004 do not limit or restrict the exercise of the general powers conferred by the U.D.J.A. in any proceeding in which declaratory relief is sought and a judgment will terminate the controversy or remove an uncertainty. Tex. Civ. Prac. and Rem. Code Ann., Section 37.003(c). The U.D.J.A. provides that a court may award costs and reasonable and necessary attorney's fees as are equitable and just. Tex. Civ. Prac. and Rem. Code Ann., Section 37.009.

In support of their argument that the Oakleys are not entitled to maintain a declaratory judgment action counterclaim, the Gochmans have furnished Oakleys counsel with the Dallas court's opinion in *Heritage Life Insurance Company vs. Heritage Group Holding Corp.,* 751 S.W.2nd 229, (Tex. App. – Dallas 1988, writ denied).

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 16*

*Heritage Life* involved a suit on a contract whereby the buyer agreed to purchase all of the stock of an insurance company. In connection with the contract the buyer made a $10,000.00 earnest money deposit. The buyer and the seller had the right to rescind the contract if the Texas Insurance Commission did not approve the sale by September 20, 1985. When Insurance Commission approval had not been obtained by the deadline the buyer demanded the return of the earnest money, and filed suit when the seller refused to return the $10,000.00.

In addressing the issue of the seller's counterclaim under the U.D.J.A. the Dallas court held that the counterclaim merely restated the seller's defenses to issues already raised in the buyer's action for the return of the earnest money. Under these circumstances the seller was not entitled to relief under the U.D.J.A. Citing *Narisi vs. Legend Diversified Investments*, 715 S.W.2nd 49, 51-52, (Tex. App. – Dallas 1986, writ refused n.r.e.), the Dallas court held that a counterclaim under the U.D.J.A. presenting no new controversies but brought solely to pave an avenue to attorney fees, was not proper. *Heritage Life*, 751 S.W.2nd at 235-236.

*Heritage Life* does not support the Gochmans' argument on the U.D.J.A. issue. In their First Amended Counterclaim the Oakleys have not simply restated their defenses to issues previously raised in the Gochmans' current pleading. Instead, Defendant Ken Oakley's defenses are specifically set out in his Second Amended Answer. Moreover, the Oakley counterclaim, unlike the sellers U.D.J.A. counterclaim in *Heritage Life,* presents new controversies for determination. In their counterclaim the Oakleys complain of the Gochmans' lis pendens filings. The Oakley counterclaim presents the issue of the coercive nature of the release "agreement" forced upon them by the Gochmans in connection with the cancellation of the September 9, 1999, lis pendens filing. The Oakley counterclaim raises the issue of the fraudulent records provisions of the Texas Civil Practices and Remedies Code and the Texas Government Code.

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 17*

The Oakley counterclaim presents the issue of the Gochmans' negligence in filing their lis pendens notices. The Oakley counterclaim presents the claim that the Gochmans' lawsuit is groundless. None of these issues are controversies that have been raised by the Gochmans.

## GROUNDLESS LAWSUIT

In their summary judgment motion the Gochmans vaguely claim that the Oakleys' counterclaim does not allege a "groundless" lawsuit. Although this allegation is unclear and is ambiguous, the Oakleys appreciate the opportunity to restate <u>one</u> of the reasons the Gochmans' lawsuit has no basis in fact, or is not warranted by existing law. Stated succinctly, the Gochmans have no right to maintain this private cause of action for alleged violations of the Texas Dune Protection Act.

## TEXAS DUNE PROTECTION ACT

The applicable version of the Texas Dune Protection Act (hereinafter DPA) is codified at Tex. Nat. Res. Code Ann., Section 63.001, et. seq., and the rules and regulations implementing the DPA are at 31 Tex. Admin. Code, section 15.1, et. seq. It is important to note that Port A submitted its dune protection and beach access plan to the Texas General Land Office (hereinafter GLO) over five years ago. <u>The Port A plan has been certified by the GLO as being consistent with state law since February 15, 1995.</u> (emphasis added). 31 Tex. Admin. Code, Section 15.11 (a) (3).

The basis of the Gochmans' complaints as to the Oakleys is that the Oakleys allegedly destroyed a major portion of a critical sand dune in connection with the construction of their home. The Gochmans contend this alleged sand dune destruction violated the DPA, or the dune permit issued Starrett by Port A in connection with the development of BW II. The Gochmans seek money damages against all Defendants, including Oakley. The Gochmans also seek an

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 18*

injunction mandating the removal of the Oakley home. In their current pleading the Gochmans request a judgment which would 1) prevent the Oakleys from further destroying the critical dune on their lot (assuming any such thing was illegally done in the first place); 2) prohibit the Oakleys from maintaining their home on their lot; and 3) require the Oakleys to move their home.

The Gochmans' dilemma is that they do not have the right to prosecute a private cause of action for the Oakleys' alleged DPA or permit violations. The right to bring suit for violations of the DPA rests with and is granted to specified state governmental entities. Tex. Nat. Res. Code Ann., Section 63.181 provides, " The attorney general, individually or at the request of the commissioner, or any county attorney, district attorney, or criminal district attorney shall file in a district court of Travis County or in the county where the violation occurred a suit to obtain either a temporary or permanent court order or injunction to prohibit and remedy any violation of this chapter or any rule, permit or order under this chapter and to collect damages to natural resources injured by the violation and to recover civil penalties." The Gochmans do not fall within this statutory classification of individuals or entities that have been authorized or given the right to bring suit for violations of the DPA. Additionally, a review of the applicable regulations, as promulgated by the GLO, reveals there is no rule conferring a right to maintain or prosecute a private right of action for alleged DPA violations to anyone, including the Gochmans.

