United States District Court
Southern District of Texas
FILED

AUG 10 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN <br> & MOLLY GOCHMAN | § § § § | CIVIL ACTION NO.-00-126 <br> JURY |
| vs. | § § | |
| STANLEY A. STARRETT, JR., <br> KEN OAKLEY, URBAN ENGINEERING, A <br> PARTNERSHIP, THE PERALLA <br> CORPORATION, URBAN CONSULTING <br> ENGINEERING, INC. <br> AND THE CITY OF PORT ARANSAS, | § § § § § § § | |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT, STANLEY A. STARRETT, JR.**

MAX J. LUTHER III, P.C. & ASSOCIATES
MAX J. LUTHER III
Texas Bar Number 12706000
Federal I.D. No. 298
1350 Frost Bank Plaza
802 North Carancahua,
Corpus Christi, Texas 78470-0165
Telephone: 361/888-5544
Telecopy: 361/887-6835

DOW, COGBURN & FRIEDMAN, PC
Edmund L. Cogburn
Texas Bar Number 04501000
Federal I.D. No. 2105
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: 713/940-6012
Telecopier: 713/940-6099

ATTORNEYS FOR PLAINTIFFS
ARTHUR GOCHMAN AND MOLLY GOCHMAN

## PLAINTIFFS' EXHIBITS

| EXHIBIT | | PAGE |
|---|---|---|
| A. | Port Aransas Coastal Management Plan | 2 |
| B. | Selected Pages from Deposition of Stanley A. Starrett, Jr. (December 14, 1999) | 2, 4, 11, 12 |
| C. | Selected Pages from Deposition of Steven Thompson (December 3, 1999) | 2 |
| D. | Selected Pages from Deposition of James Urban | 5 |
| E. | Transcript of Excerpt from Audiotape Entitled Regular City Council Meeting (12-18-97); Tape 2 of 2 | 4 |
| F. | Agendas, Minutes and Transcription of Excerpts of Audiotapes of the Planning and Zoning Committee and Meetings of the City Council of the City of Port Aransas | 4 |
| G. | Dune Protection Permit - Unit 2 | 4 |
| H. | Affidavit of Arthur Gochman | 7, 11, 12, 14 |
| I. | Selected Pages from Deposition of Arthur Gochman (May 21, 1999) | 12 |
| J. | Affidavit of Terrence F. Wood | 13, 15 |
| K. | Lease | 14 |

O:\100\100026\0190\ExhibitsStar.msj\080920001836

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE

*Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994) .................................................. 6

*Greene v. Lindsey,* 456 U.S. 444 (1982) ...................................................................... 8

*Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800 (1983) ................................ 8

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) .................... 8

*Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir. 1990) ............................. 6

*Schroeder v. City of New York,* 371 U.S. 208 (1962) .................................................. 8

*Walker v. City of Hutchinson,* 352 U.S. 112 (1956) .................................................... 8

## STATE CASES

*Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983) ................................... 6

## FEDERAL STATUTES

42 U.S.C. § 1983 (West 1994) ............................................................................. 1, 5, 10

U.S. Const. amend. XIV, § 1 ........................................................................................ 8

## STATE STATUTES

*Texas Business and Commerce Code* § 17.45 ........................................................... 14

*Tex. Nat. Res. Code* § 63.14 ........................................................................................ 2

*Tex. Nat. Res. Code* § 63.056 ...................................................................................... 3

*Tex. Nat. Res. Code Ann.* § 63.151 .............................................................................. 7
*Tex. Nat. Res. Code Ann.* § 63.151 (West 1999) ........................................................ 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN § | | |
| & MOLLY GOCHMAN § | | CIVIL ACTION NO.-00-126 |
| § | | JURY |
| vs. § | | |
| § | | |
| STANLEY A. STARRETT, JR., § | | |
| KEN OAKLEY, URBAN ENGINEERING, A § | | |
| PARTNERSHIP, THE PERALLA § | | |
| CORPORATION, URBAN CONSULTING § | | |
| ENGINEERING, INC. § | | |
| AND THE CITY OF PORT ARANSAS, § | | |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT, STANLEY A. STARRETT, JR.**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, ARTHUR GOCHMAN & MOLLY GOCHMAN, hereby respond to Defendant's, STANLEY A. STARRETT, JR. ("Starrett"), Motion for Summary Judgment against Plaintiffs, responding by corresponding number:

I. SUMMARY JUDGMENT STANDARD

1. Plaintiffs do not challenge the law as stated in the Motion.

2. Plaintiffs do not challenge the law as stated in the Motion. Defendants challenge its claim that Starrett is entitled to summary judgment.

