United States District Court
Southern District of Texas
FILED

AUG 1 0 2000

Michael N. Milby, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN<br>& MOLLY GOCHMAN | §<br>§<br>§ | CIVIL ACTION NO.-00-126<br>JURY |
| vs. | §<br>§ | |
| STANLEY A. STARRETT, JR.,<br>KEN OAKLEY, URBAN ENGINEERING, A<br>PARTNERSHIP, THE PERALLA<br>CORPORATION, URBAN CONSULTING<br>ENGINEERING, INC.<br>AND THE CITY OF PORT ARANSAS, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
## OF DEFENDANT, CITY OF PORT ARANSAS, TEXAS

MAX J. LUTHER III, P.C. & ASSOCIATES
MAX J. LUTHER III
Texas Bar Number 12706000
Federal I.D. No. 298
1350 Frost Bank Plaza
802 North Carancahua,
Corpus Christi, Texas 78470-0165
Telephone: 361/888-5544
Telecopy: 361/887-6835

DOW, COGBURN & FRIEDMAN, PC
Edmund L. Cogburn
Texas Bar Number 04501000
Federal I.D. No. 2105
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: 713/940-6012
Telecopier: 713/940-6099

ATTORNEYS FOR PLAINTIFFS
ARTHUR GOCHMAN AND MOLLY GOCHMAN

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| ARTHUR GOCHMAN | § | |
| & MOLLY GOCHMAN | § | CIVIL ACTION NO.-00-126 |
| | § | JURY |
| vs. | § | |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| KEN OAKLEY, URBAN ENGINEERING, A | § | |
| PARTNERSHIP, THE PERALLA | § | |
| CORPORATION, URBAN CONSULTING | § | |
| ENGINEERING, INC. | § | |
| AND THE CITY OF PORT ARANSAS, | § | |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT**
**OF DEFENDANT, CITY OF PORT ARANSAS, TEXAS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs, ARTHUR GOCHMAN & MOLLY GOCHMAN (hereinafter referred to as "Gochman"), file this response to the Motion for Summary Judgment (hereinafter referred to as "Motion") filed by the City of Port Aransas, Texas (hereinafter referred to as "City"), responding to each allegation of the Motion by corresponding Roman numeral and letter designation:

**I. Statement of the Case**

The City's statement is accurate with respect to the claims of Gochman against the City. It is inaccurate to say that Gochman's claims are meritless.

## II. Factual Summary

### A. Development of Beachwalk I

The statement at A is accurate so far as Gochman knows. We call to the Court's attention that the "Correction Warranty Deed," referred to at footnote 2 at page 2 of the City's Motion, reserves an easement across the property for the benefit of the lot owners in the Subdivision, the "successors and assigns" of Starrett. (Ex. A)  By virtue of that reservation and conveyance as well as by virtue of the historic definition of the term "adjacent," as hereinafter discussed, Gochman submits that their beachfront lot, Lot 24, Beachwalk Subdivision is "adjacent to the shore," and Plaintiffs are littoral owners. (Ex. B)

### B. Development of Beachwalk II

Defendant Starrett did own land north of and adjacent to the Beachwalk Subdivision. (Ex. C)  The land was adjacent to the shore of the Gulf of Mexico and within the City's limits. (Ex. D)  Starrett applied to the City for Dune Permits for a portion of the land to be developed as Beachwalk II, with another portion conveyed to the City with the same reservations of easement for the anticipated lot owners of Beachwalk II. (Exh C)

### 1. Dune Permit No. 97-008

Starrett filed for Dune Permit 97-008 in Beachwalk II, for "roadways and utilities." (Ex. E), Footnote 4 in the Application states that James Urban of Urban Engineering prepared the Permit application on behalf of Starrett. (Ex. E) The Motion does not mention that Urban Engineering was understood to be the City engineer for the City of Port Aransas, and that Steve Thompson, the City Building Official acting on behalf of the City in connection with dune inspection, considered Urban to be representing the City on the Starrett dune dealings and testified to that by deposition. (Ex. F and Ex. G) It also fails to

Page 2

mention that Urban Engineering prepared the Port Aransas Coastal Management Plan which is the basic document considered by the City in determining whether or not to grant a Dune Permit. (Ex. H) As a result, the advice, influence, and reputation of Urban, the City engineer, was enlisted for the benefit of a private developer to circumvent the Dune Permit process and attack the dune complex itself.

