United States District Court
Southern District of Texas
FILED

AUG 10 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN<br>& MOLLY GOCHMAN<br><br>vs.<br><br>STANLEY A. STARRETT, JR.,<br>KEN OAKLEY, URBAN ENGINEERING, A<br>PARTNERSHIP, THE PERALLA<br>CORPORATION, URBAN CONSULTING<br>ENGINEERING, INC.<br>AND THE CITY OF PORT ARANSAS, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.-00-126<br>JURY |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
OF DEFENDANTS AND COUNTER-PLAINTIFFS, KEN AND ANDREA OAKLEY**

MAX J. LUTHER III, P.C. & ASSOCIATES
MAX J. LUTHER III
Texas Bar Number 12706000
Federal I.D. No. 298
1350 Frost Bank Plaza
802 North Carancahua,
Corpus Christi, Texas 78470-0165
Telephone: 361/888-5544
Telecopy: 361/887-6835

DOW, COGBURN & FRIEDMAN, PC
Edmund L. Cogburn
Texas Bar Number 04501000
Federal I.D. No. 2105
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: 713/940-6012
Telecopier: 713/940-6099

ATTORNEYS FOR PLAINTIFFS
ARTHUR GOCHMAN AND MOLLY GOCHMAN

# TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE**

*Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) .................... 5

*Greene v. Lindsey*, 456 U.S. 444 (1982) .................... 7

*Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) .................... 5

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) .................... 7

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) .................... 7

*Schroeder v. City of New York*, 371 U.S. 208 (1962) .................... 7

*Walker v. City of Hutchinson*, 352 U.S. 112 (1956) .................... 7

## STATE CASES

*Broun v. Texas & N.O.R. Co.*, 295 S.W. 670, 674-675
(Tex.App.-Beaumont 1927, reh'g den.) .................... 11

*City of Corpus Christi v. Davis*, 622 S.W.2d 640, 646
(Tex.App.-Austin 1981, writ ref'd n.r.e.) .................... 13

*City of San Antonio v. Humble Oil & Refining Co.*, 27 S.W.2d 868, 870
(Tex.Civ.App.-San Antonio 1930, dism'd by agreement) .................... 2

*Davis v. City of Abilene*, 250 S.W.2d 685, 688 (Tex.Civ.App.-Eastland 1952, writ ref'd) .................... 2

*Edge v. City of Bellaire*, 200 S.W.2d 224, 228
(Tex.Civ,App.-Galveston 1947, writ ref'd) .................... 2

*Hill v. Villareal*, 362 S.W.2d 348 (Tex.Civ.App.-Waco 1962, writ ref'd n.r.e.) .................... 2

*Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) .................... 5

*State ex rel. Pan Am. Production Co. v. Texas City*, 303 S.W.2d 780, 784 (Tex. 1957) .................... 11

*Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex. 1975) .................... 11

