United States District Court
Southern District of Texas
FILED

AUG 2 1 2000

Michael N. Milby, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| ARTHUR GOCHMAN | § |
| & MOLLY GOCHMAN | § |
| | § |
| vs. | § |
| | § |
| | § |
| STANLEY A. STARRETT, JR., | § |
| KEN OAKLEY, URBAN ENGINEERING, A | § |
| PARTNERSHIP, THE PERALLA | § |
| CORPORATION, URBAN CONSULTING | § |
| ENGINEERING, INC. | § |
| AND THE CITY OF PORT ARANSAS, | § |

CIVIL ACTION NO.-00-126
JURY

# JOINT PRETRIAL ORDER

## 1. APPEARANCE OF COUNSEL:

FOR THE PLAINTIFFS, ARTHUR GOCHMAN AND MOLLY GOCHMAN:

| | |
|---|---|
| Max J. Luther III | Edmund L. Cogburn |
| Max J. Luther & Associates | Dow, Cogburn & Friedman, PC |
| 1350 Frost Bank Plaza | 9 Greenway Plaza, Suite 2300 |
| 802 N. Carancahua | Houston, Texas 77046 |
| Corpus Christi, Texas 78740 | Telephone: 713/940-6012 |
| Telephone:    361/888-5544 | |

FOR THE DEFENDANT, STANLEY A. STARRETT:

| | |
|---|---|
| E. R. Fleuriet | Jorge C. Rangel |
| The Fleuriet Schell Law Firm | Law Offices of Jorge C. Rangel, P.C. |
| 621 E. Tyler | P.O. Box 2683 |
| Harlingen, Texas 78550 | Corpus Christi, Texas 78403-2683 |
| Telephone: 956/428-3030 | Telephone: 361/883-8500 |

FOR THE DEFENDANT, KEN OAKLEY AND COUNTERPLAINTIFFS KEN AND ANDREA OAKLEY:

Fred D. Dreiling
Law Offices of Fred D. Dreiling
714 NationsBank Tower
500 N. Shoreline, Suite 714
Corpus Christi, Texas 78461-1007
Telephone: 3361/883-0186

72·

FOR THE DEFENDANT, THE CITY OF PORT ARANSAS, TEXAS:

James McKibben + *David W. Green*    Michael Gene Morris
BARGER, HERMANSEN,                   5350 S. Staples, Suite 222
MCKIBBEN & VILLAREAL                 Corpus Christi, Texas 78411
1100 Tower II                     Telephone: 361/993-4571
555 N. Carancahua
Corpus Christi, Texas 78478
Telephone: 361/882-6611

FOR THE DEFENDANTS, URBAN ENGINEERING, PERALLA CORPORATION, LARRY URBAN, DAN URBAN, JAMES URBAN AND EUGENE URBAN:

Matthew J. Sullivan
Haynes & Boone
1600 One American Center
600 Congress
Austin, Texas 78701
Telephone: 512/867-8400

## 1.   STATEMENT OF THE CASE:

Arthur Gochman ("Arthur") and Molly Gochman ("Molly"), father and daughter, are the Plaintiffs in this case and they have sued Stanley A. Starrett, Jr. ("Starrett"), Ken Oakley ("Oakley"), the City of Port Aransas (the "City"), Urban Engineering ("Urban"), a partnership which includes as partners, Urban Engineering Consultants, Inc. and the Peralla Corporation, and James Urban ("Jim"), individually, all Defendants.  Arthur and Molly bought three (3) lots in the Beachwalk Subdivision from Starrett, the developer.

Arthur and Molly Gochman allege that they were misled by Starrett,  who made misrepresentations to them:

They allege that Starrett told them, as to Lot 24 their intended homesite, that Arthur and Molly were restricted to construction landward of the critical dune on the Lot, a dune which extended north to the property later acquired by the Defendant, Ken Oakley.  Molly and Arthur also allege that,

Starrett also said, that the environmental rules enforced by The City of Port Aransas, Texas, would require all construction to be landward of the critical dune, including construction on Lot 24 and the property to its north.

After Arthur and Molly bought their lots and built their house on Lot 24, one of the three lots, Ken Oakley then bought a lot in Beachwalk II right next door and built a house right in front of Arthur's and Molly's house, building deep into the critical dune. Arthur and Molly are suing Starrett for fraud and under DTPA, because they allege that he misrepresented what would happen on the property next door that Oakley built on. They allege that they relied on Starrett's misrepresentation into believing that the view of the Gulf from lot 24 would be unobscured because of the presence of a critical dune, which, protected legally, could not be cut into on the Oakley lot. This dune, if left intact, would require Oakley to build landward from them. Arthur and Molly state they had no interest in moving their house by cutting into the dune on their lot, even if they had known they could, because of the detrimental environmental effect of partially destroying the dune.

Starrett, however, got a special permit from the City of Port Aransas to allow Oakley to cut into the dune and move his house seaward of the line of the critical dune.

Arthur and Molly are also suing Oakley and the City, alleges a violation of their Constitutional property rights. They allege that the City did not notify them of the hearing on Starrett's application for a permit. They also say that because they got no notice that they were not able to appear at the hearings on Oakley's permit and present their opposition to such permit. Molly and Arthur allege that the City's permit is void because of lack of notice and hearing to them, and they are suing the City to make the permit void, from its beginning, as well as changes to their lots from weakening of this dune. Arthur and Molly also sue Jim Urban, a principal in Urban Engineering. Jim Urban was

CVizPDF - www.texisi.com

the long-time City Engineer for Port Aransas, who however, prepared the application for Starrett's permit.  Arthur and Molly allege that Urban  abused his position with the City to help Starrett with the permit.  Arthur and Molly are suing Starrett, the City and Urban for damages for fraud, violation of the Deceptive Trade Practice Act, violation of Constitutional Rights, and are suing Oakley, Starrett and the City for injunction, to void the permit for lack of compliance with Constitutional Rights to notice and hearing and require the house to be moved.

**Defendants' Statement of the Case:**

Each of the Defendant's adopts the statement of the case proposed by each other Defendant but does not adopt the Plaintiffs' statement.

### Defendant, Starrett's, Statement of the Case:

Arthur Gochman ("Arthur") and Molly Gochman ("Molly"), father and daughter, are the Plaintiffs in this case and they have sued Stanley A. Starrett, Jr. ("Starrett"), Ken Oakley ("Oakley"), the City of Port Aransas (the "City"), Urban Engineering ("Urban"), a partnership which includes as partners, Urban Engineering Consultants, Inc. and the Peralta Corporation, and James Urban ("Jim"), individually, all Defendants.  Arthur bought two (2) lots and Molly bought one (1) lot in the Beachwalk Subdivision from Starrett, the developer.  Arthur Gochman negotiated with Starrett for the purchase of all three lots.  Starrett never spoke to Molly Gochman.

Arthur and Molly Gochman allege in this lawsuit that Starrett made certain misrepresentations to them regarding where a house could be built on Lot 24.  Starrett denies that he misrepresented anything to Arthur Gochman when they were discussing the purchase of the three lots.

Arthur and Molly Gochman further allege in this lawsuit that Ken Oakley built a house on Lot 35 in Beachwalk II.  Lot 35 in Beachwalk II is adjacent to Lot 24 to the north.  Arthur and Molly

- 4 -

Gochman further allege in this lawsuit that Starrett made misrepresentations to them regarding what could be built to the north of Lot 24.  Starrett denies that he made any misrepresentations in this regard.

Starrett denies that he violated any of the constitutional rights of the Gochmans.

### Defendants', Oakley, Statement of the Case:

Ken Oakley purchased Lot 35 in Beachwalk II, and Ken and his wife, Andrea, built their home on this property.  Arthur and Molly have sued Ken Oakley, and claim the construction of the Oakley home violated the Texas Dune Protection Act or the dune permit issued Starrett by the City of Port Aransas.  The Oakleys deny these allegations.  Additionally, Ken Oakley denies that he violated, or conspired to violate, Arthur or Molly's constitutional rights.

The Oakleys have filed a counterclaim against Arthur and Molly.  In their counterclaim, Ken and Andrea Oakley contend that Arthur and Molly illegally filed two notices of Lis Pendens against the Oakley property.  The Oakleys contend that Arthur and Molly coerced them into signing a release before Arthur and Molly would agree to cancel the first notice of Lis Pendens.  By their counterclaim, the Oakleys seek to recover money damages and attorney fees from Arthur and Molly.  The Gochmans deny the allegations contained in the Oakley counterclaim.

### Defendants' City of Pt. Aransas:

The Oakley home was built under Dune Permit No. 97-010 which was approved by the City of Port Aransas.  As part of the dune permitting process, certain procedures were followed which are prescribed by state statutes and state administrative rules.  The dune permit application was submitted to the Planning and Zoning Commission by Starrett on behalf of the entire subdivision.  The Planning and Zoning Commission reviewed the permit and thereafter it was forwarded to the General Land

Office and the Attorney General's Office for review and comments. The administrative procedures require that the City was not allowed to act on such permit until no less than ten days notice was given to the GLO and the AG. In this case, the General Land Office and Attorney General's Office responded with no objection to the dune permit and had only one minor suggestion which was carried out by the developer and had nothing to do with Lot 35 (Oakleys' lot).

### Defendants', Urban, Statement of the Case:

Arthur and Molly are also suing Urban Engineering and Jim Urban, Individually. On various matters, as requested by the City of Port Aransas, Urban Engineering has acted as the City Engineer for the City on certain projects in the past. On the Beachwalk II project, where Mr. Oakley's home is located, Mr. Starrett hired Urban Engineering to provide engineering services. Urban informed the City that he was not acting as the City Engineer and stated that another engineer was acting as City Engineer on the project. The City of Port Aransas retained Randy Thompson to act as City Engineer on the Beachwalk II project.

## 2.    JURISDICTION:

This case is brought under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. 1983, being removed to the United States District Court because of the claim under federal statute and federal constitution.

## 4.    MOTIONS:

a.) Defendant and Counter-Plaintiffs', Ken and Andrea Oakleys' Motion for Summary Judgment;

b.) Urban Engineering, The Peralta Corporation, Urban Consulting Engineer's, Inc., and James

- 6 -

CVisPDF - www.fesive.com

Urban's Motion for Summary Judgment;

    c.) Defendant, the City of Port Aransas, Texas' Motion for Summary Judgment;

    d.) Defendant, Stanley A. Starrett's Motion for Summary Judgment;

    e.) Plaintiffs' and Counter-Defendants' Motion for Summary Judgment on the Cross-Claim of Defendants' Oakley.

    f.) Defendants' Motion to Exclude Plaintiffs' Expert Testimony.

        g.) Ken and Andrea Oakleys' Motion for Leave to File Expert Witness Designation.

        h.) Ken and Andrea Oakleys' Motion for Leave to File Rule 26 List of Witnesses.

    i.) Plaintiffs' Reply to the Oakley, Response to Motion for Summary Judgment.

## 5.    <u>CONTENTIONS OF PARTIES:</u> .

### <u>Plaintiffs' contend:</u>

    a.)    Starrett is liable in damage to Plaintiffs for fraud, DTPA violations, and conspiracy to violate Plaintiffs' constitutional civil rights to notice and hearing before an impartial tribunal;

    b.)    The City of Port Aransas, Texas, Ken Oakley, Urban Engineering, Urban Engineering Consultants, Inc., The Peralla Corporation, and Jim Urban are liable in damages to Plaintiffs for conspiracy to violate and violation of Plaintiffs' constitutional civil rights to notice and hearing before an impartial tribunal; and

    c.)    In defense of Oakley's counterclaim Plaintiffs are absolutely privileged to file Lis Pendens in this cause and may not be held liable for damages that basis; Oakley may not sue Plaintiffs by counterclaim for Declaratory Judgment merely to obtain attorneys fees; and there is no statutory basis for Oakley to sue for attorneys fees.

### <u>Defendants' contend:</u>

    Each Defendant adopts the contentions of every other Defendant. Defendants do not adopt the Plaintiffs' contentions.

### <u>Defendant, Starrett, contends:</u>

    Starrett denies that either of the Plaintiffs was misled and denies that either of the Plaintiffs has

suffered any damages whatsoever. Starrett further contends that Plaintiff Molly Gochman, working with an architect of her own selection, chose the site for the house that was built.

### Defendants', Oakley, contend:

a.) The Oakleys deny that the construction of their home violated the Texas Dune Protection Act or the dune permit issued to Starrett by the City of Port Aransas. Ken Oakley denies that he conspired with anyone to deprive Arthur or Molly of their constitutional rights.

b.) Ken and Andrea Oakley contend that the two Lis Pendens notices Arthur or Molly filed against the Oakley property are illegal and are fraudulent documents under Texas law. The Oakleys also contend that the release they signed on October 29, 1999, is null and void because the release was obtained by the Gochmans' use of duress or coercion.

### Defendants', City of Port Aransas contend:

The City contends that it followed the proper procedures in issuing the dune permits pursuant to the Port Aransas Coastal Management plan, statutes and regulations of the State of Texas and and that in doing so, it did not have a policy or custom to deprive the Gochmans of their rights of due process. The City gave notice of all the meetings and hearings with regard to the permits to the proper authorities, the GLO , Nueces County, and the Attorney General's office as required by the Coastal Management Plan and the statutes. Such entities reviewed the permits and commented thereon, and did not object to the granting of such permits. Port Aransas also contends the the Plaintiffs lack standing to dispute or to attack the granting of the dune permits in question.

### Defendants', Urban, contend:

Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, and James Urban deny that Jim Urban or Urban Engineering was the City Engineer on the Beachwalk II project at the time he was assisting Starrett with preparation of the Beachwalk II permits. They further deny that they conspired with the City, or anyone else, to deprive Arthur and Molly of any rights whatsoever, or that they did deprive Arthur and Molly of any rights.

## 6.    Admissions of Fact:

1.    Arthur contracted to purchase from Starrett lots 24, 25 and 26 in the Beachwalk Subdivision in Port Aransas.

2.    Starrett conveyed Lot 24 to Molly, with the other two conveyed to Arthur.

3.    The purchase price for each lot was $100,000.00.

4.   After selling the three lots to Plaintiffs, Starrett purchased property next to Beachwalk Subdivision and platted another subdivision at that location which he named "Beachwalk II."

5.   Urban, acting on behalf of Starrett, prepared two applications for Dune Protection Permit and Beachfront Construction Certificate one being for "Roadway and Utilities" and the other for, "Residential Construction."

6.   Oakley's home on Lot 35 is seaward of the Gochman home on Lot 24.

7.   By virtue of his ownership in Beachwalk II, Oakley has access to the beach through the City-owned Lot 76, by virtue of an easement reserved for his benefit in Starrett's deed, of Lot 76 to the City.

15.   On September 9, 1999, Arthur and Molly filed a notice of Lis Pendens with the Nueces County Clerk against the Oakley property.

16.   On October 29, 1999, Ken and Andrea signed a release the Gochmans' demanded, before the Gochmans would cancel the September 9, 1999, Lis Pendens notice.

17.   On February 1, 2000, Arthur filed a notice of Lis Pendens with the Nueces County Clerk against the Oakley property.

18.   On or about December 15, 1999, Stanley A. Starrett, Jr. presented his claim for reasonable attorneys' fees pursuant to paragraph 15 of Earnest Money Contract to Arthur Gochman and Molly Gochman.

## 7.   CONTESTED ISSUES OF FACT:

**Contested issues of fact submitted by the Plaintiff:**

1.   Plaintiffs claim Starrett misrepresented that the critical dune, located on the seaward site of Lot 24, Beachwalk subdivision, and Lot 35, Beachwalk II, could not be an area of construction, on either property, being protected against such construction by the environmental laws enforced by the City of Port Aransas and there would be no construction seaward of the Gochman house.

2.   Plaintiffs claim that, by relying on this misrepresentation of Starrett in purchasing Lot 24, Plaintiffs were damaged when Oakley purchased Lot 35, Beachwalk II, and, after the Gochman house was well under way in construction, Oakley built into the critical dune, seaward of the Gochman house.

3. Plaintiffs claim that by building into the critical dune, Oakley removed a material portion of the critical dune, contrary to the provisions of the Dune Protection Act, the General Land Office Regulations, and the Coastal Management Plan of the City of Port Aransas, thereby weakening the critical dune as a bulwark against storm surge and erosion. The Oakley House also obscured the view of the Gulf of Mexico available at the front of the Gochman House, a major factor in Plaintiffs' decision to buy the Lots.

4. Plaintiffs claim that the position of Jim Urban and Urban Engineering, as City Engineer of Port Aransas, created a substantial conflict of interest when Urban purported to represent Starrett in applying for Dune Protection Permits on Beachwalk II; that effectively he was still the City Engineer, and, regardless of his adversarial representation, still looked to by the City for advice on the technical aspects of Dune Protection Permits and as a result thereof, the City of Port Aransas, acting through the Board of Planning and Zoning and the City Council, were not an impartial tribunal for determining Dune Protection Permits and that therefore, constitutionally, Plaintiffs were denied constitutional property rights without due process of law, and denied the equal protection of the law.

5. Plaintiffs claim that because Urban was the City Engineer and, at all times considered such, regardless of his employment by private developers, that his representation of Starrett as a private developer, exerting enormous influence over the governing organs of the City of Port Aransas, his actions and those by Starrett and the elected officials of Port Aransas constituted a conspiracy to deprive Plaintiffs of their constitutional rights in their property without due process of law, and to deny Plaintiffs the equal protection of the law.

6. Plaintiffs claim that with respect to the misrepresentations of Starrett, they have been damaged in $500,000.00.

7. Plaintiffs claim that because of the conspiracy between Urban, Starrett and the City of Port Aransas, Plaintiffs have suffered impairment in the value of their property due to the damage to the dune in the amount in excess of $500,000.00.

8. Plaintiffs claim that Oakley's house on Lot 35, Beachwalk II (the "Oakley House") is feasibly relocatable from its present location within the critical dune and is required to be relocated because of being a house built adjacent to the beach.

9. Plaintiffs claim that, contrary to the requirements of the environmental rules, Starrett presented no alternatives to the invasion of the critical dune on Lot 35 when he applied for his Dune Protection Permit captioned "Residential Construction."

10. Plaintiffs contend that, because of the feasibility of relocation of the Oakley House, and the invalid character of the "Residential Construction" Permit, Oakley should be ordered, in the exercise of the equity power of this Court, to restore the status quo ante, i.e., before

CSMPDF - www.fesoo.com

his actions in building into the critical dune, by moving his House to a location landward of the critical dune.

11.  Plaintiffs claim that Arthur, by sublease, holds an estate for 20 years in Lot 24.

12.  Plaintiffs claim that in August of 1999 construction of the home of Molly and Arthur was completed on Lot 24.

13.  Plaintiffs claim that at the time Starrett filed the applications for permits, Jim Urban was generally known in the City of Port Aransas as the City Engineer.

14.  Plaintiffs claim that in connection with the application for Dune Protection Permit and Beachfront Certificate relating to "residential construction," the application specifically requested permission to invade the critical dune located on Lot 35 of Beachwalk Subdivision.

15.  Plaintiffs claim that in requesting such permit by his application, Starrett, as assisted by Urban, presented no alternatives for the City to consider as a means of avoiding invasion of the dune on Lot 35.

16.  Plaintiffs claim that neither Arthur nor Molly received personal notice of any hearing with respect to the dune permits requested by Starrett on Beachwalk Subdivision II.

17.  Plaintiffs claim that by virtue of their ownership of lots in Beachwalk Subdivision, both Molly and Arthur had easement access to the beach through the City-owned Lot 67, by virtue of an easement reserved for their benefit in Starrett's deed, of Lot 67 to the City of Port Aransas.

18.  Plaintiffs claim that in December of 1998, Oakley commenced construction of a house on Lot 35 Beachwalk Subdivision II.

19.  Plaintiffs contend that, pursuant to the terms of the "Residential Construction" permit, in the course of building his house, Oakley invaded the critical dune on the east side of his Lot 35, removing portions of the critical dune, which was the same critical dune as the one in front of the Gochman home.

## Contested Issues of Fact Submitted by Defendants:

Each Defendant adopts the contested issues of fact submitted by each other Defendant.

### Submitted by Defendant, Starrett:

11.     Whether Plaintiffs have sustained any damages for the matters they allege.

12.    Whether Plaintiffs delayed in raising any of the issues of which they now complain relative to the date they or their agents first knew there was construction activity occurring to the north on Lot 35.

13.    Whether anything Starrett said to Arthur Gochman was a proximate cause or producing cause of any decision Arthur Gochman or Molly Gochman made in locating the house on Lot 24.

14.    Reasonable and necessary attorneys' fees to be awarded to Starrett.

15.    Whether Arthur Gochman and/or Molly Gochman or any of their agents were negligent in locating the beach house.

16.    Whether Arthur Gochman and Molly Gochman failed to mitigate any damages by taking action when it became obvious that construction activity was occurring to the north side of Lot 24.

17.    Whether Arthur Gochman was the agent for Molly Gochman in the purchase of Lot 24.

18.    Whether Tim Dykes was an agent for Arthur Gochman or Molly Gochman.

19.    Whether Dudley Carpenter was an agent for Arthur Gochman and Molly Gochman.

20.    Whether Don Richardson was an agent for Molly Gochman and Arthur Gochman.

## Submitted by Defendants', Oakley:

21.    Whether Arthur or Molly violated Texas law in making, presenting, or using the September 9, 1999, or February 1, 2000, notices of Lis Pendens.

22.    Whether the September 9, 1999, or February 1, 2000, notices of Lis Pendens are fraudulent documents or instruments under Texas law.

23.    Whether Arthur or Molly knew, or should have known, that the September 9, 1999, or February 1, 2000, notices of Lis Pendens were fraudulent documents or instruments.

24.    Whether Arthur or Molly procured the October 29, 1999, release by the use of duress or coercion.

26.    Whether Arthur or Molly were negligent in filing or recording the September 9, 1999, or February 1, 2000, notices of Lis Pendens, and, if so, was such

negligence a proximate cause of injury to Ken or Andrea Oakley.

27. Whether Arthur or Molly inflicted severe emotional distress on Ken or Andrea Oakley.

28. The amount, if any, of the Oakleys' actual damages.

29. The amount, if any, of exemplary damages that should be awarded to Ken or Andrea Oakley.

30. The amount, if any, of reasonable and necessary attorney fees that should be awarded to the Oakleys.

**Submitted by Defendants, City of Port Aransas:**

31. Were the Gochmans aware of the construction of a home or homes to the northeast of their property prior to building on their property?

32. Whether Plaintiffs had constructive or actual notice of hearings or meetings regarding Dune Permits.

33. Whether any presence or input from the Gochmans at the Planning and Zoning or City Council meetings would have prevented the granting of Dune Permit 97-010.

**Submitted by Defendants, Urban:**

34. Whether Molly could have built her house nearer to the water than she chose to build it.

35. Whether Molly could have sought a dune permit allowing her to build her home nearer to the water than she chose to build it.

