United States District Court
Southern District of Texas
FILED

AUG 23 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ARTHUR GOCHMAN          §
& MOLLY GOCHMAN         §          CIVIL ACTION NO.-00-126
                        §                    JURY
vs.                     §
                        §
STANLEY A. STARRETT, JR., §
KEN OAKLEY, URBAN ENGINEERING, A §
PARTNERSHIP, THE PERALLA §
CORPORATION, URBAN CONSULTING §
ENGINEERING, INC.       §
AND THE CITY OF PORT ARANSAS, §

**PLAINTIFFS' UNOPPOSED MOTION FOR LEAVE TO FILE
PLAINTIFFS' REPLY TO THE OAKLEY
"RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT"**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs, ARTHUR GOCHMAN & MOLLY GOCHMAN, in their capacity as Counter-Defendants, file this their **unopposed** Motion for leave to file this "Reply" to the pleading designated as "Counter-Plaintiffs Ken and Andrea Oakley's Response to Plaintiffs' Motion for Summary Judgment."  There is good cause for such leave, because the Oakley Response discusses, fully, issues which were only partially briefed in the previous discussions of the issues involved in the Counterclaim of Oakley against Plaintiffs and, therefore, Plaintiffs respectfully submit this Reply to provide a completion of the discussion, including citation and review of additional authorities which relate to such Counterclaim.

**Preliminary Statement**

The facts may be summarized briefly.  Plaintiffs brought suit on April 7, 1999 against Ken Oakley and the City of Port Aransas, filing a Notice of Lis Pendens ("Lis Pendens") to

protect themselves from bona fide purchasers, as designed by the provisions respecting notices of lis pendens.  Tex. Prop. Code § 12.007(a):

> (a)    After the plaintiff's statement in an eminent domain proceeding is filed or during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to the action who is seeking affirmative relief may file for record with the county clerk of each county where a part of the property is located a notice that the action is pending.

At Tab 5 of the Response, there is a copy of the original pleading filed by Plaintiffs captioned "Plaintiffs' Original Petition for Injunction and Mandamus." Contrary to the statement of the Response at page 2, Plaintiffs' original suit, as does its current suit, did seek "the establishment of an interest in real property."  See Tex. Prop. Code, § 12.007(a).

At page 2 of the Petition, Tab 5 to the Response, the statement is made:

> The Plaintiffs are the owners of certain <u>real property or rights threatened</u> with the irreparable injury of the conduct of the Defendant, Ken Oakley. (Our emphasis)

A complete reading of II of the Petition reveals a claim of property right in the protection of the critical dune located on both Lot 35, Beachwalk II (the "Oakley Property") and Lot 24, Beachwalk Addition (the "Plaintiffs' Property").  At Paragraph VIII, the Plaintiffs state:

> <u>The real property rights involved are unique and irreplaceable,</u> and it is difficult to accurately measure in monetary terms the damages caused by the Defendant Oakley's conduct.   The property interest is, by such pleading, being claimed in the critical dune which is found on both the property of Plaintiffs and the property of Oakley.  <u>The property right claimed is the right to protection from invasion and damage to the critical dune that protects the property of Plaintiffs.</u>

The Texas Dune Protection Act recognizes the rights of persons in the position of Plaintiffs by allowing "littoral" owners to challenge the granting of a Dune Protection Permit in the district court. Tex. Nat. Res. Code Ann., § 63.151.  Plaintiffs <u>were</u> and <u>are</u> littoral owners,

based on the definition of "littoral ownership" at Tex. Nat. Res. Code Ann., § 61.001(6), as we will demonstrate further on in this Reply.

Plaintiffs are, regardless, protected by judicial privilege, an absolute privilege, which, undisputedly, applies to lis pendens. The "Fraudulent Records Acts", enacted to prevent the "guerilla warfare" of spurious filings, as used by the lawless adherents of the "Republic of Texas", is not applicable to changing the time-honored statutory remedy of lis pendens, and there no basis for applying it here. See Tabs 1 ("Senate Committee Report"), 2 ("Engrossed Version"), and 3 ("Home Committee Report").

