United States District Court
Southern District of Texas
ENTERED

SEP 0 1 2000

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN, and MOLLY GOCHMAN, | § § § | |
| Plaintiffs, | § § § | 96. |
| V. | § § § | CIVIL ACTION NO. C-00-126 |
| STANLEY STARRETT, JR. KEN OAKLEY, URBAN ENGINEERING, A PARTNERSHIP, THE PERALLA CORPORATION, URBAN CONSULTING ENGINEERS, INC., JAMES URBAN, and THE CITY OF PORT ARANSAS, TEXAS | § § § § § § § § § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendant Ken Oakley's

Motion for Summary Judgment ("Oakley's Motion"), Defendant

Stanley Starrett's Motion for Summary Judgment ("Starrett's

Motion"), Defendant City of Port Aransas' Motion for Summary

Judgment ("City's Motion"), Defendants Urban Engineering's, the

Peralla Corporation's and Urban Consulting Engineers' Motion for

Summary Judgment ("Urban's Motion"), and Plaintiffs' Motion for

Summary Judgment on Defendant Oakley's Counterclaims ("Gochmans'

Motion"). For the reasons stated herein, the Court GRANTS

Starrett's Motion for Summary Judgment, GRANTS the City's Motion for Summary Judgment, and GRANTS Urban's Motion for Summary Judgment. The Court GRANTS in part and DENIES in part the Oakleys' Motion for Summary Judgment. The Court DENIES in part and GRANTS in part the Gochmans' Motion for Summary Judgment on Oakley's Counterclaims.

## I.   **JURISDICTION**

Defendants removed this action pursuant to 28 U.S.C. § 1441(a). This Court has jurisdiction under 28 U.S.C. § 1331 because the action presents a federal question under 42 U.S.C. § 1983. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

## II.   **FACTUAL AND PROCEDURAL BACKGROUND**

Stanley Starrett ("Starrett"), a developer, purchased a tract of unimproved raw land on Mustang Island, a barrier island adjacent to the Gulf of Mexico in the City of Port Aransas ("City"), Nueces County, Texas in 1996. (Exhibit 14 of Oakley's Motion at 21). Subsequently, Starrett developed the property as a residential subdivision named Beachwalk Unit I ("Beachwalk I").

2

(City's Motion at 2). After securing the necessary permits for development from the City on February 20, 1997, Starrett filed a residential plat for Beachwalk I on March 7, 1997 in Nueces County, Texas. (Oakley Motion at 1).

Defendant Urban Engineering provided engineering services for the development of Beachwalk I, including assisting in the preparation of the permit applications submitted to the City. (Urban Motion at 2). Urban Engineering had previously authored the City of Port Aransas' Coastal Management Plan in 1995. (Response to Starret Motion at 2).

As part of the development, Starrett conveyed to the City a narrow strip of property running between the beach and the entire length of Beachwalk I, known as Lot 67. (City's Motion at 3). This lot is the only parcel of Beachwalk I that abuts the gulf shore. (City's Motion at 3).

On May 30, 1997, Starrett conveyed, out of Beachwalk I, Lot 24 to Plaintiff Molly Gochman and Lots 25 & 26 to her father Plaintiff Arthur Gochman.[1] (Oakley's Response at 1). Molly

---

[1] Lots 24, 25 and 26 are contiguous, running north to south, parallel to the Gulf, with Lot 24 the northern most.

Gochman subsequently constructed a home on Lot 24. (Urban Motion at 2). Lots 25 & 26 remain unimproved. (Oakley's Response at 1).

All three lots are landward of a dune protection line established, pursuant to the Dune Protection Act, Tex.Nat.Res.Code §§ 63.011-63.152 (the "Dune Protection Act"), by an Order of the Commissioner's Court of Nueces County on July 14, 1993. (Exhibit R of City's Motion at 2). The dune protection line runs generally north and south along the Gulf of Mexico. Further, all three lots are separated from the Gulf by Lot 67.

Arthur Gochman alleges that during his discussions leading to the purchases, Starrett made several representations to him. First, Starrett allegedly told Arthur Gochman "unequivocally" that no adjacent lot owner could ever build closer to the beach than the dunes on Lot 24 because of the existence of the critical dune line on Beachwalk I. (Exhibit H of Response to Starrett Motion at 2). Second, Starrett allegedly represented to Arthur Gochman that the line of critical dunes existing between Lot 24 and the water was the furthest seaward allowed for the building of homes. (Response to Starrett Motion at 12). Finally, Starrett told Arthur Gochman that if Starrett bought the property to the

4

North of Beachwalk I and developed it, any such development project would have no relation to Beachwalk I either in location or development. (Id.).

During and after the development of Beachwalk I, Starrett purchased and developed a tract of land north and adjacent to Beachwalk I, called Beachwalk Unit II ("Beachwalk II"). (Exhibit 14 of Oakley's Motion at 34-35). As Beachwalk I, Beachwalk II abuts the Gulf of Mexico and is located in the City of Port Aransas. (City's Motion at 3).

Starrett filed two applications for dune permits[2] for Beachwalk II with the City of Port Aransas. (City's Motion at 3-6). The first dune permit (No. 97-008) related to roadways and utilities on Beachwalk II ("Road Permit"), and the second dune permit (No. 97-010) dealt with residential construction on Beachwalk Unit II, including construction on Lot 35 ("Oakley Permit"). The latter permit lies at the heart of this dispute.

---

[2] A dune permit is "the document issued by a local government to authorize construction or other regulated activities in a specified location seaward of a dune protection line or within a critical dune area, as provided in the Texas Natural Resources Code, §63.051." (City of Port Aransas Coastal Management Plan at 4).

On November 18, 1997, Starrett filed with the City of Port
Aransas the application for the Oakley Permit which stated in
part:

> "Finally, lot 34 and 35 will impact the landward edges
> of a critical dune complex....These areas are landward
> of the ridge dunes and are out of the erosion zone, so
> construction should not affect the natural flood or
> storm surge protection of the property. This
> construction will impact 348 cubic yards of critical
> dune volume and vegetation which will be mitigated for
> in Mitigation Site #3."

(Exhibit E of City's Motion at 5-6).  Defendant James Urban, an
employee and an officer of Urban Engineering, assisted Starrett
with the preparation of the Oakley Permit. (Exhibit 14 of
Oakley's Motion at 26).  The Gochmans allege James Urban acted as
the City Engineer while assisting Starrett with the Oakley
Permit, thereby creating a conflict of interest. (Response to
Urban Motion at 5).

On November 24, 1997, at a regular meeting of the Planning
and Zoning Commission of the City of Port Aransas (the
"Commission"), approval of the Oakley Permit was recommended.
(Exhibit F of City's Motion).  On December 18, 1997, the Port
Aransas City Council voted to issue the Oakley Permit during a
regular meeting. (Exhibit L of City's Motion); (See also

6

Transcript of Meeting at Exhibit D of Urban Motion).  The permit
application stated that construction on the Lot 35 would impact
348 cubic yards of critical dune volume and vegetation. (Exhibit
E of City's Motion at 6).  The permit included a mitigation plan
for this impact. (Id.).  The City determined that the mitigation
plan would adequately minimize and mitigate any unavoidable
adverse effects on the dunes. (Exhibit E of City's Motion at 2).
Starrett filed the plats for Beachwalk II with Nueces County on
June 3, 1998. (Oakley's Motion at 1).

On July 10, 1998, Defendant Ken Oakley ("Oakley") purchased
Lot 35 in Beachwalk II from Starrett. (City's Motion at 6).  The
Oakley lot is adjacent and due north of Molly Gochman's Lot 24.
Subsequently, Oakley entered into a home construction contract on
Lot 35. (Id.).  Construction of the proposed home would impact
the dunes on Lot 35 by the burying of the dunes with fill in
order to raise the existing ground elevations of Lot 35 and
provide drainage to the street. (Exhibit E of City's Motion at
5).