The only basis the Gochmans arguably have for contending that they have the right to maintain this "private" lawsuit is that they are "littoral" owners. The relevant statute provides that an aggrieved littoral owner has the right to appeal a commissioners court or a municipal decision under the DPA. Tex. Nat. Res. Code Ann., Section 63.151. However, and contrary to their assertions, the Gochmans are not now, and have never been, littoral owners. A littoral

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 19*

owner is "... the owner of land adjacent to the shore and includes a lessee, licensee or anyone acting under the littoral owner's authority." Tex. Nat. Res. Code Ann., Section 61.001 (6). (emphasis added). The "shore" refers to that strip of land between mean low-tide and mean high-tide, which is ascertained at any place from the average height of the water at that place over a considerable period of time. *Humble Oil and Refining Co. vs. Sun Oil Co.,* 190 F2d 191, 194, (5th Cir. 1951). Moreover, under the civil law the "shore line" boundary of lands adjoining navigable waters is the line marked by the highest tide. Blacks, 5th Ed., 1979.

A review of the plats for BW I and BW II, and Starrett's May 20, 1997 and April 9, 1999, deeds conveying lots sixty-seven and seventy-six to Port A clearly reveals that Port A is the littoral owner. The BW I and BW II plats and the Starrett deeds to Port A are attached as Exhibits "11", "12", "13", and "14". At all times material hereto Port A has owned the land that is located between the Gochman and Oakley lots and the Gulf of Mexico. At all times material to this lawsuit Port A has been the owner of the land adjacent to the shore, not the Gochmans or anyone else, except for Starrett. In their current petition the Gochmans allege that they have rights as littoral owners which all or some of the Defendants have violated, or have conspired to violate. Clearly, the Gochmans' contentions regarding their littoral ownership rights lack any merit whatsoever, and were without any factual or legal foundation when this lawsuit was brought. Any reasonable inquiry into the applicable law and the relevant facts would have revealed that the Gochmans are not now, and have never been, littoral owners. Simply by spending a few hours in the Nueces County Clerk's office, the Gochmans could have easily located the BW I and BW II plats and the Starrett deeds to Port A – before they authorized the filing of this groundless litigation.

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 20*

## FRED D. DREILING AFFIDAVIT

The Court is referred to the Affidavit of Oakleys' counsel attahed as Exhibit "15" for

certification and authentication of the exhibits attached to this Response.

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiffs, Ken and Andrea

Oakley, request that the Plaintiffs' Motion for Summary Judgment be, in all respects, denied,

and further request that the Oakleys' Motion for Summary Judgment, pending before the Court,

be, in all respects, granted.

Respectfully submitted,

**LAW OFFICE OF FRED D. DREILING
BANK OF AMERICA BUILDING
500 NORTH SHORELINE, SUITE 714
CORPUS CHRISTI, TEXAS 78471-1007
E-MAIL: DREILINGFD@AOL.COM
TELEPHONE: 361-883-0186
FACSIMILE:  361-882-4112**

**FRED D. DREILING
FEDERAL I.D. NO. 19239
STATE BAR NO. 06115100**

**ATTORNEY IN CHARGE FOR
KEN AND ANDREA OAKLEY**

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment
Gochman vs. Oakley, et. al.
Page 21*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been delivered to the following counsel of record in accordance with the Federal Rules of Civil Procedure this 7th day of August, 2000.

Mr. Max J. Luther, III                                           **Hand Delivery**
*Law Office of Max J. Luther, III*
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, Texas 78470-0165

Mr. Michael G. Morris                                            **U.S.P.S. Regular Delivery**
*Law Office of Michael G. Morris*
5350 South Staples, Suite 222
Corpus Christi, Texas 78411

Mr. Ed Cogburn                                                   **U.S.P.S. Regular Delivery**
*Dow, Cogburn & Friedman, P.C.*
9 Greenway Plaza
Houston, Texas 77046

Mr. E.R. Fleuriet                                                **U.S.P.S. Regular Delivery**
*The Fleuriet Schell Law Firm, L.L.P.*
621 East Tyler
Harlingen, Texas 78550

Mr. James F. McKibben, Jr.                                       **U.S.P.S. Regular Delivery**
*Barger, Hermansen, McKibben & Villarreal, L.L.P.*
1100 Tower II
555 North Carancahua
Corpus Christi, Texas 78478

Mr. Jorge C. Rangel                                              **U.S.P.S. Regular Delivery**
*The Law offices of Jorge C. Rangel*
P.O. Box 2683
Corpus Christi, TX 78403-2683

Mr. Matthew J. Sullivan                                          **U.S.P.S. Regular Delivery**
*Haynes and Boone, L.L.P.*
1600 One American Center
600 Congress Avenue, Suite 1600
Austin, TX 78701-3236

FRED D. DREILING

*Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 22*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND | § | |
| MOLLY GOCHMAN | § | |
| | § | |
| VS. | § | C.A. NO. C-00-126 |
| | § | JURY |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| KEN OAKLEY, THE CITY OF | § | |
| PORT ARANSAS, ET.AL. | § | |

## ORDER ON PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT

On this the _____ day of _____. 2000, came on to be considered the Plaintiffs' Motion for Summary Judgment and Counter-Plaintiffs', Ken and Andrea Oakleys' Response thereto.

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment be, in all respects, denied.

SIGNED ON THIS the _____ of _____. 2000.

_____
**UNITED STATES DISTRICT JUDGE**

*Order on Plaintiffs' Motion for Summary Judgment*
*Gochman vs. Oakley, et. al.*
*Page 1*

# EXHIBITS NOT IMAGED