II. STATE ACTION BY STARRETT, UNDER 42. U.S.C. § 1983

3. The state action required is, as alleged, action by the City of Port Aransas, an arm of the State of Texas, which granted Dune Protection Permits to Starrett without giving notice or hearing to Plaintiffs, and regardless, by virtue of the participation of Urban

Engineering ("Urban"), the regular City Engineer of Port Aransas. Urban Engineering, acting through Jim Urban and Stephen Gruenwald, represented both Starrett, and the tribunal required to determine the applicability of Dune Protection Permits, namely the City Council of the City of Port Aransas. The City Council, therefore, was not an impartial tribunal, but instead was hopelessly compromised by the influence of its own City Engineer who was employed by Starrett, contrary to his duties as City Engineer.

Urban and the City provided "color of state law" for the degradation of the Critical Dune (on Lot 35, Beachwalk II), contrary to the Dune Protection Act and the General Land Office Regulations, as well as the Coastal Management Plan ("Plan") <u>which was prepared by Urban Engineering for the City of Port Aransas</u>. (Ex. A) A major purpose of the Plan was, purportedly, to provide protection to critical dunes such as the one that was violated by construction in our case.

The deposition testimony of Starrett and of Steve Thompson, the City Inspector, demonstrates the understanding of the parties at the time. (Ex. B & Ex. C) That is, the parties, both Starrett and the City of Port Aransas, the latter as represented by Steve Thompson, the inspector (as well as by Urban), understood that Jim Urban, for Urban Engineering, was advising and acting on behalf of the City while at the same time Urban was appearing and assisting in the preparation of applications for Dune Protection Permits designed to undermine and violate the integrity of the Critical Dune Line. By virtue of being a littoral owner, each of the Plaintiffs have property rights in the critical dunes. Tex. Nat. Res. Code, § 63.14:

Page 2

> A littoral owner aggrieved by a decision of the. . . governing body of the municipality may appeal to a district court in that county.

Plaintiffs have been deprived of those rights because of a conspiracy between the City of Port Aransas, Urban Engineering and Starrett.

    4.    The statement of the law by the Motion, at 4 is not exceptionable. Starrett hired Urban, the City Engineer, the chief technical advisor to the City of Port Aransas, as his engineer. Urban, the very entity which prepared the Coastal Management Plan, whose strictures the City was supposed to enforce, had its services purchased to use its influence and institutional authority for the benefit of Starrett, resulting in the issuance of the Dune Protection Permits to Starrett in violation of the constitutional rights of Plaintiffs. (Ex. D)

    5.    The Motion, at 5, is accurate as far as it goes. It fails to note that Plaintiffs' First Amended Complaint also alleges the <u>failure of notice</u> to Plaintiffs of the applications for Dune Protection Permits as well as failure of notice of a <u>public hearing</u> where they would be permitted to appear and express opposition to such issuance. (See Tex. Nat. Res. Code, § 63.056) Notice and hearing is a basic constitutional right and, likewise, to allow a public servant, such as Urban Engineering, in its capacity as City Engineer, to act on behalf of Starrett, a private party, participating in and, corrupting the process of determining whether or not the Critical Dunes should be invaded, is a denial to Plaintiffs of the equal protection of the law.

    6.    The circumstantial evidence demonstrates this conspiracy, including the testimony of Starrett and Steve Thompson (the City Building Official) that Urban was the City Engineer. (Refer to Ex. B & Ex. C) Urban claimed that Randy Thompson, contrary to

Page 3

the testimony of Starrett, was acting as engineer for the City where Starrett was concerned. Randy Thompson, himself, however, was also in the pay of Starrett, according to Starrett's testimony. (Ex. B) The cynical acknowledgment by Starrett in his testimony that Urban was on his payroll was sufficient circumstantial evidence of the conspiracy among Starrett, Urban and the City to deprive Plaintiffs of their property rights in and to the Critical Dune complex. (Ex. B) Other evidence includes the acts of the City in issuing the Permit before the vote in formal meeting by the City Council, no requirement of alternatives to invasion of the dune, and no findings on adverse (or not) effect on the dune. Further, the influence of Urban is reflected in the fawning of the Board and City Council on Starrett as he appeared before them. (Ex. E)