The City refers to a true and correct copy of the Planning and Zoning Commission's (hereinafter referred to as "Commission") September 29, 1997 Minutes. Those Minutes reflect that the "public hearing" was closed after discussion on "final plat request # FP97-007." Following the closing of the "public hearing," the Commission took up the request for Dune Permit 97-008 and voted to recommend approval of the permit to its Motion. (Ex. I)

The City's Motion also includes a true and correct copy of the City Council's October 16, 1997 Minutes when the permit was voted upon. (Ex. J) These Minutes do not show a "public hearing" before the City Council. The Minutes reflect only the Council's acceptance of the recommendation of the Commission approving the Dune Permit request. There was no reference to any "public hearing" on the Dune Permit in either set of Minutes because there was no public hearing thereon by either body.

Finally, the City claims in its Motion that on September 30, 1997, the City forwarded to the General Land Office (hereinafter "GLO") and Attorney General ("AG") copies of the Dune Permit Application (#97-008) and provided both with notice of a public hearing regarding the permit. Examination of the transmittal cover letters to these officials shows no notice of any hearing. (Ex. K) The letters (effectively, each duplicates of the same letter) merely state that the Commission had approved the application on September 29, 1997. These recipients: the GLO, AG, and County Engineer, were not notified of a "public

hearing" as required by the Dune Protection Act. There are other discrepancies. On the document submitted by the City which purports to be the "Dune Protection Permit" issued by the City Council, the City Council did not "check the boxes" which reflect the <u>required findings</u> by the City Council to issue a Dune Protection Permit. The Permit is signed by the Mayor and dated October 16, 1997, <u>but the required findings have not been made.</u> (Ex. E)

    **2.    Dune Permit No. 97-010**

Dune Permit # 97-010 recites approval by the City Council on November 24, 1997, certified by the signature of the mayor, <u>the very same date it was considered by the Commission.</u> (Ex. L) The Minutes of the Commission indicate that there <u>was</u> an "open public hearing" before the Commission on November 24, 1997 involving "discussion on final plat request number FP97008." (Ex. M) <u>Nothing</u>, however, <u>respecting the Dune Permit</u> (#97-010) was considered by the "public hearing." After the "public hearing" was "closed," there was action taken by the Commission on Dune Permit No. 97-010, recommending approval. (Ex. M)

That the Application for Dune Permit No. 97-010 was apparently forwarded to the County Engineer, the GLO, and the AG. (Ex. N) Nowhere in such correspondence is there <u>any</u> notice of a "public meeting." The Dune Protection Permit itself, as noted above, was apparently issued on November 24, 1997, because it was signed by the Mayor bearing such date. Therefore, action was taken on the Dune Permit by the mayor and the City Council before any "notice" went out to the County Engineer, the GLO or the AG or any member of the public on November 25, 1997. There was not even notice of the projected meeting of the Council on December 18, 1997.

The Minutes of the City Council dated December 18, 1997 reflect that there was an "open public hearing" which dealt with Final Plan FP97-007, and Final Plat Request for FP97-008, but no hearing concerning the Dune Protection Permits. (Ex. O) The "public hearing" "was closed" after those two above items were considered and at the "regular Council meeting, the Dune Permit was voted on and "accepted." Nowhere in any of the Minutes, audio tapes, or correspondence is there any mention of a "public hearing" on the Dune Protection Permits. Neither is there any notice to the GLO or the AG of any "public hearing."

Starrett conveyed a strip of Beachwalk II between the beach and the Subdivision to the City reserving easements for the benefit of the lot owners in Beachwalk II. (Ex. D) As set out hereafter, it is the position of Gochman that Oakley, as well as Plaintiffs, had littoral ownership "adjacent to the shore," both by virtue of the easement and also by virtue of the "adjacency," of their lots to the shore, independent of the easement.