## FEDERAL STATUTES

42 U.S.C. § 1983 ................................................. 3, 4, 10

42 U.S.C.A. § 1983 (West 1994) ........................................ 4

U.S. Const. amend XIV, § 1 ............................................ 8

## STATE STATUTES

*Tex. Nat. Res. Code* § 63.011 through 63.152 ........................ 10

*Tex. Nat. Res. Code Ann.* § 61.001.6 (West 1999) .................... 12

*Tex. Nat. Res. Code Ann.* § 63.001.1-8 (West 1999) .................. 12

*Tex. Nat. Res. Code Ann.* § 63.151 (West 1999) ................ 3, 7, 10

*Tex. Nat. Res. Code Ann.* § 61.001.4 (West 1999) .................... 10

## STATE REGULATIONS

General Land Office Regulations § 15.4.b.(1)(B) ....................... 3

## PLAINTIFFS' EXHIBITS

**EXHIBIT**  **PAGE**

A.   Map of Beachwalk ................................................. 3

B.   Map of Beachwalk II .............................................. 3

C.   Deed on Beachwalk ............................................... 3

D.   Deed on Beachwalk II ............................................ 3

E.   Report of James L. Urban (July 12, 2000) ......................... 14

F.   Lease ........................................................... 14

G.   Affidavit of Terrence F. Wood ................................... 15

O:\100\100026\0190\ExhibitsOak.msj\080920001606

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN § | | |
| & MOLLY GOCHMAN § | | CIVIL ACTION NO.-00-126 |
| § | | JURY |
| vs. § | | |
| § | | |
| STANLEY A. STARRETT, JR., § | | |
| KEN OAKLEY, URBAN ENGINEERING, A § | | |
| PARTNERSHIP, THE PERALLA § | | |
| CORPORATION, URBAN CONSULTING § | | |
| ENGINEERING, INC. § | | |
| AND THE CITY OF PORT ARANSAS, § | | |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
OF DEFENDANTS AND COUNTER-PLAINTIFFS, KEN AND ANDREA OAKLEY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs, ARTHUR GOCHMAN & MOLLY GOCHMAN (hereinafter referred to as "Gochman"), file this response to the Motion for Summary Judgment (hereinafter referred to as "Motion") filed by Ken and Andrea Oakley, in their capacities as Defendant and Counter-Plaintiff, and responds by corresponding number to such Motion.

## I. FACTUAL BACKGROUND

### PLATS - BEACHWALK AND BEACHWALK UNIT TWO

The statement at pages 1 and 2 under this heading is accurate. The two plats are properly attached as 1 and 2.

### STARRETT'S WARRANTY DEEDS TO PORT ARANSAS

### LOT SIXTY-SEVEN (67) IN BW

The statement under this heading on page 2 of the Motion is correct.

### LOT SIXTY-SEVEN (72) IN BW II

The statement under this heading on page 2 of the Motion is accurate.

### STARRETT'S WARRANTY DEEDS TO THE GOCHMANS

The statement is accurate.

### STARRETT'S WARRANTY DEED TO OAKLEY

The statement is accurate.

### CONSTRUCTION OF THE HOMES

The statements under this are accurate.

### II. THE OAKLEYS' MOTION FOR SUMMARY JUDGMENT HAS NO MERIT AS TO THE GOCHMANS' LAWSUIT

A.   Plaintiffs have a right to maintain suit against Oakley for acting under a void Dune Protection Permit. A permit issued without compliance with the requirements of law is void. Plaintiffs contend the Permit is void for failure to comply with the Plan, the GLO Regs., and the Act. *See City of San Antonio v. Humble Oil & Refining Co.*, 27 S.W.2d 868, 870 (Tex. Civ. App.–San Antonio 1930, dism'd, by agreement); *Edge v. City of Bellaire*, 200 S.W.2d 224, 228 (Tex. Civ. App.–Galveston 1947, writ ref'd); *Davis v. City of Abilene*, 250 S.W.2d 685, 688 (Tex. Civ. App.–Eastland 1952, writ ref'd; *Hill v. Villareal*, 362 S.W.2d 348 (Tex. Civ. App.–Waco 1962, writ ref'd n.r.e.)   It was issued without notice or hearing to Plaintiffs, littoral owners entitled to be heard, and the statutory requirements for a Dune Protection Permit were not met. The Plan, prepared by Urban, was ignored at the instance of Urban, submitting the applications for dune permits on behalf of Starrett. See Plan, IV. F.1.(requiring showing of no practicable alternative; GLO, Regs. Section 15.4.b.(1) (B) (prohibiting moving sand off the site.) There was no showing to the Commission or the City

Page 2

Council that there was no practicable alternative to cutting into the critical dune which would have no adverse effects on the critical dune. There was no consideration of avoiding the impact on the dune by not cutting into it. See Dune Permit, #010.

At page 4 of the Motion, is raised the issue of "private cause of action." In response to this, Plaintiffs show:

    a.    There is a cause of action under 42 U.S.C. 1983 (the "Civil Rights Act"); and;

    b.    Texas Natural Resources Code, Section 63.151.