## 8.  AGREED PROPOSITIONS OF LAW:

1. The applicable law in the State of Texas with respect to Dune Protection Permits is found in the Texas Natural Resources Act §§ 63.001 et. seq. (the "Dune Protection Act") the General Land Office Regulations, Title 31, Texas Administrative Code, §§ 15.1 et.seq., and the Coastal Management Plan of the City of Port Aransas.

2. A littoral owner has a right to appeal to the District Court from granting of a Dune Protection Permit which authorizes invasion of a critical dune.

3.  Stan Starrett has complied with Chapter 38 Texas Civil Practice & Remedies Code in presenting his claim for reasonable attorneys' fees to Arthur Gochman and Molly Gochman.

## 9.  CONTESTED PROPOSITIONS OF LAW:

### Submitted by Plaintiffs:

### Submitted by Plaintiffs:

1.  Arthur Gochman and Molly Gochman are littoral owners of property on the Gulf of Mexico, as defined in the Texas Natural Resources Code. Tex. Nat. Res. Code Ann. §63.151 see definition of "Littoral Owner". Tex. Nat. Res. Code Ann. §61.001(6) and §61.001(4) (West 1999).

2.  Molly Gochman was a "consumer" in the purchase of Lot 24, Beachwalk Subdivision in Port Aransas from Starrett, and the DTPA. See Tex. Deceptive Trade Practices Act in Bus. & Com. Code Ann. §17.45(4) see definition of "Consumer". Leyendecker and Assoc., Inc. v. Wechter, 683 S.W.2d 369 (Tex. 1984), Kish v. Van Note, 692 S.W.2d 463 (Tex. 1985).

3.  The filing of a Lis Pendens by Arthur and Molly Gochman against Ken Oakley is Lot 35, Beachwalk II, was absolutely privileged as part of a judicial proceeding.  See Motta v. May, 118 F.3d 410, 415 (5th Cir. 1997); Reagan v. Guardian Ins. Co., 166 S.W. 2d 909,912 (Tex. 1942), James v. Brown, 637 S.W. 2d 914, 916-917 (Tex. 1982) "absolute privilege".

4.  In applying for a Dune Protection Permit for "Residential," Starrett was obligated to provide alternatives that would not impact the dune. See Dune Protection Act; Port Aransas Coastal Management Plan IV (H)(2)(c) at Page 12.

5.  Arthur and Molly Gochman were entitled to notice and hearing with respect to the applications of Starrett for Dune Protection Permits in Beachwalk II. Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983), Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 208 (1950).  The State of Texas has given "Littoral Owners" aggrieved by a decision of the Commissioners Court Under the (Dune Protection Act) the right to appeal area decision Tex. Nat. Res. Code Ann. §63.151 (West 1999).

6.  The Dune Protection Permits in Beachwalk II granted by the City of Port Aransas to Starrett were totally invalid because Arthur and Molly Gochman got no notice and no

hearing with respect thereto. <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 800 (1983). <u>Greene v. Lindsey</u>, 456 U.S. 444 (1982). <u>Schroeder v. City of New York</u>, 371 U.S. 208 (1962) Tex. Nat. Res. Code Ann. §63.151.

10.     The Dune Protection Permits issued by the City of Port Aransas to Starrett for Beachwalk II were invalid because Starrett, in procuring them, was represented by Urban Engineering which also, in general, acted as City Engineer for the City of Port Aransas and, as a result thereof, the process was so tainted that a fair and impartial tribunal was denied Arthur and Molly Gochman with respect to such Permits and therefore in granting such Permits, the City acted in violation of Arthur's and Molly's rights with respect thereto. <u>Pfannstiel v. City of Marion</u> , 918 F.2d 1178, 1187 (5th Cir. 1994). <u>Owens v. Regents of Tex. S. Univ.</u>, 953 F.Supp. 781 (S.D. Tex. 1996). <u>Cinel v. Connick</u>, 15 F.3d 1338, 1343 (5th. Cir. 1994).

11.     Oakley was required, because of the adjacency of his lot to the beach, to build his house in such a way as to be feasibly relocatable.  31 Tex. Adm. Code §15.6(F)(2).

**<u>Submitted by Defendant, Starrett:</u>**

13.     Whether the Gochmans' suit against Starrett is groundless.

14.     Whether the Gochmans' suit against Starrett was brought in bad faith.

14a.    Whether the Gochmans' suit against Starrett was brought for the purpose of harassment.

14b.    Whether Starrett is entitled to contribution against Arthur Gochman or Molly Gochman on their respective claims.

14c.    Whether Arthur Gochman and Molly Gochman are equitably estopped from making any complaint or seeking any relief with respect to the construction of the Oakley house.

14d.    Whether Arthur Gochman and Molly Gochman failed to mitigate any damages they might have.

**Defendants' contested propositions of law:**

Each Defendant adopts the contested propositions of law of each other Defendant, but does not adopt the contested propositions of law offered by the Plaintiffs.

## Submitted by Defendant, Starrett:

15.    Whether the Gochmans' suit against Starrett is groundless.

16.    Whether the Gochmans' suit against Starrett was brought in bad faith.

17.    Whether the Gochmans' suit against Starrett was brought for the purpose of harassment.

18.    Whether Starrett is entitled to contribution against Arthur Gochman or Molly Gochman on their respective claims.

19.    Whether Arthur Gochman and Molly Gochman are equitably estopped from making any complaint or seeking any relief with respect to the construction of the Oakley house.

20.    Whether Arthur Gochman and Molly Gochman failed to mitigate any damages they might have.

## Submitted by Defendant, Oakley:

21.    Whether the provisions of Tex. Prop. Code Ann., Section 12.007, et. seq.; Tex. Civ. Prac. and Rem. Code Ann., Section 12.001, et. seq.; Tex. Civ. Prac. and Rem. Code, Ann., Section 51.901, et. seq., apply to the September 9, 1999, and February 1, 2000, notices of Lis Pendens.

22.    Whether the Gochmans' suit against Ken Oakley is groundless.

23.    Whether the Gochmans' suit against Ken Oakley was brought in bad faith.

24.    Whether the Gochmans' suit against Ken Oakley was brought for the purpose of harassment.

25.    Whether the Gochmans failed to mitigate their damages, if any.

26.    Whether the Gochmans are equitably estopped to assert their claims.

27.    Whether the Gochmans' claims are barred by limitations.

28.    Whether the Gochmans have standing or capacity to sue for alleged violations of the Texas Dune Protection Act.

29.     Whether the Gochmans are guilty of contributory negligence to such decree as to be barred from the recovery of monetary damages or an order for equitable relief.

30.     Whether the doctrine of laches bars the Gochmans from an award of equitable or injunctive relief.

31.     Whether the Gochmans have waived their rights, if any, under the Texas DuneProtection Act.

32.     Whether the Gochmans have, by their conduct, become estopped to initiate or prosecute this lawsuit.

32a.    Whether the Gochmans have the right to maintain a private action for alleged violations of the Texas Dune Protection Act. (Tex. Nat. Res. Code Ann., Section 63.001, 63.181, and Section II - A of Oakleys' Motion for Summary Judgment).

32b.    Whether the Gochmans are, or have been, littoral owners as defined in Tex. Nat. Res. Code Ann., Section 61.001(6). (Section II - A of Oakleys' Motion for Summary Judgment).

32c.    Whether Arthur Gochman is entitled to claim damages with respect to Lot 24 in Beachwalk I. (Section II - D of Oakleys' Motion for Summary Judgment).

32d.    Whether the Gochmans are entitled to establish a state action by Oajkey necessary to maintain suit under 42 U.S.C. 1983. (Section II - F of Oakleys'Motion for Summary Judgment).

32e.    Whether the two lis pendens notices filed by the Gochmans against the Oakley property violate Tex. Prop Code Ann., Section 12.007, et. seq. (Section III - A of Oakleys' Motion for Summary Judgment, and pages 4 to 6 of Oakleys; Response to Plaintiffs' Motion for Summary Judgment).

32f.    Whether the two lis pendens notices filed by the Gochmans against the Oakley property are fraudulent documents or instruments under Tex. Civ. Prac. & Rem. Code Ann., Section 12.001 and Tex. Gov't Code Ann., Section 51.901, et. seq. (Section III - B of Oakley's Motion for Summary Judgment, and pages 6 to 15 of Oakleys' Response to Plaintiffs' Motion for Summary Judgment).

32g.    Whether the Gochmans are protected by privilege in connection with the two lis pendens notices they filed against the Oakley property. (Pages 9 to 15 of Oakleys' Response to Plaintiffs' Motion for Summary Judgment).

32h.    Whether the Oakleys may maintain a counterclaim against the Gochmans under the provisions of Tex. Civ. Prac. & Rem. Code Ann., Section 37.001, et. seq., the Texas Uniform Declaratory Judgments Act. (Pages 15 to 18 of Oakleys' Response to Plaintiffs' Motion for Summary Judgment).

32i.    Whether the defensive issue of mitigation of damages has applicability to the Gochmans' legal or equitable claims. (Fifth Circuit 1999 Pattern Jury Charges for Civil Cases, Section 15.15).

32j.    Whether the affirmative defenses of laches or estoppel apply as a bar to the Gochmans' legal or equitable claims. *Barfield vs Smith*, 426 S.W.2nd 834, (Tex. 1968); *Jim Rutherford Investments, Inc. vs Terrmar Beach Community, Inc.*, 2000 WL 1059338, (Tex App - Houston [14th Dist] Aug. 3, 2000, n.w.h.); *Jamail vs Stoneledge Condominium Owners Assoc.*, 970 S.W. 2nd 673, (Tex App - Dallas 1998, no writ); *Bluebonnet Savings Bank vs Grayridge Apartment Homes, Inc.*, 907 S.W.2nd 904, (Tex App - Houston [1st Dist] 1995, writ denied); and *Finkelsein vs Southampton Civic Club*, 675 S.W. 2nd 271, (Tex App - Houston [1st Dist] 1984, writ ref'd, n.r.e.).

32k.    Whether the affirmative defense of waiver is applicable to bar the Gochmans prosecution of their legal or equitable claims.

32l.    Whether the Oakleys were required to build their home in such a manner that it could be feasibly relocated.

32m.    Whether the Gochmans made, presented or used the two lis pendens notices: 1) with knowledge that the notices were a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property; 2) with intent that the notices be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of Texas or the United States or another entity listed in Section 37.01 of the Penal Code, evidencing a valid lien or claim against real property or an interest in real property; and 3) with intent to cause another person to suffer: physical injury; financial injury;  mental anguish; or emotional distress. Tex. Civ. Prac. & Rem. Code Ann., Section 12.002(a)

32n.    Whether the two lis pendens notices are presumed to be fraudulent because, at the time they were recorded or filed, the Gochmans knew, or should have known, that: 1) the notices purported to create a lien or assert a claim against real property or an interest in real property, and (A) were not  documents or instruments provided for by the constitution or laws of Texas or the United States; (B) were not created by implied or

- 18 -

express consent of the owner of the real property; or (C) were not an equitable, constructive, or other lien imposed by a court with jurisdiction created or established under the constitution or laws of Texas or the United States. Tex Civ. Prac. & Rem. Code Ann., Section 51.901(c).

32o.  Whether the release the Oakleys signed on October 29, 1999, was procured by the Gochmans' use of coercion or duress. State Bar of Texas, Texas Pattern Jury Charges - Business - Consumer - Employment - PJC - Contracts - 101.26 (1998).

32p.  Whether the Gochmans were negligent in recording or filing the two lis pendens notices against the Oakley property, and, if so, was such neligence a proximate cause of injury or damage to the Oakleys." State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 2.1 (1998).

32q.  Whether the Oakleys are entitled to maintain an action against the Gochmans for infliction of emotional distress, and if so, the amount of money that should be awarded the Oakleys (Intentional infliction of emotional distress occurs when a party acts intentionally or recklessly with extreme and outrageous conduct to cause another person emotional distress and the emotional distress suffered was severe. *"Extreme and outrageous conduct"* occurs only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 6.5 (1998).

32r.  Whether the harm, if any, to Ken or Andrea Oakley resulted from malice? (Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.        State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 4.2B (1998). "Malice" means; (a) a specific intent by Arthur Gochman or Molly Gochman to cause substantial injury to Ken Oakley or Andrea Oakley; or (b) an act or omission by Arthur Gochman or Molly Gochman, (i) which when viewed objectively from the standpoint of Arthur Gochman or Molly Gochman at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others; and (ii) of which Arthur Gochman or Molly Gochman had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 4.2B (1998).

32t.  Whether exemplary or punitive damages should be assessed against Arthur or Molly

Gochman, and, if so, the amount. (   *"Exemplary damages"* means any damages awarded as a penalty or by way of punishment. Exemplary damages includes punitive damages. In determining the amount of exemplary damages you should consider evidence, if any, relating to: a) the nature of the wrong; b) the character of the conduct involved; c) the degree of culpability of the wrongdoer; d) the situation and sensibilities of the parties concerned; e) the extent to which such conduct offends a public sense of justice and propriety; f) the net worth of Arthur Gochman or Molly Gochman. State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 8.6B (1998).

32u.   Whether Ken and Andrea Oakleys' are entitled to recover attorney's fees.


### Submitted by the City of Port Aransas

33.   Whether the City is immune under the doctrine of Sovereign Immunity.

There are no facts alleged under which there is a waiver of immunity under the Tort Claims Act. Sect. 101.001 et seq. Tex. Civ. Prac. & Rem. Code.

34.   Whether the actions of the City in approving or disapproving the permits were discretionary/legislative acts for which the City is immune. Sect. 101.056 Tex. Civ. Prac. & Rem. Code. *Woodson Lumber Company v. City of College Station*, 752 S.W.2d 744 (Tex. Civ. App.-- Houston [1st Dist.] 1988, _____)

35.   Whether the City of Pt. Aransas was required to give any notice to the Gochman's regarding any hearings or meetings with regard to Dune Permit 97-010.

There is no requirement for giving notice to the Gochmans in the Dune Protection Act Section 63.001 Tex. Nat. Res. Code or pursuant to the Pt. Aransas Coastal Management Plan.

36.   Whether the failure to give notice to the Gochmans re Dune Permit 97-010 is a violation of U.S.C. § 1983.

There is no evidence of any violation of the City of Pt. Aransas, much less a violation sufficient to show the custom and policy necessary to a finding of liability of a municipality under Section 42 USC Sect. 1983. Monell ......

37.   Whether the failure to give notice in writing to the AG's office of the specific date of the hearing on dune permits was a violation of U.S.C. § 1983 as to the Plaintiffs.

- 20 -

(No standing to complain by the Gochmans).

There is no evidence of any violation of the City of Pt. Aransas, much less a violation sufficient to show the custom and policy necessary to a finding of liability of a municipality under Section 42 USC Sect. 1983. *Monell v.  Department of Social Services of the City of New York*, 436 U.S. 658 98 SCt. 2018 (1978).

38.     Whether the City of Port Aransas deprived the Plaintiffs of their rights of due process of law.

There is no evidence the City prevented notice to the Gochman's of the dune permitting process. In other words, there is no evidence of a custom or policy not to notify the Gochmans. Monell... Moreover, the public, including the Gochman's, did have public notice of the meetings at which the permitting process took place. *Monell v.  Department of Social Services of the City of New York*, 436 U.S. 658 98 SCt. 2018 (1978).

38a.    Whether the Constitution requires "personal" notice to the plaintiffs with regard to the permitting of the dune permit.

39.     Whether the Plaintiffs have standing at law to sue the City to compel it to enforce the Dune Protection Act generally. *Lower Valley Residents Association of El Paso v.  The City of El Paso*, 466 S.W.2d 436 (Tex. Civ. App.-- El Paso 1971, _____)

40.     Whether or not the Plaintiffs are "littoral" land owners. City of Corpus Christi v. Davis, 622 S.W.2d 640 (Tex. Civ. App.-- Austin 1981, n.r.e. See also Motion for Summary Judgment of Urban Engineering.

41.     Whether the Gochmans waived any complaint regarding the issuance of the permits by failing to appeal, and/or exhaust any of their administrative remedies (if any).

While defendants deny plaintiff's are "Littoral landowners", even had they been, plaintiffs failed to appeal pursuant to the Dune Protection Act.

42.     Whether the hearings in issuance of the dune permits were "public hearings."

The City Charter provides that all meetings and items under consideration are to allow public feedback. See Section 2-19, City of Pt. Aransas Rules of Procedure for Council Meetings.

43.     Whether the Plaintiffs are estopped or barred by the doctrine of laches to assert

- 21 -

their claims.

Plaintiffs waited until well after they saw the development to the north and built their home in spite of the knowledge of the development of Beachwalk II, including the Oakley's residential lot.

## Submitted by the Urban Defendants

44.     Whether Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc., and James Urban (the "Urban Defendants") are liable to Plaintiffs in the capacities in which they have been sued.  42 U.S.C. § 1983 (West 2000);  *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F.Supp.2d 825, 852 (S.D. Tex. 1999).

45.     Whether the Urban Defendants were involved in a conspiracy involving state action.  *Brown v. City of Galveston*, 870 F. Supp. 155, 160 (S.D. Tex. 1994) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1186 (5th Cir. 1990)).

46.     Whether there was an agreement between the Urban Defendants and the City of Port Aransas to commit an illegal act which resulted in a depravation of rights to the Plaintiffs.  *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 825, 853-4 (S.D. Tex. 1999).

47.     Whether the Plaintiffs were deprived of any civil rights as a result of the alleged conspiracy involving the Urban Defendants.   *West v. Atkins*, 487 U.S. 42, 48 (1988)

48.     Whether the Urban Defendants took any action on the Beachwalk II project while they were acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

49.     Whether the Urban Defendants are entitled to qualified immunity.  *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

50.     Whether the Urban Defendants performed or conspired to perform, any illegal act.  *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

51.     Whether the Urban Defendants performed, or conspired to perform, any legal act by unlawful means.  *First State Bank v. Keilman*, 851 S.W.2d 914, 925 (Tex. App.-Austin 1993, writ denied).

52.     Whether the Urban Defendants knew, or had reason to know, that any lawful act they took would cause the Plaintiffs' alleged harm.  *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

53.    Whether the Urban Defendants had the requisite intent to commit the complained of alleged unlawful acts. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

54.    Whether the Urban Defendants proximately caused any of Plaintiffs alleged damages. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

55.    Whether the Plaintiffs' claims against the Urban Defendants are barred by the applicable statutes of limitations. TEX. CIV. PRAC. & REMS. CODE § 16.003(a) (Vernon Supp. 1999); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1029 (5th Cir. 1988).

56.    Whether the right to a hearing on a dune permit, if one exists, is a protected property interest. *Double I Limited Partnership v. Plan & Zoning Comm'n of Glastonbury*, 588 A.2d 624, 631 (Conn. 1991 (quoting *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541-3 (1985)); *Alford v. Davis*, 738 S.W.2d 312, 316-17 (Tex. 1987).

57.    Whether the Complaint, and the purported causes of action stated therein, allege facts sufficient to state a cause of action or any claim upon which relief may be granted. FED. R. CIV. PROC. 12(b)(6)

58.    Whether the Plaintiffs have identified a protected "life, liberty, or property" interest as required to maintain a Section 1982 claim based on the denial of due process. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991).

59.    Whether Plaintiffs have standing to bring their claims under the Dune Protection Act because they are not littoral owners. *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 646 (Tex. App.–Austin 1981, writ ref'd n.r.e.).

## 10.   <u>Exhibits</u>

Plaintiff's Exhibits (Tab ___)

Defendant's Exhibits (Tab ___)

11.                           **PLAINTIFF WITNESSES**

**ARTHUR GOCHMAN** is a Plaintiff in the case, and is the owner and/or lessee of Lots 24, 25, and 26, Beachwalk I, Mustang Island, Nueces County, Texas, the home lots, the real property at issue, and has knowledge of the relevant facts as to statements, the building, and damages, all as set out in their Amended Original Petition.

> 1800 North Mason Road
> Katy, Texas 77449
> (281)646-5220

**MOLLY GOCHMAN** is a Plaintiff in the case, and is the daughter of Arthur Gochman and is an owner-lessee of the real property involved in this litigation, and has knowledge of relevant matters, including the purchase of the property from Stanley Starrett, Jr., a Defendant, construction of the residence on Lot 24 and damages, and all other matters as alleged in the Plaintiff's Amended Original Petition.

> 273 Beachwalk
> Beachwalk I
> Port Aransas, Texas

**KEN OAKLEY** is a defendant in the case and the owner of the real property Lot 35 Beachwalk II Addition, City of Port Aransas, on which he built his residence, which is adjoining the Gochman property to the North and East, seaward and which construction is in violation of the Dune Protection Act and the Port Aransas Coastal Management Plan and gave rise to this litigation. [Defendants disagree with this characterization of his testimony.]

> Beachwalk II Addition
> Port Aransas, Texas

**STEPHEN THOMPSON** is the building official for the City of Port Aransas. He was the building inspector working for the City of Port Aransas, Texas, who inspected the Oakley construction on Lot 35 and will testify that Urban Engineering is the City Engineer handling the Beachwalk II project for the City. [Defendants disagree with this characterization of his testimony.]

> 904 Barnett Street
> Kerrville, Texas

**TOMMY M. BROOKS** is the City Manager for the City of Port Aransas and can testify with regard to permitting and applicable ordinances in the City of Port Aransas and their relation to

Beachwalk II.

> 710 West Avenue A
> Port Aransas, Texas 78373-4128
> (512) 749-4111

**TIM DYKES** is the architect retained by the Plaintiff, Arthur Gochman, to design the Gochman residence on Lot 24, Beachwalk I

> TLD Architects, Inc.
> 15915 Katy Freeway, Suite 530
> Houston, Texas 77094
> (281) 647-0510

**DONALD M. FEFERMAN** is the attorney who represented Mr. Gochman and investigated the permitting process for the Oakley residence on Lot 35, Beachwalk II. Mr. FEFERMAN has previously served on the Nueces County Beach Management Committee and is familiar with the Dune Protection Act and its application. [Defendants disagree with this characterization of his testimony.]

> Feferman and Rehler
> P.O. Box 23041
> Corpus Christi, Texas 78403-3041
> (361) 883-1830

**PRISCILLA M. HUBENAK**, Assistant Attorney General, Natural Resources Division. Ms. Hubeneck is an Assistant Attorney General who worked on the permits obtained by Defendant, Stanley Starrett, Jr.

> Office of the Attorney General
> P. O. Box 12548
> Austin, Texas 78711-2548
> (512)463-2012

**JESSY L. JONES** is an employee of the General Land Office in Austin, Texas, and worked on permitting and ordinances with the State of Texas with regard to the Oakley residence and the permitting of Beachwalk I and II, Port Aransas, Texas.

> Texas General Land Office
> Stephen F. Austin Building

1700 North Congress Avenue
Austin, Texas 78701-1495
(512)463-5001

**TERRENCE F. WOOD** is an appraiser who appraised Lots 24, 25, and 26 the home lots for Defendant, Stanley A. Starrett, Jr.