The discussion in the Response, moreover, is superficial with respect to the several legal doctrines which provide an absolute privilege to Plaintiffs in the filing of the Lis Pendens, regardless of the technical "pigeonholes" set out in the Lis Pendens provisions.

In considering the two motions for summary judgment, one filed by Plaintiffs and the other by Oakley, there are, essentially, five discrete issues involved respecting Plaintiffs' notice of lis pendens, each with its own historical and policy origins and, in most cases, its own case law support. The Response of Oakley to Plaintiffs' Motion, the first attempt by Oakley to raise all of these issues, and, thereby, clarify Oakley's claims, tends strongly to obscure these issues, by lumping them altogether, as if they were one. These issues involve:

1.     The propriety of the lis pendens filing itself, which Plaintiffs contend gave notice of a pleading seeking to establish a property right in the critical dune for Plaintiffs, as littoral owners, under the Dune Protection Act.

2.     The Rule of Judicial Privilege, that the filing of a lawsuit is absolutely privileged in Texas, and cannot create liability for the filing party (unless "groundless" under Rule 13, Tex. R. Civ. P. and Rule 11, F.R.C.P.)

Page 3

3.   The Rule that statements made in connection with a filed lawsuit, including those in a notice of lis pendens, even a Lis Pendens improperly filed, are protected by Judicial Privilege from being a source of liability (with, again, the exceptions for Texas Rule 13 and Federal Rule 11).

4.   The Rule created by the Fraudulent Records Act, which creates civil liability for the filing of "Court" documents, if they are not provided for by the constitution or laws of Texas or those of the United States, and its effect on the Rule of Judicial Privilege, if any.

5.   The effect of the Fraudulent Records Act upon the holding of lis pendens as absolutely privileged, under the Rule of Judicial Privilege.

**Plaintiffs, as Littoral Owners on the Shore of Port Aransas, Had a Valid Property Right to Establish in the Suit Against Oakley, And, Therefore, Properly Filed the Lis Pendens.**

"'Littoral Owner' means the owner of land adjacent to the shore and <u>includes a lessee, licensee, or anyone acting under the littoral owner's authority.</u>" Tex. Nat. Res. Code Ann. § 61.001.4 (West 1999). (Our emphasis)

To be a "littoral owner," the owner's property must, therefore, be "adjacent" to the shore. The term adjacent has been interpreted by Texas law as commonly meaning "in the vicinity of and not necessarily contiguous or touching upon," depending on the context of the particular situation.

Pursuant to Section 63.151 of the Texas Natural Resources Code, "littoral owners" have the right to appeal to district court from local governing body decisions made under the Dune Protection Act, sections 63.011 through 63.152 of the Texas Natural Resources Code. In the case at hand, Oakley has claimed that Plaintiffs, Arthur and Molly Gochman ("Plaintiffs"), are not littoral owners because, supposedly, the property in question, Lot 24 (the "Property"), does not abut the Gulf. Plaintiffs assert their littoral ownership.

We construe the statutory definition of "littoral", in accordance with the relevant authority, which defines the meaning of "adjacent" as "nearby". Black's Law Dictionary defines the word 'adjacent' as, "[l]ying near or close to; sometimes, contiguous; neighboring. *Adjacent* implies that the two objects are not widely separated, though they may not actually touch" BLACK'S LAW DICTIONARY 38 (5th ed. 1979). In line with this, the Texas Supreme Court has stated that, "[t]he term 'adjacent' is not a word of fixed or definite meaning. The authorities are <u>almost unanimous</u> in according to that term the meaning of 'neighboring or close by' or 'in the vicinity of and not necessarily contiguous or touching upon.'" *State ex rel. Pan Am. Production Co. v. Texas City*, 303 S.W.2d 780, 784 (Tex. 1957) (our emphasis); *see also Broun v. Texas & N.O.R. Co.*, 295 S.W. 670, 674-675 (Tex. App.-Beaumont 1927, reh'g den.) (discussing the meaning of 'adjacent' and finding that "near" and "across the street" satisfy adjacency requirements). With this in mind, the Supreme Court has further stated that, "[a]djacency is a question of law which must be determined in the context of the facts of each particular case." *Waco v. City of McGregor*, 523 S.W.2d 649, 653 (Tex. 1975); *see also Broun*, at 674 (stating that 'adjacent' is a relative and not definite or absolute term). From this the word "adjacent" <u>generally</u> means "in the vicinity of."