Concerned with both the potential impact to the dunes and
the obstruction of the view north from Lot 24, the Gochmans

wrote several unsuccessful letters of complaint to various state and local agencies. (City's Motion at 6-7). The Gochmans then filed two state court actions against the various Defendants which were consolidated. With the addition of a federal cause of action, the Defendants timely removed the consolidated action to federal court.

The Gochmans allege the City improperly issued the Oakley Permit without proper notice to them as "littoral owners" and without a public hearing, all in violation of the Dune Protection Act and in further violation of the U.S. and state constitution. (Response to City Motion at 4-5). The Gochmans complain that damage to the dunes increased the risk of erosion and flood damage to the area. (Response to Urban Motion at 16). Arthur Gochman alleges that the Oakley Permit caused a depreciation in the value of Molly Gochman's home on Lot 24 as the adjacent Oakley home blocks the northern view of the Gulf. (Exhibit H of Response to Starrett's Motion at 5). There is no claim for damages as to Lots 25 & 26.

The Gochmans assert a federal cause of action against all Defendants under 42 U.S.C. § 1983, alleging the City and the non-

8

state actors conspired to deprive Arthur and Molly Gochman of

their federal and state constitutional rights to due process and

equal protection.  The Gochmans also asserts several state law

causes of action: 1) a direct action under the Dune Protection

Act against all Defendants, 2) complaints against Starrett under

§ 27.01 of the Texas Business and Commerce Code, the Texas

Deceptive Trade Practices Act, and common law fraud, seeking

damages and 3) application for injunctive relief against

the Oakleys.   Finally, the Gochmans bring a claim for mandamus

and injunctive relief against the City of Port Aransas.

In response, Ken Oakley and his wife, Andrea Oakley, (the

"Oakleys") assert state law counterclaims against the Gochmans,

all related to an improper filing of a Notice of Lis Pendens on

the Oakley home. (Oakley's Response to Gochman Motion at 2).  The

Oakleys allege that immediately prior to the closing on certain

construction loans, the Gochmans filed a Notice of Lis Pendens

during the pendency of this action in state court. (Oakley Motion

at 11-12).  In order to remove the offending Notice of Lis

Pendens, the Oakleys allege they were forced to sign a release in

favor of the Gochmans which released the Gochmans of all

liability arising from the filing of past or future Notices of Lis Pendens. (Oakley Motion at 12).  Some months after the execution of this release, on February 1, 2000, the Gochmans once again filed a Notice of Lis Pendens on the Oakley home. (Oakley Response to Gochman Motion at 3).

The Oakleys assert the Gochmans violated Section 12.001 of the Texas Civil Practices and Remedies by filing the Notice of Lis Pendens. The Oakleys also assert claims of negligence, gross negligence, and intentional infliction of emotional distress against the Gochmans.  Finally, the Oakleys seek declaratory judgment that 1) the Notice of Lis Pendens constitutes slander, 2) the Notice of Lis Pendens are null and void, 3) the Release signed by the Oakleys is null and void, 4) the Oakleys did not violate the Dune Protection Act, and 5) the Gochmans' suit is frivolous and in bad faith.

### III. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

10

any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c).  The

substantive law identifies which facts are material.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510

(1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th

Cir. 1996).

The party seeking summary judgment bears the initial burden

of informing the Court of the basis for its motion and

identifying those portions of the pleadings, depositions, answers

to interrogatories, admissions on file, and affidavits, if any,

which it believes demonstrate the absence of a genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106

S.Ct. 2548, 2552-53 (1986); Williams v. Adams, 836 F.2d 958, 960

(5th Cir. 1988).

Once a proper motion has been made, the non-moving party may

not rest upon mere allegations or denials in the pleadings, but

must set forth specific facts showing the existence of a genuine

issue for trial.  Celotex Corp., 47 U.S. at 322-23, 106 S.Ct. at

2552-53; Anderson, 477 U.S. at 257, 106 S.Ct. at 2514-15.  The

controverted evidence must be viewed in the light most favorable

11

to the non-movant, and all reasonable doubts must be resolved against the moving party. <u>Palmer v. BRG of Ga., Inc.</u>, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402. n. 5 (1990); <u>Anderson</u>, 477 U.S. at 255, 106 S.Ct. at 2513-4; <u>Judwin Properties, Inc. v. United States Fire Ins. Co.</u>, 973 F.2d 432, 435 (5th Cir. 1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323, 106 S.Ct. at 2552.

## IV.   42 U.S.C. § 1983

The Gochmans allege all Defendants conspired to deny them their federal and state constitutional rights of due process and equal protection when the City issued the Oakley permit without affording notice to the Gochmans and a public hearing. (Response to City's Motion at 14). The Gochmans claim Starrett secured the Oakley Permit in concert with Urban, who acted as Starrett's engineer while simultaneously serving as the City's engineer.

(Id.).  Oakley proceeded to construct his house with this permit,
allegedly destroying critical sand dunes in the process.
(Response to Oakley Motion at 13-14).  The Gochmans seek damages
and injunctive relief against the Defendants. (Amended Complaint
at 6).

      Section 1983 prohibits "persons" acting under the color of
law from depriving another of any "rights, privileges, and
immunities secured by the Constitution and laws."  42 U.S.C. §
1983. To state a claim under § 1983, a plaintiff must allege or
prove two elements: (1) that they were deprived of a right or
interest secured by the Constitution and laws of the United
States; and (2) that the deprivation occurred under color of
state law.  West v. Adkins, 487 U.S. 42, 48, 108 S.Ct. 2250,
2254-55 (1988).  The Gochmans claim they were deprived of their
rights under the Due Process and Equal Protection Clauses of the
U.S. Constitution, and they were also denied their rights under
the Texas Constitution. (Response to Oakley Motion at 6-7).  The
Gochmans do not allege they were denied any rights under a
federal statute. The deprivations allegedly occurred under color
of state law because the City and the non-state actors cooperated
in a conspiracy to deprive them of their rights.

                                13

Section 1983 claims are proper for summary judgment when
they involve only the interpretation and application of the
Constitution. <u>FM Properties v. City of Austin</u>, 93 F.3d 167, 172
(5th Cir. 1996).  In the present case, summary judgment is
appropriate, and the Court addresses each aspect of the Gochmans'
§ 1983 claim.

### A. Due Process Clause of the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides
that "[n]o State shall ... deprive any person of life, liberty,
or property, without due process of law."  U.S. Const. amend.
XIV.  To state a cause of action under § 1983 for violation of
the Due Process Clause, a plaintiff must alleged (1) a recognized
"liberty or property" interest within the purview of the
Fourteenth Amendment, and (2) intentional or reckless deprivation
of that interest, even temporarily, under color of state law.
<u>Doe v. Taylor Indep. Sch. Dist.</u>, 15 F.3d 443, 450 (5th Cir.
1994)(en banc).  Here, the Gochmans do not allege a liberty
interest, but assert a property interest.

The Due Process Clause must be evaluated in conjunction with
another fundamental principle of our democratic governance.  It
is well established law that once an action is characterized as
legislative, procedural due process requirements do not apply.