7.  The statement of Starrett in his Motion (at 7) is disingenuous. He does not mention the fact that the City Engineer, Urban Engineering, as he testified, was the entity who prepared his applications and presented them to the Planning and Zoning Commission (hereinafter, the "Commission"). Plaintiffs have been provided with Agendas and/or the meetings minutes of the Commission of the City of Port Aransas and of the City Council of Port Aransas and nowhere in such minutes does it reflect a <u>hearing</u> by the City Council on such applications. (Ex. F) (The Permits reflect approval on November 24, 1997, <u>before</u> action by the City Council on December 18, 1997.) (Ex. G) Clearly the requirement in the Dune Protection Act for a "public hearing" is not satisfied by any action of the City Council. Never was the General Land Office or the Attorney General notified of the obvious conflict of interest of having the City Engineer, <u>author of the Coastal Management Plan of the City of Port Aransas</u>, on the side of the developer attempting to subvert and invade the dune

Page 4

(as well as evading the dune protection provisions of Urban's own Coastal Management Plan).

8. Again, Starrett is disingenuous (at 8) about the role of Urban Engineering in the applications for the Dune Protection Permits. If we read only the text of Starrett's Motion one would never know that Urban Engineering had any role in the issuance of the Dune Protection Permits. Since Starrett's own sworn testimony verified that Urban was the City Engineer, essentially, the City, acting through its City Engineer, participants in the procured invasion of the critical dune in violation of the Dune Protection Act and its own Plan, which could not be anything else than a conspiracy to violate the Dune Protection Act and thereby deprive Plaintiffs of their rights to due process of law and equal protection of the law.

### ARGUMENT AND AUTHORITY UNDER 1-8

#### Elements of § 1983 Conspiracy

42 U.S.C. § 1983 states,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C.A. § 1983 (West 1994).

Interpreting conspiracy claims under this statute, the Fifth Circuit has held that "[i]n order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*,

918 F.2d 1178, 1187 (5th Cir. 1990). Where the alleged conspiracy involves both private and public actors, the same Court has held that, "[a] private party may be held liable under § 1983 if he or she is a 'willful participant in joint activity with the State or its agents.'" *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th. Cir. 1994) *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). When considering the conspiracy charge, a federal court will look to state law, where the Texas Supreme Court has defined civil conspiracy as follows:

> An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

*Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

A federal court confronted with a section 1983 conspiracy charge involving both public and private individuals must decide:

(1) whether the government officials' conduct in question was objectively reasonable;

(2) whether plaintiff was deprived of any Constitutionally protected rights as a result or in furtherance of such conduct;

(3) whether Defendants had a "meeting of the minds on the object or course of action," with an unlawful means to a lawful end or with a lawful means to an unlawful end.

<u>Section 1983 Civil Rights Violations</u>

In the case at hand, Plaintiffs allege that they have been deprived of their rights to property, due process, and equal protection, as a result of combined governmental and private actions. With respect to property, the construction of the Oakley house within the

protected dune area has weakened the critical dune complex and thereby materially damaged the Gochman property by rendering the Gochman house more vulnerable to damage in the case of erosion, storms or severe weather. With respect to due process, because the Gochmans are adjacent littoral owners, Section 63.151 of the Dune Protection Act gives them the right to appeal any governmental decision issuing a permit to build on protected dune areas.

The Port Aransas Commission issued a permit to build the Oakley house without proper notice to the Gochmans, and anyone else adversely affected, and thus deprived them of their due process right to appeal the decision as littoral owners. With respect to equal protection, when the Commission approved the permit to build in the prohibited area without proper notice, they conferred benefit upon the contractor, Starrett, and the Oakleys, at the expense of the Gochmans, thus showing constitutionally barred special treatment to one party over another.

<u>Property</u>. As a result of the construction of the Oakley house, the Gochman property is worth substantially less than as represented by Starrett. (Ex. H, Affidavit of Arthur Gochman) Furthermore, because the protected dune areas provide foundational support of littoral property, any building upon such areas adversely affects the littoral properties, leaving them more susceptible to damage in the case of erosion, storms or severe weather.