### C. Oakley's Home Construction & Plaintiffs' Complaint

Stephen M. Thompson, the City's Building Official, testified about his understanding that Jim Urban, Urban Engineering, was the City Engineer who was in charge of this project. (Ex. G) The GLO was not advised that the Permit was issued without a public hearing with respect to this matter and it was not called to the GLO's attention that it did not receive notice of a public hearing. Likewise, it was not called to the GLO's attention that there had been no alternatives to impacting the critical dune submitted to the City Council for its consideration. They were not even told that it was not practicable to do otherwise. As a result, the City violated its own Coastal Management Plan, with the connivance of its City Engineer, James Urban, Urban Engineering, on the payroll of Starrett, the developer,

along with Randy Thompson, also purportedly acting as City Engineer, also on the payroll of Starrett. (Ex. F)

### III. Summary Judgment Standard

The Motion's statement of the law is appropriate.

### IV. Arguments and Authorities in Involving Summary Judgment

The Motion contends basically that Plaintiffs do not have standing to sue the City to enforce the Act generally. It further contends that Plaintiffs do not have standing to bring this suit against the City. Citing Section 63.161 of the Act, it contends the City is the exclusive entity for contesting the City's decision to issue a Dune Permit or a decision regarding Oakley's construction. Moreover, even though Section 63.151 allows a littoral owner to appeal a permit decision, the City contends Plaintiffs are not littoral owners. The City apparently believes that 42 U.S.C. § 1983 is not applicable. This Statute, of the United States of America, specifically allows a suit to be brought on behalf of an individual for violation of constitutional rights. The argument that Section 63.161 is "exclusive" is frivolous.

### A. Texas Dune Protection Act

**Purpose of the Act.** Accurately, the Motion notes that the Dune Protection Act is designed for the protection of dunes, not for the promotion of development.

**Dune Protection Line**. The Dune Protection Line has certainly been established by the Nueces County Commissioner's Court.

**Nueces County/Port Aransas Interlocal Agreement**. The Nueces County Interlocal Agreement contains at VII an agreement by the City to "formulate and maintain during the pendency of this Agreement, a citizens' advisory committee whose purpose will

Page 6

be to review, consider and make recommendations to the governing body of the City, regarding applications for dune protection permits." (Ex. P) No such advisory committee has ever been formed. The Agreement, however, provides that the Commission may perform the duties of the citizens' advisory committee. Thus the Commission is an integral part of the Dune Protection Permit process. The record reflects that the Commission did not hold public hearings on Dune Protection Permits and did not give notice to the GLO or the AG of its actions on the applications for Dune Protection Permits, contrary to the requirements of the Coastal Management Plan.

**Permit Requirement**. Pursuant to the Interlocal Agreement, a land owner seeking to perform an act prohibited by Section 63.091 must apply to the City for a permit. (Exh P) That is, someone who proposes to invade a critical dune must apply to the City for a Dune Protection Permit.

**Port Aransas Coastal Management Plan: Permit Review**. Relevant portions of the Management Plan (actually the Coastal Management Plan, which was prepared by Urban Engineering on behalf of the City in Code form)[1] obligated the City to require applicants for dune protection permits to submit

> "<u>alternatives</u> to the proposed location of construction on the tract or to the proposed methods of construction which would cause <u>less impairment</u> of beach access or cause fewer <u>or no adverse affects </u>on critical dunes and critical dune vegetation. (Our emphasis) (Ex. Q)

An inspection of the Application for Dune Protection Permit #010 reflects no "alternative" to the proposed location of construction on the tract and, as a result, the City did not follow

---

[1]The entire Port Aransas Coastal Management Plan Ordinance 95-2 is codified at Chapter 16, Article 2 of the Port Aransas Code.

its own ordinance in its haste to comply with the Starrett request.  It is obvious that the impact on the critical dune could have been avoided if any reasonable "alternative" had been provided to the City.  The City did not follow its own Coastal Management Plan.

## B. Plaintiffs' Claims

### 1.    Plaintiffs' Procedural Due Process Claim is, contrary to the contentions of the City, Legitimate and With Merit.

Footnote 10 at page 10 of the Motion claims that we do not assert a violation of substantive due process.  To the contrary, Plaintiffs do assert a violation of substantive due process because as Plaintiffs claim, there has been substantial damage to the Dune that has damaged their property rights for which they are entitled to compensation in a suit for damages.  The Plaintiffs' First Amended Complaint, XVIII, XIX and the Prayer, Section 3.