Both of these sections provide a private cause of action, each in a different way. The private cause of action found under § 63.151, ("Appeal by littoral owner") was denied Plaintiffs by failure to give them appropriate notice and hearing, and their statutory private cause of action has been merged in their claim for violation of their civil rights to property interests as littoral owners on the shore of Port Aransas. At page 5, the Motion gets to the crux of the matter, by challenging the status of Plaintiffs as "littoral" owners. The Motion concedes that the "relevant statute provides that an aggrieved littoral owner has the right to appeal. . . a municipal decision under the DTPA. Tex. Nat. Res. Code Ann., § 63.151."

The maps at 1 and 2, as well as the deeds from Starrett to the City of Port Aransas demonstrate that the lot owners of each subdivision were given easement access rights to the beach. Ex. A (Map of Beachwalk); Ex. B (Map of Beachwalk II); Ex. C (Starrett Deed on Beachwalk); and Ex. D (Starrett Deed on Beachwalk II) These easement access rights were appurtenant to the ownership of lots in the two subdivisions. By virtue of this alone, it is clear that Plaintiffs are "owner(s) of land adjacent to the shore."

Regardless, the term "adjacent" does not require contiguity to the shore. The owner of property near, but not touching, the shore is a littoral owner under the Dune Protection Act. By virtue of this and by virtue of the easement to the beach Starrett retained for Beachwalk Lot Owners, Plaintiffs have standing as littoral owners to bring this action and pursue claims under Section 1983, against attempts to deny and interfere with Plaintiffs' rights in the Critical Dune.

The legal issues of conspiracy to deny civil rights and littoral rights are developed as follows:

<u>Elements of § 1983 Conspiracy</u>

42 U.S.C. § 1983 states,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C.A. § 1983 (West 1994).

Interpreting conspiracy claims under this statute, the Fifth Circuit has held that "[i]n order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). Where the alleged conspiracy involves both private and public actors, the same Court has held that, "[a] private party may be held liable under § 1983 if he or she is a 'willful participant in joint activity with the State or its agents.'" *Cinel*

Page 4

*v. Connick*, 15 F.3d 1338, 1343 (5th. Cir. 1994) *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). When considering the conspiracy charge, a federal court will look to state law, where the Texas Supreme Court has defined civil conspiracy as follows:

> An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.

*Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

A federal court confronted with a section 1983 conspiracy charge involving both public and private individuals must decide:

(1) whether the government officials' conduct in question was objectively reasonable;

(2) whether plaintiff was deprived of any Constitutionally protected rights as a result or in furtherance of such conduct;

(3) whether Defendants had a "meeting of the minds on the object or course of action," with an unlawful means to a lawful end or with a lawful means to an unlawful end.

### Section 1983 Civil Rights Violations

In the case at hand, Plaintiffs allege that they have been deprived of their rights to property, due process, and equal protection, as a result of combined governmental and private actions. With respect to property, the construction of the Oakley house within the protected dune area has weakened the Critical Dune complex and thereby materially damaged the Gochman property by rendering the Gochman house more vulnerable to damage in the case of erosion, storms or severe weather. With respect to due process,

Page 5

because the Gochmans are adjacent littoral owners, Section 63.151 of the Dune Protection Act gives them the right to appeal any governmental decision issuing a permit to build on protected dune areas. See discussion below.

The Port Aransas Commission issued a permit to build the Oakley house without proper notice to the Gochmans, and anyone else adversely affected, and thus deprived them of their due process right to appeal the decision as littoral owners. With respect to equal protection, when the Commission approved the permit to build in the prohibited area without proper notice, they conferred benefit upon the contractor, Starrett, and the Oakleys, at the expense of the Gochmans, thus showing constitutionally barred special treatment to one party over another.