Terrence F. Wood & Company
921 North Chaparral, Suite 201
Corpus Christi, Texas 78401
(361)888-8991

**JAMES L. URBAN** is a Defendant and an engineer who with his firm, Urban Engineering, prepared the Port Aransas Coastal Management Plan, the Application for Permitting Beachwalk I and II for Defendant, Stanley A. Starrett, Jr., and was the City of Port Aransas Engineer active in the platting of Beachwalk I and II before the City Council of Port Aransas, Texas. [Defendants disagree with this characterization of his testimony.]

Urban Engineering
P. O. Box 6355
Corpus Christi, Texas 78466-6355
(361)854-3101

**STEPHEN GRUNWALD** was an engineer working for Urban Engineering and was an engineer who worked with Defendant, Stanley A. Starrett, Jr., in the platting process of Beachwalk I and II and gave advice as the City of Port Aransas Engineer on the Dune Permit for Starrett. [Defendant's disagree with this characterization of his testimony]

P. O. Box 6355
Corpus Christi, Texas 78466-6355
(361)854-3101

**DUDLEY CARPENTER** was the project superintendent for the construction of the Gochman residence on Lot 24 (the home lot).

1800 North Mason Road
Katy, Texas 77449
(281)646-5220

**KIMBERLY MCKENNA** is a Coastal Geologist who formerly worked at the Texas General Land Office and can testify with regard to the Application of the Dune Protection Act and its enforcement. [Defendants object to inclusion of this witness, subject to the court's ruling on

Defendants' Motion to Exclude Expert Testimony.]

> P. O. Box 9586
> Newark, DE 19714-9586
> (302)866-9981

**GREG TURRICHI** is a general contractor in Port Aransas, Texas, who built the Oakley house upon Lot 35, next to and immediately North of the Gochman home lots.  His company also caused to be removed a portion of the sand dune and level its grass cover in the construction of the Oakley residence. [Defendants disagree with this characterization of his testimony.]

> P. O. Box 2708
> Port Aransas, Texas 78374

**JAMES SHERRILL** is the former Mayor of the City of Port Aransas, and executed documents with regard to Starrett and his application and compliance with the Port Aransas Coastal Management Plan.

> 710 W. Avenue A
> Port Aransas, Texas 78373
> (361)749-4111

**FRANK RUTTENBERG** is an attorney retained by Plaintiffs who investigated violations of the Dune Protection Act by Same Defendants. [Defendants disagree with this characterization of his testimony.]

> 106 South St. Mary's
> 8001 Alamo Center
> San Antonio, Texas 78205

**TOM MURPHY** is a former employee for the City of Port Aransas, Texas, and inspected the Oakley House.

> The City of Port Aransas, Texas
> 710 W. Avenue A
> Port Aransas, Texas 78373
> (361)749-4111

**JEAN IVY** is an employee for the City of Port Aransas with knowledge of facts and documents.

> The City of Port Aransas, Texas
> 710 West Avenue A
> Port Aransas, Texas 78373

(361)749-4111

**STANLEY A. STARRETT** is a Defendant and is the developer of Beachwalk I and II, who made application for permits and made representations to Plaintiffs. [Defendants disagree with this characterization of his testimony.]

P. O. Box 1287
Port Aransas, Texas 78373

**TONY DOGEY** is a sub-contractor who worked on the Gochman home and witnessed the Oakley building.

307 Epps
Tomball, Texas 77375
Home: (281)351-7419
Pager: (802)916-2591

**WILLIAMS INDUSTRIES, INC.** was the General Contractor who built the Gochman home.

11000 Brittmoore Park Drive
Houston, Texas 77041

**DON RICHARDSON** is an employee of Williams Industries, Inc. who built the Gochman home and witnessed the Oakley building.

11000 Brittmoore Park Drive
Houston, Texas 77041

**JENNIFER S. PROUTY, PH.D.**

220 Alta Loma
Corpus Christi, Texas 78411
Telephone: (361) 825-2436

Dr. Prouty is a Ph.D. Geologist who is a professor at Texas A&M, Corpus Christi, Texas.  Dr. Prouty will testify as to an Inadequate Alternative Analysis to the Destruction of Primary Dunes on Beachwalk II as prescribed by the Texas Administrative Code 31TAC Chapter 15.3 (o)(4)(c)(iii) and in violation of the Port Aransas Coastal Management Plan.  Dr. Prouty will testify that there was vague and misleading description of the Planned Dune Destruction of Lot 35, Beachwalk  II, and will testify on the impact of the dunes for failure to bury the dune with fill and their removal of a landward side of the ridge dune.  Dr. Prouty will testify about the inadequate time given  the Texas General Land Office for review and comment and the violation of the Texas Administrative

Code 31TAC Chapter 15.3 (o)(4)(c)(iii) required process for Dune Permit and Beachfront construction review and approval. Dr. Prouty will testify as a different finding of comparable Dune Permits when the General Land Office was permitted review and comment with the focus on the Episcopal Diocese of West Texas, and its application for Dune Permit and Master Plan Amendment for construction of a Conference Center and Retreat on Mustang Island. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony.]

## MATT C. DEAL

952 Echo Lane, Suite 315
Houston, Texas 77024-2758
Telephone: (713) 461-1466
Telecopier: (713) 468-8160

Matthew C. Deal is a Senior Appraiser with Lewis Realty Advisors of Houston, Texas. Mr. Deal is a graduate of the University of Texas with a B.A. Degree in 1988. Mr. Deal is a appraiser and consultant. His experience include evaluation of both improved and unimproved real property in Harris County, North Texas, South Texas Valley, Corpus Christi and Florida. He has testified in condemnation cases in properties in Houston, Texas. Mr. Deal was hired on July 10, 2000, and has completed his evaluation of the **GOCHMAN** property, on Lot 24, Beachwalk I and will testify as to the loss of value, under **GOCHMAN** property. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony.]

## RAY WOODARD

4213 Brookwoods
P. O. Box 925305
Houston, Texas 77092
Telephone: (713) 680-1866

Mr. Woodard is a Land Appraiser. Mr. Woodard develops and will testify as to damages and represents those in photographs. Mr. Woodard will testify as to the damage to the **GOCHMAN** property on Lot 24 by the construction of the **OAKLEY** residence, and will show by photographic evidence the loss of view from the **GOCHMAN** house, depicting the view without the **OAKLEY** house and the loss of view caused by the **OAKLEY** house. Mr. Woodard will testify as to his opinion of damages to the **GOCHMAN** house by the building of the **OAKLEY** house. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony.]

## MAX J. LUTHER, III

Max J. Luther, III, P.C. & Associates
Frost Bank Plaza
802 N. Carancahua, Suite 1350
Corpus Christi, Texas 78470-0165
Telephone: (361) 888-5544
Telecopier: (361) 887-6835

Mr. Luther is the attorney for the PLAINTIFFS, **ARTHUR GOCHMAN and MOLLY GOCHMAN.** Mr. Luther is a graduate of the University of Texas with a Degree in a Bachelor of Arts and graduate of the University of Texas Law School in 1958. Mr. Luther has practiced as an attorney since 1957, as an attorney at the General Land Office, Austin, Texas, Assistant County Attorney and Assistant District Attorney for Nueces County, Texas, and has been in the private practice of law in Corpus Christi since 1959. Mr. Luther is admitted to practice before the Supreme Court of the State of Texas, in the United States District Court, and the United State Supreme Court. He is actively practiced law for forty (40) years, and has offices in Corpus Christi and Austin, Texas. Mr. Luther will testify that the PLAINTIFFS reasonable and necessary attorneys fees, expenses of litigation or in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and he will testify reasonable and necessary cost of handling an appeal will be TWENTY FIVE THOUSAND DOLLARS ($25,000.00).

## EDMUND COGBURN

Dow, Cogburn & Friedman, P.C.
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: (713) 940-6000
Telecopier: (713) 940-6099

Mr. Cogburn is a graduate of the University of Texas and has practiced law since 1954. He is a partner with the Law Firm of Dow, Cogburn & Friedman, P.C. in Houston, Texas, and his address is 9 Greenway Plaza, Suite 2300, Houston, Texas 77046. Mr. Cogburn will testify of the attorneys fees and expenses of obligation for the PLAINTIFFS in excess of FIFTY THOUSAND DOLLARS ($50,000.00) and will testify that the cost on appeal would be TWENTY FIVE THOUSAND DOLLARS ($25,000.00).

## CHARLES E. BELAIRE

Belaire Environmental Inc.
P. O. Box 741
Rockport, Texas 78381

Telephone: (361) 729-2948
Telecopier: (361) 729-2970

Mr. Charles E. Belaire is a Coastal Ecologist with the Belaire Environmental Inc. specializing in the vegetation communities of the Texas Coastal Zone. He has provided services of 200 or more private and public clients, including vegetation mapping, impact assessments and habitat restoration and creation. He has testified as an expert in other cases. Mr. Belaire is reasonably expected to testify as to damages to Dune Vegetation caused by the building on Lot 35, Beachwalk II. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony.]

## KIMBERLY K. MCKENNA

P. O. Box 9586
Debark, Delaware 19714
Telephone: (302) 266-9981

Ms. McKenna is a geologist by profession, she has the masters of Science in Geology from the University of South Tampa, Florida, from Stockton College of New Jersey, and a Bachelor of Science and Environmental Studies at Stockton College of New Jersey. She has had numerous publications listed in her personal experience. Ms. McKenna will testify with regard to the technical details of the Dune Beach System and the General Permitting Process required by the General Land Office of the State of Texas and under the Dune Protection Act. She has reviewed the Dune Application Permit filed by the DEFENDANT, STARRETT, in this cause, and can testify as to violations. Her charges are set out in her resume for trial preparation of ONE THOUSAND DOLLARS ($1,000.00) a day and a witness fee of ONE THOUSAND TWO HUNDRED DOLLAR ($1,200.00) per day. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony.]

## TIM DYKES

15915 Katy Freeway, Suite 530
Houston, Texas 77094
Telephone: (281) 647-0510

Mr. Dykes is a licensed architect, who is a graduate of the Texas A&M University. He has a Bachelor's Degree in Environmental Design from Texas A&M. He is licensed in Louisiana, Mississippi, Alabama, California, Florida and Oklahoma. He is the architect that designed and supervised the construction of the GOCHMAN house on Lot 24, Beachwalk I addition. He will

testify his facts surrounding the building of the **GOCHMAN** house on Lot 24. His deposition was taken June 24, 2000, 1999, which you should refer to. Mr. Dykes if billing on a hourly basis. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony. Defendants do not object to factual testimony being offered by Mr. Dykes.]

## BOB CARDENAS

1401 Sterrett, Suite 102
Houston, Texas 77002

Mr. Cardenas is the sole proprietor of RBG Solutions of Houston, Texas. Mr. Cardenas will supervise the construction of a scale model of Lot 24, Beachwalk I addition and Lot 35, Beachwalk II addition to The City of Port Aransas, Texas, and will testify that the model adequately depicts that which it is scheduled to portray. Mr. Cardenas will be charging on an hourly basis and a fixed fee basis for the model. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony.]

## KENNETH C. SMITH

8 Greenway Plaza, Suite 500
Houston, Texas 77046
Telephone: (713) 621-3550

Mr. Smith is a registered Professional Engineer, with a Bachelor in Science and General Engineering from Texas A&M from the University of Kingsville, Texas, in 1971. Mr. Smith has had extensive engineering and management experience in areas of engineering design, public and private bidding on projects construction management feasibility studies, cost estimates, agency approvals and hearings, bond sales for public financing, boundary surveys, plating and subdivision of property and typographic surveys. Mr. Smith is expected to testify as to the design of Beachwalk II, and its impact upon critical dunes. Mr. Smith is billing on an hourly basis. [Defendants object to inclusion of this witness, subject to Defendants' Motion to Exclude Expert Testimony.]

## DEFENDANTS' WITNESSES:

### GUNILLA ASP
3101 Old Pecos Trail #108
Santa Fe, New Mexico 87505
(505) 995-8239

This witness is a person who was with Arthur Gochman both times he visited Beachwalk I prior to signing an earnest money contract on Lots 24, 25, and 26.

### Mr. TOM BROOKS
City Manager
City of Port Aransas
Port Aransas, Texas

This witness is expected to testify regarding the notice given to the Attorney General's office and the GLO, after a determinations were made by the Planning and Zoning Commission; also will testify as to the events of the City Council meetings during the dune permitting, and procedures of the City during the permitting process.

### TIM DYKES

Corpus Christi, Texas

This witness is expected to testify factually regarding what he did or did not do.

### STEPHEN GRUNWALD
Urban Engineering
P. O. Box 6355
Corpus Christi, Texas 7846
(361) 354-3101

Mr. Grunwald is a former employee of Urban Engineering and may testify about his involvement in the Beachwalk I and II project.

### PRISCILLA HUBANEK
Assistant Attorney General
Natural Resources Division
Office of the Attorney General

P. O. Box 12548
Austin, Texas 78711-2548
(512) 463- 2012

Ms. Hubeneck is an Assistant Attorney General who worked on the permits obtained by Defendant, Stanley Starrett, Jr.


**JESSY L. JONES**
Texas General Land Office
Stephen F. Austin Building
1700 North Congress Avenue
Austin, Texas 78701-1495

Jessy L. Jones is an employee of the General Land Office in Austin, Texas, and worked on permitting and ordinances with the State of Texas with regard to the Oakley residence and the permitting of Beachwalk I and II, Port Aransas, Texas.

**JEAN IVY**
City of Port Aransas
710 West Avenue A
Port Aransas, Texas 78373.

This witness is an employee of the City of Port Aransas and is expected to testify regarding her knowledge of facts and documents pertaining to Beachwalk II.


**TOM MURPHY**
City of Port Aransas
710 West Avenue A
Port Aransas, Texas 78373

This witness is expected to testify regarding his inspection of the Oakley house.

**KEN AND ANDREA OAKLEY**
P. O. Box 1782
Port Aransas, Texas 78373
(361) 749-6008

Mr. Oakley is a defendant. He and his wife Andrea are Counter-Plaintiffs.


**JAMES SHERRILL**
Former Mayor of Port Aransas

710 West Avenue A
Port Aransas, Texas 78373

This witness is expected to testify regarding the granting of the Dune permit.


**STANLEY A. STARRETT**
P. O. Box 1287
Port Aransas, Texas 78373

This witness is a Defendant and is the developer of Beachwalk I and II, who made application for permits.


**E. R. FLEURIET**
THE FLEURIET SCHELL LAW FIRM, LLP
621 E. Tyler
Harlingen, Texas 78550
(956) 428-3030


This witness is an expert witness on attorneys' fees. His report has already been submitted to all parties.


**MATTHEW J. SULLIVAN**
Haynes and Boone
600 Congress Avenue, Suite 1600
Austin, Texas  78701
(512) 867-8400

Mr. Sullivan is expected to testify regarding the reasonable and necessary attorney's fees and costs. A copy of Mr. Sullivan's report has previously been provided to the parties.


**GREG TURRICHI**
P. O. Box 2708
Port Aransas, Texas 78374.

This witness expected to testify regarding his employment as the General Contractor who constructed the Oakley's house.


**RANDY THOMPSON**
144 Cordula

Corpus Christi, Texas 78411

Mr. Thompson was the City Engineer on the Beachwalk II project. Mr. Thompson is expected to testify regarding his role as City Engineer on the Beachwalk II project.


**STEPHEN THOMPSON**
904 Barnett Street
Kerrville, Texas 78028
(830) 896-7109

Mr. Thompson is the former City Building Official during the relevant time period for this lawsuit. Mr. Thompson is expected to testify regarding his investigation of the Beachwalk II project.


**JAMES L. URBAN, P.E.**
Urban Engineering
2725 Swantner Drive
Corpus Christi, Texas 78404
(361) 854-6001

Mr. Urban is a professional engineer who will testify regarding the requirements of the Port Aransas Coastal Management Plan (the "Plan") adopted by the City of Port Aransas. Mr. Urban will testify generally about the permitting process under the Plan and specifically about compliance with the Plan and the dune permits issued by the City of Port Aransas that are at issue in this litigation. Mr. Urban is also expected to testify regarding the scope of work undertaken by Urban Engineering under its contract with Stanley Starrett, the terms of the contract, the duties and obligations of Urban Engineering and the services provided by Urban Engineering in connection with the Beachwalk I and Beachwalk II projects. Mr. Urban will also offer testimony regarding the customary standards and practice of Urban Engineering when that firm is retained by a private entity to appear before any governmental authorities, such as the City Counsel or the Planning and Zoning Commission for the City of Port Aransas. Further, Mr. Urban is expected to testify that the Urban Engineering defendants did not conspire with the City to deprive Arthur or Molly Gochman of any rights. A copy of Mr. Urban's report has previously been provided to all parties


**ELISA UGARTE**
**SCOTT FRIEDMAN**
**ELIZABETH RAMIREZ**
**JAMIE MITCHELL**
Texas General Land Office
Stephen F. Austin Building
1700 North Congress Avenue
Austin, Texas 78701-1495

Ms. Ugarte, Mr. Friedman, Ms. Ramirez and Ms. Mitchell are expected to testify regarding the investigations by the General Land Office of the Beachwalk II permits.


**TERRENCE F. WOOD**
921 North Chaparral, Suite 201
Corpus Christi, Texas 78401

Mr. Wood is a property appraiser who is expected to testify on the value of the Gochman property. A copy of Mr. Wood's report has previously been provided to all parties.


**E. Z. MUNOZ**
Urban Engineering
2725 Swanter
P. O. Box 6385
Corpus Christi, Texas 78466-6355
(361) 854-6001

This witness is with Urban Engineering. Mr. Munoz was present when Urban conducted a survey of the building locations during the lawsuit.


**JIM PRIOUR**
City of Port Aransas
Building Department
710 Avenue A
Port Aransas, Texas 78373
(361) 749-4111

This witness has knowledge of the permitting process and should have information related to permit review for the Molly Gochman's home.


**JAIME MITCHELL**
Texas General Land Office
1700 N. Congress Avenue
Austin, Texas 78701
(512) 749-4111

This witness has knowledge relating to the dune permit for the Oakleys' lot. The documents custodian will have knowledge of the documents in the files at the General Land Office relating to the permits.


**GEORGE SWANK**

City of Pt. Aransas
Building Department
710 Avenue A
Port Aransas, Texas 78373
(361) 749-4111

This witness certified the applications for permit for the Beachwalk II lots were consistent with the City of Port Aransas Coastal Management Plan.

<u>KAREN BORCHARDT</u>
San Jacinto Title Company
14602 Park Rd. 22
Corpus Christi, Texas 78418
(361) 992-1754

Ms. Borchardt and Mr. Gilbreath have knowledge regarding the Gochmans' lis pendens notices, the effect of the notices on the Oakley closing, the details of the Oakleys' construction loan and permanent mortgage and the October 29, 1999, release the Oakleys signed.

<u>MARK GILBREATH</u>
Attorney at Law
5926 South Staples, Suite A-2
Corpus Christi, Texas 78413
(361) 992-1454

Ms. Borchardt and Mr. Gilbreath have knowledge regarding the Gochmans' lis pendens notices, the effect of the notices on the Oakley closing, the details of the Oakleys' construction loan and permanent mortgage and the October 29, 1999, release the Oakleys signed.

<u>FRED D. DREILING</u>
Bank of America
500 North Shoreline, Suite 714
Corpus Christi, Texas 78471-1007
(361) 883-0186

This witness will testify regarding the Oakleys' attorney fees and expenses of litigation.  Mr. Dreiling's report has been furnished to all counsel.

11B.   "If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses."

## 12.    SETTLEMENT

Settlement efforts continue in this cause at the time of the drafting of the  Joint Pre-Trial Order. Mediation is set for Monday, August 21, 2000, at 9:00 a.m. before Mr. Marvin Nebrat.  In the event that Mediation fails, then all settlement efforts will have been exhausted and the case will not be able to be settled and that it will have to be tried.

## 13.    A PROBABLE LENGTH OF TRIAL

A probable length of the trial is from 7 to 10 working days.  Some of the Plaintiff  witnesses are available on short notice, others are from out of the City.  The Plaintiffs will have one Out of State witness, and Plaintiff will have one bulky exhibit and video demonstration.

## 14.  ATTACHMENTS

A. For a Jury Trial

(1)    Proposed Questions for Voir Dire Examination (See Tabs  1  through 5 )
(2)    Proposed Jury Instructions and Verdict Forms (See Tabs  6 through 14 )


_____

UNITED STATES DISTRICT JUDGE


APPROVED DATE:  8/21/00

MAX J. LUTHER, III
Attorney in charge for Plaintiffs
SBN   1270600V
FED. I.D. 208

APPROVED DATE:

EDMUND COGBURN
Attorney for Plaintiffs
SBN  04501000
FED. I.D. 2105

- 39 -

APPROVED DATE:

FRED D. DREILING
Attorney in charge for Defendant, *and Cainter Plaintiff*
Ken Oakley
SBN 06115100
FED. I.D 10230

APPROVED DATE:

*James F. McKibben, JR w/ Permission by David W. Green*

JAMES F. MCKIBBEN, JR.
Attorney in charge for Defendant,
The City of Port Aransas, Texas
SBN 13713000
FED I.D. 01A

APPROVED DATE:

MICHAEL G. MORRIS
Attorney for The City of Port Aransas, Texas

APPROVED DATE:

MATTHEW J. SULLIVAN
Attorney in charge for Defendant,
Urban Engineering & Peralla Corp., *James Urban and Urban Consulting Engineers, Inc.*
SBN 19A08325
FED. I.D. 16960

APPROVED DATE:

E. R. FLEURIET *w/ permission M. Sullivan*
Attorney in charge for Defendant,
Stanley A. Starrett, Jr.
SBN 07145500
FED. I.D. 1327

- 40 -

**APPROVED DATE:**

_____

**JORGE C. RANGEL**
**Attorney for Stanley A. Starrett, Jr.**

ChdPDF - www.fastio.com

1

CVisPDF – www.fastio.com

# Plaintiff's Voire Dire Questions

1. Do any of you know any of the parties?  (1)STANLEY A. STARRETT, JR.; (2) KEN OAKLEY, (3)  URBAN ENGINEERING, A PARTNERSHIP; THE PERALLA CORPORATION; URBAN CONSULTING ENGINEERS, INC. (4) THE CITY OF PORT ARANSAS TEXAS; AND (5) MOLLY GOCHMAN AND ARTHUR GOCHMAN.

2. As to Port Aransas, do any of you live in THE CITY OF PORT ARANSAS, TEXAS?

3. Do you know any members of the City Counsel or the Zoning and Planning Commission in Port Aransas, Texas?

4. Has URBAN ENGINEERING done any work for you or any company associated with you?

5. Has any of the attorneys ever represented you or your family or have you had any dealing with the attorneys:

    (1)    Max J. Luther, III - Corpus Christi, Texas;

(2)    Ed Cogburn - Houston, Texas;

    (3)    Fred D. Dreiling - Corpus Christi, Texas;

    (4)    James F. McKibben - Corpus Christi, Texas;

    (5)    Michael Morris - Corpus Christi, Texas;

    (6)    Matthew J. Sullivan - Austin, Texas;

    (7)    E. R. "Randy" Fleuriet - Harlingen, Texas; and

    (8)    Jorge C. Rangel - Corpus Christi, Texas.