With respect to this <u>general</u> understanding of the word "adjacent," the Property (and also lots 25 and 26) <u>is</u> "adjacent" to the Gulf, and hence is littoral property. The only tract of land separating the Property from the Gulf is the beachfront tract, Lot 67 ("BW"), which Starrett conveyed to the city for public use, reserving a "Beach Access Easement" across it to the beach for the Lot Owners in Beachwalk Addition. See Plat of Beachwalk Tab 11 to the Response; Starrett Correction Deed to the City, Tab 13 to the Response. The Property enjoys a view of and easy access to the Gulf. It is as close to the water as any private property in the area and near the shore could possibly be. For these reasons, it is effectively beachfront property, neighboring,

Page 5

close by, in the vicinity of and thus *adjacent* to the shore, and should accordingly be treated as littoral property.

The same result follows when considering the particular circumstances of the statute. The Dune Protection Act's principal purpose is to protect those properties or persons that may be adversely affected by the erosion and destabilization of Gulf Coast dunes. Tex. Nat. Res. Code Ann. § 63.001.1-8 (West 1999). Accordingly, section 63.151 (allowing littoral owners to appeal municipal decisions concerning the dunes), of the Act, acknowledges that certain properties or persons close to the shore are especially vulnerable to dune erosion by giving them a special voice for appeal. The true test, therefore, for determining whether a certain property is littoral for purposes of this Act, is whether or not the property especially relies on dune support and stability. In the case at hand, the Property, being partially landward of the dune, certainly stands to suffer upon any change in the structure of the critical dune. Because of this, the policy behind the Dune Protection Act requires that the Property be categorized as littoral.

Backing this claim is the language of the recently amended section of the statute defining "littoral owner." In 1991 the legislature enlarged the definition of littoral owner to include *lessees or licensees* of the land adjacent to the shore. Tex. Nat. Res. Code Ann. § 61.001.6 (West 1999). This backs the policy claim in the previous paragraph, further stressing the special interests of those individuals, like Plaintiffs, who stand to suffer from any change in the nearby dunes.

In addition to Plaintiffs' obvious littoral interest in the Property based on the general policy and definitions discussed above, Plaintiffs' position is further strengthened by their easement over the property between BW and the beach owned by the city, Lot 67, which Lot, Oakley agrees, is littoral property. Plaintiffs, therefore, have an easement interest in land that is not disputed, which supports their ownership of littoral property. If we review this easement interest along with the revised wording of the statute, we find Plaintiffs have a greater interest than a

"license" or "lease" (both temporary interests) in the undisputedly littoral property. It follows then, that because of this, they must be considered to be littoral owners. Furthermore, coupling Plaintiffs ownership in the Property with their easement across the beachfront, Plaintiffs, a fortiori, stand to suffer even more from any change in the dune structure, and should therefore, in line with state policy as littoral owners, be given the right to appeal governmental decisions concerning the dunes.

In response to Plaintiffs claim as littoral owners, Oakley argues that Plaintiffs should not be considered littoral owners because the Property does not abut the Gulf. Oakley cites the definition of "littoral rights" in Black's Law Dictionary and one case backing this claim. Defendants have, however, improperly interpreted their sources. The statutory definition in the Natural Resource Code would certainly control the Black's Law Dictionary definition of Littoral Rights as "Rights concerning properties abutting an ocean, sea or lake rather than a river or stream (riparian). Littoral rights are usually concerned with the use and enjoyment of the shore." BLACK'S LAW DICTIONARY 842 (5th ed. 1979). Oakley argues for a definition contrary to the Code definition, which just is not the law.