14

Jackson Court Condominiums, Inc. v. City of New Orleans, 874 F.2d 1070, 1074 (5th Cir. 1989)(citing Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441 (1915)).  When a State extinguishes property interests through legislation, it is said that the legislative determination provides all the process that is due. Logan v. Zimmerman Brush Company, 455 U.S. 422 (1982). Zoning decisions made by elected bodies are legislative in nature, and no procedural due process rights apply.  County Line Joint Venture v. City of Grand Prairie, 839 F.2d 1142, 1145 (5th Cir. 1988).  This principle is applicable to both general zoning decisions as well as decisions on particular permit applications. South Gwinnett Venture v. Pruitt, 491 F.2d 5, 6 (5th Cir. 1974)(en banc).  Pruitt involved a due process claim under the Fourteenth Amendment for the denial of a rezoning request. The Fifth Circuit stated:

> "Local zoning is a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action. Moreover, we see no viable distinction between zoning board functions involved in the adoption of a comprehensive zoning plan and those exercised in the reclassification of a piece of property under an existing plan."

Pruitt, 491 F.2d at 6. See also Couf v. DeBlaker, 652 F.2d 585, 590 (5th Cir. 1981)(no constitutional limitation on procedure is relevant to the denial of a building permit).  No allegations are

15

made that the decision to grant the Oakley Permit was arbitrary or capricious.

While the present case involves an environmental permit, not a zoning permit, the case law on zoning is analogous for several reasons.  First, the approval of an environmental permit involves the same exercise of legislative judgment about land use by the City Council as a zoning permit requires. See Higginbotham v. Barrett, 473 F.2d 745, 747 (5th Cir. 1973).  The City Council of the City of Port of Aransas voted to grant the Oakley Permit after deliberation based on the findings and investigation of the Zoning and Planning Commission. (Exhibits F-L of City's Motion).

Second, zoning decisions encompass judgments about environmental impact in the same way environmental permits do. In *Couf*, the city council denied a building permit partially because of its impact on the city shoreline. The Fifth Circuit stated, "Certainly, the protection of the city shoreline was of critical importance to the City Commissioners.  Whether they chose the best way to regulate development is not for us to decide, for that judgement was their prerogative." Couf v. DeBlaker, 652 F.2d 585 at 588.

For these reasons, the City Council's decision to grant the Oakley Permit was a quasi-legislative act, and the U.S.

16

Constitution affords the Gochmans no further procedural rights beyond the legislative process.

The Gochmans also assert a substantive due process claim under the Fourteenth Amendment in addition to their procedural due process claim. (Response to City Motion at 8). However, the same legislative model applies to substantive due process claims in the zoning context.  <u>Shelton v. City of College Station</u>, 780 F.2d 475 (5th Cir. 1986)(en banc)(extending the *Pruitt* decision to substantive due process claims). <u>See</u> <u>also</u> <u>FM Properties Operating Co. v. City of Austin</u>, 93 F.3d 167, 174 (5th Cir. 1996)(dismissal of substantive due process claim for city's denial of land development permit because of environmental concerns).

## B. Equal Protection Clause of the Fourteenth Amendment

The Gochmans do not allege that the Dune Protection Act is unconstitutional, vague, or ambiguous, but that in its application, the City violated the Equal Protection Clause of the 14th Amendment.  The Gochmans allege they were entitled to an "impartial tribunal" to determine whether the Oakley Permit should be granted. (Response to City's Motion at 10).  Instead, they claim, their equal protection rights were violated when Urban appeared on both sides of the table by first assisting in

17

the preparation of the Oakley Permit application and then advising the City on the merits of the application. (Id.)

Application of a facially neutral law with discriminatory intent may constitute a violation of the Equal Protection Clause. See Bryan v. City of Madison, Mississippi, 213 F.3d 267 (5th Cir. 2000)  To state a cause of action under § 1983 for violation of the Equal Protection Clause, a plaintiff must allege that (1) a state actor (2) intentionally discriminated against the plaintiff (3) on the basis of membership in a protected class.  Purisch v. Tennessee Tech. Univ., 76 F.3d 1414, 1424 (6th Cir. 1996); Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989) (en banc). As a prerequisite to an equal protection claim, the plaintiff must prove that similarly situated individuals were treated differently from the plaintiff.  Bryan v. City of Madison, Mississippi, 213 F.3d at 276.  To prove an Equal Protection violation under § 1983, the plaintiff must show a discriminatory purpose, which implies that the decision maker selected a course of action at least in part due to the adverse impact it has on an identifiable group.  Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995).  A discriminatory intent requires "more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected or reaffirmed a particular

18

course of action at least in part 'because of', not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Bray v. Alexandria Women's Health Clinic</u>, 113 S. Ct. 753, 760 (1993) (quoting <u>Personnel Administrator of Mass. V. Feeney</u>, 99 S. Ct. 2282 (1979)).

The Gochmans' First Amended Complaint does not allege a valid equal protection claim.  They do not allege that any defendant intentionally discriminated against them, nor do they allege that they are members of a protected class.  The record is devoid of any evidence of a discriminatory purpose or even any discrimination against the Gochmans, intentional or not.

They do not allege that individuals situated similarly to them were treated differently than they were, and it is difficult conceptually to see how they could allege this.  They make a stab in their response to the City's summary judgment motion by stating that the lack of partiality on behalf of the city "treat[ed] Plaintiffs' rights as littoral owners in the protection of the Critical Dune differently from the way that individuals in Plaintiffs' position would have been treated had not the City Engineer appeared on behalf of the developer and totally compromised the process."  But they don't allege, much less offer evidence, that other people in their position were

19

treated differently, *see* <u>Bryan v. City of Madison</u>, 213 F. 3d at 276-277, rather, they simply state that if Urban had not assisted Starrett in preparing the Dune Permit applications, and if Urban was acting as City Engineer, "it must be presumed that someone of [Urban's] authority and background would have required alternative plans. . . ."

In the face of the summary judgment motions pointing out that no evidence exists to sustain the Gochmans' claims, the Gochmans are obligated to present evidence demonstrating a genuine issue of material fact as to each element of their Equal Protection claim under § 1983. The Gochmans have not presented any evidence at all that other persons, situated similarly to them, were treated differently. They have not provided any evidence whatsoever that they are members of a protected class, nor have they offered any evidence, or even alleged, a discriminatory purpose.

Moreover, a violation of the Equal Protection Clause requires governmental action which classifies or distinguishes between two or more relevant persons or groups. <u>Vera v. Tue</u>, 73 F.3d 604 (5th Cir. 1996). Where the challenged action does not appear to classify or distinguish between two or more relevant groups of persons, there is no violation of the Equal Protection

20

Clause.  Mahone v. Addicks Utility District of Harris County, 836
F.2d 921, 932 (5th Cir. 1988).

The Gochmans have failed to present any evidence that they
are members of a protected class under the Fourteenth Amendment
or that the City of Port Aransas sought to intentionally
discriminate against them because of their membership in the
class.  Even if the City did not conform to state law in issuing
the Oakley Permit, violation of state law does not constitute a
per se denial of the federal constitutional right to equal
protection of the law.  Stern v. Tarrant County Hospital, 778
F.2d 1052, 1056 (5th Cir. 1985).  A violation of state law by a
state agency or actor does not constitute a denial of equal
protection unless the state acts with some kind of prohibited
class-based animus.  Smith v. City of Picayune, 795 F.2d 482, 487
(5th Cir. 1986).  No such allegation was made in this case.

### C. Conspiracy Claim under 42 U.S.C. § 1983

The Gochmans maintain the Defendants conspired to deny them
their fundamental constitutional rights by securing the Oakley
Permit. (Response to Oakley's Motion at 8).  In this sense, it is
alleged, all Defendants, both state and non-state actors,
operated under color of state law.