<u>Due Process</u>. The United States Supreme Court has held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well-versed in commercial practice, if its name and address are

Page 7

reasonably ascertainable." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Walker v. City of Hutchinson*, 352 U.S. 112 (1956); *Schroeder v. City of New York*, 371 U.S. 208 (1962); *Greene v. Lindsey*, 456 U.S. 444 (1982). The State of Texas has given littoral owners "aggrieved by a decision of the commissioners court under the [Dune Protection Act]" the right to appeal such decisions. Tex. Nat. Res. Code Ann. § 63.151 (West 1999). From this it follows that because littoral owners have a statutory right to appeal the granting of permits to construct in prohibited areas and that their property stands to be adversely affected, such owners have a right to "actual notice [as] a minimum constitutional precondition" to the issuing of such permits, and a right to be heard.

In the case at hand, the Gochman property has been substantially adversely affected by the construction of the Oakley house in the protected dune area. It has been established that there was no "actual" notification, but only "constructive" notification posted at the local city hall of which the Gochmans were unaware. Considering these circumstances and the fact that the Gochmans' names and address was obviously "reasonably ascertainable," it follows that the Gochmans were deprived of their constitutional right to be notified, comment on, and to appeal the issuing of the permit and the construction of the Oakley house.

<u>Equal Protection</u>. The Fourteenth Amendment to the Constitution forbids any State from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In the case at hand, the issuing of the permit to build on the protected dune area without proper notice to individuals who may be adversely affected,

Page 8

effectively gives special and thus unequal protection to those moving in and benefitting from the permits over those already there, who stand to suffer from the construction. Accordingly, Mr. Starrett and the Oakleys benefitted from the issuing of the permit at the expense of the Gochmans. The system in place whereby inadequate notice is being given, unjustly favors contractors seeking to sell property close to the shore, and adversely affects present littoral owners. Such practice constitutes unequal treatment and is barred by the Fourteenth Amendment.

<u>Conspiracy</u>. The conspiracy theory can be interpreted in two equally sound ways: The actors involved, the City of Port Aransas, Mr. Starrett, Urban, and the Oakleys, all acted together toward the common goal of subverting the Dune Protection Act. Starrett and the Oakleys both wanted to build the Oakley house in the protected dune area, a violation of the Dune Protection Act. Urban, acting both as the engineer who filed the application for a permit to do so and, as the city engineer recommending to the City the approval of the permit, could not have represented the interests of both the people desiring to be issued the permit and the public policy behind the Dune Protection Act, which are naturally in opposition to one another. In line with this, the City could not have properly considered the application when recommended by an individual with biased interests. Furthermore, as discussed above, inadequate notice was given to those citizens who may have been adversely affected by such conduct. Thus the City illegally ignored the policy and substantive requirements of the Dune Protection Act in collusion with Urban, Mr. Starrett, and the Oakleys. By ignoring the Dune Protection Act, the Defendants have

Page 9

accomplished a legal purpose, issuing the permit, through an illegal means, resulting in the deprivation of the Gochmans' constitutionally protected rights.

Qualified Immunity. The only question to ask is whether the issuing of the permit was "objectively reasonable" in the context of present law. As discussed above, the State of Texas has acknowledged that littoral owners have a special, constitutionally protected, property interest in construction upon protected dune areas. Furthermore, the United States Supreme Court has noted that where a property interest stands to be adversely affected, actual notice is required to be served upon the individuals in question. Accordingly, it is objectively unreasonable for a governmental body to issue a permit resulting in the material damage to an individuals' property interest, without proper statutorily required considerations and constitutionally required notice. In this case, the City and the private actors involved both gave inadequate consideration to the permit application and failed to actually notice the Gochmans. In this light, the conduct in question was objectively unreasonable.

## Conclusion

The Defendants acted together with the common goal of subverting the Dune Protection Act, resulting in the deprivation of plaintiff's right to property, due process, and equal protection. As a result, they have violated 42 U.S.C. § 1983, depriving the Gochmans' constitutionally protected rights while acting in a conspiracy under color of law. Defendants have fulfilled all the elements of civil conspiracy and section § 1983. Accordingly, summary judgment should be denied.