The statement of the law found at 1 is unexceptionable.  Plaintiffs have identified a property interest and have identified and established that the City failed to provide proper procedural protection.

### a. Right to Notice And Hearing

The argument of the City is based on a claim that Plaintiffs are not "littoral landowners".  Interestingly, the City misstates Section 63.056(a) of the Dune Protection Act which requires a "public <u>hearing</u>" not a public <u>meeting</u> as mentioned at the top of page 12.  Presumably this was an innocent error on the part of the City.  As the Court may deem from the previous commentary, the available summary judgment evidence demonstrates that the City was not in compliance with the Dune Protection Act or the Management Plan and improperly issued the Dune permits without a required public hearing.

The notice of the Commission's regular meeting on November 24, 1997, when 97-010 was considered, demonstrates that no public hearing was held. (Ex. M) It is important to note that the "public hearing" portion of such meeting did not include a discussion of the Dune Protection Permit; and that part of the meeting was listed as being "closed."

Plaintiffs' property right, as littoral owners, in the protection of the Critical Dune, requires that the City give Plaintiffs personal notice of the hearing on the Dune Protection Permits.  Contrary to the allegations of the Motion, the Act clearly requires a "public hearing. . . specific to the permitting process."  The Texas Natural Resources Code, Section 63.051.

In truth and in fact, a review of the Minutes of the Commission meetings and City Council reflect no public hearing on the Dune Permits issued to Starrett for Beachwalk II. There was no provision for public participation and, in fact, the Permits were rushed through with almost no consideration.  There was no discussion of alternatives to avoid cutting into the Critical Dune.  There was no representation that it was not practicable to avoid it.  There were no alternatives proposed by Starrett to avoid cutting into the Critical Dune and, presumably, Urban prepared no such alternatives although Urban's own Coastal Management Plan required it.

**b.**     **Right to Appeal**

Plaintiffs' statutory right to appeal recognizes their property right in the protection of the Critical Dune.  Plaintiffs, littoral owners, were specifically given appellate rights under the Dune Protection Act.  Rhetorically, it might be asked:

> If it is "exclusively the responsibility of the Land Commission and AG to investigate and enforce the Dune Protection Act,"

why does the statute give the right to littoral owners to appeal from the decision of the City Council?

### c.   Right to Impartial Tribunal

Contrary to the statements at page 13 of the Motion, the dune permitting process was not an impartial process. As Stephen Thompson testified, Urban was acting as City Engineer, and his technical expertise with respect to critical dunes and coastal management were employed by Urban to subvert and defeat the purposes of the Coastal Management Plan which Urban itself drafted on behalf of the City.   (Ex. G)   The appearance of Urban on behalf of the developer gave enormous influence and cachet to the proposal to cut into the Critical Dune, a powerful influence that totally destroyed the impartiality of either the Commission or the City Council.   Failure of either one to ask for an alternative to cutting into the Critical Dune demonstrates the partiality and coziness of the relationship between these bodies and Urban, the City Engineer.   Starrett himself testified that Urban was acting as the City Engineer in dealing with his project and that he was, at the same time, working on Starrett's Subdivisions as his engineering consultant.   (Ex. R)

### 2. Plaintiffs' Equal Protection Claim is Well-Taken.

Plaintiffs claim that the City violated their rights to equal protection.   By the partiality of the tribunals which dealt with the Dune Permits, the effect was to treat Plaintiffs' rights as littoral owners in the protection of the Critical Dune differently from the way that individuals in Plaintiffs' position would have been treated had not the City Engineer appeared on behalf of the developer and totally compromised the process.   If Urban had acted as City Engineer on behalf of the City, with a different engineer representing Starrett and no financial obligation by Urban to Starrett, it must be presumed that someone of his

authority and background would have required alternative plans to avoid cutting into the Critical Dune, as required by the Coastal Management Plan prepared by Urban for the City of Port Aransas, or he would have at least required a representation that there was no "practicable alternative."