<u>Property</u>. As a result of the construction of the Oakley house, the Gochman property is worth substantially less than as represented by Starrett. Furthermore, because the protected dune areas provide foundational support of littoral property, any building upon such areas adversely affects the littoral properties, leaving them more susceptible to damage in the case of erosion, storms or severe weather.

<u>Due Process</u>. The United States Supreme Court has held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well-versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Walker v. City of Hutchinson*, 352 U.S. 112 (1956); *Schroeder v. City of New York*, 371 U.S. 208

Page 6

(1962); *Greene v. Lindsey*, 456 U.S. 444 (1982). The State of Texas has given littoral owners "aggrieved by a decision of the commissioners court under the [Dune Protection Act]" the right to appeal such decisions. Tex. Nat. Res. Code Ann. § 63.151 (West 1999). From this it follows that because littoral owners have a statutory right to appeal the granting of permits to construct in prohibited areas and that their property stands to be adversely affected, such owners have a right to "actual notice [as] a minimum constitutional precondition" to the issuing of such permits, and a right to be heard.

In the case at hand, the Gochman property has been substantially adversely affected by the construction of the Oakley house in the protected dune area. It has been established that there was no "actual" notification, but only "constructive" notification posted at the local city hall of which the Gochmans were unaware. Considering these circumstances and the fact that the Gochmans' names and address was obviously "reasonably ascertainable," it follows that the Gochmans were deprived of their constitutional right to be notified, comment on, and to appeal the issuing of the permit and the construction of the Oakley house.

### Equal Protection

The Fourteenth Amendment to the Constitution forbids any State from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In the case at hand, the issuing of the permit to build on the protected dune area without proper notice to individuals who may be adversely affected, effectively gives special and thus unequal protection to those moving in and benefitting from the permits over those already there, who stand to suffer from the construction. Accordingly, Mr. Starrett and the

Page 7

Oakleys benefitted from the issuing of the permit at the expense of the Gochmans. The system in place whereby inadequate notice is being given, unjustly favors contractors seeking to sell property close to the shore, and adversely affects present littoral owners. Such practice constitutes unequal treatment and is barred by the Fourteenth Amendment.

### Conspiracy

The conspiracy theory can be interpreted in two equally sound ways: The actors involved, the City of Port Aransas, Mr. Starrett, Urban, and the Oakleys, all acted together toward the common goal of subverting the Dune Protection Act. Starrett and the Oakleys both wanted to build the Oakley house in the protected dune area, a violation of the Dune Protection Act. Urban, acting both as the engineer who filed the application for a permit to do so and, as the city engineer recommending to the City the approval of the permit, could not have represented the interests of both the people desiring to be issued the permit and the public policy behind the Dune Protection Act, which are naturally in opposition to one another. In line with this, the City could not have properly considered the application when recommended by an individual with biased interests. Furthermore, as discussed above, improper notice was given to those citizens who may have been adversely affected by such conduct. Thus the City illegally ignored the policy and substantive requirements of the Dune Protection Act in collusion with Urban, Mr. Starrett, and the Oakleys. By ignoring the Dune Protection Act, the Defendants have accomplished a legal purpose, issuing the permit, through an illegal means, resulting in the deprivation of the Gochmans' constitutionally protected rights.

## Qualified Immunity

The only question to ask is whether the issuing of the permit was "objectively reasonable" in the context of present law. As discussed above, the State of Texas has acknowledged that littoral owners have a special, constitutionally protected, property interest in construction upon protected dune areas. Furthermore, the United States Supreme Court has noted that where a property interest stands to be adversely affected, actual notice is required to be served upon the individuals in question. Accordingly, it is objectively unreasonable for a governmental body to issue a permit resulting in the material damage to an individuals' property interest, without proper statutorily required considerations and constitutionally required notice. In this case, the City and the private actors involved both gave inadequate consideration to the permit application and failed to actually notice the Gochmans. In this light, the conduct in question was objectively unreasonable.