6. Do you now, or have you ever, belonged to any Environmental Group?

7. Do you own your own home?

8. Have any of you ever not been hindered in building or repairing your home because of environmental issues or environmental restrictions?

9.   Do any of you live in Beachwalk I and II, Port Aransas, Texas?

10.  Do you believe that the enforcement of environmental laws is beneficial in helping preserve the environment?

11.  Have any of you been involved in any litigation or proceeding which involves environmental issues?

12.  Are you familiar with the subdivisions in Port Aransas, Texas, known as Beachwalk I and II?

13.  Do you have now or have you ever had an unpleasant experience with Academy Sports and Outdoors?  If so, you explain?

14.  Do any of you belong to the organization, Citizens Against Law Suit Abuse or any similar organization involving "tort reform"?

15.  Job - Spouse Job?  What is your employment?  What is your spouse's employment?

16.  Of what Religious affiliation are you ?

17.  Do you have knowledge of the reputation of any of the parties in law suit?

18.  Does anyone on the panel feel it is wrong, religiously improper, or immoral to file a law suit?

2

ClibPDF – www.fastio.com

## Voire Direct Questions of Defendant Starrett

1.  Have any of you or a close family member of yours ever had a bad experience with a land developer?  If so, please explain.

2.  Have any of you or a close family member of yours ever had a bad experience with a home builder?  If so, please explain.

3.  Has anybody here or a close family member been sued in a civil case?  If so, please explain the nature of the case and its resolution.

4.  How many of you have ever owned a home or other piece of property that had a particular view that you were proud of?  If so, please describe the property and the type of view.

5.  How many here believe that a person who builds a house on the beach is entitled to an uninterrupted view up and down the beach when it is apparent that the house is in an area of ongoing development?

6.  How many of you have a basic feeling that a person is responsible for his own affairs?

7.  How many of you believe that it is right to shift responsibility for one's own conscious decisions and actions?

8.  If you were building a house, would you feel it your responsibility to check on all regulations that apply to building a house on your property or hiring somebody to check those regulations on your behalf?

3

ChilPDF - www.fastio.com

# Voire Dire Questions of Defendant Oakley

1.   Is there anyone who now has, or has had, either a professional or social relationship with any of the parties? The plaintiffs Arthur Gochman and Molly Gochman? The Defendants – Mr. Stan Starrett, Mr. Jim Urban, Urban Engineering, The City of Port Aransas, or Mr. Ken Oakley?

2.   The Oakleys have filed a counterclaim against the Gochmans. Although Andrea Oakley, Mr. Oakley's wife, is not a defendant, she, along with her husband, are counter-plaintiffs. Is there anyone on the panel who has, or has had, either a professional or social relationship with Mr. Oakley's wife?

3.   Is there anyone who now has, or has had, any professional or social relationship with any of the people who may be called as witnesses in this trial? (See Oakley witness list below).

4.   Is there anyone who is now , or has been, a member of any organization that has, as one of its purposes, environmental protection or environmental preservation, e.g. the Sierra Club.

5.   Is there anyone who believes that the sand dunes located on the Gulf Coast barrier islands should not, under any circumstances, be excavated, relocated, or altered in any manner due to any residential or commercial construction?

6.   Is there anyone who believes it would be wrong to build a house partially into a sand dune, even if appropriate permits had been issued allowing the construction?

7.   Is there anyone who has, or has had, a continuing business relationship with the Academy stores or the Academy Corporation? This does not include an occasional customer of any of the Academy stores. This question is meant to include individuals or employees of businesses that have a regular, ongoing business relationship with the Academy Stores or the Academy Corporation.

8.   Are you, or are any members of you family, employed by the Academy stores or the Academy Corporation?

9.   Have you, or have any members of your family, ever been employed by the Academy stores or the Academy Corporation?

10.  Is there anyone who has, or has had, either a professional or social relation hip with any of the attorneys? Mr. Max Luther, Mr. Ed Cogburn, Mr. E.R. "Randy" Fleuriet, Mr. Jorge Rangel, Mr. Matt Sullivan, Ms. Andrea Sloan, Mr. Jim McKibben, Mr. David Green, Mr. Michael Morris or Mr. Fred Dreiling.

11.     Have any of these attorneys ever represented any individual or company in connection with a lawsuit in which you, a family member or your employer was a party?

12.     Is there anyone who has been a plaintiff or defendant in a lawsuit - whether or not the case went to trial?

13.     Is there anyone who has ever been involved in a dispute or a lawsuit involving a neighboring homeowner, a real estate developer, an engineering business, or a government entity - such as a city, county or the state?

14.     Is there anyone on the panel who has ever been involved as a party to a lawsuit where you or another party to the suit were asking a judge or jury to either tear down, relocate or remove another person's home?

15.     Is there anyone who believes that a person should recover money damages or other legal relief simply because they have filed a lawsuit?

16.     Does everyone believe and agree that if a person files a lawsuit, the law should require that person to bring to trial competent evidence to prove the allegations they have made?

17.     Is there anyone who has ever been involved in a situation where another person - a stranger to you - attempted to stop you or a family member from buying a house, some other real estate or building and moving into your home?

18.     Ken and Andrea Oakley have filed a counterclaim against Arthur and Molly Gochman. Generally, the Oakleys contend the Gochmans illegally filed two documents - called notices of lis pendens - against the Oakleys' property. Additionally, the Oakleys contend the Gochmans forced them to sign a release before the Gochmans would cancel the first notice of lis pendens. The Oakleys are seeking actual and punitive damages from the Gochmans for the mental angush and emotional distress the Oakleys contend they suffered because of the Gochmans' conduct. The Oakleys are also seeking an award of attorney's fees.

19.     Is there anyone who could not consider an award of damages for mental anguish or emotional distress to the Oakleys, even if supported by competent evidence?

20.     Is there anyone who could not consider an award of punitive or exemplary damages against the Gochmans, even if supported by the evidence?

21.     Is there anyone who could not consider awarding the Oakleys their attorney's fees, even if supported by competent evidence?

22.     Does anyone on the panel have any training, education or work experience in any

of the following fields: real estate sales; real estate development, engineering, real estate title work, real estate loans or construction loans, or general contracting?

23.     Is there anyone who has ever worked for a title company?

24.     Is there anyone who as ever served as a member of a city council?

25.     Is there anyone who as ever served as a member of a city planning and zoning committee?

26.     Is there anyone who attends meetings of either a city council or a planning and zoning committee on a regular basis?

27.     Is there anyone who has any training, education or knowledge in the areas of sand dune protection or preservation?

28.     Is there anyone who has any training, education or knowledge concerning thee Texas Dune Protection Statute, or the rules and regulations of the Texas General Land Office relating to sand dune protection and preservation?

29.     Is there anyone on the panel who does not believe that a person should unreasonably delay asserting their legal rights if they believe someone else is violating the law? For example, if your neighbor starts to build an addition to their house that you believe violates a city zoning ordinance or a subdivision restriction, do you believe you would be justified in doing nothing about this until after the work was completed, and your neighbor had already spent a considerable amount of time, effort and money on the construction work?

30.     Is there anyone who has ever been hindered in developing real estate, or in building or repairing your home because of environmental issues or restrictions?

4

ClibPDF - www.fastio.com

## Voire Dire Questions of the City of Pt. Aransas

1.     The Plaintiffs in this suit are Arthur Gochman and his daughter, Molly Gochman. The Gochman family is the owner of the Academy Corporation which sells sporting goods in Corpus Christi, Texas and elsewhere. Is there anyone here who feels that their association with Academy would cause you to give more credence to one side of this case more than to the other?

2.     Is there anyone here who has had dealings with the City of Pt. Aransas and as a result of those dealings would be biased for or against either party?

3.     Is there anyone here who has been involved with the City of Port Aransas or any other city in getting a building permit or other type of permit for building or any other activity?

4.     Do any of you have any knowledge of this case other than what you have heard in this courtroom?

5.     This trial is a civil suit as distinguished from a criminal prosecution. A criminal prosecution cannot be commenced unless there is probable cause that the Defendant has committed a crime for which they are charged. Anyone, however, can file a civil lawsuit whether or not there is any merit to the claim. Is there anyone here who feels that simply because the Gochmans's have filed a lawsuit against these defendants that the case must have merit?

6.     Has anyone ever filed a lawsuit against the City of Pt. Aransas or against any City?

7.     Is there anyone here who is employed or has ever been employed by Academy Sporting Goods stores?

8.     Have you served on a civil or criminal jury before?

9.     This case involves a property owner who, through a dune permit issued by the City of Port Aransas, built his house closer to the ocean than the Plaintiffs' house. Is there anyone here who does not believe that an owner of property should be allowed the use of his property and to build on such property within the legal guidelines and restrictions placed upon that property?

10.    Is there anyone here who does not believe that one who owns property also has the responsibility to learn the full extent and use of their own property, whether through the use of special permits or otherwise?

11.    Is there anyone who, for any other reasons, feels he or she should not be a member of this jury? Is there anyone who has any feeling, bias or prejudice whether

mentioned or not which would make you tend to favor the Plaintiff over any of the Defendants?  If so, which ones?

CVisPDF – www.fastio.com

5

# Voire Dire Questions of the Urban Defendants

1. Does it bother any of you that more homes are being built on Padre Island?

2. Do any of you believe that it would be wrong, from an environmental standpoint, to build on a beach, even if you got a permit from the City saying that it was okay?

3. What type of experiences have any of you had with engineers?

4. What good or bad experiences have any of you had with the City of Port Aransas?

5. Does anyone not realize that the City of Port Aransas does not employ a full-time City Engineer?

6. Does anyone not realize that the City of Port Aransas uses the services of several different engineers on certain matters that require the input of a City Engineer?

7. Does anyone live on Padre Island or Mustang Island?

8. Do you believe that people who live on Mustang Island or Padre Island generally have an understanding of the dunes?

9. Is anyone not aware that anyone can file a lawsuit by paying a filing fee and alleging virtually anything they want in the lawsuit?

10. Does anyone feel that just because someone makes allegations in a lawsuit that any of them are automatically true?

11. Do you think that just because someone filed a lawsuit and made all of these allegations that they are automatically entitled to something?

6

## Plaintiff's Proposed Instructions & Verdict Form

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN | § | |
| & MOLLY GOCHMAN | § | CIVIL ACTION NO.-00-126 |
| | § | JURY |
| vs. | § | |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| KEN OAKLEY, URBAN ENGINEERING, A | § | |
| PARTNERSHIP, THE PERALLA | § | |
| CORPORATION, URBAN CONSULTING | § | |
| ENGINEERING, INC. | § | |
| AND THE CITY OF PORT ARANSAS, | § | |

### COURT'S CHARGE TO THE JURY

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence--such as testimony of an eyewitness. The other is indirect or circumstantial evidence--the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field--he is called an expert witness--is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income form such testimony represents a significant portion of his

income.

The Plaintiff(s) claim that the Defendant(s), City of Port Aransas, Texas and Urban Engineering, while acting "under color of state law," intentionally deprived the plaintiff of rights under the Constitution of the United States.

The constitutional right that the Plaintiff(s) claim the Defendant(s) violated is this:

The right of a person not to be deprived of property without due process of law;

The right to due process of law in the taking or modification of property rights requires notice to a party, with an interest in the property, including notice of a public hearing before an impartial tribunal where such party may be heard, in opposition to such proposed taking or modification.

Under the Constitution of the United States, a person has both the right to his property and the right not to have it taken without due process of law.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates his rights under the Constitution of the United States.

The Plaintiff(s) must prove each of the following by a preponderance of the evidence:

1.    That the Defendants intentionally committed acts that violated the                  Plaintiff's Federal constitutional right that I have described to you;

2.    That in so doing the Defendants acted "under color" of the authority of the State of Texas; and

3.    That the Defendant's acts were the legal cause of the Plaintiff's damages.

State or local officials act "under color" of the authority of the State when they act within the limits of their lawful authority.  However, they also act "under color" of the authority of the State when

they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the official laws are purporting or pretending to act in the performance of their official duties. An official acts "under color" of state authority if he abuses or misuses a power that he possesses only because he is an official. In taxing or modifying with priviate property rights, the officials must notify individuals with rights in such property and give them an opportunity to be heard.

The first aspect of the Plaintiff's claim is that he was deprived of property rights "without due process of law." This means he was deprived of property without proper procedures being followed to protect their rights. You must first decide whether the Defendants committed the acts that the Plaintiffs claim he they committed; and, if so, you must then decide whether the Defendants were acting within or beyond the bounds of their lawful authority under State law. If the Defendant(s) acted within the limits of their lawful authority under State law, then they did not deprive the Plaintiffs of any right "without due process of law."

The right to due process of law in the taking or modification of property rights requires notice to an affected party, with an interest in the property, including notice of a public hearing where such party may be heard, before an impartial tribunal, in opposition to such proposed taking or modification.

The Plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by the Defendants was a cause-in-fact of the damage Plaintiffs suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The Plaintiffs must also prove by a preponderance of the evidence that the act or failure to act by the Defendants was a proximate cause of the damage Plaintiffs suffered. An act or omission is a proximate cause of the Plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably

foreseeable consequence of the act or omission. [1]

## Instructions on Damages

## CONSIDER DAMAGES ONLY IF NECESSARY

If any of the plaintiffs have proven their claims against the defendant by a preponderance of the evidence, you must determine the damages to which each of those plaintiffs are entitled. You should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that any of the plaintiffs should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that any of the plaintiffs is entitled to recover money from the defendant.

## COMPENSATORY DAMAGES

If you find that the defendant is liable to any of the plaintiffs, then you must determine an amount that is fair compensation for all of those plaintiffs' damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole--that is, to compensate the plaintiff for the damage that the plaintiff has suffered. Compensatory damages are not limited to expenses that a plaintiff may have incurred because of his injury. If any plaintiffs win, they are entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that they have suffered because of the defendant's conduct.

You may award compensatory damages only for injuries that any plaintiffs prove were proximately caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of those plaintiffs' damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You

should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiffs have actually suffered or that the plaintiffs are reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiffs prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

## MULTIPLE CLAIMS

You must not award compensatory damages more than once for the same injury. For example, if a plaintiff prevails on two claims and establishes a dollar amount for his injuries, you must not award him any additional compensatory damages on each claim. A plaintiff is entitled to be made whole once, and may not recover more than he has lost. Of course, if different injuries are attributed to the separate claims, then you must compensate a plaintiff fully for all of his injuries.

## CALCULATION OF PAST AND FUTURE DAMAGES

Damages Accrued

If you find for a plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that

the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

C:\WINDOWS\TEMP\PRETRL(2).GOC.wpd\082120001510

Answer the following interrogatories by a preponderance of the evidence as that charge has been explained to you:

1.      Did the Plaintiffs Gochman suffer damages by The City of Port Aransas, Texas issuance of the permits without due process of law and subsequent actions pursuant thereto?

ANSWER:    "yes" or "no"  _____

2.      What persons contributed to Plaintiffs', Arthur and Molly Gochman's, damages by requesting, aiding and abetting or assisting The City of Port Aransas, Texas, including the City, in the issuance of the permits without due process of law and by actions pursuant thereto?

ANSWER "yes" or "no" to the following:

The City of Port Aransas, Texas          _____

Stanley A. Starrett, Jr.          _____

Jim Urban          _____

Ken Oakley          _____

Urban Engineering          _____

3.      What sum of money, if paid in cash, would compensate the Plaintiffs' for their damages from The City of Port Aransas, Texas issuance of the permits without due process of law and actions pursuant thereof?  Answer in dollars and cents, if any.

ANSWER:    $_____

4.      Did the Defendant Starrett engage in any unconscionable action or cause of action in the misrepresentation of the benefits to the Plaintiffs of the lots purchased by the Plaintiffs that was a producing cause of the damages to the Plaintiffs, Molly and Arthur Gochman?

"Producing Cause" means an efficient exciting or contributing cause that in a natural

sequence, produce the damages, if any.  There may be one or more producing cause.

An unconscionable action or course of action is an act or practice that to a consumer's detriment takes advantage of the lack of knowledge, ability, experience, or capacity of consumer to grossly unfair degree.

ANSWER:    "yes" or "no"  _____

5.    If you have answered the above and foregoing Interrogatory No. 4 "yes", then answer the following Interrogatory.

Did the Plaintiffs suffer damages from such misrepresentation?

ANSWER:    "yes" or "no"  _____

If you have answered the above and foregoing Interrogatory No. 5 "yes", then answer the following Interrogatory No. 6.

6.    What sum of money, if any, if presently paid, in cash, will fully compensate the Plaintiffs for their damages?

ANSWER:    $_____

[this portion of the plaintiff's charge was provided to Defendants on Sunday, August 20, 2000 at 5:00pm]

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that the City approved Dune Protection Permits 008 and 010 without holding public hearings with respect to the applications for such Dune Protection Permits?

Answer "Yes" or "No."

ANSWER: _____

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that Plaintiffs received no personal notice of the applications for Dune Permits 008 and 010?

Answer "Yes" or "No."

ANSWER: _____

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that by allowing the City Engineer, Urban Engineering, to represent a private developer in the presentation of the applications for Dune Permits 008 and 010, without providing its own engineering review of such applications, Urban Engineering having originally prepared the Coastal Management Plan of the City of Port Aransas, that such actions deprived Plaintiffs of their rights in the Critical Dune in question by not providing an impartial tribunal to consider such applications?

Answer "Yes" or "No."

ANSWER: _____

Special Interrogatory No. _____

If you find from a preponderance of the evidence that Dune Protection Permits 008 and 010 allowed the lot owner of Lot 35, Beachwalk II to impact the Critical Dune in such a way as to adversely affect the Critical Dune or Critical Dune vegetation at that location and that such

Applications were not presented so as to prove that there was no practicable alternative to the proposed impact on the Critical Dune at that location which would have no adverse effects on the Critical Dune or the Critical Dune vegetation?

     Answer "Yes" or "No."

     ANSWER: _____

Special Interrogatory No. _____

     Do you find from a preponderance of the evidence that the approval by the City of Dune Protection Permits 008 and 010 occurred under one or more of the following circumstances:

    1.    Without the City holding public hearings with respect to the Applications for such Permits where Plaintiffs could be heard in opposition; or

    2.    Without personal notice to Plaintiffs of the filing of such Applications or any hearing thereon; or

    3.    With the City Engineer, Urban Engineering, which prepared the Coastal Management Plan containing the requirements by which such Applications were tested, presenting such Applications without an engineer independent of Urban to review such Applications, and, without notice from Urban to the City that Urban took no such responsibility on behalf of the City to review such Applications; or

    4.    That the presentation of such Applications by Urban, without such proper safeguards under such circumstances, deprived Plaintiffs of an impartial tribunal to consider such Applications and protect the interests of littoral owners in the protection of the Critical Dune?

Answer "Yes" or "No."

     ANSWER: _____

Special Interrogatory No. _____

     Do you find from a preponderance of the evidence that the City, by approving Dune Protection Permits 008 and 010 allowed the lot owner of Lot 35, Beachwalk II, to impact the Critical Dune in such a way as to

1.  adversely affect either the Critical Dune or Critical Dune vegetation at that location

2.  and that Urban's presentation of such Applications did not provide proof that there was no practicable alternative to such proposed impact on the Critical Dune at that location and

5.  which alternative would have no adverse effects on the Critical Dune or the Critical Dune vegetation?

Answer "Yes" or "No."

ANSWER: _____

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that by approving Dune Permits 008 and 010 that the City allowed an impact on the Critical Dune at Lot 35, Beachwalk II which resulted in damages to Plaintiffs with respect to Lot 24, Beachwalk Addition, through the failure of the City's acting to protect the Critical Dune from adverse effects?

Answer "Yes" or "No."

ANSWER: _____

If you answered "Yes" to this question, what amount are the damages?

Answer in Dollars and Cents.

$_____

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that Starrett, in the presentation of the Applications for Dune Protection Permits 008 and 010 failed to provide alternatives to the impact on the Critical Dune at Lot 35 which would avoid such impact?

Answer "Yes" or "No."

ANSWER: _____

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that Starrett, by his employment of Urban to present his Applications for Dune Permits 008 and 010, together with

1.    the behavior of Urban in preparing and presenting such Applications, despite Urban's status of City Engineer and being the entity which prepared the Coastal Management Plan upon which all such applications are required to be based,

2.    along with the actions of the Commission on Planning and Zoning of the City and the City Council in failing to hold public hearings and to give notice to the General Land Office and the Attorney General of public hearings, as required by the Dune Protection Act, and to Plaintiffs as littoral owners

3.    and the approval of the Applications without engineering review, and without necessary showings of alternatives was

4.    such behavior as constituted a conspiracy among such parties to deprive littoral owners of their rights to protection of the critical dune?

Answer "Yes" or "No."

ANSWER: _____

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that Starrett represented that Lot 24, Beachwalk Addition had characteristics or benefits which it did not have?

Answer "Yes" or "No."

ANSWER: _____

Special Interrogatory No. _____

Do you find from a preponderance of the evidence that Starrett failed to disclose information which concerned Lot 24, Beachwalk Addition, which was known at the time of the transaction whereby Plaintiffs acquired such Lot, and such failure to disclose such information was intended to induce Plaintiffs into such transaction and which transaction Plaintiff would not have entered into had the information been disclosed?

Answer "Yes" or "No."

ANSWER: _____

## COMPENSATORY DAMAGES

Compensatory Damages which you are to find in response to the above special interrogatory include damages which Plaintiffs have suffered from the loss of their bargain in purchasing Lot 24, Beachwalk Addition, including a difference between what they would have acquired as a result of such purchase and the building of their home at such location if Starrett had not represented or failed to disclose as you have previously found and the actual value of such premises upon completion of construction as affected by the building of the Oakley house

7

CutePDF - www.fastio.com

## Defendants General Objection to Plaintiff's Charge

The defendants do not waive herein their objections to the charge of the plaintiffs, the most recent of which was forward to defense counsel on Sunday, August 20, 2000. The plaintiff's charge filed herein is not in anyway an agreed charge between the parties plaintiffs and defendants.

Defendants adopt the criticisms and objections to the charge and instructions made by Starrett herein.

CVAPDF - www.fastio.com

8

CVisPDF – www.fastio.com

# Defendant Urban's Proposed Jury Instructions

## CHARGE AS TO CONSPIRACY CLAIM AGAINST URBAN:

The plaintiffs also claim that Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc. or James Urban conspired with the City of Port Aransas to deprive them of notice of hearings regarding the dune permits in question.  A conspiracy by itself, however, is not actionable.  For the plaintiffs to prevail on their conspiracy claim, they must prove by a preponderance of the evidence that Urban Engineering undertook some act with the City of Port Aransas to deprive the plaintiffs of notice of hearings on the dune permits and that the plaintiffs were actually deprived of notice of the hearings. [1]

---

[1]     *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990).