Similarly, Defendants cannot rely on the case they have cited, *City of Corpus Christi v. Davis*, 622 S.W.2d 640, 646 (Tex. App.-Austin 1981, writ ref'd n.r.e.), a case decided long before the enactment of the Dune Protection Act, and certainly not purporting to construe it.

The lis pendens provisions provide specifically for a "suit to establish an interest in real property," which the language quoted from the pleading, above at page 2, demonstrates we have in this case. Tex. Prop. Code, § 12.007(a).

Page 7

## Conclusion

Plaintiffs are littoral owners. The Property's proximity and material connection to the dunes ("nearby" and "in the vicinity") along with the easement across the beachfront are within both the letter of the Act and the policy behind it. As a result, a lawsuit, such as the one originally brought by Plaintiffs against Oakley, to establish a property right in the dune allowing Plaintiffs to protect the dune, is every bit as much entitled to a lis pendens filing as any other suit involving property or an interest in property.

### The Doctrine of Judicial Privilege Is a Basic Common Law Rule, Long Recognized by the Courts of Texas, as Buttressing the Constitutional Guaranty of "Open Courts"

The most recent discussion of the Texas Rule of Judicial Privilege by the Fifth Circuit may be found at *Matta v. May*, 118 F.3rd 410, 415 (5th Cir.1997), citing *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex.1942). Both *Matta* and *Reagan* describe the judicial privilege as absolute. Oakley's Response does not discuss or mention *Matta*.

An earlier Fifth Circuit opinion holding the same is *Burzynski v. Aetna Life Ins. Co.*, 967 F.2d 1063, 1067 (5th Cir. 1992), which cites *James v. Brown*, 637 S.W.2d 914, 916-917 (Tex.1982), as well as *Reagan*, supra. for the doctrine of "absolute privilege from suit." The Response ignores *Burzynski* and *James*, as it does *Matta*. *James v. Brown,* the most recent holding on this point from the Texas Supreme Court, stated:

> Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. (Citing *Reagan*, supra). This privilege extends to any statement made by the judge jurors, counsel, parties or witness, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case. (Our emphasis)

Page 8

Oakley's Response relies on *International Shortstop v. Rally's Inc.*, 939 F.2d 1257, 1269-1271 (5th Cir. 1991) (decided before *Burzinski* and *Matta*) previously discussed by Plaintiffs' supporting authority to Plaintiffs' Motion, an opinion that questioned, <u>not the applicability of the judicial privilege to a notice of lis pendens</u>, since lis pendens was not an issue in *International Shortstop*, but whether "Texas law provides for an unqualified privilege to file a lawsuit", even where malice was involved. *International Shortstop* either was unaware of *Reagan,* supra, *James*, supra., and *Burzynski*, supra. (as, it appears Oakley was, also), or ignored them, because none of them were discussed by either *International Shortstop* or Oakley's Response. At any rate, even though *International Shortstop* questioned the doctrine of absolute privilege, it limited itself to commentary, expressly refusing to make a holding on the issue. Lis Pendens was mentioned in *International Shortstop*, but only because the numerous lis pendens cases provided most of the recent holdings on the Rule of Judicial Privilege, as absolute.

*Manders v. Manders,* 897 F. Supp. 972, 975-998 (S.D. Tex. 1995), used as a "whipping boy" by Oakley's Response because of its magistrate status, was, at least, aware of *Reagan*, as well as the earlier *Rung v. Franklin*, 10 S.W. 721, 723 (Tex. 1899) and the lower appellate court rulings on judicial privilege, and ruled accordingly.

In *Prappas v. Meyerland Com. Imp. Ass'n,* 795 S.W.2d 794, 796-799 (Tex. App.–Houston [14[th] Dist.], writ den'd), the Court of Appeals, ruling on summary judgment, considered and denied a suit for slander of title and tortious interference based on a lis pendens, which actually failed to comply with the lis pendens statute (exactly as Oakley claims here). *Prappas* held:

1.     Lis pendens is part of a judicial proceeding and is, therefore, absolutely privileged, citing *Griffin v. Rowden*, 702 S.W.2d 692 (Tex. App.–Dallas 1985, writ ref'd, n.r.e.).