A § 1983 plaintiff may assert conspiracy claims.  Hale v.
Townley, 45 F.3d 914, 920 (5th Cir. 1995), reh'g & suggestion for
reh'g en banc denied, 51 F.3d 1047 (5th Cir. 1996); Mizell v.
North Broward Hospital Dist., 427 F.2d 468, 472-73 (5th Cir.
1970).  A conspiracy is an agreement between two or more
individuals, where one individual acts in furtherance of the
objective of the conspiracy, which causes an injury to a person
or property, or deprives a person of exercising any right or
privilege as a United States citizen." McKenzie v. Doctor's
Hospital of Hollywood, Inc., 765 F.Supp. 1504, 1507 (S.D. Fla.
1991), aff'd, 974 F.2d 1347 (11th Cir. 1992). In order to prevail
on a section 1983 conspiracy claim, a plaintiff must establish
(1) the existence of a conspiracy involving state action and (2)
a deprivation of civil rights in furtherance of the conspiracy by
a party to the conspiracy.  Pfannstiel v. City of Marion, 918
F.2d 1178, 1187 (5th Cir. 1990).

The failure of the Gochmans' federal constitutional claims
disposes of their claim of conspiracy between the Defendants
under § 1983.[3] Without the deprivation of a constitutional or

_____

[3] The Gochmans do not allege they were denied any rights
under a federal statute.

22

federal statutory right, a conspiracy claim is not actionable

under § 1983.  As the Fifth Circuit has stated:

> "Under § 1983, conspiracy can furnish the conceptual spring
> for imputing liability from one to another. . . . A
> conspiracy may also be used to furnish the requisite state
> action. . . . Yet it remains necessary to prove an actual
> deprivation of a constitutional right; a conspiracy to
> deprive is insufficient. . . . Here the plaintiff has failed
> to show any such deprivation. Without a deprivation of a
> constitutional right or privilege, the defendant has no
> liability under § 1983."

Kaplan v. Clear Lake City Water Authority, 794 F.2d 1059, 1065

(5th Cir. 1986)(citing Farrar v. Cain, 756 F.2d 1148, 1151 (5th

Cir. 1985).

### D. Texas Constitution

The Gochmans assert a § 1983 claim for violations of the Due

Process Clause and the Equal Protection Clause of the Texas

Constitution. (Amended Complaint 5-6). However, the Gochmans must

allege a deprivation of a federally protected right in order to

set forth a prima facie case under § 1983.  Williams v. Treen,

671 F.2d 892, 900 (5th Cir. 1982)(citing Maine v. Thiboutot, 448

U.S. 1 (1980)).  Violations of state law alone do not give rise

to a cause of action under § 1983.  Williams, 671 F.2d at 900.

See also Smith v. Sullivan, 611 F.2d 1039, 1045 (5th Cir. 1980);

Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994).

23

It is unclear from the Amended Complaint whether the Gochmans are also asserting a direct action under the Texas Constitution for money damages.  Texas law does not recognize a private cause of action for damages for deprivation of a right guaranteed by the Texas Constitution, with the narrow exception of a taking of property without just compensation. <u>Beaumont v. Bouillon</u>, 896 S.W.2d 143, 149 (Tex. 1995).  The Gochmans have not alleged a takings violation under the Texas Constitution. Additionally, under Texas law, there is no state constitutional tort action analogous to § 1983. <u>Gillum v. City of Kerrville</u>, 3 F.3d 117 (5th Cir. 1993).  Therefore, Gochmans' claims under the Texas Constitution are not actionable.

## V.   <u>CLAIM FOR DAMAGES UNDER THE DUNE PROTECTION ACT</u>

The Complaint asserts a direct action under the Dune Protection Act against all Defendants. (Amended Complaint at 3-5).  It is alleged that the City issued a dune permit for the Oakley residence without notice to the Gochmans, and without a public hearing, in violation of the Dune Protection Act. (Response to City's Motion at 8-9).  Oakley then allegedly used the permit to destroy critical dunes. (Response to Oakley Motion at 13-14).  Arthur and Molly Gochman sue in their capacity as

24

littoral owners under Tex.Nat.Res.Code §61.151.  Defendants argue that Arthur and Molly Gochman can not maintain a private action under the Dune Protection Act because Arthur and Molly Gochman are not littoral owners. (Oakley Motion at 3-5).  The Defendants also argue that they did not violate the Dune Protection Act. (Oakley Motion at 6-8); (See also Urban Motion at 14-17).

Section § 63.151 states, "A littoral owner aggrieved by a decision of the commissioners court or governing body of the municipality under this chapter may appeal to a district court in that county." Tex.Nat.Res.Code §61.151.

A littoral owner is defined as "the owner of land adjacent to the shore and includes a lessee, licensee, or anyone acting under the littoral owner's authority." Tex.Nat.Res.Code §61.001. The "shore" is the strip of land between mean low-tide and mean high-tide, which is ascertained in any place from the average height of the water at that place over a considerable period of time.  Humble Oil & Refining Co. v. Sun Oil Company, 190 F.2d 191, 195 (5th Cir. 1951).

The Court need not determine whether the Gochmans are littoral owners, or whether the Dune Protection Act creates a private cause of action for damages, as the Gochmans create no genuine issue of fact as to damages.

25

The claim for damages is premised on the depreciation in the value of Molly Gochman's home caused by the obstruction by the Oakley home of the northern view of the Gulf. (Affidavit of Arthur Gochman at 5).  Molly Gochman did not offer an affidavit that her home actually suffered a loss in value from the Oakley construction.

Arthur Gochman provides an affidavit in which he gives an opinion that the value of Molly Gochman's home has depreciated in value by $650,000. (Exhibit H of Response to Starrett's Motion at 5). In general, an owner is competent to give his opinion on the value of his property. King v. Ames, 179 F.3d 370, 376 (5th Cir. 1999)(citing Kestenbaum v. Falstaff Brewing Corporation, 514 F.2d 690, 698-99 (5th Cir. 1975).  However, a lay person is incompetent to testify to the value of the property of another. See Barraza v. Koliba, 933 S.W.2d 164, 169 (Tex.App.–San Antonio [Fourth Dist.] 1996)(nonowners attempts to testify on value of property properly excluded). Arthur Gochman is not the owner of Molly Gochman's home nor does he offer himself as an expert and therefore is not competent to give an opinion as to the value of her home.  Arthur Gochman offers no evidence as to a diminution of value to Lots 25 & 26.

26

Arthur Gochman argues that he should be allowed to testify as to the value of Molly Gochman's home because he is a sublessee of Molly Gochman's home. (Response to Starrett Motion at 14). The record shows that Arthur Gochman signed this lease agreement on September 1, 1999, after the commencement of this litigation. (Exhibit F of Response to Starrett Motion at 1). At best, Arthur Gochman may provide an opinion as to the value of his leasehold estate; however, no such claim is made.

The Gochmans offer the Affidavit of Dr. Jennifer Prouty which states that the Oakley Permit has caused an "adverse effect" and "material weakening" of critical dune and dune vegetation. (Affidavit of Prouty at 3). However, Dr. Jennifer Prouty fails to explain the consequences of this "material weakening" and its effect on Molly Gochman's home. A party may not rest on conclusory statements to overcome a summary judgment motion. <u>Michaels v. Avitech Inc.</u>, 202 F.3d 746, 754 (5th Cir. 2000).

Molly Gochman has not sustained her burden to present competent evidence that her home on Lot 24 sustained damages, and Arthur Gochman has not sustained his burden to present evidence that Lot 25 & 26 or his leasehold estate on Lot 24 have sustained damages. Their claim for damages under the Dune Protection Act,

assuming, arguendo, a private right of action exists, must fail
because they have not shown there are any damages to recover.

For the foregoing reasons, Defendants are entitled to
summary judgment as to the Gochmans' claims under the Dune
Protection Act.