Page 10

## III. MISREPRESENTATIONS OF STARRETT

9. Starrett's 9 accurately states the three (3) essential misrepresentations which we have alleged.

10. Attached hereto is the affidavit of Arthur Gochman which demonstrates that his testimony does not, in fact, contradict these allegations. (Ex. H, Gochman Affidavit) It is clear because of the usage of the term "dune line" at one point in the Gochman deposition that his use of the term "vegetation line" was colloquial and not technical, and does not refute his statements that Starrett made representations concerning the dune line. (Ex. I) Starrett, himself, confirms that he discussed with Arthur the "critical dune line" marked as the "Limits of Construction" on Lot 24. (Ex. B)

**A. Starrett Stated Unequivocally That No Adjacent Lot Owner Could Ever Build Closer To the Beach Than Plaintiffs' Building Area Of Critical Dunes**

11. Again, the Affidavit of Arthur Gochman reflects his version of the statements made by Starrett which misled him about the rights of an adjacent landowner to build into the critical dune and block the view of the Gulf of Mexico from the Gochman house. (Ex. H)

12. A review of the Affidavit of Arthur Gochman attached hereto, together with the deposition of Starrett demonstrates clearly that with respect to such representations, both Arthur and Starrett were talking about the same thing, namely the "line of critical dunes." (Ex. H and Ex. B) When these two documents are considered, it is clear that the "vegetation line" was the same as the "dune line" in the mind of Gochman. In truth and in fact, Starrett did make representations regarding a "Line of Critical Dunes" as a reference

Page 11

point from which the Gochman house or any other house in the area could be located. (Ex. B)

### B. Starrett represented the Line of Critical Dunes between the Home Lots and the water was the furthest seaward allowed for building of homes.

13. Again, Starrett makes at 13 the same argument with respect to the confusion of "vegetation line" with the line of critical dunes. The discussion above, responding to Number 12, demonstrates that the Affidavit of Gochman and testimony of Starrett on deposition shows that this a fact question inappropriate for summary judgment.

### C. If Starrett bought the property to the north and developed it that any such development project would have no relation to Beachwalk I either in location or development.

14. Gochman testified, as his Affidavit reflects (Ex. H), and on pages 69-70 of his deposition, "Starrett was looking at the property further over toward Port Aransas." (Ex. I) This is the dissension which is the basis for Paragraph VIII of the First Amended Complaint. Arthur understood Starrett's statements to mean just that, that he would buy property to the north further away from the Beachwalk Subdivision. Arthur thought that he had testified about that, so he saw no reason to go into detail on such testimony again when asked if there were other representations made by Starrett to him. Again, summary judgment is not appropriate. This is a question of fact in which largely, Starrett has admitted much of the statement that Arthur described.

### IV. PLAINTIFFS HAVE SUSTAINED NO DAMAGES AS A MATTER OF LAW.

15. Arthur's Affidavit specifies his opinion as an owner of an interest in the property concerning the diminishment in value based on the misrepresentation of Starrett.

Page 12

It is well-established that the owner of an interest in property can testify to opinion as to value, which can be considered by the court and the trier of fact on that issue. With this Affidavit, value and loss become a question of fact, not a question for summary judgment.

16. The brief affidavits of Terrence F. Wood were no basis for totally disregarding contrary opinions and are, of course, undoubtedly the opinions of a specialist in appraising whose opinion can be considered, but which cannot be considered conclusive. (Ex. J) Summary judgment is not appropriate on this issue.

V. PLAINTIFFS CAN ESTABLISH THE DAMAGES THAT THEY ALLEGE

17. Starrett is entitled to challenge Plaintiffs by a "no evidence" motion. However, evidence exists and should not be ignored in dealing with Starrett's contentions.

18. As set out above, the Affidavit of Arthur Gochman develops a fact question of damages.

19. Starrett attempts here to make an argument based on "Initial Disclosures." It is basically the same argument that he made previously. Arthur's opinion as expressed in his Affidavit is sufficient to make an issue on damages for the purposes of summary judgment.