### 3. Plaintiffs' Section 1983 Civil Conspiracy Claim is Well-Taken.

Plaintiffs have demonstrated that Starrett employed Urban as his engineer on both subdivisions, that Urban, acting on behalf of the City as City Engineer conducted inspections of Beachwalk and that Randy Thompson, supposedly, the engineer acting on behalf of the City, was also on Starrett's payroll. (Ex. R)

Plaintiffs had a property right, protected under § 1983 and the City, acting through its City Engineer, Urban, acted in concert with Starrett to subvert and mutilate the Critical Dune in violation of Urban's own Coastal Management Plan and the Dune Protection Act, as well as the GLO Regulations. Asked by deposition if Urban notified the City of his representation of Starrett, Urban hedged and failed to answer. (Ex. F)

### a. Littoral Right is Protected from Violation by § 1983

Plaintiffs allege that they have been deprived of their rights to property, due process, and equal protection, as a result of combined governmental and private actions. With respect to property, the construction of the Oakley house within the protected dune area has weakened the Critical Dune complex and thereby materially damaged the Gochman property by rendering the Gochman house more vulnerable to damage in the case of erosion, storms or severe weather. With respect to due process, because the Gochmans are adjacent littoral owners, Section 63.151 of the Dune Protection Act gives them the right

to appeal any governmental decision issuing a permit to build on protected dune areas. See discussion below.

The Port Aransas Commission issued a permit to build the Oakley house without proper notice to the Gochmans, and anyone else adversely affected, and thus deprived them of their due process right to appeal the decision as littoral owners. With respect to equal protection, when the Commission approved the permit to build in the prohibited area without proper notice, they conferred benefit upon the contractor, Starrett, and the Oakleys, at the expense of the Gochmans, thus showing constitutionally barred special treatment to one party over another.

Property. As a result of the construction of the Oakley house, the Gochman property is worth substantially less than as represented by Starrett. Furthermore, because the protected dune areas provide foundational support of littoral property, any building upon such areas adversely affects the littoral properties, leaving them more susceptible to damage in the case of erosion, storms or severe weather.

Due Process. The United States Supreme Court has held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well-versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Walker v. City of Hutchinson*, 352 U.S. 112 (1956); *Schroeder v. City of New York*, 371 U.S. 208 (1962); *Greene v. Lindsey*, 456 U.S. 444 (1982). The State of Texas has given littoral owners "aggrieved by a decision of the commissioners court under the [Dune Protection

Act]" the right to appeal such decisions. Tex. Nat. Res. Code Ann. § 63.151 (West 1999). From this it follows that because littoral owners have a statutory right to appeal the granting of permits to construct in prohibited areas and that their property stands to be adversely affected, such owners have a right to "actual notice [as] a minimum constitutional precondition" to the issuing of such permits, and a right to be heard.

In the case at hand, the Gochman property has been substantially adversely affected by the construction of the Oakley house in the protected dune area. It has been established that there was no "actual" notification, but only "constructive" notification posted at the local city hall of which the Gochmans were unaware. Considering these circumstances and the fact that the Gochmans' names and address was obviously "reasonably ascertainable," it follows that the Gochmans were deprived of their constitutional right to be notified, comment on, and to appeal the issuing of the permit and the construction of the Oakley house.

Equal Protection. The Fourteenth Amendment to the Constitution forbids any State from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In the case at hand, the issuing of the permit to build on the protected dune area without proper notice to individuals who may be adversely affected, effectively gives special and thus unequal protection to those moving in and benefitting from the permits over those already there, who stand to suffer from the construction. Accordingly, Mr. Starrett and the Oakleys benefitted from the issuing of the permit at the expense of the Gochmans. The system in place whereby inadequate notice is being given, unjustly favors contractors seeking to sell property close to the shore, and adversely affects

present littoral owners.  Such practice constitutes unequal treatment and is barred by the Fourteenth Amendment.