## Conclusion

The Defendants acted together with the common goal of subverting the Dune Protection Act, resulting in the deprivation of plaintiff's right to property, due process, and equal protection. As a result, they have violated 42 U.S.C. § 1983, depriving the Gochmans' constitutionally protected rights while acting in a conspiracy under color of law. Defendants have fulfilled all the elements of civil conspiracy and section § 1983. Accordingly, summary judgment should be denied.

Page 9

## The Question of Littoral Ownership

Plaintiff have this response to the contentions of Oakley that they are not littoral owners. To be a "littoral owner," the subject property must be adjacent to the shore. The term 'adjacent' has been interpreted by Texas law as commonly meaning "in the vicinity of and not necessarily contiguous or touching upon," depending on the context of the particular situation.

"'Littoral Owner' means the owner of land adjacent to the shore and includes a lessee, licensee, or anyone acting under the littoral owner's authority." Tex. Nat. Res. Code Ann. § 61.001.4 (West 1999).

Pursuant to Section 63.151 of the Texas Natural Resources Code, "littoral owners" have the right to appeal local governing body decisions made under the Dune Protection Act, §§ 63.011 through 63.152 of the Texas Natural Resources Code. In the case at hand, Defendants Urban Engineering, City of Port Aransas, and Ken and Andrea Oakley ("Defendants") have claimed that Plaintiffs, Arthur and Molly Gochman ("Plaintiffs"), are not littoral owners because the property in question, Lot 24 (the "Property"), does not abut the Gulf.

Using the Code definition, the relevant authority strongly supports the meaning of "adjacent" as "nearby". Black's Law Dictionary defines the word 'adjacent' as, "[l]ying near or close to; sometimes, contiguous; neighboring. *Adjacent* implies that the two objects are not widely separated, though they may not actually touch" BLACK'S LAW DICTIONARY 38 (5th ed. 1979). In line with this, the Texas Supreme Court has stated that, "[t]he term 'adjacent' is not a word of fixed or definite meaning. The authorities are almost unanimous in

Page 10

according to that term the meaning of 'neighboring or close by' or 'in the vicinity of and not necessarily contiguous or touching upon.'" *State ex rel. Pan Am. Production Co. v. Texas City*, 303 S.W.2d 780, 784 (Tex. 1957); see also *Broun v. Texas & N.O.R. Co.*, 295 S.W. 670, 674-675 (Tex. App.-Beaumont 1927, reh'g den.) (discussing the meaning of 'adjacent' and finding that "near" and "across the street" satisfy adjacency requirements). With this in mind, the same Court has further stated that, "[a]djacency is a question of law which must be determined in the context of the facts of each particular case." *Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex. 1975); see also *Broun*, at 674 (stating that 'adjacent' is a relative and not definite or absolute term). Thus from this the word 'adjacent' generally means "in the vicinity of," but is subject to considerations of the particular situation.

With respect to the stated general understanding of the word 'adjacent,' the Property (and also lots 25 and 26) is adjacent to the Gulf, and hence is littoral property. The only tract of land separating the Property from the Gulf is the beachfront tract, Lot 67 ("BW"), which Plaintiffs conveyed to the city for public use. The Property enjoys a view of and easy access to the Gulf. It is as close to the water as any private property in the area and near the shore could possibly be. For these reasons, it is effectively beachfront property, neighboring, close by, in the vicinity of and thus *adjacent* to the shore, and should accordingly be treated as littoral property.

The same result follows when considering the particular circumstances of the statute. The Dune Protection Act's principle purpose is to protect those properties or persons that may be adversely affected by the erosion and destabilization of Gulf Coast dunes. Tex. Nat. Res. Code Ann. § 63.001.1-8 (West 1999). Accordingly, section 63.151 (allowing littoral owners to appeal municipal decisions concerning the dunes) of the Act acknowledges that certain properties or persons close to the shore are especially vulnerable to dune erosion by giving them a special voice for appeal. The true test,

Page 11

therefore, for determining whether a certain property is littoral for purposes of this Act, is whether or not the property especially relies on dune support and stability. In the case at hand, the Property certainly stands to greatly suffer upon any change in the structure of the nearby shoreline. Because of this, the policy driving the Dune Protection Act requires that the Property be categorized as littoral.