9

CVisPDF – www.fastio.com

# Defendant Urban's Proposed Verdict Form

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND<br>MOLLY GOCHMAN,<br><br>   Plaintiffs,<br><br>v.<br><br>STANLEY A. STARRETT, JR.<br>KEN OAKLEY, URBAN ENGINEERING,<br>A PARTNERSHIP, THE PERALLA<br>CORPORATION, URBAN CONSULTING<br>ENGINEERS, INC., JAMES URBAN AND<br>THE CITY OF PORT ARANSAS, TEXAS,<br><br>   Defendants. | § § § § § § § § § § § § § § § | CV ACTION NO. C-00-126 |

## VERDICT FORM

*Special Interrogatory No. 1:*

Do you find from a preponderance of the evidence that Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc. or James Urban was acting as the City Engineer on the Beachwalk II project?

Answer "yes" or "no" with respect to each of the following:

ANSWER:

Urban Engineering: _____

The Peralla Corporation: _____

Urban Consulting Engineers, Inc. _____

James Urban: _____

If you have answered the previous Special Interrogatory "yes", then answer the following Special Interrogatory.  Otherwise, do not answer the following Special Interrogatory.

### *Special Interrogatory No. 2:*

Do you find from a preponderance of the evidence that Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc. or James Urban, while acting in an official capacity as City Engineer on the Beachwalk II project, violated the constitutional rights of the Plaintiffs by depriving them of property without due process of law.

Answer "yes" or "no" with respect to each of the following:

ANSWER:

Urban Engineering: _____

The Peralla Corporation: _____

Urban Consulting Engineers, Inc. _____

James Urban: _____

If you have answered the previous Special Interrogatory "yes", then answer the following Special Interrogatory.  Otherwise, do not answer the following Special Interrogatory.

### *Special Interrogatory No. 3:*

Do you find from a preponderance of the evidence that the conduct of Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc. or James Urban was a proximate cause of the Plaintiffs' injuries, if any?

Answer "yes" or "no".

ANSWER: _____

> If you have answered the previous Special Interrogatory "yes", then answer the following Special Interrogatory.  Otherwise, do not answer the following Special Interrogatory.

### *Special Interrogatory No. 4:*

Do you find from a preponderance of the evidence that the conduct of Urban Engineering, the Peralla Corporation, Urban Consulting Engineers, Inc. or James Urban was done pursuant to governmental custom, policy, ordinance, regulation or decision of the City of Port Aransas?

Answer "yes" or "no".

ANSWER: _____

A-PRETRL(2).GOC.wpd                72

10

## Proposed   Requested Jury Instructions of Defendants
## Starrett, City of Pt. Aransas & Urban Defendants

The plaintiff also claims that the City of Pt. Aransas, a municipality, is liable for the alleged constitutional deprivations in depriving the Plaintiff's of notice of hearings regarding the dune permits, in question.   A city is liable for the deprivation of a constitutional right if the deprivation was pursuant to governmental custom, policy, ordinance, regulation or decision. Therefore, if you find that the plaintiff was injured as the proximate or legal result of the City of Port Aransas's policy, custom, ordinance, regulation or decision, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, the city itself will be responsible.

The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the defendant was a cause-in-fact of the damage plaintiff suffered.  An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages.  The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the defendant was a proximate cause of the damage plaintiff suffered.  An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.[2]  (From 5th Circuit Pattern Jury Charge Instructions 10.1)

The plaintiffs claim that the defendants, while acting "under color of state law," intentionally deprived the plaintiff of rights under the Constitution of the United States.

The constitutional rights that the plaintiff claims the Defendants violated are these:

1. The right of a person not to be deprived of property without due process of law.

A person may sue for an award of money damages against anyone who, "under color" of any State law or custom, intentionally violates his rights under the Constitution of the United States.

The plaintiff must prove each of the following by a preponderance of the evidence:

1. That the defendants intentionally committed acts that violated one or more of the plaintiff's Federal constitutional rights that I have described to you;

---

[2]See Anderson v. Nosser, 456 F.2d 835 (5th Cir.1972), *affirmed sub nom.* Nosser v. Bradley, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972);  Reimer v. Smith, 663 F.2d 1316 (5th Cir.1981).  See also S. Nahmod, Civil Rights and Civil Liberties Litigation—The Law of Section 1983, sections 3.17 and 3.18 (second edition 1986).

2. That in so doing the defendant(s) acted "under color" of the authority of the State of Texas;  and

3. That the defendant's(s') acts were the legal cause of the plaintiff's damages.

State or local officials act "under color" of the authority of the State when they act within the limits of their lawful authority.  However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties.  An official acts "under color" of state authority if he abuses or misuses a power that he possesses only because he is an official.

Mitigation Instruction (Proposed by all defendants:

### 15.15  MITIGATION OF DAMAGES
5th Circuit Pattern Jury Charge Instructions

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate-to avoid or minimize those damages.

If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort.  If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages.  An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages.  However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages.  The defendant has the burden of proving the damages which the plaintiff could have mitigated.  In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

11

CiltiPDF – www.fastio.com

# Defendant City of Pt. Aransas Proposed Verdict Form

### Special Interrogatory No. 1

Do you find from a preponderance of the evidence that the plaintiffs were entitled to receive personal written notice of the City Council Permit meeting of December 18, 1997, at which the Dune Permit in question was considered?

Answer "yes" or "no" with respect to each of the following persons:

ANSWER        _____

If you have answered the previous Special Interrogatory "yes", then answer the following Special Interrogatory.  Otherwise, do not answer the following Special Interrogatory.

### Special Interrogatory No. 2

Do you find from a preponderance that the Defendant's conduct in not sending written notice of the City Council meeting was a proximate cause of the plaintiff's injuries?

*An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.*

Answer "yes" or "no":

ANSWER:        _____

If you have answered the previous Special Interrogatory "yes", then answer the following Special Interrogatory.  Otherwise, do not answer the following Special Interrogatory.

### Special Interrogatory No. 3

A-PRETRL(2).GOC.wpd                    75

Do you find from a preponderance of the evidence that the City's not giving written notice to the Plaintiffs that you have found was done pursuant to governmental custom, policy, ordinance, regulation or decision of the City of Port Aransas with intent to deprive the plaintiff of their civil rights?

Answer "yes" or "no."

**ANSWER**: _____.

12

CVISPDF – www.fastio.com

## Proposed Objections and Instructions of Defendant Starrett

Proposed Charge, including Instructions, Definitions and Special Interrogatories.

I have no problem with your charge (this is charge previously provided, not the charge provided on August 20, 2000 which we reserve further objections to. ) through page 4 until the point that you begin talking about "The Plaintiff(s) claim that the Defendant(s), City of Port Aransas, Texas and Urban Engineering ..." through page 6 ending before the Instructions on Damages section. It is clear that none of this applies to my client, Stan Starrett. Therefore I object to inclusion of this section unless these instructions and the questions that relate to your asserted § 1983 cause of action are proximately linked such that Starrett is not included. [See my further comments regarding your question no. 2 below.]

I also object specifically to the paragraph at the top of page 6 regarding a public hearing. I believe that is an incorrect statement of law and certainly an incorrect application of the law to what the facts will show in this case. That paragraph should be excluded.

In your section on Compensatory Damages beginning on page 7 none of the elements of damage listed in the first paragraph apply to your clients' state law claims against Stan Starrett. They should therefore be excluded or more precisely tied to questions regarding your §1983 claims of which Starrett is not a part and should acknowledge on page 4 of the instructions. You are directed to applicable portions of the DTPA for the elements of damage to which a consumer Plaintiff may be entitled to recover upon a showing of violation of that act.

The first two paragraphs under the section Calculation of Past and Future Damages make no sense at all. Further, since this section is tied to the Compensatory Damages as you have defined them, it is improper as to my client Starrett.

1.     I think the question should end after the words "due process of law". By conjoining "subsequent actions pursuant thereto" the question becomes multifarious and thus objectionable.

2.     This question by asking "requesting, aiding and abetting or assisting" becomes disjunctive and multifarious and therefore is objectionable. Same, comments as above regarding "by actions pursuant thereto".

Further, the question should ask "What persons, if any," at the beginning of the question.

Lastly, you have included my client Stan Starrett in this question yet on p. 4's predicating instruction regarding the Gochmans' § 1983 claim Starrett was not included as part of the claim. Therefore, Starrett should not be in question no. 2. Further, Starrett is not a "state or local official" as you have instructed on p. 5. Therefore, Starrett should not be in question no. 2. Indeed, since

none of those     § 1983 instructions apply to Starrett on their face, he should not be included in question no. 2.

3.     Same comments regarding "and actions pursuant thereof" makes the question multifarious and objectionable.  I object to this question insofar as there is no definition put on "damages" being inquired about.  The instruction under "Compensatory Damages" preceding the question does not cure the problem, for the damages enumerated (physical injury, pain and suffering, mental anguish, shock and discomfort are not all recoverable in the federal cause of action you apparently are attempting to pursue.

4.     The first part of number 4 should follow the Texas Pattern Jury Charges and read "Did Starrett engage in any unconscionable action or course of action that was a producing cause of damages to Arthur Gochman?"  A similar question should be asked with respect to Molly Gochman.

Your definitions of "producing cause" and "unconscionable action or course of action" appear to be correct, tracking the Texas Pattern Charges.

5.     I object to this question in its entirety since none of the elements of damages you have defined under the section "Compensatory Damages" is recoverable for an unconscionable action or course of action under the DTPA.

6.     I also object to 6 in its entirety for the same reason stated above with respect to number 5.

I would request that the following instructions and questions be inserted into the charge:

7.     "Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

8.     "Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of  care that would be used by a person of ordinary prudence under the same or similar circumstances.

9.     You are instructed that you are to consider that the following persons are to be considered as agents for Molly Gochman and Arthur Gochman such that actions taken or not taken

A-PRETRL(2).GOC.wpd                    78

by such agents are actions taken or not taken by Molly Gochman and Arthur Gochman:  Tim Dykes, Dudley Carpenter, and Don Richardson.

10.     Did the negligence, if any, of those named below proximately cause the Gochman house to be located where it was located?  Answer "Yes" or "No" for each of the following:

a.     Arthur Gochman        _____

b.     Molly Gochman         _____

11.     The Court's Charge will need to include a question on proportionate responsibility. For causes of action accruing on or after September 1, 1995 DTPA cases are now comprehended by § 33.003 Texas Civil Practice & Remedies Code.  See PJC 110.28 and Comment thereto. Accordingly, I have taken PJC 110.28 as the model for the following question which I request be made a part of the Court's Charge:

If in previous answer to questions you have found that more than one person caused any damages to Molly Gochman, then answer the following question. Otherwise, do not answer the following question.

You should only assign percentages to the persons you find caused the damages. The percentages you find must total 100%.  The percentages must be expressed in whole numbers.  The responsibility attributable to anyone named below is not necessarily measured by the number of acts or omissions found.

For each person found by you to have caused any damages to Molly Gochman, find the percentage caused by:

a.     Arthur Gochman        _____%

b.     Molly Gochman         _____%

c.     Stan Starrett          _____%

d.     City of Port Aransas   _____%

e.     Ken and Andrea Oakley  _____%

f.     Urban Engineering      _____%

          Total              _____100_____%

A-PRETRL(2).GOC.wpd                    80

CitisPDF – www.fastio.com

13

ClickPDF - www.fastio.com

## Proposed Jury Instructions of Oakley

Ken and Andrea Oakley have filed a counterclaim against Arthur Gochman and Molly Gochman.

In connection with their counterclaim Ken and Andrea Oakley must prove every essential part of their counterclaim by a preponderance of the evidence. Again, preponderance of the evidence simply means evidence that persuades you that the Oakleys' claims are more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of whom may have produced them.

If the proof fails to establish any essential part of the Oakleys' claims by a preponderance of the evidence, you should find for the Arthur Gochman and Molly Gochman as to those claims.

In their counterclaim the Oakleys contend that the two lis pendens notices the Gochmans filed with the Nueces County Clerk are illegal and are fraudulent documents under Texas law. The Oakleys also contend that the release they signed on October 29, 1999 is null and void because the release was obtained by the Gochmans' use of duress or coercion. The Oakleys also contend that by filing the first lis pendens notice the Gochmans intentionally inflicted severe emotional distress on the Oakleys. The Oakleys also contend the Gochmans acted with negligence and malice in filing the lis pendens notices. The Oakleys seek an award of actual and punitive damages, and attorney's fees from the Gochmans.

Under Texas law a person may not make, present or use a document; 1) with knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real property or an interest in real property; 2) with intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of Texas or the United States or another entity listed in Section 37.01 of the Penal Code, evidencing a valid lien or claim against real property or an interest in real property; and 3) with intent to cause another person to suffer: physical injury; financial injury; mental anguish; or emotional distress.
**Tex. Civ. Prac. & Rem. Code Ann., Section 12.002(a)**

The Office of the Nueces County Clerk is a governmental entity included in Section 37.01 of the Penal Code.
**Tex. Penal Code Ann., Section 37.01**

Under Texas law a document or instrument is presumed to be fraudulent if, at the time it was recorded or filed, the party filing or recording the document or instrument knew, or should have known, that: 1) the document or instrument purported to create a lien or assert a claim against real property or an interest in real property, and (A) was not a document or instrument provided for by the constitution or laws of Texas or the United States; (B) was not created by

A-PRETRL(2).GOC.wpd                    81

implied or express consent of the owner of the real property; or (C) was not an equitable, constructive, or other lien imposed by a court with jurisdiction created or established under the constitution or laws of Texas or the United States.

**Tex Civ. Prac. & Rem. Code Ann., Section 51.901(c).**

Under Texas law during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to an action who is seeking affirmative relief may file for record with the county clerk of each county where a part of the property is located a notice that the action is pending.

**Tex. Prop. Code Ann., Section 12.007(a).**
All citizens are charged with notice and knowledge of all state and federal laws.

However, a property owner's concern about adjacent real property does not constitute an "interest" in the property. Further, a property owner's allegation that city ordinances or state statutes have been violated in connection with the development of adjacent real property does not constitute an "encumbrance" against that property.

*Olbrich vs. Touchy*, **780 S.W.2nd 6,7, (Tex. App. - Houston {14th Dist.} 1989, no writ).**

With respect to the release the Oakleys signed on October 29, 1999, you are instructed that "duress" means the mental, physical or economic coercion of another, causing that party to act contrary to his free will and interest.

**State Bar of Texas, Texas Pattern Jury Charges - Business - Consumer - Employment - PJC - Contracts - 101.26 (1998).**

"Negligence" means the failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

**State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 2.1 (1998).**

"Proximate cause" means that cause, which, in a natural and continuous sequence produces an event and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

**State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 2.4 (1998).**

Clear and convincing evidence" means the measure or degree of proof that produces a

firm belief or conviction of the truth of the allegations sought to be established.

**State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 4.2B (1998).**

"Malice" means; (a) a specific intent by Arthur Gochman or Molly Gochman to cause substantial injury to Ken Oakley or Andrea Oakley; or (b) an act or omission by Arthur Gochman or Molly Gochman, (i) which when viewed objectively from the standpoint of Arthur Gochman or Molly Gochman at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others; and (ii) of which Arthur Gochman or Molly Gochman had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

**State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 4.2B (1998).**

Intentional infliction of emotional distress occurs when a party acts intentionally or recklessly with extreme and outrageous conduct to cause another person emotional distress and the emotional distress suffered was severe.

*"Extreme and outrageous conduct"* occurs only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

**State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 6.5 (1998).**

*"Exemplary damages"* means any damages awarded as a penalty or by way of punishment. Exemplary damages includes punitive damages. In determining the amount of exemplary damages you should consider evidence, if any, relating to: a) the nature of the wrong; b) the character of the conduct involved; c) the degree of culpability of the wrongdoer; d) the situation and sensibilities of the parties concerned; e) the extent to which such conduct offends a public sense of justice and propriety; f) the net worth of Arthur Gochman or Molly Gochman.

**State Bar of Texas, Texas Pattern Jury Charges - General Negligence - Intentional Personal Torts - PJC 8.6B (1998).**

14

CIMPDF – www.fastio.com

## Oakley's Proposed Verdict Form

### QUESTION ONE

Did Arthur Gochman or Molly Gochman violate Texas law in making, presenting, or

using the September 9, 1999, Notice of Lis Pendens?

Answer: Yes or No

Answer: _____

### QUESION TWO

Was the September 9, 1999, Notice of Lis pendens a fraudulent document or instrument

under Texas law?

Answer: Yes or No

Answer: _____

### QUESTION THREE

At the time the September 9 1999, Notice of Lis Pendens was recorded or filed with the Nueces

County Clerk did Arthur Gochman or Molly Gochman know, or should they have known, that the Notice

was a fraudulent document or instrument?

Answer; Yes or No

Answer:_____

### QUESTION FOUR

A-PRETRL(2).GOC.wpd                           85

Did Arthur Gochman violate Texas law in making, presenting, or using the February 1, 2000, Notice of Lis Pendens?

**Answer: Yes or No**

**Answer: _____**

## QUESTION FIVE

Was the February 1, 2000, Notice of Lis Pendens a fraudulent document or instrument under Texas law?

Answer: Yes or No

Answer: _____

## QUESTION SIX

At the time the February 1, 2000, Notice of Lis Pendens was recorded or filed with the Nueces County Clerk did Arthur Gochman know, or should he have known, that the Notice was a fraudulent document or instrument?

Answer: Yes or No

Answer: _____

## QUESTION SEVEN

Did Arthur Gochman or Molly Gochman procure the signatures of Ken and Andrea Oakley to the October 29, 1999, release by the use of duress?

Answer: Yes or No

Answer: _____

## QUESTION EIGHT

Were Arthur Gochman or Molly Gochman negligent in filing or recording either the September 9, 1999, or February 1, 2000, Notices of Lis Pendens, and was such negligence a proximate cause of injury to Ken or Andrea Oakley?

Answer: Yes or NO

Answer: _____

## QUESTION NINE

Did Arthur Gochman or Molly Gochman inflict severe emotional distress on Ken or Andrea Oakley?

Answer: Yes or No

Answer: _____

## QUESTION TEN

What sum of money, if paid now in cash would fairly and reasonably compensate Ken and Andrea Oakley for their injuries, if any, that resulted either from the filing or recording of the two notices of lis pendens, or the intentional infliction of emotional distress?

Consider the following elements of damage, and none other - financial injury, mental anguish and emotional distress. Consider each element of damage separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Answer in dollars and cents for damages, if any, that -

were sustained in the past:           $ _____

in reasonable probability will
be sustained in the future.           $ _____

## QUESTION ELEVEN

Do you find by clear and convincing evidence that the harm to Ken or Andrea Oakley resulted from malice?

Answer: Yes or No

Answer: _____

## QUESTION TWELVE

What sum of money, if any, should be assessed against Arthur Gochman and awarded to Ken or

A-PRETRL(2).GOC.wpd                    89

Andrea Oakley as exemplary damages for the malicious conduct you have found?

Answer in dollars and cents, if any.

Answer: _____

## QUESTION THIRTEEN

What sum of money, if any, should be assessed against Molly Gochman and awarded to Ken or

Andrea Oakley as exemplary damages for the malicious conduct you have found?

Answer in dollars and cents, if any.

Answer: _____

## QUESTION FOURTEEN

How do you apportion the exemplary damages between Ken Oakley and Andrea Oakley?

Answer by stating a percentage for each person named below. The percentages you find must total

100%.

a.      Ken Oakley                    _____ %

b.      Andrea Oakley            _____ %


                                 _____100_____ %


## QUESTION FIFTEEN


What is a reasonable fee for the necessary services of Ken and Andrea Oakleys' attorney in this case, stated in dollars and cents?