2.      The privilege rests upon the "open courts" provision of the Texas Constitution, Art. I, Section 13, thereby rising to the level of a constitutional right, citing *Griffin*, supra;

3.      The concept of "authority" to file the notice being limited to "one of the three pigeonholes" (of Section 12.007, Tex. Prop. Code.) was held to be "far too narrow", and, therefore, it was not actionable, the remedy being for the court to strike the notice, but not a suit for damages for the filing thereof.

The decided cases uniformly hold in favor of the doctrine of absolute privilege in judicial proceedings, including in such proceedings any filing of a notice of lis pendens, technically proper or not.   Likewise, the privilege is constitutional in nature, under the Open Courts provisions of the Texas Constitution.  Both by statute and constitutional provision, lis pendens is a basic part of Texas law, as interpreted by the Texas Courts, and may not be discarded by a strained interpretation of a statute enacted to avoid an evil unrelated to the purpose of lis pendens.

**The Case Law Is Overwhelming in the Plethora of Holdings That a Filing of a Notice of Lis Pendens Is Protected by the Absolute Judicial Privilege.**

The Oakley Response concedes, at page 10 that "case law exists that supports the proposition that the filing of a notice of lis pendens is privileged."  The Response cites <u>no</u> <u>authority</u> which <u>denies</u> that "proposition." It sets out to distinguish our situation from the decided cases.

The basic distinction urged to the six cases listed at page 10 of the Response is that, supposedly, Plaintiffs' notice did not fall within "the three pigeonholes."  Plaintiffs reject this as a statement, because they contend strongly they did comply with the statute.  Regardless,

Page 10

however, there is one case cited to which their argument does not apply, *Prappas v. Meyerland Com. Imp. Ass'n*, 795 S.W.2d 794, 796-799 (Tex. App.–Houston [14ᵗʰ Dist.], writ den'd), discussed above, which involved a filing <u>outside</u> the "pigeonholes.".

Not being able to distinguish *Prappas*, they seek to discredit it. They argue that policy should require this court to reject *Prappas,* although there is no holding of the Texas Supreme Court inconsistent with it. In *James v. Brown*, 637 S.W.2d 914, 916-917 (Tex.1982), the Court quoted from the Restatement (Second) of Torts, Section 588:

> A witness is absolutely privileged to publish defamatory matter concerning another in *communications preliminary to a proposed judicial proceeding* or as a part of judicial proceeding in which he is testifying, *if it has some relation to the proceeding.* (Our emphasis)

Obviously *Prappas* is *not* out of line. Even out of court statements concerning litigation are privileged. *James*, supra, at 917 (letter from physician to attorney for children of Plaintiff, expressing negative opinion of Plaintiff's competency held privileged, because it was written in "contemplation of a judicial proceeding."); Bennett v. Computer Associates, Inc., 932 S.W.2d 197 (Tex. App.–Amarillo 1996, writ den'd) (Statements by President of Defendant Corporation, made in settlement discussions, calling Plaintiff a "crook" or "thief" were absolutely privileged because related to "proposed or existing litigation"); Russell v. Clark, 620 S.W.2d 865, 870, 868-869 (Tex. Civ. App.–Dallas 1981, writ ref'd, n.r.e.) (Comments in conferences preliminary to suit held subject to absolute judicial privilege.)

Justice Brown's dissent in *Prappas* was largely leveled at the egregious circumstance in *Prappas*, where the lis pendens was filed <u>after the trial</u>, when the Plaintiff which filed it had <u>lost</u> the case, and had a <u>judgment entered against it</u>.