## VI.   Request for Injunctive & Mandamus Relief

The Gochmans seek an injunction requiring Oakley to move the
home landward from the critical dune line and prohibiting Oakley
from further damaging the dunes, relying on the Dune Protection
Act and 42 U.S.C. § 1983.  (Plaintiffs' First Amended Complaint
at 6-7, 13.  To obtain an injunction, the Gochmans must show (1)
a substantial threat of irreparable injury if the injunction is
not granted; (2) the threatened injury to the moving party
outweighs any potential harm to the non-movant; and (3) the
injunction will not disserve the public interest.  Lionheart v.
Foster, 100 F. Supp. 2d 383 (E.D. La. 1999).

The Gochmans are not entitled to an injunction under 42
U.S.C. § 1983 because the Oakleys are not state actors nor were
they acting under color of state law when they modified the dune
on their property and constructed their house.  For reasons
stated elsewhere herein, the Gochmans' claims of conspiracy for

28

the purpose of imposing § 1983 liability on civilians cannot be sustained.

The only potential harm to justify an action for injunction, therefore, would be irreparable harm to their property because of any resultant dune damage from the Oakley construction.  The Oakleys have moved for summary judgment on this issue, claiming that there is no evidence to create a genuine issue of material fact regarding the potentially harm to the Gochmans.  The Gochmans counter with the affidavit of Jennifer S. Prouty, Ph.D., who attests that in her opinion, "the construction on Lot 35 Beachwalk II constitutes and creates a material weakening of the critical dune on Lot 35 and such construction has had a material adverse effect on the critical dune on and destruction of dune vegetation on Lot 35 Beachwalk II."  (Prouty Affidavit at 4.) Lot 35 is the Oakleys' property.

There is no question that there was an invasion of the critical dune on Lot 35; this was the purpose for the Dune Permit.  The issue, however, is whether the activity presents a substantial risk of harm to the *Gochmans*.  There is nothing in the Prouty Affidavit, nor have the Gochmans pointed to other evidence in the record, that the modification of the dune on the Oakleys' property threatens the Gochmans' property.  To obtain

29

injunctive relief, a plaintiff must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." <u>Shanks v. City of Dallas, Tex.</u>, 752 F.2d 1092, 1097 (5th Cir. 1985).  The Gochmans have not shown a prior violation, let alone a potential recurrent one, by the Oakleys.  The permit was obtained by Starrett and the dune was modified under that permit.  The Oakleys have not violated any part of the Dune Protection Act by modifying the dune.  To the extent that the Gochmans assert that the invasion of the critical dune creates a danger from storm surges, they have not presented any evidence that this is a "cognizable danger." Because the Gochmans have failed to present any evidence of a realistic threat of irreparable harm, the Oakleys are entitled to summary judgment as to the Gochmans' claim for injunctive relief.

The Complaint also seeks mandamus relief to compel the City "to properly enforce" the Dune Protection Act.  "Mandamus is an extraordinary remedy for extraordinary causes." <u>United States v. Denson</u>, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc).  To obtain mandamus relief, the Gochmans must establish: 1) a clear right to the relief sought; 2) a clear duty on the part of the defendant to do the act in question; and 3) there is no other adequate remedy available. <u>Carter v. Seamans</u>, 411 F.2d 767, 773 (5th Cir.

30

1969).  Neither Arthur nor Molly Gochman have shown a clear right to mandamus relief.  Mandamus may issue only to compel a government official to perform a purely ministerial duty, and the power of the federal court to intervene depends on the amount of discretion vested in the officer.  <u>Carpet, Linoleum & Resilient Tile, Etc. v. Brown</u>, 656 F.2d 564 (10th Cir. 1981); <u>Associated Businesses of Franklin, Inc. v. Warren County Brd. Of Comm'nrs</u>, 522 F. Supp. 1015, 1020 (S.D. Ohio 1981).  If a duty is determined to be discretionary, mandamus may not issue.  <u>Id.</u>

The problem for the Gochmans is that the City of Port Aransas does not have enforcement power under the Dune Protection Act.  Under § 63.181, enforcement authority is squarely placed in the hands of the attorney general, county attorney, district attorney, or criminal district attorney.  Tex. Nat. Res. Code Ann. § 63.181.  Without deciding whether mandamus could issue to compel an officer to "enforce" the Act, the Court concludes that the Gochmans are seeking mandamus against the wrong persons.

## VII. <u>Fraud; Deceptive Trade Practices Act</u>

The Complaint asserts a claim against Starrett under Tex.Bus.Com.Code § 27.01 and under common law fraud for the misrepresentations he allegedly made to Arthur Gochman.  (Amended

31

Complaint at 9). In addition, the Gochmans assert a claim against Starrett under the Texas Deceptive Trade Practices Act. Because all three causes of action fail for essentially the same reasons, they will be treated together.

Section 27.01(a) states that fraud in a real estate transaction consists of a:

"(1)  false representation of a past or existing material fact, when the false representation is

(a) made to a person for the purpose of inducing that person to enter into a contract; and

(b) relied on by that person in entering into that contract..."

The elements of a claim under Section 27.01 are essentially the same as those under common law fraud: (1) a material representation was made; (2) it was false when made; (3) the speaker knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion; (4) the speaker made it with the intent that it should be acted upon; and (5) the party acted in reliance and suffered injury as a result. Clardy Mfg. Co. v. Marine Midland Business Loans, 88 F.3d 347, 359 (5th Cir. 1996); Roberts v. United New Mexico Bank at Roswell, 14 F.3d 1076, 1078 (5th Cir. 1994); DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990) (citing Stone v.

32

<u>Lawyers Title Ins. Corp.</u>, 554 S.W.2d 183, 185 (Tex. 1977).  The
elements of a DTPA claim are: (1) the plaintiff is a consumer;
(2) the defendant engaged in false, misleading, or deceptive
acts; and (3) these acts constituted a producing cause of the
consumer's damages.  <u>Doe v. Boys Club of Greater Dallas</u>, 907
S.W.2d 472, 478 (Tex. 1995) (citing Tex.Bus.Com.Code §
17.50(a)(1).  Because the Court has determined that no evidence
as to damages exists in the record, *supra*, all three causes of
action must fail.

Without evidence of harm the Gochmans cannot maintain an
action for common law or statutory fraud.  <u>See</u> <u>Frey v. Martin</u>,
469 S.W.2d 316, 317 (Tex.Civ.App.--Dallas 1971)(dismissal of
fraud claim for lack of evidence on loss).  For the same reason,
the claim under the DTPA must fail, because the act requires that
a deceptive act or practice be "a producing cause of . . .
<u>damages</u>", Tex. Bus. & Comm. Code Ann § 17.50 (emphasis supplied).
*See also* <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 702 (5th Cir.
1999) (DTPA claim requires proof of actual damages).

For the foregoing reasons, the Court grants the defendants'
motions for summary judgment as to these claims.

33

## VIII.  OAKLEYS' LIS PENDENS COUNTERCLAIMS

The court now turns to the claims revolving around the
Notices of Lis Pendens filed in Nueces County.  The Oakleys move
for summary judgment on their request for a declaration that the
notices are illegal, null, and void; they also request an order
directing the Gochmans to execute and deliver to the Oakleys an
instrument canceling the notices.  (Defendant and Counter-
Plaintiffs, Ken and Andrea Oakley's Motion for Summary Judgment
at 13-14).  In addition, the Oakleys have moved for summary
judgment on their claim for damages under Section 12.003 of the
Texas Civil Practices and Remedies Code.  (See Defendant and
Counter-Plaintiffs, Ken and Andrea Oakley's, Motion for Summary
Judgment at 14).  The Gochmans have opposed these motions and
have asserted their own motions for summary judgment on the
claims stated above, as well as the claims for negligence, gross
negligence, intentional infliction of emotional distress, and
conspiracy.  (Gochmans' Motion).