VI. STARRETT CLAIMS ARTHUR WAS NOT A PURCHASER OF LOT 24

20. Starrett claims that because Arthur did not receive fee title to Lot 24 when the earnest money contract was closed, that he was not a "purchaser" of Lot 24. Without belaboring the question of "purchaser," we point out that the key word is "consumer," as defined in Section 17.45 of the Texas Business and Commerce Code as follows:

> (4) "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state

Page 13

> who <u>seeks</u> or acquires by purchase or <u>lease</u> any goods or services. . . (Our emphasis)

In determining the nature of a "consumer," we look at the definition of "goods":

> (1) "Goods" means tangible chattels or real property purchased or <u>leased</u> for use.

At 17.45(1). (Our emphasis)

Arthur is an "individual" seeking and acquiring, by "lease," "goods," namely, Lot 24. Arthur fits the definition of "consumer," under the DTPA.

21. It is true that Molly Gochman became the fee owner of Lot 24 by purchase from Starrett under the earnest money contract negotiated by Arthur.

22. Arthur became a sublessee of Lot 24, including improvements, committing himself to pay monthly rental payments over a twenty-year period. (Ex. K) This was the consideration for his leasehold estate. The claims of Starrett for "partial summary judgment" have no merit.

## VII. MOLLY GOCHMAN IS A "CONSUMER"

23. Plaintiffs do not dispute the law as stated in Paragraph 23 of the Motion. Plaintiffs affirm that Molly was and is a "consumer."

24. The Affidavit of Arthur Gochman demonstrates that the statements which Starrett made to Arthur Gochman were, effectively, made to Molly Gochman with Arthur acting as her agent in acquiring the property from Starrett. Molly is, therefore, a "consumer" and summary judgment is inappropriate. (Ex. H)

25. By the same token as set forth above, Starrett's representations to Arthur were, effectively the same as making the same representations to Molly because Arthur

Page 14

was her agent and communicated Starrett's misrepresentations to her, upon which she relied. Summary judgment is inappropriate.

## VIII. ARTHUR GOCHMAN HAS SUSTAINED DAMAGES AS TO LOTS 25 AND 26

26. The Affidavit of Terrence Wood with respect to the "fair market value of Lots 25 and 26 is meaningless in determining Arthur's damages. (Ex. J) The measure of damage is not what the property may or may not be worth at this point. But instead it is measured by the difference between what was paid for the lots and what the value would be now if the representation had been, in fact, true. Under the DTPA, Arthur is entitled to "expectancy" damages.

## CONCLUSION AND PRAYER

Starrett's Motion for Summary Judgment is without merit and should be denied. There are substantial fact questions raised by the evidence with respect to each of Starrett's contentions and summary judgment is totally inappropriate.

Respectfully submitted,

MAX J. LUTHER III, P.C. & ASSOCIATES
1350 Frost Bank Plaza
802 North Carancahua,
Corpus Christi, Texas 78470-0165
Telephone: 361/888-5544
Telecopy: 361/887-6835

By: _____
MAX J. LUTHER III
Texas Bar Number 12706000
Federal I.D. No. 298

Page 15

DOW, COGBURN & FRIEDMAN, PC
Edmund L. Cogburn
Texas Bar Number 04501000
Federal I.D. No. 2105
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: 713/940-6012
Telecopier: 713/940-6099

ATTORNEYS FOR PLAINTIFFS
Arthur Gochman and Molly Gochman

Page 16

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served via certified mail, return receipt requested in accordance with the Federal Rules of Civil Procedure to counsel as indicated below on this _10_ day of August, 2000.

Ed Cogburn
Dow, Cogburn & Friedman, PC
9 Greenway Plaza, Suite 2300
Houston, TX 77046

Matthew J. Sullivan
Haynes and Boone, LLP
1600 One American Center
600 Congress Avenue
Austin, TX 78701

Fred D. Dreiling
500 N. Shoreline St., Suite 714
Corpus Christi, TX 78471

E. R. Fleuriet
621 E. Tyler
Harlingen, TX 78550

James F. McKibben, Jr.
Barger, Hermansen, McKibben
    & Villareal, LLP
2000 North Tower
800 N. Shoreline Blvd.
Corpus Christi, TX 78401

Jorge C. Rangel
PO Box 2683
Corpus Christi, TX 78403-2683

Michael Morris
5350 S. Staples, Suite 222
Corpus Christi, TX 78411

O:\100\100026\0190\RESSTAR.MSJ\080920001821

Page 17