### b.  Evidence of a Conspiracy

As set forth above, Plaintiffs contend there is ample evidence of conspiracy here. Starrett employed Urban as his engineer on the two subdivisions in question.  At the same time, he was acting as the engineer for Starrett, he was inspecting the subdivisions on behalf of the City.  Urban, the City Engineer who prepared the Coastal Management Plan appeared before the City, filing Applications on behalf of Starrett, a private developer, to subvert the Coastal Management Plan and successfully achieved that aim by cutting into a critical dune without the provision of alternatives to protect the dune from violation. Urban, acting on behalf of the City, as City Engineer, while, at the same time,  representing a private developer, has conspired with Starrett to subvert the Coastal Management Plan prepared by Urban and the Dune Protection Act, as well as the regulations of the GLO. Thus, Urban, the City, and Starrett are all together, acting in concert to violate the Critical Dune.  All of this reflects a conspiracy to violate the property rights of Plaintiffs, as littoral owners, to protection of the Critical Dune as a part of the dune network along the shore of Mustang Island.

The Affidavit of James Urban states only a fact question as to whether a conspiracy existed.  (Ex. S)  The facts set out in the Affidavit are contradicted by the testimony of Starrett and the testimony of Stephen Thompson, as well as James Urban's failure in James Urban's deposition to respond to the question as to whether he properly notified the City that he was representing Starrett and not the City in this matter.  (Ex. F)

## 4. Standing

At page 16 of the Motion, the City gets to the heart of the matter: namely, the standing of Plaintiffs as littoral owners. "'Littoral Owner' means the owner of land adjacent to the shore and includes a <u>lessee, licensee, or anyone acting under the littoral owner's authority</u>." Tex. Nat. Res. Code Ann. § 61.001.4 (West 1999). Black's Law Dictionary defines the word 'adjacent' as, "[l]ying near or close to; sometimes, contiguous; neighboring. *Adjacent* implies that the two objects are not widely separated, though they may not actually touch" BLACK'S LAW DICTIONARY 38 (5th ed. 1979). The Texas Supreme Court has stated that, "[t]he term 'adjacent' is not a word of fixed or definite meaning. The authorities are almost unanimous in according to that term the meaning of 'neighboring or close by' or 'in the vicinity of and not necessarily contiguous or touching upon.'" *State ex rel. Pan Am. Production Co. v. Texas City*, 303 S.W.2d 780, 784 (Tex. 1957); *see also Broun v. Texas & N.O.R. CO.*, 295 S.W. 670, 674-675 (Tex. App.-Beaumont 1927, reh'g den.) (discussing the meaning of 'adjacent' and finding that "near" and "across the street" satisfy adjacency requirements). The same Court has further stated that, "[a]djacency is a question of law which must be determined in the context of the facts of each particular case." *Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex. 1975); *see also Broun*, at 674 (stating that 'adjacent' is a relative and not definite or absolute term).

With respect to the stated general understanding of the word 'adjacent,' the Property (and also lots 25 and 26) is adjacent to the Gulf of Mexico, and hence is littoral property. The only tract of land separating the property from the Gulf of Mexico is the beachfront tract, Lot 67 ("BW"), which Starrett conveyed to the City for public use. The property enjoys a view of and easy access to the Gulf of Mexico. It is as close to the water as any private property in the area and near the shore could possibly be. For these reasons, it is

effectively beachfront property, neighboring, close by, in the vicinity of and thus *adjacent* to the shore, and should accordingly be treated as littoral property.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Respondents, Arthur Gochman and Molly Gochman, respectfully request that the Court deny the Motion for Summary Judgment filed by the City of Port Aransas.

Respectfully submitted,

MAX J. LUTHER III, P.C. & ASSOCIATES
1350 Frost Bank Plaza
802 North Carancahua,
Corpus Christi, Texas 78470-0165
Telephone: 361/888-5544
Telecopy: 361/887-6835

By: _____

MAX J. LUTHER III
Texas Bar Number 12706000
Federal I.D. No. 298

DOW, COGBURN & FRIEDMAN, PC
Edmund L. Cogburn
Texas Bar Number 04501000
Federal I.D. No. 2105
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: 713/940-6012
Telecopier: 713/940-6099

ATTORNEYS FOR PLAINTIFFS
Arthur Gochman and Molly Gochman

Page 16

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served via certified mail, return receipt requested in accordance with the Federal Rules of Civil Procedure to counsel as indicated below on this ____ day of August, 2000.