Backing this claim is the language of the recently amended section of the statute defining "littoral owner." In 1991 the legislature enlarged the definition of littoral owner to include *lessees or licensees* of the land adjacent to the shore. Tex. Nat. Res. Code Ann. § 61.001.6 (West 1999). This backs the policy claim in the previous paragraph, further stressing the special interests of those individuals who stand to suffer from any change in the nearby dunes.

In addition to Plaintiffs' obvious littoral interest in the Property based on the general policy and definitions discussed above, Plaintiffs' position is further strengthened by their easement over the property between BW and the beach owned by the city, Lot 67, which Defendants agree is littoral property. Plaintiffs, therefore, have an easement interest in land that is not disputed, which supports their ownership of littoral property. If we consider this easement interest along with the revised wording of the statute, Plaintiffs have a greater interest than a "license" or "lease" (both temporary interests) in the undisputedly littoral Lot 67. It follows that, because of this, they must be considered to be littoral owners. Furthermore, coupling Plaintiffs ownership in the Property with their easement across the beachfront, Plaintiffs stand to materially suffer from any change in the dune structure, and should therefore, in line with state policy and as littoral owners, be given the right to appeal governmental decisions concerning the dunes.

The argument employing a definition of "littoral" in Black's Law Dictionary is irrelevant, in view of the definition adopted specifically by the Code, itself.

Page 12

Similarly, Defendants cannot rely on the case they have cited, *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 646 (Tex. App.-Austin 1981, writ ref'd n.r.e.), a case decided long before the enactment of the Dune Protection Act, and certainly not purporting to construe it.

## Conclusion

Plaintiffs are littoral owners. The Property's proximity and material connection to the dunes ("nearby" and "in the vicinity") along with the easement across the beachfront satisfy both the letter of the Act and the policy behind it. As littoral owners Plaintiffs are fully entitled to their property right, recognized by statute, in the Critical Dune, which protects their lots as well as other property up and down the beach from storm surge and erosion. They are, therefore, entitled to pursue claims under Section 1983 for violation of and conspiracy to violate such rights.

### C. EVIDENCE OF OAKLEYS' VIOLATIONS OF THE DPA AND DUNE PERMIT

The statement at page 7 of the Motion seeks sympathy from the Court, apparently, based on expenditures by the Oakleys to build their home. They had knowledge of the problems with the Dune Permit before the home was built and suit was filed against them before the home was completed, and yet they continued to commit the sums of money to build it. At page 8 of the Motion, Oakley apparently relies on the testimony of Stephen Thompson, the City Building Official, who testified about the removal of the sand and vegetation. His testimony is ambiguous as to where all the sand was placed. In fact, he testified at page 39:

> The shaded area could have been removed and the shaded area in the Dune Permit shows an impact which impact means there's going to be some impact in that area. Thompson Depo., p. 39 lines 1-10

Page 13

We submit the affidavit of Dr. Jennifer Prouty, an expert in this area, which demonstrates a fact issue on this point, as well as verifying the material and adverse nature of the impact on the critical dune.

The report of Jim Urban, himself a Defendant in this cause, clearly an interested witness filing an unsworn statement, is not probative. In fact, the Application for the Dune Permit # 010, on its face, shows no "practicable alternatives" presented to the City Council for avoiding impact on the dune, a <u>requirement omitted</u>, despite Urban's continuing claim. See A on page 2 of the Urban Report at Tab 11 to the Motion; Ex. E, Dune Permit #010. Urban's deposition testimony admitted Starrett did not present any such alternatives if they are not set out in Dune Permit #010. Urban, depo. p. 111.