Answer with an amount for each of the following:

a.      for preparation and trial.

        answer: $_____

b.      for an appeal to the court of appeals.

        answer: $_____

c.      for an appeal to the United States Supreme Court.

        answer:_____


A-PRETRL(2).GOC.wpd              91

15

CVisPDF – www.fevto.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN<br>AND MOLLY GOCHMAN | § <br> § <br> § <br> § | |
| VS. | § <br> § <br> § | C.A. NO. C-00-126<br>JURY |
| STANLEY A. STARRETT, JR.,<br>KEN OAKLEY, THE CITY OF PORT<br>ARANSAS, ET. AL. | § <br> § <br> § | |

## PLAINTIFFS' EXHIBIT LIST

| EXHIBIT # | DATE | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE | DISPOSITION | DATE FOR APPEAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | UNDATED | Arthur Gochman Exhibit 24 - photo | | | | | | | |
| 2 | UNDATED | Arthur Gochman Exhibit 53 - Plat showing Gochman house | | | | | | | |
| 3 | 12-14-98 | Arthur Gochman Exhibit 55 - December 14, 1998 letter from A. Gochman to Starrett | | | | | | | |
| 4 | 12-14-98 | Arthur Gochman Exhibit 57A - December 10, 1998 letter from A. Gochman advising of attached sketch showing Oakley house | | | | | | | |
| 5 | 12-10-98 | Arthur Gochman Exhibit 56 - December 10, 1998 letter from Starrett attaching "put together copies of plats" to show relation of houses | | | | | | | |
| 6 | 3-29-98 | Arthur Gochman Exhibit 58 - Starrett approval of plans of Gochman house | | | | | | | |

| 7 | 3-19-98 | Arthur Gochman Exhibit 62 - March 19, 1998 letter from A. Gochman to Starrett showing agreement to allow house over 3000 square feet | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8 | UNDATED | Arthur Gochman Exhibit 32 - photo | | | | | | |
| 9 | UNDATED | Arthur Gochman Exhibit 44 - photo | | | | | | |
| 10 | 8-28-98 | Carpenter Exhibit 32 - Letter prohibiting construction operations and storage materials near dune line (minimum 4'6" away) | | | | | | |
| 11 | 9-01-98 | Dykes Exhibit 1 - resume | | | | | | |
| 12 | 8-25-98 | Dykes Exhibit 4 - 8/25/98 Plat - Molly Gochman House | | | | | | |
| 13 | UNDATED | Dykes Exhibit 5 - Topographical map of lots 24, 25 and 26 | | | | | | |
| 14 | 8-03-98 | Dykes Exhibit 9 - Port Aransas Code, section 25 | | | | | | |
| 15 | UNDATED | Dykes Exhibit 23 - City Building Permit | | | | | | |
| 16 | 5-30-97 | Molly Gochman Exhibit 1 - Balloon Note, 5/30/97 | | | | | | |
| 17 | 05-30-97 | Molly Gochman Exhibit 2 - Deed of Trust | | | | | | |
| 18 | 5-30-98 | Molly Gochman Exhibit 3 - Renewal Extension and modification of Note and Deed of Trust | | | | | | |
| 19 | 9-11-98 | Molly Gochman Exhibit 4 - Builders and Mechanics Lien Contract | | | | | | |
| 20 | 9-11-98 | Molly Gochman Exhibit 5 - Balloon Note, 9/11/98 | | | | | | |
| 21 | 9-11-98 | Molly Gochman Exhibit 6 - Deed of Trust, 9/11/98 | | | | | | |
| 22 | 9-01-98 | Molly Gochman Exhibit 7 - Lease Agreement (Molly Gochman to Academy) and Sublease Agreement (Academy to Arthur Gochman) | | | | | | |
| 23 | 9-11-98 | Molly Gochman Exhibit 8 - Assignment of Rents | | | | | | |

| 24 | UNDATED | Oakley Exhibit 1- photo | | | | | | |
|----|---------|-------------------------|--|--|--|--|--|--|
| 25 | UNDATED | Oakley Exhibit 2 - photo | | | | | | |
| 26 | UNDATED | Oakley Exhibit 5 - photo | | | | | | |
| 27 | UNDATED | Oakley Exhibit 6 - photo | | | | | | |
| 28 | UNDATED | Oakley Exhibit 7 - photo | | | | | | |
| 29 | UNDATED | Oakley Exhibit 8 - photo | | | | | | |
| 30 | UNDATED | Oakley Exhibit 9 - photo | | | | | | |
| 31 | UNDATED | Oakley Exhibit 10 - photo | | | | | | |
| 32 | UNDATED | Oakley Exhibit 11 - photo | | | | | | |
| 33 | UNDATED | Oakley Exhibit 13 - photo | | | | | | |
| 34 | UNDATED | Oakley Exhibit 14 - photo | | | | | | |
| 35 | UNDATED | Oakley Exhibit 15 - photo | | | | | | |
| 36 | UNDATED | Oakley Exhibit 16 - photo | | | | | | |
| 37 | UNDATED | Oakley Exhibit 17 - photo | | | | | | |
| 38 | UNDATED | Oakley Exhibit 18 - photo | | | | | | |
| 39 | UNDATED | Oakley Exhibit 19 - photo | | | | | | |
| 40 | UNDATED | Oakley Exhibit 20 - photo | | | | | | |
| 41 | UNDATED | Oakley Exhibit 24 - photo | | | | | | |
| 42 | UNDATED | Oakley Exhibit 25 - photo | | | | | | |
| 43 | UNDATED | Oakley Exhibit 26 - photo | | | | | | |
| 44 | 11-08-99 | Oakley Exhibit 28 - photo | | | | | | |
| 45 | UNDATED | Oakley Exhibit 30 - photo | | | | | | |

| 46 | UNDATED | Oakley Exhibit 32 - photo | | | | | | |
|----|---------|---------------------------|--|--|--|--|--|--|
| 47 | 11-08-99 | Oakley Exhibit 35 - photo | | | | | | |
| 48 | 11-08-99 | Oakley Exhibit 37 - photo | | | | | | |
| 49 | 11-08-99 | Oakley Exhibit 39 - photo | | | | | | |
| 50 | 05-28-98 | Oakley Exhibit 47 - Survey of Lot 35 Beachwalk Unit 2 N.U.D. (with elevations) | | | | | | |
| 51 | 7-00-97 | Starrett Exhibit 1 - Urban preliminary plat Beachwalk Two | | | | | | |
| 52 | 11-09-99 | Starrett Exhibit 2 - 11/9/99, Survey by Starrett of Gochman and Oakley site | | | | | | |
| 53 | 7-00-97 | Starrett Exhibit 5 - Beachwalk Unit Two Dune Permit - Attachment 2 | | | | | | |
| 54 | 11-29-98 | Starrett Exhibit 8 - 11/29/98, Letter from Starrett to Gochman - approval of Gochman plans | | | | | | |
| 55 | UNDATED | Starrett Exhibit 10 - Topographical map of lot 35 | | | | | | |
| 56 | UNDATED | Starrett Exhibit 16 - Photograph of Gochman and Oakley houses | | | | | | |
| 57 | 10-11-96 | Starrett Exhibit 20 - 10/11/96, Letter from Urban to Starrett | | | | | | |
| 58 | 11-08-99 | Photo of Oakley house and Beachwalk Two walkway to beach, 11/8/99 | | | | | | |
| 59 | 11-08-99 | Photo from Gochman house with view of walkway at Beachwalk, 11/8/99 | | | | | | |
| 60 | 8-00-98 | Agreement between owner and original contractor, Molly Gochman and Williams Industries | | | | | | |
| 61 | UNDATED | Checks for payments | | | | | | |
| 62 | UNDATED | Payment request on Beach House | | | | | | |

| 63 | 1-22-99 | Letter from Frank Ruttenberg to Richard Suttle, 1/28/99 | | | | | | | |
| 64 | 1-22-99 | Letter from Frank Ruttenberg to Ken Oakley, 1/22/99 | | | | | | | |
| 65 | 1-05-99 | Letter from Frank Ruttenberg to Stanley Starrett, 1/5/99 | | | | | | | |
| 66 | UNDATED | Order for Substitute Service - TRCP 106(b)/TRCP 536(c.) | | | | | | | |
| 67 | 2-23-99 | Motion for Substitute Service - TRCP 106(b)/TRCP 536(c.) | | | | | | | |
| 68 | UNDATED | Aerial photographs of site | | | | | | | |
| 69 | 5-30-97 | Deed - Starrett to Arthur Gochman | | | | | | | |
| 70 | 5-30-97 | Deed - Starrett to Molly Gochman | | | | | | | |
| 71 | 3-14-97 | Earnest money contract | | | | | | | |
| 72 | 7-31-98 | Specifications of Oakley house | | | | | | | |
| 73 | 2-13-95 | Coastal Management Plan | | | | | | | |
| 74 | 1997 | Dykes prepared preliminary design for Molly Gochman design | | | | | | | |
| 75 | 8-00-00 | Cardenas model of critical dune and subject houses | | | | | | | |
| 76 | 3-06-97 | Plat of Beachwalk, Vol. 58, Page 32 of Nueces County Deed Records | | | | | | | |
| 77 | 6-01-98 | Plat of Beachwalk II, Vol. 59, Page 11 of Nueces County Deed Records | | | | | | | |
| 78 | 11-19-97 | Beachwalk Two Residential Dune Permit and exhibits | | | | | | | |
| 79 | 1-22-99 | 2 Photos of damage to dune | | | | | | | |
| 80 | 8-00-00 | Appraisal | | | | | | | |
| 81 | 11-09-99 | Plat of Gochman house next to Oakley house | | | | | | | |

| 82 | 7-00-97 | Beachwalk Unit Two Residental Dune Permit - Attachment #2 (Grading Layout) | | | | | | |
|----|---------|------------------------------------------------|--|--|--|--|--|--|
| 83 | 7-00-97 | Beachwalk Unit Two Dune Permit - Attachment #1 (Plat Exhibit) | | | | | | |
| 84 | 7-00-97 | Beachwalk Unit Two Dune Permit - Attachment #2 (Grading Layout) | | | | | | |
| 85 | 9-00-97 | Beachwalk Unit Two Roadways and Utilities - Dune Permit and Beachfront Construction Certificate and exhibits | | | | | | |
| 86 | 1-20-97 | Beachwalk Unit Two Residential Dune Permit and Beachfront Construction Certificate and exhibits | | | | | | |
| 87 | 1997 | All videos, tapes and transcripts of Port Aransas City Council and Planning and Zoning meetings in which subject of Beachwalk II, Beachwalk, Lot 35 of Beachwalk II and Lot 24 of Beachwalk were discussed | | | | | | |
| 88 | 8-14-2000 | Smith preliminary analysis of Lot 35 and surrounding areas of Beachwalk II | | | | | | |
| 89 | UNDATED | Resumes of expert witnesses:<br>A.   Kimberly McKenna<br>B.   Matt Deal<br>C.   Ray Woodard<br>D.   Charles Belaire<br>E.   Tim Dykes<br>F.   Bob Cardenas<br>G.   Kenneth Smith<br>H.   Jennifer Prouty<br>I.   Edmund L. Cogburn<br>J.   Donald Feferman<br>K.   Max J. Luther, III | | | | | | |
| 90 | 8-26-96 | Beachwalk Subdivision Roadway and Utilities Dune Permit and Beachfront Construction Certificate | | | | | | |
| 91 | Various dates | Minutes of the Zoning and Planning Commission and City Council of the City of Port Aransas | | | | | | |

| 92 | 10-16-97 | Beachwalk Unit Two Roadways and Utilities Dune Permit & Beachfront Construction Certificate | | | | | | |
|----|----------|---|---|---|---|---|---|---|
| 93 | 9-19-96 | Dune Permit #96-027 Beachwalk N.U.D. Roadway, Utilities and Walkover | | | | | | |
| 94 | 2-20-97 | Beachwalk Residential Dune Permit & Beachfront Construction | | | | | | |
| 95 | 7-08-97 | Beachwalk Unit II - Preliminary & Final Plat Information | | | | | | |
| 96 | Various Dates | All other documents of Port Aransas City Council and Planning and Zoning relating to Beachwalk II and Beachwalk, particularly Lot 35 of Beachwalk II and Lot 24 of Beachwalk | | | | | | |
| 97 | 11-25-97 | Letters of 11-25-97 from Tommy M. Brooks. City of Port Aransas City Manager to: Bernardo Garcia, Nueces County Engineer; Grant Gurley, Office of the Atty. General; and Jamie Mitchell, Tx. GLO | | | | | | |
| 98 | 9-29-97 | Minutes of Planning and Zoning Commission Regular Meetings of the City of Port Aransas for Monday, 9-29-97 | | | | | | |
| 99 | 11-24-97 | Minutes of Planning and Zoning Commission Regular Meeting of the City of Port Aransas for Monday, 11-24-97 | | | | | | |
| 100 | 10-16-97 | Minutes of City Council Meeting of City of Port Aransas for Thursday, 10-16-97 | | | | | | |
| 101 | 12-18-97 | Minutes of Regular City Council Meeting and Public Hearing of City of Port Aransas for Thursday, 12-18-97 | | | | | | |
| 102 | 12-04-97 | Letter of 12-4-97 from Jessy L. Jones of the GLO to Tommy M. Brooks, City Manager of City of Port Aransas | | | | | | |
| 103 | 12-22-97 | Letter of 12-22-97 from Tommy M. Brooks, City Manager of City of Port Aransas to Jessy L. Jones of GLO | | | | | | |

| 104 | 4-22-94 | City/County Dune Protection Permitting Interlocal Agreement, County of Nueces | | | | | | | |
| | | | | | | | | | |
| 105 | 9-30-97 | Letters of 9-30-97 from Tommy M. Brooks, City of Port Aransas City Manager to: Bernardo Garcia, Nueces County Engineer; Grant Gurley, Office of the Atty. General; and Jamie Mitchell, Tx. GLO | | | | | | | |
| | | | | | | | | | |
| 106 | Undated | Arthur Gochman Exhibit 20 - photo | | | | | | | |
| | | | | | | | | | |
| 107 | Undated | Arthur Gochman Exhibit 18 - photo | | | | | | | |
| | | | | | | | | | |
| 108 | Undated | Arthur Gochman Exhibit 47 - photo | | | | | | | |
| | | | | | | | | | |
| 109 | Undated | Arthur Gochman Exhibit 46 - photo | | | | | | | |
| | | | | | | | | | |
| 110 | Undated | Arthur Gochman Exhibit 17 - photo | | | | | | | |
| | | | | | | | | | |
| 111 | Undated | Arthur Gochman Exhibit 27 - photo | | | | | | | |
| | | | | | | | | | |
| 112 | Undated | Arthur Gochman Exhibit 9 - photo | | | | | | | |
| | | | | | | | | | |
| 113 | Undated | Arthur Gochman Exhibit 33 - photo | | | | | | | |
| | | | | | | | | | |
| 114 | Undated | Arthur Gochman Exhibit 28 - photo | | | | | | | |
| | | | | | | | | | |
| 115 | Undated | Arthur Gochman Exhibit 43 - photo | | | | | | | |
| | | | | | | | | | |
| 116 | Undated | Dudley Carpenter Exhibit 31 - photo | | | | | | | |
| | | | | | | | | | |
| 117 | Various Dates | Information from Texas General Land Office | | | | | | | |
| | | | | | | | | | |
| 118 | Various Dates | Photos of various stages of construction of Oakley house | | | | | | | |
| | | | | | | | | | |
| 119 | Various Dates | Miniature photos of various stages of Oakley house | | | | | | | |
| | | | | | | | | | |
| 120 | 8-00-00 | Chart | | | | | | | |
| | | | | | | | | | |
| 121 | Undated | 2 Acetate overlays | | | | | | | |

| 122 | 8-00-00 | Video of various stages of Oakley construction | | | | | | |
|-----|---------|-----------------------------------------------|--|--|--|--|--|--|
|     |         |                                               | | | | | | |
|     |         |                                               | | | | | | |
|     |         |                                               | | | | | | |

16

CibPDF - www.fastio.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN | § | |
| AND MOLLY GOCHMAN | § | |
| | § | |
| VS. | § | **C.A. NO. C-00-126** |
| | § | **JURY** |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| KEN OAKLEY, THE CITY OF PORT | § | |
| ARANSAS, ET. AL. | § | |

### DEFENDANTS' EXHIBIT LIST

| EXHIBIT # | DATE | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE | DISPOSITION | DATE FOR TRIAL |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 04/22/94 | INTERLOCAL AGREEMENT – NUECES COUNTY & CITY OF PORT ARANSAS | | | | | | | |
| 2 | 02/13/95 | PORT ARANSAS COASTAL MANAGEMENT PLAN | | | | | | | |
| 3 | 07/??/96 | AERIAL PHOTOGRAPH LOCATION FOR BEACHWALK I  (EXHIBIT 21 TO STARRETT  12/14/99 DEPOSITION) | | | | | | | |
| 4 | 07/31/96 | BEACHWALK SUBDIVISION ROADWAY AND UTILITIES DUNE PERMIT & BEACHFRONT CONSTRUCTION CERTIFICATE APPLICATION (WITH ATTACHMENTS) | | | | | | | |
| 5 | 08/26/96 | MINUTES AND AGENDA – PORT ARANSAS PLANNING AND ZONING | | | | | | | |
| 6 | 08/26/96 | AUDIO TAPE OF PORT ARANSAS PLANNING AND ZONING | | | | | | | |
| 7 | 09/18/96 | TEXAS GENERAL LAND OFFICE LETTER TO TOM BROOKS | | | | | | | |

| 8 | 09/19/96 | MINUTES AND AGENDA – PORT ARANSAS CITY COUNCIL | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 9 | 09/19/96 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING (TAPE 2) | | | | | | |
| 10 | 09/30/96 | MINUTES AND AGENDA – PORT ARANSAS PLANNING AND ZONING | | | | | | |
| 11 | 10/24/96 | MINUTES AND AGENDA– PORT ARANSAS CITY COUNCIL | | | | | | |
| 12 | 10/24/96 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING | | | | | | |
| 13 | 10/30/96 | TEXAS DEPARTMENT OF HIGHWAYS PERMIT TO CONSTRUCT ACCESS TO STARRETT | | | | | | |
| 14 | 01/20/97 | GRUNEWALD/URBAN LETTER TO TEXAS GENERAL LAND OFFICE | | | | | | |
| 15 | 01/20/97 | BEACHWALK RESIDENTIAL DUNE PERMIT AND BEACHFRONT CONSTRUCTION CERTIFICATE WITH ATTACHMENTS | | | | | | |
| 16 | 01/27/97 | MINUTES & AGENDA – PORT ARANSAS PLANNING & ZONING | | | | | | |
| 17 | 01/27/97 | AUDIO TAPE OF PORT ARANSAS PLANNING AND ZONING | | | | | | |
| 18 | 01/27/97 | DUNE PROTECTION PERMIT | | | | | | |
| 19 | 01/28/97 | TOM BROOKS LETTER TO JIM URBAN | | | | | | |
| 20 | 01/28/97 | TOM BROOKS LETTER TO TEXAS ATTORNEY GENERAL | | | | | | |
| 21 | 01/28/97 | TOM BROOKS LETTER TO TEXAS GENERAL LAND OFFICE | | | | | | |
| 22 | 01/28/97 | TOM BROOKS LETTER TO NUECES COUNTY ENGINEER | | | | | | |
| 23 | 02/13/97 | ATTORNEY GENERAL LETTER TO TOM BROOKS | | | | | | |
| 24 | 02/20/97 | MINUTES & AGENDA – PORT ARANSAS CITY COUNCIL | | | | | | |

| 25 | 02/20/97 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING (TAPES 1, 2 AND 3) | | | | | | |
|----|----------|---|---|---|---|---|---|---|
| 26 | 02/26/97 | UNIMPROVED PROPERTY EARNEST MONEY CONTRACT - STARRETT TO ARTHUR GOCHMAN OR ASSIGNS – LOTS 24, 25 AND 26 – BEACHWALK I | | | | | | |
| 27 | 02/28/97 | 1ST AMERICAN TITLE INSURANCE COMMITMENT TO MOLLY GOCHMAN FOR LOT 24 | | | | | | |
| 28 | 02/28/97 | 1ST AMERICAN TITLE INSURANCE COMMITMENT TO ARTHUR GOCHMAN FOR LOTS 25 AND 26 | | | | | | |
| 29 | 03/07/97 | CERTIFIED COPY –BEACHWALK I PLAT – FILED WITH NUECES COUNTY CLERK | | | | | | |
| 30 | 03/11/97 | ARTHUR GOCHMAN LETTER TO STARRETT TRANSMITTING EARNEST MONEY CONTRACT ENCLOSING 4 PAGE ADDENDUM | | | | | | |
| 31 | 03/12/97 | BEACHWALK COMMUNITY ARTICLES OF INCORPORATION, BYLAWS AND DECLARATIONS | | | | | | |
| 32 | 05/05/97 | STARRETT FAX TO ARTHUR GOCHMAN TRANSMITTING A DRAFT OF THE DEED TO LOT 67 BEACHWALK I FROM STARRETT TO PORT ARANSAS | | | | | | |
| 33 | 05/07/97 | DAVID WOLF LETTER TO ARTHUR GOCHMAN | | | | | | |
| 34 | 05/07/97 | ARTHUR GOCHMAN FAX TO STARRETT | | | | | | |
| 35 | 05/08/97 | ARTHUR GOCHMAN LETTER TO STARRETT | | | | | | |
| 36 | 05/19/97 | ARTHUR GOCHMAN LETTER TO STARRETT AND TIM DYKES | | | | | | |
| 37 | 05/23/97 | STARRETT FAX TO ARTHUR GOCHMAN TRANSMITTING THE 05/20/97 CORRECTION WARRANTY DEED OF LOT 67, BEACHWALK I FROM STARRETT TO CITY OF PORT ARANSAS | | | | | | |
| | | | | | | | | |

| 38 | 05/23/97 | CORRECTION WARRANTY DEED OF LOT 67, BEACHWALK I FROM STARRETT TO PORT ARANSAS | | | | | | |
|----|----------|----|---|---|---|---|---|---|
| 39 | 05/24/97 | STARRETT LETTER TO ARTHUR GOCHMAN | | | | | | |
| 40 | 05/30/97 | $200,000.00 BALLOON NOTE – ARTHUR GOCHMAN TO TCB – LOTS 25 AND 26 | | | | | | |
| 41 | 05/30/97 | $100,000.00 BALLOON NOTE MOLLY GOCHMAN TO TCB – LOT 24 | | | | | | |
| 42 | 05/30/97 | WARRANTY DEED STARRETT TO MOLLY GOCHMAN LOT 24, BEACHWALK I | | | | | | |
| 43 | 05/30/97 | WARRANTY DEED STARRETT TO ARTHUR GOCHMAN LOTS 25 AND 26 BEACHWALK I | | | | | | |
| 44 | 07/??/97 | 1997 BEACHWALK II DUNE PERMIT ATTACHMENT NO. 2 (GRADING LAYOUT) (EXHIBIT 4 TO STARRETT 12/14/99 DEPOSITION) | | | | | | |
| 45 | 07/??/97 | PRELIMINARY PLAT OF BEACHWALK II SUBDIVISION | | | | | | |
| 46 | 07/28/97 | TRANSCRIPT OF EXCERPT FROM AUDIO TAPE ENTITLED PLANNING & ZONING REGULAR MEETING | | | | | | |
| 47 | 07/28/97 | MINUTE AND AGENDA – PORT ARANSAS PLANNING AND ZONING | | | | | | |
| 48 | 07/28/97 | AUDIO TAPE OF PORT ARANSAS PLANNING AND ZONING | | | | | | |
| 49 | 08/21/97 | MINUTES AND AGENDA - PORT ARANSAS CITY COUNCIL | | | | | | |
| 50 | 08/21/97 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING | | | | | | |
| 51 | 08/24/97 | 1ST AMERICAN TITLE INSURANCE COMPANY OWNERS POLICY TO MOLLY GOCHMAN FOR LOT 24 | | | | | | |
| 52 | 08/25/97 | MINUTES AND AGENDA – PORT ARANSAS PLANNING AND ZONING | | | | | | |
| | | | | | | | | |

| 53 | 08/25/97 | AUDIO TAPE OF PORT ARANSAS PLANNING AND ZONING | | | | | | |
|----|----------|------------------------------------------------|--|--|--|--|--|--|
| 54 | 09/10/97 | BEACHWALK II ROADWAYS AND UTILITIES DUNE PERMIT AND BEACHFRONT CONSTRUCTION CERTIFICATE | | | | | | |
| 55 | 09/18/97 | MINUTES AND AGENDA – PORT ARANSAS CITY COUNCIL | | | | | | |
| 56 | 09/18/97 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING | | | | | | |
| 57 | 09/23/97 | BEACHWALK II ROADWAYS AND UTILITIES DUNE PERMIT & BEACHFRONT CONSTRUCTION CERTIFICATE (WITH ATTACHMENTS) | | | | | | |
| 58 | 09/24/97 | STARRETT LETTER TO THE CREIGHTONS ENCLOSING THE PRICE LIST FOR BEACHWALK II LOTS | | | | | | |
| 59 | 09/24/97 | STARRETT ANNOUNCEMENT RE BEACHWALK II WITH PLAT AND LOT PRICES | | | | | | |
| 60 | 09/24/97 | STARRETT ANNOUNCEMENT RE BEACHWALK II WITH PLAT AND LOTS | | | | | | |
| 61 | 09/25/97 | STARRETT LETTER TO TIM RITTER RE PRICE LIST FOR BEACHWALK II LOTS | | | | | | |
| 62 | 09/29/97 | TRANSCRIPT OF EXCERPT FROM AUDIO TAPE ENTITLED REGULAR PLANNING & ZONING MEETING | | | | | | |
| 63 | 09/29/97 | AUDIO TAPE OF PORT ARANSAS PLANNING AND ZONING | | | | | | |
| 64 | 09/29/97 | UNIMPROVED PROPERTY EARNEST MONEY CONTRACT  STARRETT TO KEN OAKLEY – LOT 35 – BEACHWALK II | | | | | | |
| 65 | 09/29/97 | BEACHFRONT CONSTRUCTION CERTIFICATE NO. 97-008 ROADWAYS AND UTILITIES | | | | | | |
| 66 | 09/29/97 | DUNE PROTECTION PERMIT NO. 97-008 BEACHWALK II – ROADS AND UTILITIES | | | | | | |

| 67 | 09/29/97 | MINUTES AND AGENDA - PORT ARANSAS PLANNING AND ZONING | | | | | | |
|----|----------|--------------------------------------------------------|--|--|--|--|--|--|
| 68 | 10/16/97 | MINUTES AND AGENDA – PORT ARANSAS CITY COUNCIL | | | | | | |
| 69 | 10/16/97 | TRANSCRIPT OF EXCERPT FROM AUDIO TAPE ENTITLED REGULAR CITY COUNCIL MEETING | | | | | | |
| 70 | 10/16/97 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING | | | | | | |
| 71 | 10/30/97 | STARRETT MEMO TO DYKES ENCLOSING PICTURES, BEACHWALK II PLAT AND PRICE LIST FOR BEACHWALK II | | | | | | |
| 72 | 11/18/97 | BEACHWALK II RESIDENTIAL DUNE PERMIT AND BEACHFRONT CONSTRUCTION CERTIFICATE WITH ATTACHMENTS | | | | | | |
| 73 | 11/20/97 | GRUNEWALD/URBAN LETTER TO GEORGE SWANK/PORT ARANSAS BUILDING INSPECTOR | | | | | | |
| 74 | 11/24/97 | TRANSCRIPT OF EXCERPT FROM AUDIO TAPE ENTITLED PLANNING AND ZONING REGULAR MEETING | | | | | | |
| 75 | 11/24/97 | MINUTES & AGENDA – PORT ARANSAS PLANNING AND ZONING | | | | | | |
| 76 | 11/24/97 | AUDIO TAPE OF PORT ARANSAS PLANNING AND ZONING | | | | | | |
| 77 | 11/24/97 | DUNE PROTECTION PERMIT NO. 97-010 FOR BEACHWALK II | | | | | | |
| 78 | 11/25/97 | BEACHFRONT CONSTRUCTION CERTIFICATE NO. 97-010 FOR BEACHWALK II | | | | | | |
| 79 | 11/25/97 | DYKES LETTER TO ARTHUR GOCHMAN | | | | | | |
| 80 | 11/25/97 | TOM BROOKS LETTER TO ATTORNEY GENERAL | | | | | | |
| 81 | 11/25/97 | TOM BROOKS LETTER TO TEXAS GENERAL LAND OFFICE | | | | | | |