Page 11

**The Fraudulent Records Act Was Not Intended to Change the Law of
Lis Pendens, And, by its Own Terms, Does Not Do So.**

Oakley relies heavily upon the provisions codified in Tex. Civ. Prac. & Rem. Code at §
12.001, et seq. and in the Texas Government Code at § 11.901, et seq ("the Fraudulent Records
Acts"). These were passed after the experience of county clerks in Texas with a group who
called themselves the "Republic of Texas," purportedly acting in the name of a revolutionary
regime. They filed various purported judicial liens and other similar documents bearing the
imprimatur of courts of the "Republic", as if they were issued by legitimate court systems, in the
records of the county clerks in many counties. This had the effect of clouding titles and hindering
the conveyance of property. Ultimately, the "Republic" culminated in violence and prison
sentences for principals involved. Because of the edicts of the spurious "courts," during this
campaign by the "Republic," the legislature decided to enact corrective legislation and the result
was the "Fraudulent Records Acts." See Tabs 1 through 3.

To hinder the use of the "Notice of Lis Pendens" was not the purpose of the legislature
in enacting the Fraudulent Records Acts. Nonetheless, Oakley claims the language of these
Acts is sufficiently broad so as to wipe out the previous settled law with respect to lis pendens.
To do so would, effectively disable the lis pendens by converting it to an "act on your peril"
source of dangerous civil liability. There is nothing in the history of the Acts which suggests that
was the intent of the legislature. Moreover, a proper reading of the Acts, as well as their
historical purpose, cannot justify that result.

First of all, Tex. Civ. Prac. & Rem. Code, § 12.002 "Liability," provides civil liability for the
use of a document with "knowledge that the document or other record is a fraudulent record or

a fraudulent lien or claim against real or personal property or an interest in real or personal property. . ."

The "document or other record" must, therefore, be a fraudulent lien or claim against real or personal property or an interest in real or personal property. A notice of lis pendens (certainly not a "lien") is not itself a "claim." It is a notice to the public in general that there is a suit pending in which a "claim" has been asserted. Presumably, someone who reads the notice would, if interested, procure a copy of the pleading to determine what kind of "claim" is asserted by the pleading. If the pleading asserts no "claim," then the person interested may go forward without regard to the lis pendens, and incur no detriment from doing so. Further, in order to incur liability, there must be "knowledge" on the part of the person "who present(s) or use(s)" the document. As we have demonstrated above, Plaintiffs have very good reason to believe that they have a claim to rights in the critical dune which crosses both Oakley's property and theirs, as we have discussed above. The lis pendens was not filed with "knowledge" of "fraudulence" because in our estimation there is no "fraudulence," and, indeed, our claim is good. Oakley argues for a construction which would require the filer of a lis pendens to act at his peril, ultimately destructive of the practical usage of the notice itself and contrary to the purpose of the lis pendens statute.

Another condition of "liability" under § 12.002, *supra*, was the "intent that the document or other record be given the same legal effect as a court record or document <u>of a court</u> created by or established under the constitution or laws of this state or the United States or another entity listed in § 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property." (Our emphasis)

A reading of this provision restricts the purported fraudulent "document" to either a "court record" or a "document of a court" which is not of a court "created by or established under the

Page 13

constitution or laws of this state or the United States or another entity listed in § 37.01, Penal

Code evidencing a valid lien or claim against real or personal property or an interest in real or

personal property;. . ."  Tex. Civ. Prac. & Rem. Code, § 12.002.

At § 37.01(1), Texas Penal Code, are listed the following "entities":

(A)     this state;

(B)     another state;

(C)     The United States;

(D)     a foreign country recognized by an act of Congress or a treaty or other
        international convention to which the United States is a party;

(E)     an Indian tribe recognized by the United States; or

(F)     any other jurisdiction, territory or protectorate entitled to full faith and credit in this
        state or the United States Constitution.

This list documents the intent of the legislature to pinpoint attempts such as those of the

"Republic," which set up an alternative government and pretended to issue documentary

counterparts resembling those of legitimate court systems.  The statute does not provide that it

would apply to any document other than one created by a spurious "court."

The Fraudulent Records Act contained in §§ 51.901 through 51.905, Tex. Gov. Code,

does not purport to provide a civil liability remedy in the form of a suit for damages.  This Act

deals only with actions to remove the "record" rather than recover damages.