### A. Fraudulent Court Documents Claim

The Oakleys assert a claim under Chapter 12 of the Texas
Civil Practices and Remedies Code, titled "Liability Related to a
Fraudulent Court Record or a Fraudulent Lien or Claim Filed
Against Real or Personal Property."  Tex. Civ. Prac. & Rem. Code

34

§§ 12.001 *et seq.*  The statute provides a private cause of action "in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property." Tex. Civ. Prac. & Rem. Code § 12.003(8).  The statute allows a person to recover the greater of $10,000.00 or the actual damages caused by a violation of the statute, as well as costs, attorney's fees, and exemplary damages.  Tex. Civ. Prac. & Rem. Code § 12.002(b)(1).

The statute was adopted to address fraudulent judgment liens issued by so-called "common law courts" and fraudulent documents purporting to create liens or claims on personal and real property that have been filed with court clerks and the secretary of state in Texas.  *See* Tex. Atty. Gen. Op. LO 98-016, 1998 WL 122060 (Tex.A.G.).  No reported decision has yet been published regarding any private suit under the statute.

Under the statute, the Oakleys must demonstrate that the Gochmans made, presented, or used the Notices of Lis Pendens (1) with knowledge that they were fraudulent court records or fraudulent liens or claims against real or personal property or an interest in real or personal property; (2) with the intention that the notices be given the same legal effect as a court record or document, of a court created by or established under the

35

constitution or laws of Texas or the United States or any other
entity listed in Section 37.01 of the Texas Penal Code, that
evidences a valid lien or claim against real or personal property
or an interest in real or personal property; and (3) with the
intention to cause the Oakleys physical injury, financial injury,
or mental anguish or emotional distress. Tex. Civ. Prac. & Rem.
Code § 12.002(a). Chapter 12 does not define the term
"fraudulent", but in the section allowing a plaintiff to recover
his or her costs upon a finding that the defendant knew a
document to be "fraudulent", the statute refers to Section
51.901(c) of the Texas Government Code. Tex. Civ. Prac. & Rem.
Code Ann. § 12.006; Tex. Gov't Code Ann. § 51.901(c)(2).

Although the parties advance various arguments in favor of
their respective positions in this dispute, the court must deny
the Oakleys' summary judgment motion because, as a matter of law,
the notices of lis pendens do not fall within the purview of
Chapter 12 of the Property Code.

Given the plain wording of Chapter 12 of the Civil Practices
and Remedies Code, and given its impetus, it is clear that the
statute addresses those cases where a person falsely asserts,
explicitly or implicitly, that some legitimate governmental
entity has resolved that the person has a claim against or

36

interest in property, or that the person has a contractual or constructive interest in property.  The notices of lis pendens by their nature and on their face do not assert any such claim.

"[L]is pendens is specifically authorized by statute." Prappas v. Meyerland Com. Imp. Ass'n, 795 S.W.2d 794, 797 (Tex. App. -- Houston [14th Dist.] 1990, writ denied); see also Tex. Prop. Code Ann. § 12.007.  The purpose of a notice of lis pendens is to put those interested in a particular tract of land on inquiry as to the facts and issues involved in the suit or action concerned.  Kropp v. Prather, 526 S.W.2d 283, 287 (Tex. Civ. App. -- Tyler, writ ref'd, n.r.e.).  Texas law allows a party to file a lis pendens notice during the pendency of a proceeding in eminent domain or an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property.  Tex. Prop. Code Ann. § 12.007(a).  The legal effect of a recorded lis pendens "is notice to the world of its contents."  Tex. Prop. Code Ann. § 13.004. The Property Code allows any litigant to draft and file a notice of lis pendens.  See Tex. Prop. Code Ann. § 12.007(b).  It does not require the imprimatur of a court or other entity enumerated in Section 37.01 of the Texas Penal Code.  See Werneke v. Seabury, 720 S.W.2d 886, 887 (Tex. App. -- Fort Worth 1986, no

37

writ) ("Lis pendens is a signed statement by an attorney stating the particulars of the underlying cause of action.  The court is not involved in either the filing or the issuance of the notice of lis pendens. In fact, the county clerk with whom the notice is filed, must file the notice of lis pendens without further inquiry.")  The purpose of a lis pendens is not, therefore, to evidence a valid lien or claim, but to provide notice of a *dispute* over a claim, lien or interest.

In support of their motion, the Oakleys present, in addition to copies of the notices, a series of letters from their attorney to the attorney for the Gochmans, and a release signed by the Oakleys in favor of the Gochmans.  (Exhibits 16-19 to Defendant and Counter-Plaintiffs, Ken and Andrea Oakley's, Motion for Summary Judgment).  The Oakleys also present an affidavit by Ken Oakley that the Gochmans never have had any proprietary interest or encumbrance on the Oakleys' property.  (Id., Exhibit 20).  The letters to the Gochmans' attorney merely set out the Oakleys' position that the notices of lis pendens are improper, interfere with the Oakleys' efforts to finance the construction of their home, and discuss the Oakleys' responses to and reasons for executing the release demanded by the Gochmans.  (Id., Exhibit 17).  These documents simply do not represent evidence

38

that the Gochmans intended that the notices be given the same
legal effect as a record issued by any legitimate governmental
entity listed in Section 37.01 of the Texas Penal Code.

The court also finds that the Oakleys have not shown that
the notices were "fraudulent" within the meaning of the statute
under which they sued the Gochmans.  The notices do not purport
to evidence an equitable, constructive, or other lien imposed by
a court of competent jurisdiction, nor do the Gochmans' notices
state on their face that any such lien exists.  The notices
merely state that a lawsuit was filed and is pending, and that
the action "is a suit for damages, a suit to remove structures
built in violation of the Dune Protection Law of the State of
Texas, and a suit for mandamus to enforce the Dune Protection
Laws of the State of Texas against the real property situated in
Nueces County, Texas, and described as . . . Lots 35, Beachwalk
II Addition to the City of Port Aransas, Nueces County, Texas."
(Defendant and Counter-Plaintiffs, Ken and Andrea Oakley's,
Motion for Summary Judgment, Exhibits 16 and 19).  The Oakleys
have not provided any evidence (nor have they argued) that these
statements were untrue at the time of filing.  In addition, the
notices refer to the suit by the court and cause number, allowing
any person to look into the pleadings and determine whether the

39

Gochmans in fact asserted a claim against or interest in the property.  (*Id.*).

Finally, the notices do not purport to evidence a lien or assert a claim created by implied or express consent of the Oakleys.  The notices, though they may have been improper, are not presumably fraudulent under § 51.901(c)(2) of the Texas Government Code.  The statements in the notices, in fact, are accurate statements regarding the pendency of the Gochmans' lawsuit.

For the foregoing reasons, the court finds that the Oakleys are not entitled to summary judgment on their claim for damages under Chapter 12 of the Texas Civil Practices and Remedies Code, and decides that as a matter of law, the claim cannot be sustained.  The court therefore grants the Gochmans' motion for summary judgment as to the claim for relief under Chapter 12 of the Texas Civil Practices and Remedies Code.

### B. Negligence, Gross Negligence, Intentional Infliction of Emotional Distress, And Conspiracy

The Gochmans argue that the filing of a notice of lis pendens during the pendency of a lawsuit is absolutely privileged.  (Gochmans' Motion, at 1; Unopposed Motion to Submit Supporting Authorities in Support of Plaintiffs' Motion for

40

Summary Judgment on the Counterclaim of Defendants Ken Oakley and Andrea Oakley at 3-6).  The Oakleys contend that Chapter 12 of the Civil Practices and Remedies Code, which was adopted after the cited cases, removes the privilege traditionally accorded to notices of lis pendens.  (Counter-Plaintiffs, Ken and Andrea Oakleys' Response to, Plaintiffs' Motion for Summary Judgment at 10).