Ed Cogburn
Dow, Cogburn & Friedman, PC
9 Greenway Plaza, Suite 2300
Houston, TX 77046

Matthew J. Sullivan
Haynes and Boone, LLP
1600 One American Center
600 Congress Avenue
Austin, TX 78701

Fred D. Dreiling
500 N. Shoreline St., Suite 714
Corpus Christi, TX 78471

E. R. Fleuriet
621 E. Tyler
Harlingen, TX 78550

James F. McKibben, Jr.
Barger, Hermansen, McKibben
        & Villareal, LLP
2000 North Tower
800 N. Shoreline Blvd.
Corpus Christi, TX 78401

Jorge C. Rangel
PO Box 2683
Corpus Christi, TX 78403-2683

Michael Morris
5350 S. Staples, Suite 222
Corpus Christi, TX 78411

O:\100\100026\0190\RESPA.MSJ\080920001714

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE

*Greene v. Lindsey,* 456 U.S. 444 (1982) ............................................. 12

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) ........................ 12

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ................. 12

*Schroeder v. City of New York*, 371 U.S. 208 (1962) ................................. 12

*Walker v. Hutchinson*, 352 U.S. 112 (1956) ......................................... 12

## STATE CASES

*Broun v. Texas & N.O.R. Co.,* 295 S.W. 670,674-675
(Tex.App.-Beaumont 1927 reh'g den.) ............................................... 15

*State ex rel. Pan Am Production Co. v. Texas City*, 303 S.W.2d 780, 784 (Tex. 1957) ...... 15

*Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex. 1975) ......................... 15

## FEDERAL STATUTES

U.S. Const. amend. XIV, § 1 ....................................................... 13

42 U.S.C. § 1983 ............................................................... 6, 11

## STATE STATUTES

*Tex. Nat. Res. Code* § 63.051 ....................................................... 9

*Tex. Nat. Res. Code Ann.* § 61.001.4 (West 1999) ................................... 15

*Tex. Nat. Res. Code Ann.* § 63.056(a) ................................................ 8

*Tex. Nat. Res. Code Ann.* § 63.151 (West 1999) ................................. 6, 11, 13

*Tex. Nat. Res. Code Ann.* § 63.161 ................................................. 6

O:\100\100026\0190\TOApa.msj\080920001749

# PLAINTIFFS' EXHIBITS

**PAGE**

A.  Correction Warranty Deed - Starrett to Port Aransas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.  Map - Beachwalk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.  Map - Beachwalk II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D.  Deed - Beachwalk II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

E.  Beachwalk Unit Two Roadway & Utilities - Dune Permit & Beachfront Construction
    Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

F.  Selected Pages from Deposition of James Urban (July 14, 2000) . . . . . . . . . . 2, 5, 11, 14

G.  Selected Pages from Deposition of Steven Thompson (December 3, 1999) . . . . . 2, 5, 10

H.  City of Port Aransas Coastal Management Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  Minutes of Planning and Zoning Commission; Regular Meeting 9/29/97 -
    Port Aransas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

J.  Port Aransas Regular City Council Meeting; 10/16/97 . . . . . . . . . . . . . . . . . . . . . . . . . 3

K.  Letters dated 9/30/97 from Brooks (City Manager) to Nueces County Engineer, Texas
    General Land Office, and Office of the Attorney General . . . . . . . . . . . . . . . . . . . . . . . 3

L.  Beachwalk Unit Two Residential Dune Permit and Beachfront
    Construction Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

M.  Minutes of Planning & Zoning Commission; Regular Meeting 11/24/97 -
    Port Aransas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

N.  Cover letter dated 11/25/97 from Brooks (City Manager) to Nueces County Engineer,
    Texas General Land Office, and Office of the Attorney General enclosing Beachfront
    Construction Certificate and Dune Protection Permit from Starrett . . . . . . . . . . . . . . . . 4

O.  Port Aransas Regular City Council Meeting and Public Hearing; 12/18/97 . . . . . . . . . 5

P.  City/County Dune Protection Permitting Interlocal Agreement . . . . . . . . . . . . . . . . . . . 7

Q.  Chapter 16, Port Aransas Code; Planning and Development . . . . . . . . . . . . . . . . . . . . . 7

R.  Selected Pages from Deposition of Stanley A. Starrett, Jr. (December 14, 1999) . . 10, 11

S.        Select Pages from Affidavit of James Urban  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

O:\100\100026\0190\ExhibitsPA.msj\080920001750