### D - ARTHUR GOCHMAN DID ACQUIRE A SUBLEASEHOLD INTEREST IN LOT 24, BEACHWALK ADDITION

The record reflects that Arthur is a sublessee of Lot 24 on a 20-year sublease and therefore has a real property interest in Lot 24. He does, therefore, have an interest and damages that sustain his standing with respect to Lot 24. Ex. F (Sublease to Arthur).

### E - ARTHUR GOCHMAN HAS SUSTAINED DAMAGES AS TO LOTS 25 AND 26 IN BEACHWALK ADDITION

Terrence Wood's Affidavit simply gives the current value of the Lots. The proper measure of damages would be the value of the Lots before the dune was damaged and the value afterward. Ex. G, Affidavit of Wood.

### F - PLAINTIFFS' SUIT AGAINST OAKLEY UNDER 42 U.S.C. 1983 IS DESIGNED TO OBTAIN FULL RELIEF

It is the position of Plaintiffs that the Dune Permit was void and, therefore, Oakley had no right under the Dune Protection Act, the General Land Office Regulations and the Coastal Management Plan, to invade the Critical Dune in the building of his house. The state action involved was that of City of Port Aransas and Oakley, although not a part of the

Page 14

conspiracy, did, in violation of state law, act in building his home into the Critical Dune without a valid Dune Protection Permit, knowing that the Permit was under challenge.

In order to get complete relief, the status quo before the violation took place should be restored and as a result, Oakley's house should be relocated off of the Critical Dune.

### III. THE OAKLEYS HAVE NO MERIT IN THEIR MOTION FOR SUMMARY JUDGMENT ON THEIR COUNTERCLAIM

Attached hereto and incorporated by reference and made a part hereof for all purposes is the Motion for Summary with supporting authorities filed by Plaintiffs as Counter-Defendants in the above cause. The authorities cited demonstrate that the lis pendens is "absolutely privileged" and cannot be the subject of suit for damages.

PREMISES CONSIDERED, THEREFORE, Arthur Gochman and Molly Gochman, Plaintiffs, pray that the Motion for Summary Judgment be, in all things, denied and for such other relief as the Court might deem proper to grant.

Respectfully submitted,

MAX J. LUTHER III, P.C. & ASSOCIATES
1350 Frost Bank Plaza
802 North Carancahua,
Corpus Christi, Texas 78470-0165
Telephone: 361/888-5544
Telecopy: 361/887-6835

By: _____
MAX J. LUTHER III
Texas Bar Number 12706000
Federal I.D. No. 298

DOW, COGBURN & FRIEDMAN, PC
Edmund L. Cogburn
Texas Bar Number 04501000
Federal I.D. No. 2105
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: 713/940-6012
Telecopier: 713/940-6099
ATTORNEYS FOR PLAINTIFFS
Arthur Gochman and Molly Gochman

Page 15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served via certified mail, return receipt requested in accordance with the Federal Rules of Civil Procedure to counsel as indicated below on this _10_ day of August, 2000.

Ed Cogburn
Dow, Cogburn & Friedman, PC
9 Greenway Plaza, Suite 2300
Houston, TX 77046

Fred D. Dreiling
500 N. Shoreline St., Suite 714
Corpus Christi, TX 78471

James F. McKibben, Jr.
Barger, Hermansen, McKibben
  & Villareal, LLP
2000 North Tower
800 N. Shoreline Blvd.
Corpus Christi, TX 78401

Michael Morris
5350 S. Staples, Suite 222
Corpus Christi, TX 78411

Matthew J. Sullivan
Haynes and Boone, LLP
1600 One American Center
600 Congress Avenue
Austin, TX 78701

E. R. Fleuriet
621 E. Tyler
Harlingen, TX 78550

Jorge C. Rangel
PO Box 2683
Corpus Christi, TX 78403-2683

O:\100\100026\0190\Resoak.msj\080920001719

Page 16