*Defendants' Exhibit List*
*Gochman vs. Oakley, et. al.*
*Page 6*

| 82 | 11/25/97 | TOM BROOKS LETTER TO NUECES COUNTY ENGINEER | | | | | | |
|----|----------|---------------------------------------------|--|--|--|--|--|--|
| 83 | 12/04/97 | LETTER FROM GENERAL LAND OFFICE TO TOM BROOKS | | | | | | |
| 84 | 12/11/97 | LETTER FROM ATTORNEY GENERAL TO TOM BROOKS | | | | | | |
| 85 | 12/18/97 | MINUTES &AGENDA – PORT ARANSAS CITY COUNCIL | | | | | | |
| 86 | 12/18/97 | TRANSCRIPT OF EXCERPT FROM AUDIO TAPE ENTITLED REGULAR CITY COUNCIL MEETING | | | | | | |
| 87 | 12/18/97 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING | | | | | | |
| 88 | 12/18/97 | VIDEO OF PORT ARANSAS CITY COUNCIL MEETING | | | | | | |
| 89 | 12/22/97 | TOM BROOKS LETTER TO JESSY JONES OF THE TEXAS GENERAL LAND OFFICE | | | | | | |
| 90 | 03/??/98 | ARTHUR GOCHMAN LETTER TO STARRETT | | | | | | |
| 91 | 03/04/98 | DYKES LETTER TO ARTHUR GOCHMAN ENCLOSING BEACH HOUSE DRAWINGS | | | | | | |
| 92 | 03/09/98 | NUECES COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT AGREEMENT WITH ARTHUR GOCHMAN | | | | | | |
| 93 | 03/09/98 | ARTHUR GOCHMAN APPLICATION AND AGREEMENT FOR WATER AND/OR SEWER SERVICES (EXHIBIT 8 TO DYKES' 06/29/99 DEPOSITION) | | | | | | |
| 94 | 03/14/98 | STARRETT LETTER TO ARTHUR GOCHMAN | | | | | | |
| 95 | 03/17/98 | DYKES LETTER TO ARTHUR GOCHMAN | | | | | | |
| 96 | 03/19/98 | ARTHUR GOCHMAN LETTER TO STARRETT | | | | | | |
| 97 | 03/22/98 | STARRETT LETTER TO ARTHUR GOCHMAN | | | | | | |
| | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 98 | 03/26/98 | STARRETT MEMO TO ARTHUR GOCHMAN | | | | | | |
| 99 | 03/29/98 | STARRETT LETTER TO ARTHUR GOCHMAN RE APPROVAL OF PLANS | | | | | | |
| 100 | 03/30/98 | BRUCE BARTON LETTER TO PORT ARANSAS BUILDING DEPT. | | | | | | |
| 101 | 04/16/98 | JOE ROBERTS LETTER TO DUDLEY CARPENTER | | | | | | |
| 102 | 04/21/98 | DYKES LETTER TO ARTHUR GOCHMAN | | | | | | |
| 103 | 04/23/98 | ARTHUR GOCHMAN FAX TO DYKES | | | | | | |
| 104 | 04/29/98 | GRIFFITH AND BRUNDRETT ELEVATIONS FOR LOT 24, BEACHWALK I | | | | | | |
| 105 | 05/20/98 | BARTON/TLD LETTER TO WILLIAMS INDUSTRIES, INC. | | | | | | |
| 106 | 05/20/98 | TLD FAX TO WILLIAM INDUSTRIES (EXHIBIT 29 TO DYKES' 06/24/99 DEPOSITION) | | | | | | |
| 107 | 05/26/98 | NUECES COUNTY WATER DISTRICT NO. 4 LETTER TO STARRETT | | | | | | |
| 108 | 05/28/98 | JIM URBAN, P.E. CERTIFICATE OF COMPLETION | | | | | | |
| 109 | 05/30/98 | RENEWAL AND EXTENSION OF NOTE AND DEED OF TRUST – ARTHUR GOCHMAN TO TCB – LOTS 25 AND 26, BEACHWALK II | | | | | | |
| 110 | 06/??/98 | FINAL PLAT OF BEACHWALK II SUBDIVISION | | | | | | |
| 111 | 06/??/98 | AERIAL PHOTOGRAPH OF BEACHWALK I AND BEACHWALK II (EXHIBIT 7 TO STARRETT 12/14/99 DEPOSITION) | | | | | | |
| 112 | 06/??/98 | AERIAL PHOTOGRAPH OF BEACHWALK I AND BEACHWALK II (EXHIBIT 8 TO STARRETT 12/14/99 DEPOSITION) | | | | | | |
| 113 | 06/01/98 | STARRETT WARRANTY AND GUARANTY AGREEMENT | | | | | | |

| 114 | 06/01/98 | STARRETT DEDICATION OF LINES AND CONVEYANCE OF EASEMENT | | | | | | |
|-----|----------|---------------------------------------------------------|--|--|--|--|--|--|
| 115 | 06/03/98 | CERTIFIED COPY OF PLAT - BEACHWALK II FILED WITH THE NUECES COUNTY CLERK | | | | | | |
| 116 | 06/19/98 | TROPICAL SHADE AND SHUTTERS PROPOSAL RE GOCHMAN HOUSE | | | | | | |
| 117 | 07/10/98 | SETTLEMENT STATEMENT – STARRETT AND OAKLEY $125,000.00 LOT 35, BEACHWALK II – LOT LOAN WITH FROST BANK | | | | | | |
| 118 | 07/10/98 | WARRANTY DEED – STARRETT TO OAKLEY – LOT 35, BEACHWALK II | | | | | | |
| 119 | 07/10/98 | $118,750.00 – PROMISSORY NOTE - OAKLEY TO FROST BANK | | | | | | |
| 120 | 07/10/98 | DEED OF TRUST – OAKLEY TO FROST BANK – LOT 35, BEACHWALK II | | | | | | |
| 121 | 07/31/98 | ROB SHOWN – PLANS AND SPECIFICATIONS – OAKLEY HOME AS REVISED ON 12/18/98 WITH 12/16/98 BUILDER'S SPECIFICATIONS (EXHIBIT 1 TO TURICCHI 07/14/00 DEPOSITION) | | | | | | |
| 122 | 07/10/98 | VARIOUS CLOSING DOCUMENTS – OAKLEYS' PURCHASE OF LOT 35, BEACHWALK II | | | | | | |
| 123 | 08/??/98 | AGREEMENT BETWEEN OWNER AND ORIGINAL CONTRACTOR - MOLLY GOCHMAN AND WILLIAMS INDUSTRIES, INC. | | | | | | |
| 124 | 08/03/98 | JEANE IVY OF PORT ARANSAS – FAX TO BRUCE BARTON/TLD | | | | | | |
| 125 | 08/05/98 | DYKES SITE PLAN FOR GOCHMAN HOUSE (EXHIBIT 4 TO DYKES 06/24/99 DEPOSITION) | | | | | | |
| 126 | 08/10/98 | TERRENCE WOOD APPRAISAL – LOT 24, BEACHWALK I | | | | | | |
| 127 | 08/16/98 | TURICCHI/KEYSTONE PROPOSAL TO OAKLEY (PART OF EXHIBIT 2 TO TURICCHI 07/14/00 DEPOSITION) | | | | | | |

| 128 | 08/19/98 | PORT ARANSAS BUILDING PERMIT CHECKLIST – LOT 35, BEACHWALK II | | | | | | |
| 129 | 08/20/98 | DAN URBAN LETTER TO STEPHEN THOMPSON RE ELEVATION OF LOT 35 | | | | | | |
| 130 | 08/21/98 | INVOICE - LARRY'S WOODWORKS | | | | | | |
| 131 | 08/21/97 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING | | | | | | |
| 132 | 08/26/98 | WILLIAMS INDUSTRIES LETTER TO STEPHEN THOMPSON | | | | | | |
| 133 | 08/27/98 | TURICCHI/KEYSTONE CONTRACT PROPOSAL TO OAKLEY (PART OF EXHIBIT 2 TO TURICCHI 07/14/00 DEPOSITION) | | | | | | |
| 134 | 08/27/98 | PORT ARANSAS BUILDING PERMIT APPLICATION – ARTHUR GOCHMAN | | | | | | |
| 135 | 08/27/98 | TLD LETTER TO CITY OF PORT ARANSAS TRANSMITTING PERMIT FEE – GOCHMAN HOUSE (EXHIBIT 10 TO DYKES' 06/29/99 DEPOSITION) | | | | | | |
| 136 | 08/27/98 | NUECES COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT AGREEMENT WITH ARTHUR GOCHMAN | | | | | | |
| 137 | 08/27/98 | BRUCE BARTON/TLD LETTER TO THE NUECES COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT | | | | | | |
| 138 | 08/27/98 | BARTON/TLD LETTER TO STEVE THOMPSON | | | | | | |
| 139 | 08/28/98 | BARTON/TLD MEMO TO DUDLEY CARPENTER | | | | | | |
| 140 | 08/28/98 | BARTON/TLD LETTER TO STEVE THOMPSON | | | | | | |
| 141 | 08/28/98 | APPLICATION FOR BUILDING INSPECTION – COMPLIANCE WITH WIND RESISTIVE CODE -OAKLEY | | | | | | |
| 142 | 09/11/98 | $1,000,000.00 BALLOON NOTE MOLLY GOCHMAN TO CHASE BANK | | | | | | |
| | | | | | | | | |

*Defendants' Exhibit List*
*Gochman vs. Oakley, et. al.*
*Page 10*

| 143 | 09/01/98 | LEASE AGREEMENT BETWEEN MOLLY GOCHMAN AND ACADEMY CORPORATION | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| 144 | 09/11/98 | ASSIGNMENT OF RENTS – MOLLY GOCHMAN TO CHASE BANK | | | | | | |
| | | | | | | | | |
| 145 | 09/11/98 | UCC-1 MOLLY GOCHMAN TO CHASE BANK | | | | | | |
| | | | | | | | | |
| 146 | 09/11/98 | BUILDERS AND MECHANICS LIEN CONTRACT FOR IMPROVEMENTS – MOLLY GOCHMAN TO CHASE BANK – LOT 24, BEACHWALK I | | | | | | |
| | | | | | | | | |
| 147 | 09/11/98 | DEED OF TRUST – MOLLY GOCHMAN TO CHASE BANK – LOT 24, BEACHWALK I | | | | | | |
| | | | | | | | | |
| 148 | 09/18/97 | AUDIO TAPE OF PORT ARANSAS CITY COUNCIL MEETING (TAPES 1 AND 2) | | | | | | |
| | | | | | | | | |
| 149 | 10/13/98 | AFFIDAVIT OF COMMENCEMENT – CERTIFIED COPY | | | | | | |
| | | | | | | | | |
| 150 | 10/25/98 | DYKES LETTER TO DUDLEY CARPENTER | | | | | | |
| | | | | | | | | |
| 151 | 10/26/98 TO 12/10/98 | WILLIAM INDUSTRIES CHANGE ORDER PROPOSALS | | | | | | |
| | | | | | | | | |
| 152 | 10/30/98 TO 06/03/99 | WILLIAMS INDUSTRIES APPLICATIONS AND CERTIFICATE FOR PAYMENT | | | | | | |
| | | | | | | | | |
| 153 | 11/04/98 | FROST BANK COMMITMENT LETTER TO OAKLEY FOR $297,000.00 CONSTRUCTION LOAN | | | | | | |
| | | | | | | | | |
| 154 | 11/16/98 TO 06/24/99 | MOLLY GOCHMAN REQUESTS FOR ADVANCE TO CHASE BANK | | | | | | |
| | | | | | | | | |
| 155 | 11/24/98 TO 07/19/99 | MOLLY GOCHMAN CHECKS TO WILLIAMS INDUSTRIES, INC. | | | | | | |
| | | | | | | | | |
| 156 | 11/30/98 | SECOND RENEWAL AND EXTENSION OF NOTE AND DEED OF TRUST – ARTHUR GOCHMAN TO TCB – LOTS 25 AND 26 | | | | | | |
| | | | | | | | | |

CVAPDF - www.tavisa.com

| 157 | 12/09/98 | TLD TO CARPENTER RE LOT 24 ELEVATIONS | | | | | | |
|-----|----------|---------------------------------------|---|---|---|---|---|---|
| 158 | 12/10/98 | ARTHUR GOCHMAN LETTER TO STARRETT (WITH ATTACHMENT) | | | | | | |
| 159 | 12/10/98 | ARTHUR GOCHMAN FAX TO STARRETT | | | | | | |
| 160 | 12/10/98 | STARRETT LETTER TO ARTHUR GOCHMAN | | | | | | |
| 161 | 12/14/98 | ARTHUR GOCHMAN LETTER TO STARRETT | | | | | | |
| 162 | 12/16/98 | BUILDERS SPECIFICATIONS BETWEEN OAKLEY AND TURICCHI/KEYSTONE BUILDERS | | | | | | |
| 163 | 01/05/98 (99) | RUTTENBERG LETTER TO STARRETT | | | | | | |
| 164 | 01/08/98 (99) | 1ST AMERICAN TITLE LETTER TO OAKLEY | | | | | | |
| 165 | 01/08/99 | CONTRACT FOR IMPROVEMENTS – OAKLEY, TURICCHI AND FROST BANK | | | | | | |
| 166 | 01/08/99 | $180,065.00 PROMISSORY NOTE – OAKLEY TO FROST BANK | | | | | | |
| 167 | 01/08/99 | CONSTRUCTION LOAN AGREEMENT BETWEEN OAKLEY AND FROST BANK | | | | | | |
| 168 | 01/08/99 | VARIOUS DOCUMENTS BETWEEN OAKLEY AND FROST BANK | | | | | | |
| 169 | 01/11/99 | STARRETT LETTER TO RUTTENBERG | | | | | | |
| 170 | 01/11/99 | CHANGE ORDER –MOLLY GOCHMAN HOUSE | | | | | | |
| 171 | 01/15/98 (99) | 1ST AMERICAN SETTLEMENT STATEMENT – OAKLEY AND FROST BANK – CONSTRUCTION LOAN | | | | | | |
| 172 | 01/21/99 | BUILDING PERMIT APPLICATION – OAKLEY HOUSE | | | | | | |
| 173 | 01/22/99 | RUTTENBERG LETTER TO OAKLEY | | | | | | |
| | | | | | | | | |

| 174 | 01/26/99 | STARRETT LETTER TO OAKLEY RE APPROVAL OF OAKLEY'S PLANS | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 175 | 01/28/99 | RUTTENBERG LETTER TO SUTTLE | | | | | | |
| 176 | 02/07/99 | DYKES LETTER TO ARTHUR GOCHMAN | | | | | | |
| 177 | 02/12/99 | 2 PHOTOGRAPHS OF LOT 35, BEACHWALK II BY STEPHEN THOMPSON AND TOM MURPHY | | | | | | |
| 178 | 02/15/99 | FEFERMAN LETTER TO TOM BROOKS – PORT ARANSAS CITY MANAGER | | | | | | |
| 179 | 02/16/99 | STEPHEN THOMPSON LETTER TO JAMIE MITCHELL WITH TEXAS GENERAL LAND OFFICE | | | | | | |
| 180 | 02/17/99 | DYKES FAX TO DUDLEY CARPENTER (EXHIBIT 21 TO DYKES 06/24/99 DEPOSITION) | | | | | | |
| 181 | 02/19/99 | TOM BROOKS LETTER TO FEFERMAN | | | | | | |
| 182 | 02/25/99 TO 11/01/99 | TURICCHI DRAW REQUESTS RE OAKLEY CONSTRUCTION | | | | | | |
| 183 | 02/26/99 | ARTHUR GOCHMAN FAX TO LUTHER TRANSMITTING COPIES OF 25 PHOTOGRAPHS | | | | | | |
| 184 | 02/26/99 TO 03/31/99 | CHASE BANK INVOICES TO MOLLY GOCHMAN | | | | | | |
| 185 | 03/08/99 | LUTHER LETTER TO STARRETT | | | | | | |
| 186 | 03/08/99 | GOCHMAN PLAINTIFFS' ORIGINAL PETITION FOR INJUNCTION AND MANDAMUS AGAINST OAKLEYS – CAUSE NO. 99-1891-H | | | | | | |
| 187 | 03/08/99 | GOCHMAN PLAINTIFF'S ORIGINAL PETITION AGAINST STARRETT – CAUSE NO. 99-2725-F | | | | | | |
| 188 | 03/08/99 | GOCHMAN PLAINTIFF'S ORIGINAL PETITION AGAINST STARRETT – CAUSE NO. 99-1336-B | | | | | | |
| | | | | | | | | |

| 189 | 03/22/99 | FEFERMAN LETTER TO JAMIE MITCHELL WITH THE TEXAS GENERAL LAND OFFICE | | | | | |
| 190 | 03/23/99 | FLEURIET LETTER LUTHER | | | | | |
| 191 | 04/07/99 | 1ST AMERICAN ABSTRACTOR'S REPORT – BEACHWALK I, LOT 24 | | | | | |
| 192 | 04/07/99 | 1ST AMERICAN ABSTRACTOR'S REPORT – BEACHWALK I, LOTS 25 AND 26 | | | | | |
| 193 | 04/09/99 | WARRANTY DEED (DOCUMENT NO. 199029481)  STARRETT – CONVEYING A PORTION OF BEACHWALK II TO PORT ARANSAS | | | | | |
| 194 | 04/20/99 | TLD SITE OBSERVATION REPORT | | | | | |
| 195 | 04/22/99 | LIEN RELEASE EXECUTED BY WILLIAMS INDUSTRIES, INC. | | | | | |
| 196 | 05/01/99 | STARRETT NOTICE OF BEACHWALK ANNUAL HOMEOWNERS MEETING | | | | | |
| 197 | 05/05/99 | DYKES LETTER TO CARPENTER | | | | | |
| 198 | 05/13/99 | ARTHUR GOCHMAN FAX TO DYKES | | | | | |
| 199 | 05/26/99 | TEXAS DEPARTMENT OF INSURANCE FORM WP1-2 | | | | | |
| 200 | 06/07/99 | GOCHMAN – PORT ARANSAS COSTS WITH SUPPORTING DOCUMENTATION TOTALING $1,394,983.83 | | | | | |
| 201 | 07/12/99 TO 12/14/99 | VARIOUS CHECK REQUESTS (FIVE TOTAL) | | | | | |
| 202 | 07/13/99 | FEFERMAN LETTER TO DAVID DEWHURST, TEXAS LAND COMMISSIONER, WITH EXHIBITS A-L | | | | | |
| 203 | 08/??/99 | AERIAL PHOTOGRAPH BEACHWALK I AND BEACHWALK II (EXHIBIT 12 TO STARRETT 12/14/99 DEPOSITION) | | | | | |
| 204 | 08/??/99 | AERIAL PHOTOGRAPH BEACHWALK I AND BEACHWALK II (EXHIBIT 13 TO STARRETT 12/14/99 DEPOSITION) | | | | | |

| 205 | 08/??/99 | AERIAL PHOTOGRAPH BEACHWALK I AND BEACHWALK II (EXHIBIT 14 TO STARRETT 12/14/99 DEPOSITION) | | | | | | |
|-----|----------|---------------------------------------------------------------------------------------------|---|---|---|---|---|---|
| 206 | 08/??/99 | AERIAL PHOTOGRAPH BEACHWALK I AND BEACHWALK II (EXHIBIT 15 TO STARRETT 12/14/99 DEPOSITION) | | | | | | |
| 207 | 08/??/99 | AERIAL PHOTOGRAPH BEACHWALK I AND BEACHWALK II (EXHIBIT 16 TO STARRETT 12/14/99 DEPOSITION) | | | | | | |
| 208 | 08/02/99 | SUMMARY OF MOLLY GOCHMAN PAYMENTS TO WILLIAMS INDUSTRIES | | | | | | |
| 209 | 08/23/99 | TEXAS GENERAL LAND OFFICE LETTER TO FEFERMAN | | | | | | |
| 210 | 08/30/99 | TEXAS DEPARTMENT OF INSURANCE CERTIFICATE OF COMPLIANCE RE THE OAKLEY HOUSE | | | | | | |
| 211 | 09/01/99 | SUBLEASE AGREEMENT ACADEMY CORPORATION AND MOLLY GOCHMAN | | | | | | |
| 212 | 09/09/99 | NOTICE OF LIS PENDENS RE LOT 35, BEACHWALK II, EXECUTED BY LUTHER AS ATTORNEY FOR ARTHUR GOCHMAN AND MOLLY GOCHMAN | | | | | | |
| 213 | 09/28/99 | DREILING LETTER TO LUTHER RE 09/09/99 LIS PENDENS | | | | | | |
| 214 | 10/13/99 | DREILING LETTER TO LUTHER RE 09/09/99 LIS PENDENS | | | | | | |
| 215 | 10/18/99 | ELEVATION CERTIFICATE RE LOT 35, BEACHWALK II | | | | | | |
| 216 | 10/24/99 | TURICCHI/KEYSTONE OVERAGES AND ADDITIONS TO OAKLEY CONSTRUCTION (PART OF TURICCHI 07/14/00 DEPOSITION) | | | | | | |
| 217 | 10/25/99 | DREILING LETTER TO LUTHER RE 09/09/99 LIS PENDENS | | | | | | |
| 218 | 10/27/99 | DREILING LETTER TO LUTHER RE 09/09/99 LIS PENDENS | | | | | | |
| | | | | | | | | |