Section 51.901, Tex. Gov. Code requires that a document be "presumed to be fraudulent"

if it is not a document of a "purported court or a purported judicial entity or purported judicial

officer" that it not be a "document or instrument provided for by the constitution or laws of this

state or the United States.  The result of a filing under this statute and §§ 51.902 and 51.903 is

Page 14

simply a judicial finding that the document creates "no valid judgment lien" for "no valid lien or claim created by (the) documentation or instrument."

In construing the provision of a code, the legislature has enacted provisions commonly known as the Code Construction Act.  Tex. Gov. Code §§ 311.01, et. seq.  Section 311.021 "Intention Enactment of Statutes" states:

> In enacting a statute it is presumed that:
>
> (1) compliance with the constitutions of this state and the United States is intended;
>
> (2) the entire statute is intended to be effective;
>
> (3) a just and reasonable result is intended;
>
> (4) a result feasible of execution is intended; and
>
> (5) public interest is favored over any private interest.

Since, as construed by Oakley, the Fraudulent Records Acts are supposedly in conflict with the Open Courts provisions of the Texas Constitution, the construction of Oakley should yield to the Constitution because we may assume that "compliance with the constitution of this state. . . is intended."  The "Fraudulent Records Act" cannot be construed to affect the doctrine of lis pendens.

## SUMMARY

Oakley has no suit by way of counterclaim against Plaintiffs based on the notice of lis pendens by which Plaintiffs put of record a reference to a lawsuit against Oakley.  The failure of the Counterclaim as a matter of law is based on:

> (a)   The conformity of Plaintiffs suit with the lis pendens statute, by being a suit to "establish a property right" in the critical dune which crosses both Plaintiffs' property and Oakley's property;

Page 15

(b)     Lis pendens partakes of the doctrine of judicial privilege, protecting all allegations relating to an action at law from civil liability, as an absolute privileged area; and

(c)     The "Fraudulent Records Acts" historically passed for a completely different purpose, from changing the doctrine of lis pendens, by their wording and language cannot be tortured into providing a cause of action to Oakley in this context.

PREMISES CONSIDERED, Plaintiffs pray for leave to submit this unopposed motion for leave to file this response, and for summary judgment, all as set out in the original Motion for Summary Judgment herein and for such other and further relief as the Court might deem proper to grant.

Respectfully submitted,

MAX J. LUTHER III, P.C. & ASSOCIATES
1350 Frost Bank Plaza
802 North Carancahua,
Corpus Christi, Texas 78470-0165
Telephone: 361/888-5544
Telecopy: 361/887-6835

By: _____
MAX J. LUTHER III
Texas Bar Number 12706000
Federal I.D. No. 298

DOW, COGBURN & FRIEDMAN, PC
Edmund L. Cogburn
Texas Bar Number 04501000
Federal I.D. No. 2105
9 Greenway Plaza, Suite 2300
Houston, Texas 77046
Telephone: 713/940-6012
Telecopier: 713/940-6099

ATTORNEYS FOR PLAINTIFFS
Arthur Gochman and Molly Gochman

Page 16

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served via certified mail, return receipt requested in accordance with the Federal Rules of Civil Procedure to counsel as indicated below on this 25th day of August, 2000.

Ed Cogburn
Dow, Cogburn & Friedman, PC
9 Greenway Plaza, Suite 2300
Houston, TX 77046

Matthew J. Sullivan
Haynes and Boone, LLP
1600 One American Center
600 Congress Avenue
Austin, TX 78701

Fred D. Dreiling
500 N. Shoreline St., Suite 714
Corpus Christi, TX 78471

E. R. Fleuriet
621 E. Tyler
Harlingen, TX 78550

James F. McKibben, Jr.
Barger, Hermansen, McKibben
   & Villareal, LLP
2000 North Tower
800 N. Shoreline Blvd.
Corpus Christi, TX 78401

Jorge C. Rangel
PO Box 2683
Corpus Christi, TX 78403-2683

Michael Morris
5350 S. Staples, Suite 222
Corpus Christi, TX 78411

O:\100\100026\0190\REPRESMSJ2.OAK\082220001636

Page 17

# EXHIBITS <u>NOT</u> IMAGED

CVisPDF – www.fastio.com