The filing of a notice of lis pendens is viewed by Texas courts as constituting part of a judicial proceeding.  Kropp v. Prather, 526 S.W.2d 283, 287 (Tex. Civ. App. – Tyler 1975, writ ref'd n.r.e)  "Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot form the basis for a cause of action in libel or slander."  Kropp, 526 S.W.2d at 286; see Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909, 912 (1942).  The privilege applies even when a notice of lis pendens does not fall within the one of the three "pigeonholes" of § 12.007 of the Texas Property Code.  Prappas v. Meyerland Com. Imp. Ass'n, 795 S.W.2d at 796-797.  Even if the person filing the notice acts with malice, "it is in the nature of an absolute privilege that malice is immaterial."  Prappas, 795 S.W.2d at 799; see also Reagan v. Guardian Life Ins. Co., 166

41

S.W.2d at 912.  The court is unconvinced that Chapter 12 of the

Civil Practices and Remedies Code has the effect of negating the

traditional privilege accorded notices of lis pendens, because

such a notice simply does not appear to be the type of document

that falls within the purview of Chapter 12, for the reasons

cited above.

Moreover, the Court finds that the absolute privilege

precludes recovery in any tort action based on the filing of a

notice of lis pendens, at least where the notice was filed during

the pendency of an ongoing lawsuit.  The Texas Court of Appeals,

in Griffen v. Rowden, 702 S.W.2d 692 (Tex. App. Dallas 1986, writ

ref'd, n.r.e.), ruled that the absolute privilege for filing lis

pendens notices extends to claims for tortious interference with

a business relationship.  The court reasoned that prior cases

applying the privilege to slander of title did not limit the

privilege to that cause of action alone; rather, the basis in

public policy of allowing parties to freely and openly litigate

their claims required that the privilege be applied beyond

actions for libel, slander, or slander of title.  Id. at 695; see

also Prappas, supra (holding that privilege applied to claim of

tortious interference with a contract even where the lis pendens

filing did not comply with § 12.007 of the Property Code); see

42

*also* <u>Laub v. Pesikoff</u>, 979 S.W.2d 686 (Tex. App. -- Houston [1ˢᵗ

Dist.] 1998, writ denied) (holding that privilege for

communications made in course of litigation applied to claims

for, *inter alia*, intentional infliction of emotional distress,

negligence, and civil conspiracy).  Extending this reasoning to

its logical conclusion, any action for tort based on an allegedly

improper filing of a notice of lis pendens during the pendency of

a lawsuit is disallowed by the absolute privilege.

For the foregoing reasons, the court grants the Gochmans'

motion for summary judgment as to the Oakleys' claims for

negligence, gross negligence, intentional infliction of emotional

distress, and conspiracy.

**C. Declaratory Judgment**

The Oakleys also have pursued a claim under the Texas

Declaratory Judgments Act regarding the notices of lis pendens.

Tex. Civ. Prac. & Rem. §§ 37.001 *et seq.*  They have requested a

number of declarations with respect to the notices, (Amended

Counterclaim at 7); in their motion for summary judgment,

however, the Oakleys seek only a declaration that the notices of

lis pendens are "as a matter of law, illegal; that such Notices

be immediately canceled and considered null, void and of no

further force and effect; and further, that [the Gochmans] be

43

ordered to execute and deliver to the Oakleys an appropriate instrument canceling and voiding said Notices of Lis Pendens." (Defendant and Counter-Plaintiffs, Ken and Andrea Oakley's Motion for Summary Judgment at 13-14).

The Gochmans, in turn, have sought summary judgment as to these claims, arguing that "[t]here is no cause of action in Texas for declaratory judgment asserted by counterclaim which, essentially, only joins issue on the main cause of action to which it is a counterclaim." (Gochmans' Motion, at 2). The Court need not reach this issue as to the notices of lis pendens, however, because the Texas Property Code allows a Court, upon motion, to cancel a notice of lis pendens. Tex. Prop. Code Ann. § 12.008. The Oakleys did not request cancellation in their counterclaim, but they did request that the notices "be immediately canceled and considered null, void and of no further force and effect." (Amended Counterclaim at 13). The Court will construe the summary judgment motion as a motion for cancellation under Section 12.008 of the Texas Property Code. Because the Court finds that the notices were improper, the Court will cancel them. Also, because they were improper, the Court need not require a bond or other security specified in Section 12.008 as a condition for cancellation. Lane v. Fritz, 404 S.W.2d 110 (Tex.

44

Civ. App. – Corpus Christi 1966, no writ); *see also* <u>Prappas</u>, 795 S.W.2d at 796.

At the outset, there is no question that this is not a proceeding in eminent domain, nor does this suit involve title to the Oakleys' property. *See* Tex. Prop. Code § 12.007(a). The court must therefore determine whether this litigation involves the establishment of an interest in or enforcement of an encumbrance against the Oakleys' real property. See Tex.Prop.Code §§ 12.007(a). Where only collateral questions are involved which might ultimately affect the interest of the parties to property, the doctrine of lis pendens does not apply. <u>Khraish</u>, 762 S.W.2d at 909; <u>Lane v. Fritz</u>, 404 S.W.2d 110, 111-12 (Tex.Civ.App.-- Corpus Christi 1966, no writ). For example, suits for money damages only are not appropriate vehicles for lis pendens. <u>Garza v. Pope</u>, 949 S.W.2d 7, 9 (Tex. App. – San Antonio 1997, no writ). Where the interest asserted is meant only to satisfy a potential judgment for damages that one party might recover, a notice of lis pendens is improper and should be canceled. *See* <u>Moss v. Tennant</u>, 722 S.W.2d 762 (Tex. App. – Houston [14th Dist.] 1986, orig. proceeding) (constructive trust sought to be imposed on property allegedly purchased with moneys obtained by fraud not proper basis for lis pendens).

The Gochmans' suit seeks, as against the Oakleys, injunctive relief requiring the Oakleys to refrain from causing further damage to sand dunes upon the Oakley's property; to remove and relocate their house; and to restore a sand dune "to its condition prior to the construction of the Oakley home." (Plaintiffs' First Amended Complaint at 13). The Gochmans also seek damages from the Oakleys under 42 U.S.C. § 1983 and for violating the Texas Dune Protection Act. (Id., at 6-7).

The Gochmans do not seek any direct interest or lien on the Oakleys' property; they want only to limit the Oakleys' use of the Oakleys' own property. The Texas case of Olbrich v. Touchy, 780 S.W.2d 6 (Tex. App. – Houston [14th Dist.] 1989, no writ) is instructive, both on the issue of encumbrance as well as on the issue of interest in property. In Olbrich, neighbors of property owners sued to invalidate the owners' subdivision plat filings, which they claimed violated pertinent city ordinances. After bringing suit, the neighbors filed a notice of lis pendens against the property. In an action for mandamus to compel the trial court to cancel the notice, the Court of Appeals determined that the neighbors' claims neither amounted to a claim of interest in the owners' property, nor did a possible violation of ordinances and statutes prohibiting the subdivision of property

46

constitute an encumbrance on the property.  <u>Olbrich</u>, 280 S.W.2d

at 7.  The court stated, "We are unwilling to expand the meaning

of 'interest' within the lis pendens statute to the broad

dimensions requested by [the neighbors].  The wording of the

property code section 12.007(a) suggests that an interest in

property is less than title, but nothing in the statute indicates

that an interest extends so far as to encompass a mere third-

party concern about the property."  <u>Id.</u>  The court then noted

that statute violations do not constitute an encumbrance, even

though they may impair the use or transfer of property.  The

court state that the purpose of the notice of lis pendens "is to

put those interested in a particular tract of land on inquiry as

to the facts and issues involved in the suit. . . . Statutory

restrictions on the subdivision and transfer of property

sufficiently alert prospective offenders or property purchasers

to these violations, making the lis pendens notice superfluous."