| 219 | 10/28/98 | DREILING LETTER TO LUTHER RE 09/09/99 LIS PENDENS | | | | | | |
| 220 | 10/29/99 | OAKLEY/GOCHMAN RELEASE DOCUMENT AND EARLIER DRAFTS OF SAME | | | | | | |
| 221 | 11/03/99 | OAKLEY SETTLEMENT S/S SAN JACINTO TITLE | | | | | | |
| 222 | 11/03/99 | DEED OF TRUST – OAKLEY TO PHH MORTGAGE – LOT 35, BEACHWALK II | | | | | | |
| 223 | 11/03/99 | $315,000.00 NOTE – OAKLEY TO PHH MORTGAGE | | | | | | |
| 224 | 11/03/99 | CONTRACTOR'S AFFIDAVIT – TURICCHI | | | | | | |
| 225 | 11/04/99 | CERTIFICATE OF OCCUPANCY – OAKLEY RESIDENCE –PORT ARANSAS | | | | | | |
| 226 | 11/08/99 | GOCHMAN EXHIBIT 9 PHOTOGRAPH | | | | | | |
| 227 | 11/08/99 | GOCHMAN EXHIBIT 10 PHOTOGRAPH | | | | | | |
| 228 | 11/08/99 | GOCHMAN EXHIBIT 11 PHOTOGRAPH | | | | | | |
| 229 | 11/08/99 | GOCHMAN HOUSE PHOTOGRAPHS | | | | | | |
| 230 | 11/08/99 | VIDEOTAPE OF GOCHMAN HOUSE AND PREMISES | | | | | | |
| 231 | 11/08/99 | ALL PHOTOS OF GOCHMAN HOUSE TAKEN BY TERRENCE WOOD AND APPEARING IN HIS APPRAISAL REPORT DATED 07/01/00 | | | | | | |
| 232 | 11/08/99 | SIX PHOTOGRAPHS OBTAINED BY MR. FLEURIET – GOCHMAN PROPERTY | | | | | | |
| 233 | 12/11/99 | BINSWANGER GLASS INVOICE NO. 10006132 | | | | | | |
| 234 | 12/14/99 | TERMINIX INVOICE | | | | | | |
| 235 | 12/15/99 | STARRETT PRESENTMENT OF CLAIMS TO GOCHMANS | | | | | | |
| 236 | 12/20/99 | APIUS CLEANING INVOICE NO. 28050 | | | | | | |
| 237 | 11/29/99 | APIUS CLEANING INVOICE NO. 60043 | | | | | | |

| 238 | 01/04/00 | SAN JACINTO TITLE LETTER TO OAKLEY ENCLOSING OWNER POLICY OF TITLE INSURANCE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 239 | 01/20/00 | APIUS CLEANING INVOICE 19976 | | | | | | |
| 240 | 02/01/00 | ARTHUR GOCHMAN NOTICE OF LIS PENDENS AGAINST OAKLEY PROPERTY | | | | | | |
| 241 | 02/11/00 | DOVER ELEVATORS INVOICE | | | | | | |
| 242 | 02/17/00 | APIUS CLEANING INVOICE NO. 60057 | | | | | | |
| 243 | 02/23/00 | GOCHMAN PLAINTIFFS FIRST AMENDED PETITION – CAUSE NO. 99-1336-C | | | | | | |
| 244 | 03/06/00 | TERMINIX INVOICE | | | | | | |
| 245 | 03/21/00 | APIUS CLEANING SERVICE INVOICE NO. 25002 | | | | | | |
| 246 | 04/26/00 | MAINTENANCE CONSTRUCTION PURCHASE ORDERS -  BRAWNER PAPER | | | | | | |
| 247 | 05/23/00 | SURVEY OF LOT 24 BEACHWALK N.U.D. | | | | | | |
| 248 | 06/01/00 | GOCHMAN PLAINTIFFS' FIRST AMENDED COMPLAINT – CAUSE NO. C-00-126 | | | | | | |
| 249 | 06/29/00 | TERRENCE WOOD APPRAISAL – LOTS 25 AND 26, BEACHWALK I | | | | | | |
| 250 | 07/01/00 | TERRENCE WOOD APPRAISAL – LOT 24, BEACHWALK I | | | | | | |
| 251 | 07/10/00 | DREILING REPORT, BILLING RECORDS AND SUMMARY | | | | | | |
| 252 | 07/12/00 | REPORT AND RESUME OF MATTHEW J. SULLIVAN ON ATTORNEYS' FEES | | | | | | |
| 253 | 07/12/00 | REPORT OF JAMES L. URBAN, P.E. | | | | | | |
| 254 | 07/15/00 | 35 PHOTOGRAPHS – OAKLEY & GOCHMAN RESIDENCES (EXTERIOR) AND LOTS | | | | | | |
| 255 | 07/23/99 TO 10/04/99 | GOCHMAN TRAVEL AND EXPENSE LISTING | | | | | | |

*Defendants' Exhibit List*
*Gochman vs. Oakley, et. al.*
*Page 17*

| 256 | 10/14/98 | TLD SITE OBSERVATION REPORT WITH PHOTOGRAPHS ATTACHED | | | | | |
| 257 | 11/11/98 | TLD SITE OBSERVATION REPORT WITH PHOTOGRAPHS ATTACHED | | | | | |
| 258 | 12/04/98 | TLD SITE OBSERVATION REPORT WITH PHOTOGRAPHS ATTACHED | | | | | |
| 259 | 12/15/98 | TLD SITE OBSERVATION REPORT WITH PHOTOGRAPHS ATTACHED | | | | | |
| 260 | 12/22/98 | TLD SITE OBSERVATION REPORT WITH PHOTOGRAPHS ATTACHED | | | | | |
| 261 | 01/18/99 | TLD SITE OBSERVATION REPORT WITH PHOTOGRAPHS ATTACHED | | | | | |
| 262 | 02/02/99 | TLD SITE OBSERVATION REPORT WITH PHOTOGRAPHS ATTACHED WITH PHOTOGRAPHS ATTACHED | | | | | |
| 263 | 04/02/99 | TLD PROJECT OBSERVATION | | | | | |
| 264 | UNDATED | 31 PHOTOGRAPHS PRODUCED BY DAVID CARPENTER | | | | | |
| 265 | UNDATED | FROST BANK INSPECTION REPORTS AND DISBURSEMENT RECORDS – OAKLEY | | | | | |
| 266 | UNDATED | ALL PHOTOGRAPHS ATTACHED TO ARTHUR GOCHMAN 05/21/99 DEPOSITION (EXHIBITS 1-47) | | | | | |
| 267 | UNDATED | PLAT (EXHIBIT 5 TO DYKES' 06/24/99 DEPOSITION) | | | | | |
| 268 | UNDATED | DYKES TRACING (EXHIBIT 6 TO DYKES' 06/24/99 DEPOSITION) | | | | | |
| 269 | UNDATED | PORT ARANSAS PERMIT NO 5260 BEACHWALK II – 273 BEACHWALK LANE (EXHIBIT 23 TO DYKES' 06/24/99 DEPOSITION) | | | | | |
| 270 | UNDATED | BEACHWALK II ANNOUNCEMENT (EXHIBIT 26 TO DYKES' 06/24/99 DEPOSITION) | | | | | |
| 271 | UNDATED | PLAT BEACHWALK II  (EXHIBIT 27 TO DYKES' 06/24/99 DEPOSITION) | | | | | |

| 272 | UNDATED | PHOTOGRAPH PRODUCED AS EXHIBIT 7 TO STARRETT 12/14/99 DEPOSITION | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 273 | UNDATED | PHOTOGRAPHS – EXHIBITS 1-40 TO OAKLEY'S 02/25/00 DEPOSITION | | | | | | |
| 274 | UNDATED | ALL PHOTOGRAPHS ATTACHED AS EXHIBITS TO DUDLEY CARPENTER 06/08/00 DEPOSITION | | | | | | |
| 275 | UNDATED | ALL PHOTOGRAPHS IN 3 RING BINDER PRODUCED BY DUDLEY CARPENTER AT HIS DEPOSITION ON 06/08/00 | | | | | | |
| 276 | UNDATED | 14 PHOTOGRAPHS – PRODUCED BY PLAINTIFFS ON 06/30/00 | | | | | | |
| 277 | UNDATED | EXHIBIT 31 TO DYKES 07/13/00 DEPOSITION WITH HIGHLIGHTED MARKINGS | | | | | | |
| 278 | UNDATED | EXHIBIT 32 TO DYKES 07/13/00 DEPOSITION WITH HIGHLIGHTED MARKINGS | | | | | | |
| 279 | UNDATED | 2 PAGE PLAN BY TLD ENTITLED "A BEACH HOUSE FOR MOLLY GOCHMAN" (EXHIBIT 1 TO ARTHUR GOCHMAN 07/13/00 DEPOSITION) | | | | | | |
| 280 | UNDATED | PHOTOCOPY OF LOT 24 WITH HIGHLIGHTED MARKINGS (EXHIBIT 2 TO ARTHUR GOCHMAN 07/13/00 DEPOSITION) | | | | | | |
| 281 | UNDATED | LASER COPY OF AERIAL PHOTOGRAPH WITH SKETCHES OF ARTHUR AND MOLLY GOCHMANS' LOTS (EXHIBIT 3 TO ARTHUR GOCHMAN 07/13/00 DEPOSITION ) | | | | | | |
| 282 | UNDATED | PLATTED LOTS OF BEACHWALK I AND II SUBDIVISIONS WITH HIGHLIGHTED MARKINGS (EXHIBIT 4 TO ARTHUR GOCHMAN 07/13/00 DEPOSITION) | | | | | | |
| 283 | UNDATED | PLATTED LOTS OF BEACHWALK I AND II SUBDIVISIONS WITH HIGHLIGHTED MARKINGS (EXHIBIT 5 TO ARTHUR GOCHMAN 07/13/00 DEPOSITION) | | | | | | |

| 284 | UNDATED | PROPOSED HOUSE PAD FOR MOLLY GOCHMAN HOUSE ON LOT 24, BEACHWALK I (EXHIBIT 53 TO ARTHUR GOCHMAN 07/13/00 DEPOSITION) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 285 | UNDATED | TURICCHI PHOTOGRAPHS (EXHIBIT 3 TO TURICCHI 07/14/00 DEPOSITION) | | | | | | |
| 286 | UNDATED | CITY CHARTER PROVISIONS (THE CITY CHARTER OF THE CITY OF PORT ARANSAS) INCLUDING ARTICLE III, SECTION 11 | | | | | | |
| 287 | UNDATED | RULES OF THE CITY OF PORT ARANSAS SECTION 2-19.D.2. | | | | | | |
| 288 | UNDATED | RULES OF THE CITY OF PORT ARANSAS SECTION 2-19.F. | | | | | | |
| 289 | UNDATED | PORT ARANSAS COSTS | | | | | | |
| 290 | UNDATED | RESUME OF E.R. FLEURIET | | | | | | |
| 291 | UNDATED | RESUME OF TERRENCE WOOD | | | | | | |
| 292 | UNDATED | RESUME OF JAMES L. URBAN | | | | | | |
| 293 | 07/23/99 | CERTIFICATE OF OCCUPANCY – MOLLY GOCHMAN | | | | | | |
| 294 | 09/08/99 | EMPLOYMENT AGREEMENT – OAKLEY AND DREILING | | | | | | |
| 295 | 05/30/98 | RENEWAL AND EXTENSION OF NOTE AND DEED OF TRUST – MOLLY GOCHMAN – LOT 24, BEACHWALK I | | | | | | |
| 296 | 02/17/99 | DYKES FAX TO ARTHUR GOCHMAN | | | | | | |
| 297 | 06/08/98 | SURVEY LOT – LOT 35, BEACHWALK II | | | | | | |
| 298 | 11/09/99 | SURVEY – LOT 24, BEACHWALK I (EXHIBIT 6 TO ARTHUR GOCHMAN 07/13/00 DEPOSITION) | | | | | | |
| 299 | 12-11-96 | Resolution 96-38 of the City of Pt. Aransas | | | | | | |
| 300 | | | | | | | | |

*Defendants' Exhibit List*
*Gochman vs. Oakley, et. al.*
*Page 20*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

*Defendants' Exhibit List*
*Gochman vs. Oakley, et. al.*
*Page 21*

CHIPDF – www.fxdsio.com

17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND | § | |
| MOLLY GOCHMAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | CV ACTION NO. C-00-126 |
| STANLEY A. STARRETT, JR. | § | |
| KEN OAKLEY, URBAN ENGINEERING, | § | |
| A PARTNERSHIP, THE PERALLA | § | |
| CORPORATION, URBAN CONSULTING | § | |
| ENGINEERS, INC., JAMES URBAN AND | § | |
| THE CITY OF PORT ARANSAS, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' JOINT MOTION IN LIMINE

Defendants Stanley A. Starrett, Ken Oakley, Urban Engineering, The Peralla Corporation, Urban Consulting Engineers, Inc., James Urban and the City of Port Aransas, Texas (collectively "the Defendants") file this Motion in Limine and in support thereof would show the Court as follows:

Defendants move the Court for entry of an Order excluding the following matters from being mentioned, suggested, implied, or offered into evidence in front of either the veniremen or the impaneled jury because they are irrelevant and unduly prejudicial to Defendants. If the Plaintiffs discuss the following matters before the veniremen or the impaneled jury, it will cause Defendants irreparable harm which no jury instruction could cure. Defendants would be compelled to move for a mistrial if any of the following matters are brought before the jury. In

order to avoid this prejudice and the potential need for a mistrial, the Defendants respectfully ask the Court to prohibit Plaintiffs from mentioning, suggesting, implying, or offering into evidence any of the following matters in front of the veniremen or the impaneled jury without first seeking and obtaining a ruling by the Court that the evidence is admissible:

1.      Any mention of the probable testimony of a witness who is absent, unavailable, not called to testify in this case, or not allowed, in any manner, to testify in this case.

**AGREED: _____     GRANTED: _____     DENIED: _____**

2.      Any attempt to seek or request that the Defendants' attorneys produce documents, stipulate to any fact, or make any agreement in the presence of the jury.

**AGREED: _____     GRANTED: _____     DENIED: _____**

3.      Any reference to any of the Defendants' motions, including this one, and the Court's ruling thereon.

**AGREED: _____     GRANTED: _____     DENIED: _____**

4.      Any reference to legal strategy of counsel for the Defendants, including any decision to include or withdraw defenses or expert witnesses.

**AGREED: _____     GRANTED: _____     DENIED: _____**

5.      Any mention of the probable testimony of a witness who is not called to testify in this case.

   **AGREED:** _____      **GRANTED:** _____      **DENIED:** _____


6.      Any references about the size, power, wealth, or financial resources of the City of Port Aransas, Texas, Urban Engineering, the Peralla Corporation, or Urban Consulting Engineers, Inc., or the law firms involved in the defense of this case.

   **AGREED:** _____      **GRANTED:** _____      **DENIED:** _____


7.      Any mention or comment on the conduct of the Defendants or their counsel during the pre-trial phase of this case.

   **AGREED:** _____      **GRANTED:** _____      **DENIED:** _____


8.      Any reference to any alleged conflict of interest of Urban Engineering, its employees, or its related entities other than the alleged conflict of interest of Urban Engineering in connection with the Beachwalk II project as alleged in the Plaintiffs' First Amended Complaint.

   **AGREED:** _____      **GRANTED:** _____      **DENIED:** _____


9.      Any in-court exhibition, experiment, or demonstration of any kind without first disclosing to the Court and the Defendants the exact nature and details of such proposed exhibition, experiment, or demonstration.

   **AGREED:** _____      **GRANTED:** _____      **DENIED:** _____

**DEFENDANTS' JOINT MOTION IN LIMINE**                                                      **Page 3**
A-102144.1

10.     Any reference to the number of lawyers representing the Defendants or the Plaintiffs in this case or to the size, reputation or any other characterization of the law firms representing the Defendants.

AGREED: _____     GRANTED: _____     DENIED: _____

11.     Any testimony, evidence, or reference to personal or subjective beliefs which are not based on direct personal knowledge, but are instead based on speculation, rumor, hearsay, or some other basis.

AGREED: _____     GRANTED: _____     DENIED: _____

12.     Any reference that Jim Urban or Urban Engineering is "generally known in the community as the City Engineer." Any such statement is irrelevant to the issue in this lawsuit which is whether or not Urban Engineering was acting in dual capacities on this particular project (the Beachwalk II project). Any such statement could also only be calculated to prejudice and inflame the jury.

AGREED: _____     GRANTED: _____     DENIED: _____

13.     Any reference or appeal to the jury invoking it to be the conscience of the environmental community in this case with respect to this judgment.

AGREED: _____     GRANTED: _____     DENIED: _____

DEFENDANTS' JOINT MOTION IN LIMINE                                              Page 4
A-102144.1

14.     Any references about the fees paid to Urban Engineering in its past representations as City Engineer for the City of Port Aransas.  Any such statement would be irrelevant because it has no bearing on whether or not Urban Engineering was acting in a dual capacity on the Beachwalk II project.   Any such statement could also only be calculated to prejudice the jury.

**AGREED:** _____     **GRANTED:** _____     **DENIED:** _____


15.     Any evidence or argument that there exists any insurance or indemnification to any Defendant for any loss it may incur as a result of Plaintiffs' claims.

**AGREED:** _____     **GRANTED:** _____     **DENIED:** _____


16.     Any use of any document for which the Defendants have made a claim of attorney-client privilege or work-product doctrine.

**AGREED:** _____     **GRANTED:** _____     **DENIED:** _____


17.     Any evidence or argument concerning the potential effect of the jury's answers to the issue submitted to them in the Court's Charge.

**AGREED:** _____     **GRANTED:** _____     **DENIED:** _____


18.     Any testimony, evidence or argument regarding the testimony, opinions or reports of expert witnesses not timely and properly designated in accordance with the Federal Rules of Civil Procedure and/or any of the Court's pretrial scheduling orders.  Specifically, any and all

**DEFENDANTS' JOINT MOTION IN LIMINE**                                    **Page 5**
**A-102144.1**

testimony by Matt C. Deal, Ray Woodard, Kimberly McKenna, Tim Dykes, Bob Cardenas, Charles E. Belaire and Kenneth Smith, and any testimony from Jennifer Prouty that was not reflected in the opinions she provided in her July 12, 2000 expert report.

**AGREED:** _____   **GRANTED:** _____   **DENIED:** _____

19.     Any evidence, testimony or argument concerning any cause of action or claim not properly raised by the pleadings.

**AGREED:** _____   **GRANTED:** _____   **DENIED:** _____

20.     Any evidence, testimony or argument concerning any cause of action, claim or matter which is the subject of a discovery request for which a full and complete proper discovery response has not been timely made.

**AGREED:** _____   **GRANTED:** _____   **DENIED:** _____

21.     Any reference to or evidence concerning Urban Engineering's or Jim Urban's involvement as the City Engineer for the City of Port Aransas on any project other than the Beachwalk or Beachwalk II projects.   The Plaintiffs failed to provide any information during discovery to Defendants concerning any conduct or statements by Urban Engineering on other projects. Permitting the Plaintiffs at trial to suddenly present new, undisclosed evidence about Urban Engineering would: (i) violate due process, (ii) violate the Federal discovery rules, (iii) unfairly prejudice the Defendants' defense of the Plaintiffs' claims, and (iv) mislead the jury. *See* FED. R. EVID. 402, 403; FED. R. CIV. P. 37(c)(1).

AGREED: _____        GRANTED: _____        DENIED: _____


## PRAYER

The Defendants respectfully request that the Court (1) grant these requested items in limine, (2) instruct counsel for the Plaintiffs not to mention, suggest, imply, or offer into evidence any of these matters without first requesting and obtaining a ruling on admissibility, and (3) instruct counsel for the Plaintiffs to caution its witnesses similarly.

Respectfully submitted,

Matthew J. Sullivan
Attorney-In-Charge
State Bar No. 19488325
Federal ID No. 16960
Andrea L. Sloan
State Bar No. 90001678
Federal ID No. 24404

HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1600
Austin, Texas 78701
Telephone: 512/867-8400
Telecopier: 512/867-8470

ATTORNEYS FOR
URBAN ENGINEERING, THE PERALLA
CORPORATION, URBAN CONSULTING
ENGINEERS, INC. AND JAMES URBAN

**DEFENDANTS' JOINT MOTION IN LIMINE**
A-102144.1

**Page 8**

E.R. Fleuriet
Attorney-In-Charge
State Bar No. 07145500
Federal ID No. 1327

THE FLEURIET SCHELL LAW FIRM, L.L.P.
621 East Tyler
Harlingen, Texas 78550
Telephone: 956/428-3030
Telecopier: 956/421-4339

and

Jorge C. Rangel
State Bar No. 16543500
Federal ID No. 5698
THE LAW OFFICES OF JORGE C. RANGEL, P.C.
P.O. Box 2683
Corpus Christi, TX 78403-2683
Telephone: 361/883-8500
Telecopier: 361/883-2611

ATTORNEYS FOR
STANLEY A. STARRETT, JR.

James F. McKibben, Jr.
Attorney-In-Charge
State Bar No. 13713000
Federal ID No. 914

BARGER, HERMANSEN, MCKIBBEN
      & VILLARREAL, L.L.P.
800 North Shoreline Blvd.
Suite 2000 - North Tower
Corpus Christi, Texas 78401
Telephone: 361/882-6611
Telecopier: 361/866-8039

and

Michael Gene Morris
State Bar No. 14495500
5350 S. Staples, Suite 222
Corpus Christi, TX 78411
Telephone: 361/993-4571
Telecopier: 361/993-4573

ATTORNEYS FOR
CITY OF PORT ARANSAS

Fred Dreiling
Attorney-In-Charge
State Bar No. 06115100
Federal ID No. 19239

LAW OFFICES OF FRED D. DREILING
Bank of America, Suite 714
500 North Water Street
Corpus Christi, Texas 78471
Telephone: 361/883-0186
Telecopier: 361/882-4112

ATTORNEYS FOR
KEN OAKLEY AND ANDREA OAKLEY

**DEFENDANTS' JOINT MOTION IN LIMINE**
A-102144.1

Page 10