<u>Id.</u>

　　　　Likewise, the Gochmans do not assert any claim for which

"notice to the world" is necessary.  To the extent that the Dune

Protection Act limits the use of the Oakleys' property, the Act

itself is sufficient notice.  There was no need to file the

notices to preserve any potential right or benefit to the

Gochmans as against transferees of the property.  The Gochmans
have not offered any argument, nor have they stated any facts in
their motions or responses to the Oakleys' motions, to show why
the notices of lis pendens may have been legitimate.  In fact,
the Gochmans have not even stated affirmatively that the notices
are legitimate.  The Court finds that the notices are improper
and, accordingly, the Court cancels the Gochmans' notices of lis
pendens.

Briefly, the court addresses the Oakleys' request that the
Gochmans be ordered to execute a release of the notices of lis
pendens.  An order canceling the notices will remove the cloud on
the Oakleys' title; an injunction directing the Gochmans to
execute a release of the notices is not necessary.  *See* RIO
Systems, Inc. v. Union Carbide Corporation, 780 S.W.2d 489, 493
(Tex. App. – Corpus Christi 1989, writ denied) (order canceling
notice of lis pendens removes cloud on title, but is not
injunctive in that it "neither compels anyone to do nor prohibits
anyone from doing anything.")

### D. The Oakleys' Remaining Declaratory Judgment Claims

The Oakleys also request in their counterclaim declaratory
judgment that the release executed by the Oakleys in favor of the
Gochmans is null, void, and of no force and effect; that the

48

Oakleys have not violated any material provision of the Texas
Dune Protection Act or the Coastal Management Plan; that in
connection with the construction of their new home, the Oakleys
substantially complied with all material provisions of the Texas
Dune Protection Act and Coastal Management Plan; and that the
Gochmans' suit is frivolous, groundless, brought in bad faith and
for purposes of harassment.  (Amended Counterclaim at 7).  The
Gochmans, in their motion for summary judgment, refer only to the
claim for declaratory relief as to the notices of lis pendens,
and that only by reference to a paragraph number in the Oakleys'
counterclaim.  (Gochmans' Motion, at 2).  In their brief in
support of their motion, the Gochmans appear to oppose all the
declaratory relief requested by the Oakleys, which extends beyond
the lis pendens notices, but that reference is somewhat oblique.
(Unopposed Motion to Submit Supporting Authorities in Support of
Plaintiffs' Motion for Summary Judgment on the Counterclaim of
Defendants Ken Oakley and Andrea Oakley at 2; *see also* Amended
Counterclaim at 7). "It is the litigant's role to present their
case to the court, not vice versa." Carpenter v. Vaughn, 888
F.Supp. 635, 648 (M.D.Pa. 1994); *see generally* Fed.R.Civ.P.
7(b)(1) (requiring that parties submit motions which "state with
particularity the grounds therefor") *see also* United States v.

49

<u>Dunkel</u>, 927 F.2d 955, 956 (7th Cir.1991) (judges need not hunt for issues or arguments "buried in briefs."). Accordingly, the court concludes that the Gochmans have not made a proper motion for summary judgment on these claims because the motion does not clearly state that they are a subject of the motion.

It is well settled, however, that the Court may dismiss a complaint on its own initiative for failure to state a claim where the inadequacy of the claim is apparent as a matter of law. <u>Guthrie v. Tifco Indus.</u>, 941 F.2d 374, 379 (5th Cir. 1991), <u>cert. denied</u>, 503 U.S. 908, 112 S. Ct. 1267 (1992); <u>Shawnee Int'l N.V. v. Hondo Drilling Co.</u>, 742 F.2d 234, 236 (5th Cir. 1984). Because the court concludes, as a matter of law, that all but one of the Oakleys' claims fail to state claims upon which relief may be granted, the court will dismiss those claims sua sponte.

Where a counterclaim for declaratory judgment merely restates defenses to issues already raised in the direct action brought by a litigant, the counterclaim is inappropriate. *See* <u>Heritage Life v. Heritage Group Holding</u>, 751 S.W.2d 229 (Tex. App. -- Dallas 1988, writ denied). A counterclaim for declaratory relief which in substance raises defenses to the plaintiff's claims is not viewed as a true declaratory judgment action. <u>Morgan v. Deere Credit, Inc.</u>, 889 S.W.2d 360 (Tex. App.

50

- Houston [14th Dist.] 1994, no writ).  In <u>Newman Oil v. Alkek</u>, 614 S.W2d 653, 655 (Tex. App. -- Corpus Christi 1981, writ ref'd n.r.e.), the plaintiffs sued defendants for fraudulent representations, breach of contract and violations of the Deceptive Trade Practices-Consumer Protection Act (the "DTPA"). The defendants filed a counterclaim for declaratory relief and moved for summary judgment on the basis that they had not committed fraud, engaged in common law tort or deceptive trade practices, breached any contracts with the plaintiffs and were not liable under the DTPA.  <u>Id.</u> at 654-655.  Even though the counterclaim was framed in the form of a request for declaratory relief, the court of appeals held that the allegations were not averments of fact upon which relief could be granted, but were merely denials of the plaintiffs' causes of action.  <u>Id.</u> at 655.

     With the exception of the claim that the Oakleys' release is void, all of the declaratory judgment claims addressed here are simply refutations of the Gochmans' main causes of action.  The Oakleys pray for judgment declaring that they "have not . . . violated any material provision of the Texas Dune Protection Act or the Coastal Management Plan" and that their construction "substantially complied with all material provisions of the Texas Dune Protection Act and Coastal Management Plan."  (Amended

51

Counterclaim at 7).  These merely gainsay the allegations in the Gochmans' first amended complaint: "In February 1999, Oakley . . . began construction . . . contrary to the [Texas Dune Protection Act]." (Plaintiffs' First Amended Complaint at 5).  For that reason, they are not proper subjects of a declaratory judgments action.  For similar reasons, the Oakleys' claim for a declaration that the Gochmans' suit is groundless, frivolous, etc., is not a proper basis for a declaratory judgment claim, as they do not advance any affirmative statements of fact that would not simply deny liability in the suit brought by the Gochmans.

This leaves the claim for a declaration that the release executed by the Oakleys in favor of the Gochmans is null, void, and of no effect.  The Gochmans' suit does not raise any claim concerning a release.  The court is of the opinion that the claim is not simply a refutation or defense to any of the Gochmans' causes of action, and that the claim remains for trial. The court dismisses, however, the other claims for relief under the Uniform Declaratory Judgments Act regarding the Oakleys' compliance with the Dune Protection Act.

Given the foregoing, the only claims remaining from the Oakleys' counterclaim are the action for a declaration that the

release is null and void.  Because neither party moved for
summary judgment on this issue, it must proceed to trial.

## IX.  CONCLUSION

For the foregoing reasons, the Court GRANTS Starrett's
Motion for Summary Judgment, GRANTS the City's Motion for Summary
Judgment, and GRANTS Urban's Motion for Summary Judgment.  The
Court GRANTS in part and DENIES in part the Oakleys' Motion for
Summary Judgment.  The Court DENIES in part and GRANTS in part
the Gochmans' Motion for Summary Judgment on Oakley's
Counterclaims.  The only remaining cause of action is Oakleys'
claim for declaratory relief as to the release they executed in
favor of the Gochmans, regarding the first notice of lis pendens.

ENTERED on this the _31st_ day of August, 2000.

JANIS GRAHAM JACK
UNITED STATES DISTRICT JUDGE

53