United States District Court
Southern District of Texas
ENTERED

SEP 0 6 2000

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN, and | § | |
| MOLLY GOCHMAN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| V. | § | CIVIL ACTION NO. C-00-126 |
| | § | |
| | § | |
| STANLEY STARRETT, JR. | § | |
| KEN OAKLEY, URBAN ENGINEERING, | § | |
| A PARTNERSHIP, THE PERALLA | § | |
| CORPORATION, URBAN CONSULTING | § | |
| ENGINEERS, INC., JAMES URBAN, | § | |
| and THE CITY OF PORT ARANSAS, | § | |
| TEXAS | § | |
| | § | |
| Defendants. | § | |

## AMENDED ORDER

On August 31, 2000, this Court entered an order ruling on
the parties' respective motions for summary judgment.  The Court
substitutes this order in its place.  This amended order does not
modify any relief set forth in the prior order, but it
incorporates the Court's ruling from the bench on the parties'
claims for attorney fees, cancels certain notices of lis pendens,
and disposes of one claim that Plaintiffs voluntarily dismissed

during a hearing on September 1, 2000.   This order also seeks to clarify the Court's prior ruling.

The Court has considered Defendants Ken and Andrea Oakley's Motion for Summary Judgment ("Oakley's Motion"), Defendant Stanley Starrett's Motion for Summary Judgment ("Starrett's Motion"), Defendant City of Port Aransas' Motion for Summary Judgment ("City's Motion"), Defendants Urban Engineering's, the Peralla Corporation's and Urban Consulting Engineers' Motion for Summary Judgment ("Urban's Motion"), and Plaintiffs' Motion for Summary Judgment on Defendant Oakley's Counterclaims ("Gochmans' Motion").   For the reasons stated herein, and except as to any requests for attorney fees, the Court GRANTS Starrett's Motion for Summary Judgment, GRANTS the City's Motion for Summary Judgment, and GRANTS Urban's Motion for Summary Judgment; the Court GRANTS in part and DENIES in part the Oakleys' Motion for Summary Judgment, and the Court DENIES in part and GRANTS in part the Gochmans' Motion for Summary Judgment on Oakley's Counterclaims.   All parties' claims for attorney fees and costs are DENIED.   The Court DISMISSES the Oakleys' declaratory judgment claim regarding a release they executed in favor of the

2

Gochmans.  Certain notices of lis pendens, described in greater detail below, are CANCELED.

## I.   JURISDICTION

Defendants removed this action pursuant to 28 U.S.C. § 1441(a).  This Court has jurisdiction under 28 U.S.C. § 1331, because the action presents a federal question under 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Stanley Starrett ("Starrett"), a developer, purchased a tract of unimproved raw land on Mustang Island, a barrier island adjacent to the Gulf of Mexico in the City of Port Aransas, Nueces County, Texas ("City") in 1996. (Exhibit 14 of Oakley's Motion at 21.)  Subsequently, Starrett developed the property as a residential subdivision named Beachwalk Unit I ("Beachwalk I"). (City's Motion at 2.)  After securing the necessary permits for development from the City on February 20, 1997,  Starrett filed a residential plat for Beachwalk I on March 7, 1997 in Nueces County, Texas. (Oakley Motion at 1.)

3

Defendant Urban Engineering provided engineering services for the development of Beachwalk I, including assisting in the preparation of the permit applications submitted to the City. (Urban Motion at 2.)  Urban Engineering had previously authored the City of Port Aransas' Coastal Management Plan in 1995. (Response to Starret Motion at 2.)

As part of the development, Starrett conveyed to the City a narrow strip of property running between the beach and the entire length of Beachwalk I, known as Lot 67. (City's Motion at 3.) This lot is the only parcel of Beachwalk I that abuts the gulf shore. (City's Motion at 3.)

On May 30, 1997, Starrett conveyed, out of Beachwalk I, Lot 24 to Plaintiff Molly Gochman and Lots 25 & 26 to her father Plaintiff Arthur Gochman.[1] (Oakley's Response at 1.)  Molly Gochman subsequently constructed a home on Lot 24. (Urban Motion at 2.)  Lots 25 & 26 remain unimproved. (Oakley's Response at 1.)

All three lots are landward of a dune protection line established, pursuant to the Dune Protection Act, Tex. Nat. Res.

---

[1] Lots 24, 25 and 26 are contiguous, running north to south, parallel to the Gulf, with Lot 24 the northernmost lot.

4

Code Ann. §§ 63.011-63.152 (the "Dune Protection Act"), by an

Order of the Commissioner's Court of Nueces County on July 14,

1993. (Exhibit R of City's Motion at 2.)   The dune protection

line runs generally north and south along the Gulf of Mexico.

Further, all three lots are separated from the Gulf by Lot 67.

Arthur Gochman alleges that during his discussions leading

to the purchases, Starrett told him "unequivocally" that no

adjacent lot owner could ever build closer to the beach than the

dunes on Lot 24 because of the existence of the critical dune

line on Beachwalk I. (Exhibit H of Response to Starrett Motion at

2.)   Starrett allegedly represented to Arthur Gochman that the

line of critical dunes existing between Lot 24 and the water was

the furthest seaward allowed for the building of homes. (Response

to Starrett Motion at 12.)   Finally, Starrett allegedly told

Arthur Gochman that if Starrett bought the property to the North

of Beachwalk I and developed it, any such development project

would have no relation to Beachwalk I either in location or

development. (Id.)   Arthur Gochman claims to have been acting as

agent for his daughter throughout these conversations.   (Exhibit

H of Response to Starrett Motion at 4.)

During and after the development of Beachwalk I, Starrett purchased and developed a tract of land north and adjacent to Beachwalk I, called Beachwalk Unit II ("Beachwalk II"). (Exhibit 14 of Oakley's Motion at 34-35.)  As Beachwalk I, Beachwalk II abuts the Gulf of Mexico and is located in the City of Port Aransas. (City's Motion at 3.)

Starrett filed two applications for dune permits for Beachwalk II with the City of Port Aransas.[2] (City's Motion at 3-6.)  The first dune permit, No. 97-008, related to roadways and utilities on Beachwalk II ("Road Permit"), and the second dune permit, No. 97-010, dealt with residential construction on Beachwalk Unit II, including construction on Lot 35 ("Oakley Permit").  The latter permit lies at the heart of this dispute.

On November 18, 1997, Starrett filed with the City of Port Aransas an application for the Oakley Permit, which stated in part:

---

[2] A dune permit is "the document issued by a local government to authorize construction or other regulated activities in a specified location seaward of a dune protection line or within a critical dune area, as provided in the Texas Natural Resources Code, §63.051." (City of Port Aransas Coastal Management Plan at 4.)

6

> "Finally, lot 34 and 35 will impact the landward edges
> of a critical dune complex....These areas are landward
> of the ridge dunes and are out of the erosion zone, so
> construction should not affect the natural flood or
> storm surge protection of the property. This
> construction will impact 348 cubic yards of critical
> dune volume and vegetation which will be mitigated for
> in Mitigation Site #3."

(Exhibit E of City's Motion at 5-6.)  The permit application

contemplated replacing, cubic foot for cubic foot, dune volume

and vegetation removed from critical dunes invaded during the

construction.  The volume and vegetation would be relocated to

low areas adjacent to critical dune complexes; this relocation

was intended to improve existing structure and strengthen the

overall dune system.  (Id.)  Defendant James Urban, an employee

and an officer of Urban Engineering, assisted Starrett with the

preparation of the Oakley Permit. (Exhibit 14 of Oakley's Motion

at 26.)  The Gochmans allege James Urban acted as the City

Engineer while assisting Starrett with the Oakley Permit, thereby

creating a conflict of interest. (Response to Urban Motion at 5.)

On November 24, 1997, at a regular meeting of the Planning

and Zoning Commission of the City of Port Aransas (the

"Commission"), approval of the Oakley Permit was recommended.

(Exhibit F of City's Motion.)  On December 18, 1997, the Port

7

Aransas City Council voted to issue the Oakley Permit during a regular meeting. (Exhibit L of City's Motion; *see also* Transcript of Meeting at Exhibit D of Urban Motion.)  The permit application stated that construction on Lot 35 would impact 348 cubic yards of critical dune volume and vegetation. (Exhibit E of City's Motion at 6.)  The permit included a mitigation plan for this impact. (Id.)  The City determined that the mitigation plan would adequately minimize and mitigate any unavoidable adverse effects on the dunes. (Exhibit E of City's Motion at 2.)  Starrett filed the plats for Beachwalk II with Nueces County on June 3, 1998. (Oakley's Motion at 1.)

On July 10, 1998, Defendant Ken Oakley purchased Lot 35 in Beachwalk II from Starrett. (City's Motion at 6.)  The Oakley lot is adjacent to and due north of Molly Gochman's Lot 24. Subsequently, Oakley entered into a home construction contract on Lot 35. (Id.)  Construction of the proposed home would impact the dunes on Lot 35 by the burying of the dunes with fill in order to raise the existing ground elevations of Lot 35 and to provide drainage to the street. (Exhibit E of City's Motion at 5.)

Concerned with both the potential impact to the dunes and the obstruction of the view north from Lot 24, the Gochmans wrote several unsuccessful letters of complaint to various state and local agencies. (City's Motion at 6-7.)  The Gochmans then filed two state court actions against the various Defendants; these actions eventually were consolidated.  After the Gochmans included a federal cause of action in their suit, the Defendants timely removed the consolidated action to federal court.

The Gochmans allege the City improperly issued the Oakley Permit without proper notice to them as "littoral owners" and without a public hearing, in violation of the Dune Protection Act and the United States and Texas constitutions.  (Response to City Motion at 4-5.)  The Gochmans complain that damage to the dunes increased the risk of erosion and flood damage to the area. (Response to Urban Motion at 16.)  Arthur Gochman alleges that the Oakley Permit caused a depreciation in the value of Molly Gochman's home on Lot 24 because the adjacent Oakley home blocks the northern view of the Gulf. (Exhibit H of Response to Starrett's Motion at 5.)  There is no allegation of damages to Lots 25 & 26.

9

The Gochmans assert a federal cause of action against all Defendants under 42 U.S.C. § 1983, alleging the City and the non-state actors conspired to deprive Arthur and Molly Gochman of their federal and state constitutional rights to due process and equal protection.  The Gochmans also asserts several state law causes of action: 1) a direct action under the Dune Protection Act against all Defendants, 2) statutory and common law fraud and deceptive trade practices claims against Starrett, 3) application for injunctive relief against the Oakleys; and 4) mandamus and injunctive relief claims against the City of Port Aransas.

In response, Ken Oakley and his wife, Andrea Oakley, (the "Oakleys") assert state law counterclaims against the Gochmans related to an improper filing of a Notice of Lis Pendens on the Oakley home. (Oakley's Response to Gochman Motion at 2.)  The Oakleys allege that immediately prior to the closing on certain construction loans, the Gochmans filed a Notice of Lis Pendens during the pendency of this action in state court. (Oakley Motion at 11-12.)  In order to remove the offending Notice of Lis Pendens, the Oakleys allege they were forced to execute an agreement releasing the Gochmans of all liability arising from

10

the filing of past or future Notices of Lis Pendens. (Oakley
Motion at 12.)  Some months after the execution of this release,
on February 1, 2000, the Gochmans once again filed a Notice of
Lis Pendens on the Oakley home. (Oakley Response to Gochman
Motion at 3.)

The Oakleys assert the Gochmans violated Section 12.001 of
the Texas Civil Practices and Remedies Code by filing the Notice
of Lis Pendens. The Oakleys also assert claims of negligence,
gross negligence, and intentional infliction of emotional
distress against the Gochmans.  Finally, the Oakleys seek
declaratory judgment that 1) the Notices of Lis Pendens
constitutes slander, 2) the Notices of Lis Pendens are null and
void, 3) the Release signed by the Oakleys is null and void, 4)
the Oakleys did not violate the Dune Protection Act, and 5) the
Gochmans' suit is frivolous and in bad faith.


III. **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if "the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to

11

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).

If a nonmovant bears the burden of proving its claims or defenses, the party moving for summary judgment may discharge its burden by pointing out that there is an absence of evidence to support the nonmovant's case. Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986); Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but

12

must set forth specific facts showing the existence of a genuine issue for trial. <u>Celotex Corp.</u>, 47 U.S. at 322-23, 106 S.Ct. at 2552-53; <u>Anderson</u>, 477 U.S. at 257, 106 S.Ct. at 2514-15. The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. <u>Palmer v. BRG of Ga., Inc.</u>, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402. n. 5 (1990); <u>Anderson</u>, 477 U.S. at 255, 106 S.Ct. at 2513-4; <u>Judwin Properties, Inc. v. United States Fire Ins. Co.</u>, 973 F.2d 432, 435 (5th Cir. 1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323, 106 S.Ct. at 2552.

## IV.   <u>42 U.S.C. § 1983</u>

The Gochmans allege all Defendants conspired to deny them their federal and state constitutional rights of due process and equal protection when the City issued the Oakley permit without

13

affording notice to the Gochmans and a public hearing. (Response
to City's Motion at 14.)  The Gochmans claim Starrett secured the
Oakley Permit in concert with Urban, who acted as Starrett's
engineer while simultaneously serving as the City's engineer.
(Id.)  Oakley proceeded to construct his house with this permit,
allegedly destroying critical sand dunes in the process.
(Response to Oakley Motion at 13-14.)  The Gochmans seek damages
and injunctive relief against the Defendants. (Amended Complaint
at 6.)

Section 1983 prohibits "persons" acting under the color of
law from depriving another of any "rights, privileges, and
immunities secured by the Constitution and laws." 42 U.S.C. §
1983. To state a claim under § 1983, a plaintiff must allege or
prove two elements: (1) that they were deprived of a right or
interest secured by the Constitution and laws of the United
States; and (2) that the deprivation occurred under color of
state law. West v. Adkins, 487 U.S. 42, 48, 108 S.Ct. 2250,
2254-55 (1988). The Gochmans claim they were deprived of their
rights under the Due Process and Equal Protection Clauses of the
U.S. Constitution, and they were also denied their rights under
the Texas Constitution. (Response to Oakley Motion at 6-7.)  The
Gochmans do not allege they were denied any rights under a

14

federal statute.  The deprivations allegedly occurred under color
of state law because the City and the non-state actors cooperated
in a conspiracy to deprive them of their rights.

Section 1983 claims are proper for summary judgment when
they involve only the interpretation and application of the
Constitution.  FM Properties v. City of Austin, 93 F.3d 167, 172
(5th Cir. 1996).  In the present case, summary judgment is
appropriate, and the Court addresses each aspect of the Gochmans'
§ 1983 claim.

### A. Due Process Clause of the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides
that "[n]o State shall ... deprive any person of life, liberty,
or property, without due process of law."  U.S. Const. amend.
XIV.  To state a cause of action under § 1983 for violation of
the Due Process Clause, a plaintiff must alleged (1) a recognized
"liberty or property" interest within the purview of the
Fourteenth Amendment, and (2) intentional or reckless deprivation
of that interest, even temporarily, under color of state law.
Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir.
1994)(en banc).  Here, the Gochmans allege a property interest.

The Due Process Clause must be evaluated in conjunction with
another fundamental principle of our democratic governance.  It

15

is well established law that once an action is characterized as
legislative, procedural due process requirements do not apply.
<u>Jackson Court Condominiums, Inc. v. City of New Orleans</u>, 874 F.2d
1070, 1074 (5th Cir. 1989)(citing <u>Bi-Metallic Investment Co. v.
State Board of Equalization</u>, 239 U.S. 441 (1915)).  When a State
extinguishes property interests through legislation, the
legislative determination provides all the process that is due.
<u>Logan v. Zimmerman Brush Company</u>, 455 U.S. 422 (1982).  Zoning
decisions made by elected bodies are legislative in nature, and
no procedural due process rights apply.  <u>County Line Joint
Venture v. City of Grand Prairie</u>, 839 F.2d 1142, 1145 (5th Cir.
1988).  This principle is applicable to both general zoning
decisions as well as decisions on particular permit applications.
<u>South Gwinnett Venture v. Pruitt</u>, 491 F.2d 5, 6 (5th Cir.
1974)(en banc).  *Pruitt* involved a due process claim under the
Fourteenth Amendment for the denial of a rezoning request. The
Fifth Circuit stated:

> "Local zoning is a quasi-legislative procedure, not
> subject to federal juridical consideration in the
> absence of arbitrary action. Moreover, we see no viable
> distinction between zoning board functions involved in
> the adoption of a comprehensive zoning plan and those
> exercised in the reclassification of a piece of
> property under an existing plan."

16

Pruitt, 491 F.2d at 6. See also Couf v. DeBlaker, 652 F.2d 585, 590 (5th Cir. 1981)(no constitutional limitation on procedure is relevant to the denial of a building permit).  No allegations are made that the decision to grant the Oakley Permit was arbitrary or capricious.

While the present case involves an environmental permit, not a zoning permit, the case law on zoning is analogous for several reasons.  First, the approval of an environmental permit involves the same exercise of legislative judgment about land use by the City Council as a zoning permit requires. See Higginbotham v. Barrett, 473 F.2d 745, 747 (5th Cir. 1973).  The City Council of the City of Port of Aransas voted to grant the Oakley Permit after deliberation based on the findings and investigation of the Zoning and Planning Commission. (Exhibits F-L of City's Motion.)

Second, zoning decisions encompass judgments about environmental impact in the same way environmental permits do. In *Couf*, the city council denied a building permit partially because of its impact on the city shoreline. The Fifth Circuit stated, "Certainly, the protection of the city shoreline was of critical importance to the City Commissioners.  Whether they chose the best way to regulate development is not for us to

17

decide, for that judgement was their prerogative." Couf v. DeBlaker, 652 F.2d 585 at 588.

For these reasons, the City Council's decision to grant the Oakley Permit was a quasi-legislative act, and the U.S. Constitution affords the Gochmans no further procedural rights beyond the legislative process.

The Gochmans also assert a substantive due process claim under the Fourteenth Amendment in addition to their procedural due process claim. (Response to City Motion at 8.) However, the same legislative model applies to substantive due process claims in the zoning context. Shelton v. City of College Station, 780 F.2d 475 (5th Cir. 1986)(en banc)(extending the *Pruitt* decision to substantive due process claims). *See also* FM Properties Operating Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir. 1996)(dismissal of substantive due process claim for city's denial of land development permit because of environmental concerns). As a matter of law, the Gochmans' substantive due process claim must fail.

**B. Equal Protection Clause of the Fourteenth Amendment**

The Gochmans do not allege that the Dune Protection Act is unconstitutional, vague, or ambiguous, but that in its application, the City violated the Equal Protection Clause of the

18

14th Amendment.  The Gochmans allege they were entitled to an

"impartial tribunal" to determine whether the Oakley Permit

should be granted. (Response to City's Motion at 10.)  Instead,

they claim, their equal protection rights were violated when

Urban appeared on both sides of the table by first assisting in

the preparation of the Oakley Permit application and then

advising the City on the merits of the application. (Id.)

   Application of a facially neutral law with discriminatory

intent may constitute a violation of the Equal Protection Clause.

See Bryan v. City of Madison, Mississippi, 213 F.3d 267 (5th Cir.

2000).  To state a cause of action under § 1983 for violation of

the Equal Protection Clause, a plaintiff must allege that (1) a

state actor (2) intentionally discriminated against the plaintiff

(3) on the basis of membership in a protected class.  Purisch v.

Tennessee Tech. Univ., 76 F.3d 1414, 1424 (6th Cir. 1996);

Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989) (en banc).

As a prerequisite to an equal protection claim, the plaintiff

must prove that similarly situated individuals were treated

differently from the plaintiff.  Bryan v. City of Madison,

Mississippi, 213 F.3d at 276.  In addition, the plaintiff must

show a discriminatory purpose, which implies that the decision

maker selected a course of action at least in part due to the

19

adverse impact it has on an identifiable group.  <u>Woods v.</u>
<u>Edwards</u>, 51 F.3d 577 (5th Cir. 1995).   A discriminatory intent
requires "more than intent as volition or intent as awareness of
consequences.  It implies that the decision maker . . . selected
or reaffirmed a particular course of action at least in part
'because of', not merely 'in spite of,' its adverse effects upon
an identifiable group."  <u>Bray v. Alexandria Women's Health</u>
<u>Clinic</u>, 113 S. Ct. 753, 760 (1993) (quoting <u>Personnel</u>
<u>Administrator of Mass. V. Feeney</u>, 99 S. Ct. 2282 (1979)).

     The Gochmans' First Amended Complaint does not allege a
valid equal protection claim.  They do not allege that any
defendant intentionally discriminated against them, nor do they
allege that they are members of a protected class.  The record is
devoid of any evidence of a discriminatory purpose or even any
discrimination against the Gochmans, intentional or not.

     The Gochmans do not allege that individuals situated
similarly to them were treated differently than they were, and it
is difficult conceptually to see how they could successfully
allege this.  They make a stab in their response to the City's
summary judgment motion by stating that the lack of partiality on
behalf of the city "treat[ed] Plaintiffs' rights as littoral
owners in the protection of the Critical Dune differently from

20

the way that individuals in Plaintiffs' position would have been treated had not the City Engineer appeared on behalf of the developer and totally compromised the process." But they do not allege, much less offer evidence, that other littoral owners in their position were treated differently, *see* <u>Bryan v. City of Madison</u>, 213 F. 3d at 276-277, rather, they simply state that if Urban had not assisted Starrett in preparing the Dune Permit applications, and if Urban was acting as City Engineer, "it must be presumed that someone of [Urban's] authority and background would have required alternative plans. . . ." The Gochmans offer no evidentiary or legal support for such a presumption, nor do they explain how Urban's actions were discriminatory against the Gochmans.

In the face of the summary judgment motions pointing out that no evidence exists to sustain the Gochmans' claims, the Gochmans are obligated to present evidence demonstrating a genuine issue of material fact as to each element of their Equal Protection claim under § 1983. *See* <u>Tubacex, Inc. v. M/V Risan</u>, 45 F.3d 951, 954 (5th Cir. 1995). The Gochmans have not presented any evidence at all that other persons, situated similarly to them, were treated differently. They have not provided any evidence whatsoever that they are members of a

protected class, nor have they offered any evidence, or even alleged, a discriminatory purpose.  They have not offered <u>any</u> evidence whatsoever that the decision to grant the Oakley Permit was 'because of' its adverse effects upon them.  *See* <u>Personnel Adm'r of Massachusetts v. Feeney</u>, 99 S. Ct. 2282, 2296 (1979).

Even if the City did not conform to state law in issuing the Oakley Permit, violation of state law does not constitute a per se denial of the federal constitutional right to equal protection of the law.  <u>Stern v. Tarrant County Hospital</u>, 778 F.2d 1052, 1056 (5th Cir. 1985).  A violation of state law by a state agency or actor does not constitute a denial of equal protection unless the state acts with some kind of prohibited class-based animus. <u>Smith v. City of Picayune</u>, 795 F.2d 482, 487 (5th Cir. 1986).  No such allegation was made in this case and the record is utterly devoid of any evidence of such an animus.

### C. Conspiracy Claim under 42 U.S.C. § 1983

The Gochmans maintain that the Defendants conspired to deny them their fundamental constitutional rights by securing the Oakley Permit. (Response to Oakley's Motion at 8.)  In this sense, it is alleged, all Defendants, both state and non-state actors, operated under color of state law.

22

A § 1983 plaintiff may assert conspiracy claims.  <u>Hale v.</u>
<u>Townley</u>, 45 F.3d 914, 920 (5th Cir. 1995), <u>reh'g & suggestion for</u>
<u>reh'g en banc denied</u>, 51 F.3d 1047 (5th Cir. 1996); <u>Mizell v.</u>
<u>North Broward Hospital Dist.</u>, 427 F.2d 468, 472-73 (5th Cir.
1970).  A conspiracy is an agreement between two or more
individuals, where one individual acts in furtherance of the
objective of the conspiracy, which causes an injury to a person
or property, or deprives a person of exercising any right or
privilege as a United States citizen."  <u>McKenzie v. Doctor's</u>
<u>Hospital of Hollywood, Inc.</u>, 765 F.Supp. 1504, 1507 (S.D. Fla.
1991), <u>aff'd</u>, 974 F.2d 1347 (11th Cir. 1992).  In order to prevail
on a section 1983 conspiracy claim, a plaintiff must establish
(1) the existence of a conspiracy involving state action and (2)
a deprivation of civil rights in furtherance of the conspiracy by
a party to the conspiracy.  <u>Pfannstiel v. City of Marion</u>, 918
F.2d 1178, 1187 (5th Cir. 1990).

The failure of the Gochmans' federal constitutional claims
disposes of their claim of conspiracy between the Defendants
under § 1983.  Without the deprivation of a constitutional or
federal statutory right, a conspiracy claim is not actionable
under § 1983.  As the Fifth Circuit has stated:

23

"Under § 1983, conspiracy can furnish the conceptual spring for imputing liability from one to another. . . . A conspiracy may also be used to furnish the requisite state action. . . . Yet it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient. . . . Here the plaintiff has failed to show any such deprivation. Without a deprivation of a constitutional right or privilege, the defendant has no liability under § 1983."

Kaplan v. Clear Lake City Water Authority, 794 F.2d 1059, 1065

(5th Cir. 1986)(citing Farrar v. Cain, 756 F.2d 1148, 1151 (5th

Cir. 1985).

### D. Texas Constitution

The Gochmans assert a § 1983 claim for violations of the Due

Process Clause and the Equal Protection Clause of the Texas

Constitution. (Amended Complaint 5-6.) However, the Gochmans must

allege a deprivation of a federally protected right in order to

set forth a prima facie case under § 1983. Williams v. Treen,

671 F.2d 892, 900 (5th Cir. 1982)(citing Maine v. Thiboutot, 448

U.S. 1 (1980)).  Violations of state law alone do not give rise

to a cause of action under § 1983. Williams, 671 F.2d at 900.

See also Smith v. Sullivan, 611 F.2d 1039, 1045 (5th Cir. 1980);

Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994).

It is unclear from the Amended Complaint whether the

Gochmans are also asserting a direct action under the Texas

Constitution for money damages.  Texas law does not recognize a

24

private cause of action for damages for deprivation of a right guaranteed by the Texas Constitution, with the narrow exception of a taking of property without just compensation. <u>Beaumont v. Bouillion</u>, 896 S.W.2d 143, 149 (Tex. 1995).  The Gochmans have not alleged a takings violation under the Texas Constitution. Additionally, under Texas law, there is no state constitutional tort action analogous to § 1983. <u>Gillum v. City of Kerrville</u>, 3 F.3d 117 (5th Cir. 1993).  Therefore, Gochmans' claims under the Texas Constitution are not actionable.

## V.    <u>CLAIM FOR DAMAGES UNDER THE DUNE PROTECTION ACT</u>

The Complaint asserts a direct action under the Dune Protection Act against all Defendants. (Amended Complaint at 3-5.)  It alleges that the City issued a dune permit for the Oakley residence without notice to the Gochmans, and without a public hearing, in violation of the Dune Protection Act. (Response to City's Motion at 8-9.)  Oakley then allegedly used the permit to destroy critical dunes. (Response to Oakley Motion at 13-14.)  Arthur and Molly Gochman sue in their capacity as littoral owners under Tex. Nat. Res. Code § 61.151.  Defendants argue that Arthur and Molly Gochman can not maintain a private action under the Dune Protection Act because Arthur and Molly

25

Gochman are not littoral owners. (Oakley Motion at 3-5.)   The
Defendants also argue that they did not violate the Dune
Protection Act. (Oakley Motion at 6-8; *see also* Urban Motion at
14-17.)

Section 63.151 states, "A littoral owner aggrieved by a
decision of the commissioners court or governing body of the
municipality under this chapter may appeal to a district court in
that county." Tex. Nat. Res. Code § 61.151.  The Court need not
determine whether the Gochmans are littoral owners, or whether
the Dune Protection Act creates a private cause of action for
damages, because the Gochmans have not presented any evidence to
create a genuine issue of material fact as to damages.

The claim for damages is premised, primarily, on the
depreciation in the value of Molly Gochman's home, caused by the
Oakley home's obstruction of the northern view of the Gulf. (*See*
Affidavit of Arthur Gochman at 5.)  Assuming, *arguendo*, that the
Gochmans could sue for damages for a neighbor's violation of the
Dune Protection Act, they have not presented any competent
evidence to support their claim that they have suffered damages
because of the violation.

The evidence of depreciation put forth by the Gochmans consists of the affidavit of Arthur Gochman, at Exhibit H of the Response to the Starrett Motion.  Mr. Gochman states:

> "In my opinion, as the owner of an interest in the real property (Property) referred as Lot 24, Beachwalk Subdivision, in Port Aransas, the value of the Property, including improvements, is substantially lessened by the blocking of the view of the Gulf occasioned by the building of the Oakley House on Lot 35, Beachwalk II.  In my opinion the value of the Property has been reduced, by not less than $650,000.00, from what it would have been if Starrett's representations had been true."  (Emphasis supplied.)

This statement simply does not constitute evidence for the purpose of refuting Defendants' summary judgment motions.  There is no evidence that Mr. Gochman is qualified as a real estate appraiser or is in any other manner qualified to offer an opinion regarding the value of real property.  Rule 56(e) requires that supporting affidavits shall "set forth such facts as would be admissible in evidence," and the threshold issue of admissibility must be resolved before determining whether or not unresolved questions of fact exist.  United States v. Hangar One, 563 F.2d 1155, 1158 (5th Cir. 1977).  Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial.  Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1024 (5th Cir. 1995) (citing Munoz v. International Alliance of Theatrical Stage

27

Employees, 563 F.2d 205, 207 n. 1 (5th Cir. 1977)).  Arthur

Gochman's opinion must be admissible to be considered as evidence

to create a genuine issue of material fact for trial.

Courts have ruled that an owner is competent to give his

opinion as to the value of his own property. King v. Ames, 179

F.3d 370, 376 (5th Cir. 1999)(citing Kestenbaum v. Falstaff

Brewing Corporation, 514 F.2d 690, 698-99 (5th Cir. 1975)).

These rulings apparently are based on the special "knowledge"

that an owner has of his property.  See Kestenbaum v. Falstaff

Brewing Corporation, 514 F.2d at 699 n. 10 (citing comment of

Advisory Committee on Federal Rules of Evidence that Rule 702

includes not only experts in the strictest sense, but also

"skilled witnesses" such as "landowners testifying to land

values.")

Molly Gochman did not provide any testimony regarding the

value of her property or any depreciation in the value of the

property.  Arthur Gochman, who did provide such an opinion, is

not the owner of the property about which he attests; at most, he

has a leasehold interest in the property.  At best, Arthur

Gochman can testify regarding the value of his leasehold estate

in Lot 24, but his opinion clearly is not limited to that

interest.  It cannot be considered in determining whether the

28

value of Molly Gochman's property depreciated as a result of the construction of the Oakley home.

The Court could interpret the affidavit as attesting only to Arthur Gochman's opinion about his leasehold interest, but Arthur Gochman obtained that interest in September 1999, after the Oakleys had built their house and after Arthur Gochman had filed a lawsuit in state court complaining about it. (*See* Exhibit F of the Response to the Starrett Motion.)  There is no evidence that any defendant performed any act after September 1999 that would reduce the value of Arthur Gochman's leasehold estate; all acts of which the Gochmans complain were performed prior to September 1999.

Even if the Court were to consider allowing Mr. Gochman's opinion for the sole purpose of defeating the other parties' motions for summary judgment, the Court still would disallow the testimony as conclusory in nature and as unsupported by any specific facts to base the opinion.  *See* King v. Ames, *supra*; *see also* Rich v. Eastman Kodak Company, 583 F.2d 485, 437 (8th Cir. 1978) (affidavit with owner's opinion as to value of property, to defeat summary judgment motion, must set forth specific facts on which opinion is based.); *see also* Michaels v. Avitech Inc., 202 F.3d 746, 754 (5th Cir. 2000) (A party may not rest on conclusory

29

statements and opinions unsupported by any factual analysis to
overcome a summary judgment motion, even if opinion offered by
qualified expert.)

Finally, there is no evidence in the record that the
invasion of critical dunes during the construction of the Oakley
home have had any negative consequences for the value of Molly
Gochman's home.  The Gochmans have offered the affidavit of
Jennifer S. Prouty, Ph.D., who attests that in her opinion, "the
construction on Lot 35 Beachwalk II constitutes and creates a
material weakening of the critical dune on Lot 35 and such
construction has had a material adverse effect on the critical
dune on and destruction of dune vegetation on Lot 35 Beachwalk
II."  (Prouty Affidavit at 4.)

There is no question that there was an invasion of the
critical dune on Lot 35; this was the purpose for the dune
permit.  There is nothing in the Prouty Affidavit, nor have the
Gochmans pointed to other evidence in the record, that the
modification of the dune on the Oakleys' property, even with
"substantial weakening", threatens Molly Gochman's property.  The
Prouty affidavit says nothing about the mitigation described in
the Oakley Permit, nor do the Gochmans offer evidence -- or even
allege -- that the mitigation was not performed.

30

The Gochmans vaguely allege danger from a possible "storm surge" in their First Amended Complaint, but the Prouty Affidavit says nothing about storm surges.  The Gochmans do not address the conclusion in the Oakley Permit that the "dune complexes that are impacted are for the most part isolated dune structures and in all instances not a ridge dune providing storm surge protection to the tract."  (Exhibit E of the Starrett Motion at 7.)  The Gochmans also fail to provide any evidence that the mitigation of the dune impact contemplated in the Oakley Permit was not actually performed as described in the permit.  (City's Motion, Exhibit E, at 3-7.)  The Prouty affidavit fails entirely to mention mitigation.

Arthur Gochman is not qualified to offer an opinion regarding the value of his daughter's property.  There is no evidence that the value of his leasehold estate was diminished after he acquired it.  There is no evidence that the Oakley home construction created any danger or hazard to either of the Gochmans' property.  There is no other evidence in the record to create a genuine issue of material fact on the issue of damages, and the Gochmans' claims for damages by direct action under the DPA, if such an action could be maintained, must fail as a matter

31

of law.  Defendants are entitled, therefore, to summary judgment as to those claims.

## VI.   Request for Injunctive & Mandamus Relief

### A. Injunctive Relief Against Oakley

The Gochmans seek an injunction requiring Oakley to move the home landward from the critical dune line and prohibiting Oakley from further damaging the dunes, relying on the Dune Protection Act and 42 U.S.C. § 1983.  (Plaintiffs' First Amended Complaint at 6-7, 13.)  To obtain an injunction, the Gochmans must show (1) a substantial threat of irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs any potential harm to the non-movant; and (3) the injunction will not disserve the public interest.  Lionheart v. Foster, 100 F. Supp. 2d 383 (E.D. La. 1999).  The Gochmans are not entitled to injunctive relief because they have not presented any evidence to create a genuine issue of material fact regarding a substantial threat of irreparable injury if the injunction is not granted.  As to the request for an injunction under 42 U.S.C. § 1983, the Gochmans are not entitled to an injunction for the additional reason that the Oakleys are not state actors nor were they acting under color of state law when they modified the dune

on their property and constructed their house, as explained
elsewhere herein.

The Oakleys have moved for summary judgment regarding the
request for injunctive relief, asserting that there is no
evidence to create a genuine issue of material fact regarding
potential harm to the Gochmans.  The Gochmans counter with the
affidavit of Jennifer S. Prouty, as described above.  For the
reasons described above, the affidavit does not constitute any
evidence of potential harm to the Gochmans.

To obtain injunctive relief, a plaintiff must show "some
cognizable danger of recurrent violation, something more than the
mere possibility which serves to keep the case alive."  United
States v. W.T. Grant Co., 73 S. Ct. 894, 897-98 (1953); Shanks v.
City of Dallas, Tex., 752 F.2d 1092, 1097 (5th Cir. 1985).  The
Gochmans have not shown a prior violation, let alone a potential
recurrent one, by the Oakleys.  The permit was obtained by
Starrett and the dune was modified under that permit.  The
Oakleys have not violated any part of the Dune Protection Act by
modifying the dune.  There is no evidence that modifying the dune
poses a threat to the Gochmans' property.

Because the Gochmans have failed to present any evidence of
a realistic threat of irreparable harm or a cognizable threat of

recurrent violations, the Oakleys are entitled to summary judgment as to the Gochmans' claim for injunctive relief.

## B. Mandamus and Injunction against the City

The Complaint also requests that an injunction and writ of mandamus issue to compel the City "to properly enforce" the Dune Protection Act. "Mandamus is an extraordinary remedy for extraordinary causes." United States v. Denson, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc). To obtain mandamus relief, the Gochmans must establish: 1) a clear right to the relief sought; 2) a clear duty on the part of the defendant to do the act in question; and 3) there is no other adequate remedy available. Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969). Neither Arthur nor Molly Gochman have shown a clear right to mandamus relief. Mandamus may issue only to compel a government official to perform a purely ministerial duty, and the power of the federal court to intervene depends on the amount of discretion vested in the officer. Carpet, Linoleum & Resilient Tile, Etc. v. Brown, 656 F.2d 564 (10th Cir. 1981); Associated Businesses of Franklin, Inc. v. Warren County Brd. Of Comm'nrs, 522 F. Supp. 1015, 1020 (S.D. Ohio 1981). If a duty is determined to be discretionary, mandamus may not issue. Id.

The City of Port Aransas does not have enforcement power under the Dune Protection Act.  Under § 63.181, enforcement authority is squarely placed in the hands of the attorney general, county attorney, district attorney, or criminal district attorney.  Tex. Nat. Res. Code Ann. § 63.181.  Without deciding whether mandamus could issue to compel an officer to "enforce" the Act, the Court concludes that the Gochmans are seeking mandamus against the wrong persons.  Even if mandamus could be issued, it could not be issued against the City of Port Aransas because the City has no duty to enforce the Act.

For the foregoing reasons, the City's motion for summary judgment as to the Gochmans' requests for mandamus and injunctive relief are granted.


VII. **Fraud; Deceptive Trade Practices Act**

The Complaint asserts a claim against Starrett under Tex. Bus. & Comm. Code § 27.01 and under common law fraud for the misrepresentations he allegedly made to Arthur Gochman. (Amended Complaint at 9.)  In addition, the Gochmans assert a claim against Starrett under the Texas Deceptive Trade Practices Act. Starrett has moved for summary judgment, on the basis that, *inter alia*, the Gochmans cannot offer competent summary judgment proof

that they have suffered any damages with respect to Molly

Gochman's property.  In the face of this contention, it is

incumbent upon Molly Gochman to offer evidence of damages to her

property, and upon Arthur Gochman to offer evidence of damages to

his leasehold estate.  As indicated above, no such evidence has

been offered, and the Court concludes that there is no genuine

issue of material fact as to whether the Gochmans have suffered

damages.  For that reason, all three of the claims based on

misrepresentations must fail as a matter of law.

Section 27.01(a) states that fraud in a real estate

transaction consists of a:

> "(1)   false representation of a past or existing material
> fact, when the false representation is
>
> > (a) made to a person for the purpose of inducing that
> > person to enter into a contract; and
> >
> > (b) relied on by that person in entering into that
> > contract..."

The elements of a claim under common law fraud and under Section

27.01 are identical, <u>Brush v. Reata Oil and Gas Corporation</u>, 984

S.W.2d 720, 726 (Tex. App. Waco -- 1998, writ denied), except

that common law fraud includes as an additional element knowledge

of the falsity of a misrepresentation.  Thus, the elements of a

common law fraud claims are: (1) a material representation was

made; (2) it was false when made; (3) the speaker knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion; (4) the speaker made it with the intent that it should be acted upon; and (5) the party acted in reliance and suffered injury as a result. Clardy Mfg. Co. v. Marine Midland Business Loans, 88 F.3d 347, 359 (5th Cir. 1996); Roberts v. United New Mexico Bank at Roswell, 14 F.3d 1076, 1078 (5th Cir. 1994); DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990) (citing Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977).

The elements of a DTPA claim are: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages. Doe v. Boys Club of Greater Dallas, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex.Bus.Com.Code § 17.50(a)(1).

Without evidence of harm the Gochmans cannot maintain an action for common law or statutory fraud. See Frey v. Martin, 469 S.W.2d 316, 317 (Tex. Civ. App.--Dallas 1971)(dismissal of fraud claim for lack of evidence on loss). For the same reason, the claim under the DTPA must fail, because the act requires that a deceptive act or practice be "a producing cause of . . .

37

<u>damages</u>", Tex. Bus. & Comm. Code Ann § 17.50 (emphasis supplied).

*See also* <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 702 (5th Cir.

1999) (DTPA claim requires proof of actual damages).

For the foregoing reasons, the Court grants the defendants'

motions for summary judgment as to the Gochmans' claims of fraud,

fraud in a real estate transaction, and the DTPA.


## VIII.   <u>OAKLEYS' LIS PENDENS COUNTERCLAIMS</u>

The Court now turns to the claims revolving around the

Notices of Lis Pendens filed in Nueces County.  The Oakleys move

for summary judgment on their request for a declaration that the

notices are illegal, null, and void; they also request an order

directing the Gochmans to execute and deliver to the Oakleys an

instrument canceling the notices.  (Defendant and Counter-

Plaintiffs, Ken and Andrea Oakley's Motion for Summary Judgment

at 13-14.)  In addition, the Oakleys have moved for summary

judgment on their claim for damages under Section 12.003 of the

Texas Civil Practices and Remedies Code.  (<u>See</u> Defendant and

Counter-Plaintiffs, Ken and Andrea Oakley's, Motion for Summary

Judgment at 14.)  The Gochmans have opposed these motions and

have asserted their own motions for summary judgment on the

claims stated above, as well as the claims for negligence, gross

38

negligence, intentional infliction of emotional distress, and conspiracy.  (Gochmans' Motion.)

### A. Fraudulent Court Documents Claim

The Oakleys assert a claim under Chapter 12 of the Texas Civil Practices and Remedies Code, titled "Liability Related to a Fraudulent Court Record or a Fraudulent Lien or Claim Filed Against Real or Personal Property."  Tex. Civ. Prac. & Rem. Code §§ 12.001 *et seq*.  The statute provides a private cause of action "in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property." Tex. Civ. Prac. & Rem. Code § 12.003(8).

The statute was adopted to address fraudulent judgment liens issued by so-called "common law courts" and fraudulent documents purporting to create liens or claims on personal and real property that have been filed with court clerks and the secretary of state in Texas.  *See* Tex. Atty. Gen. Op. LO 98-016, 1998 WL 122060 (Tex. A.G.).  No reported decision has yet been published regarding any private suit under the statute.

Under the statute, the Oakleys must demonstrate that the Gochmans made, presented, or used the Notices of Lis Pendens (1) with knowledge that they were fraudulent court records or fraudulent liens or claims against real or personal property or

39

CVisPDF - www.texlio.com

an interest in real or personal property; (2) with the intention
that the notices be given the same legal effect as a court record
or document, of a court created by or established under the
constitution or laws of Texas or the United States or any other
entity listed in Section 37.01 of the Texas Penal Code, that
evidences a valid lien or claim against real or personal property
or an interest in real or personal property; and (3) with the
intention to cause the Oakleys physical injury, financial injury,
or mental anguish or emotional distress.  Tex. Civ. Prac. & Rem.
Code § 12.002(a).   Chapter 12 does not define the term
"fraudulent", but in the section allowing a plaintiff to recover
his or her costs upon a finding that the defendant knew a
document to be "fraudulent", the statute refers to Section
51.901(c) of the Texas Government Code. Tex. Civ. Prac. & Rem.
Code Ann. § 12.006; Tex. Gov't Code Ann. § 51.901(c)(2).

Although the parties advance various arguments in favor of
their respective positions in this dispute, the court must deny
the Oakleys' summary judgment motion because, as a matter of law,
the notices of lis pendens do not fall within the purview of
Chapter 12 of the Property Code.

Given the plain wording of Chapter 12 of the Civil Practices
and Remedies Code, and given its impetus, it is clear that the

statute addresses those cases where a person falsely asserts or implies that some legitimate governmental entity has resolved that the person has a claim against or a contractual or constructive interest in property. The notices of lis pendens by their nature and on their face do not assert any such claim.

"[L]is pendens is specifically authorized by statute." Prappas v. Meyerland Com. Imp. Ass'n, 795 S.W.2d 794, 797 (Tex. App. -- Houston [14th Dist.] 1990, writ denied); *see also* Tex. Prop. Code Ann. § 12.007. The purpose of a notice of lis pendens is to put those interested in a particular tract of land on inquiry as to the facts and issues involved in the suit or action concerned. Kropp v. Prather, 526 S.W.2d 283, 287 (Tex. Civ. App. -- Tyler, writ ref'd, n.r.e.). A notice of lis pendens may be filed notice during the pendency of a proceeding in eminent domain or an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property. Tex. Prop. Code Ann. § 12.007(a). The legal effect of a recorded lis pendens "is notice to the world of its contents." Tex. Prop. Code Ann. § 13.004. The Property Code allows any litigant to draft and file a notice of lis pendens. See Tex. Prop. Code Ann. § 12.007(b). It does not require the imprimatur of a court or other entity enumerated

in Section 37.01 of the Texas Penal Code.  *See* Werneke v.
Seabury, 720 S.W.2d 886, 887 (Tex. App. -- Fort Worth 1986, no
writ) ("Lis pendens is a signed statement by an attorney stating
the particulars of the underlying cause of action.  The court is
not involved in either the filing or the issuance of the notice
of lis pendens. In fact, the county clerk with whom the notice is
filed, must file the notice of lis pendens without further
inquiry.")  The purpose of a lis pendens is not, therefore, to
evidence a valid lien or claim, but to provide notice of a
*dispute* over a claim, lien or interest.

In support of their motion, the Oakleys present, in addition
to copies of the notices, a series of letters from their attorney
to the attorney for the Gochmans, and a release signed by the
Oakleys in favor of the Gochmans.  (Exhibits 16-19 to Defendant
and Counter-Plaintiffs, Ken and Andrea Oakley's, Motion for
Summary Judgment.)  The Oakleys also present an affidavit by Ken
Oakley that the Gochmans never have had any proprietary interest
or encumbrance on the Oakleys' property.  (Id., Exhibit 20.)  The
letters to the Gochmans' attorney merely set out the Oakleys'
position that the notices of lis pendens are improper, interfere
with the Oakleys' efforts to finance the construction of their
home, and discuss the Oakleys' responses to and reasons for

42

executing the release demanded by the Gochmans.  (Id.,
Exhibit 17.)  These documents simply do not represent evidence
that the Gochmans intended that the notices be given the same
legal effect as a record issued by any legitimate governmental
entity listed in Section 37.01 of the Texas Penal Code.

The court also finds that the Oakleys have not shown that
the notices were "fraudulent" within the meaning of the statute
under which they sued the Gochmans.  The notices do not purport
to evidence an equitable, constructive, or other lien imposed by
a court of competent jurisdiction, nor do the Gochmans' notices
state on their face that any such lien exists.  The notices
merely state that a lawsuit was filed and is pending, and that
the action "is a suit for damages, a suit to remove structures
built in violation of the Dune Protection Law of the State of
Texas, and a suit for mandamus to enforce the Dune Protection
Laws of the State of Texas against the real property situated in
Nueces County, Texas, and described as . . . Lots 35, Beachwalk
II Addition to the City of Port Aransas, Nueces County, Texas."
(Defendant and Counter-Plaintiffs, Ken and Andrea Oakley's,
Motion for Summary Judgment, Exhibits 16 and 19.)  The Oakleys
have not provided any evidence (nor have they argued) that these
statements were untrue at the time of filing.  In addition, the

43

notices refer to the suit by the court and cause number, allowing any person to look into the pleadings and determine whether the Gochmans in fact asserted a claim against or interest in the property.  (Id.)

Finally, the notices do not purport to evidence a lien or assert a claim created by implied or express consent of the Oakleys.  The notices, though they may have been improper, are not presumably fraudulent under § 51.901(c)(2) of the Texas Government Code.  The statements in the notices, in fact, are accurate statements regarding the pendency of the Gochmans' lawsuit.

For the foregoing reasons, the court finds that the Oakleys are not entitled to summary judgment on their claim for damages under Chapter 12 of the Texas Civil Practices and Remedies Code, and decides that as a matter of law, the claim cannot be sustained.  The court therefore grants the Gochmans' motion for summary judgment as to the claim for relief under Chapter 12 of the Texas Civil Practices and Remedies Code.

### B. Negligence, Gross Negligence, Intentional Infliction of Emotional Distress, And Conspiracy

The Gochmans argue that the filing of a notice of lis pendens during the pendency of a lawsuit is absolutely

44

privileged. (Gochmans' Motion, at 1; Unopposed Motion to Submit Supporting Authorities in Support of Plaintiffs' Motion for Summary Judgment on the Counterclaim of Defendants Ken Oakley and Andrea Oakley at 3-6.) The Oakleys contend that Chapter 12 of the Civil Practices and Remedies Code, which was adopted after the cited cases, removes the privilege traditionally accorded to notices of lis pendens. (Counter-Plaintiffs, Ken and Andrea Oakleys' Response to, Plaintiffs' Motion for Summary Judgment at 10.)

The filing of a notice of lis pendens is viewed by Texas courts as constituting part of a judicial proceeding. Kropp v. Prather, 526 S.W.2d 283, 287 (Tex. Civ. App. - Tyler 1975, writ ref'd n.r.e) "Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot form the basis for a cause of action in libel or slander." Kropp, 526 S.W.2d at 286; see Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909, 912 (1942). The privilege applies even when a notice of lis pendens does not fall within the one of the three "pigeonholes" of § 12.007 of the Texas Property Code. Prappas v. Meyerland Com. Imp. Ass'n, 795 S.W.2d at 796-797. Even if the person filing the notice acts with malice, "it is in the nature of an

absolute privilege that malice is immaterial." Prappas, 795
S.W.2d at 799; *see also* Reagan v. Guardian Life Ins. Co., 166
S.W.2d at 912. The court is unconvinced that Chapter 12 of the
Civil Practices and Remedies Code has the effect of negating the
traditional privilege accorded notices of lis pendens, because
such a notice simply does not appear to be the type of document
that falls within the purview of Chapter 12, for the reasons
cited above.

Moreover, the Court finds that the absolute privilege
precludes recovery in any tort action based on the filing of a
notice of lis pendens, at least where the notice was filed during
the pendency of an ongoing lawsuit. The Texas Court of Appeals,
in Griffen v. Rowden, 702 S.W.2d 692 (Tex. App. Dallas 1986, writ
ref'd, n.r.e.), ruled that the absolute privilege for filing lis
pendens notices extends to claims for tortious interference with
a business relationship. The court reasoned that prior cases
applying the privilege to slander of title did not limit the
privilege to that cause of action alone; rather, the basis in
public policy of allowing parties to freely and openly litigate
their claims required that the privilege be applied beyond
actions for libel, slander, or slander of title. Id. at 695; *see
also* Prappas, *supra* (holding that privilege applied to claim of

46

tortious interference with a contract even where the lis pendens filing did not comply with § 12.007 of the Property Code); *see also* <u>Laub v. Pesikoff</u>, 979 S.W.2d 686 (Tex. App. -- Houston [1st Dist.] 1998, writ denied) (holding that privilege for communications made in course of litigation applied to claims for, *inter alia*, intentional infliction of emotional distress, negligence, and civil conspiracy).  Extending this reasoning to its logical conclusion, any action for tort based on an allegedly improper filing of a notice of lis pendens during the pendency of a lawsuit is disallowed by the absolute privilege.

For the foregoing reasons, the court grants the Gochmans' motion for summary judgment as to the Oakleys' claims for negligence, gross negligence, intentional infliction of emotional distress, and conspiracy.

### C. Declaratory Judgment

The Oakleys also have pursued a claim under the Texas Declaratory Judgments Act regarding the notices of lis pendens. Tex. Civ. Prac. & Rem. §§ 37.001 *et seq*.  They have requested a number of declarations with respect to the notices, (Amended Counterclaim at 7); in their motion for summary judgment, however, the Oakleys seek only a declaration that the notices of lis pendens are "as a matter of law, illegal; that such Notices

47

CMxPDF - www.tesisi.com

be immediately canceled and considered null, void and of no
further force and effect; and further, that [the Gochmans] be
ordered to execute and deliver to the Oakleys an appropriate
instrument canceling and voiding said Notices of Lis Pendens."
(Defendant and Counter-Plaintiffs, Ken and Andrea Oakley's Motion
for Summary Judgment at 13-14.)

The Gochmans, in turn, have sought summary judgment as to
these claims, arguing that "[t]here is no cause of action in
Texas for declaratory judgment asserted by counterclaim which,
essentially, only joins issue on the main cause of action to
which it is a counterclaim." (Gochmans' Motion, at 2.) The
Court need not reach this issue as to the notices of lis pendens,
however, because the Texas Property Code allows a Court, upon
motion, to cancel a notice of lis pendens. Tex. Prop. Code Ann.
§ 12.008. The Oakleys request in their summary judgment motion
that the notices "be immediately canceled and considered null,
void and of no further force and effect." (Oakley Motion at 13.)
The Court will construe the summary judgment motion as a motion
for cancellation under Section 12.008 of the Texas Property Code.
Because the Court finds that the notices were improper, the Court
will cancel them. Also, because they were improper, the Court
need not require a bond or other security specified in Section

48

12.008 as a condition for cancellation. Lane v. Fritz, 404
S.W.2d 110 (Tex. Civ. App. - Corpus Christi 1966, no writ); *see
also* Prappas, 795 S.W.2d at 796.

At the outset, there is no question that this is not a
proceeding in eminent domain, nor does this suit involve title to
the Oakleys' property. *See* Tex. Prop. Code § 12.007(a). The
court must therefore determine whether this litigation involves
the establishment of an interest in or enforcement of an
encumbrance against the Oakleys' real property. See Tex.Prop.Code
§§ 12.007(a). Where only collateral questions are involved which
might ultimately affect the interest of the parties to property,
the doctrine of lis pendens does not apply. Khraish, 762 S.W.2d
at 909; Lane v. Fritz, 404 S.W.2d 110, 111-12 (Tex. Civ. App.--
Corpus Christi 1966, no writ). For example, suits for money
damages only are not appropriate vehicles for lis pendens. Garza
v. Pope, 949 S.W.2d 7, 9 (Tex. App. - San Antonio 1997, no writ).

The Gochmans' suit seeks, as against the Oakleys, injunctive
relief requiring the Oakleys to refrain from causing further
damage to sand dunes upon the Oakley's property; to remove and
relocate their house; and to restore a sand dune "to its
condition prior to the construction of the Oakley home."
(Plaintiffs' First Amended Complaint at 13.) The Gochmans also

49

seek damages from the Oakleys under 42 U.S.C. § 1983 and for violating the Texas Dune Protection Act.  (Id., at 6-7.)

The Gochmans do not seek any direct interest or lien on the Oakleys' property; they want only to limit the Oakleys' use of the Oakleys' own property.  The Texas case of Olbrich v. Touchy, 780 S.W.2d 6 (Tex. App. - Houston [14th Dist.] 1989, no writ) is instructive, both on the issue of encumbrance as well as on the issue of interest in property.  In Olbrich, neighbors of property owners sued to invalidate the owners' subdivision plat filings, which they claimed violated pertinent city ordinances.  After bringing suit, the neighbors filed a notice of lis pendens against the property.  In an action for mandamus to compel the trial court to cancel the notice, the Court of Appeals determined that the neighbors' claims neither amounted to a claim of interest in the owners' property, nor did a possible violation of ordinances and statutes prohibiting the subdivision of property constitute an encumbrance on the property.  Olbrich, 280 S.W.2d at 7.  The court stated, "We are unwilling to expand the meaning of 'interest' within the lis pendens statute to the broad dimensions requested by [the neighbors].  The wording of the property code section 12.007(a) suggests that an interest in property is less than title, but nothing in the statute indicates

50

that an interest extends so far as to encompass a mere third-party concern about the property." Id. The court then noted that statute violations do not constitute an encumbrance, even though they may impair the use or transfer of property. The court state that the purpose of the notice of lis pendens "is to put those interested in a particular tract of land on inquiry as to the facts and issues involved in the suit. . . . Statutory restrictions on the subdivision and transfer of property sufficiently alert prospective offenders or property purchasers to these violations, making the lis pendens notice superfluous." Id.

Likewise, the Gochmans do not assert any claim for which "notice to the world" is necessary. To the extent that the Dune Protection Act limits the use of the Oakleys' property, the Act itself is sufficient notice. There was no need to file the notices to preserve any potential right or benefit to the Gochmans as against transferees of the property. The Gochmans have not offered any argument, nor have they stated any facts in their motions or responses to the Oakleys' motions, to show why the notices of lis pendens may have been legitimate. In fact, the Gochmans have not even stated affirmatively that the notices are legitimate. The Court finds that the notices are improper

51

and, accordingly, the Court cancels the Gochmans' notices of lis pendens.

Briefly, the court addresses the Oakleys' request that the Gochmans be ordered to execute a release of the notices of lis pendens.  An order canceling the notices will remove the cloud on the Oakleys' title; an injunction directing the Gochmans to execute a release of the notices is not necessary.  *See* <u>RIO Systems, Inc. v. Union Carbide Corporation</u>, 780 S.W.2d 489, 493 (Tex. App. – Corpus Christi 1989, writ denied) (order canceling notice of lis pendens removes cloud on title, but is not injunctive in that it "neither compels anyone to do nor prohibits anyone from doing anything.")

### D. The Oakleys' Remaining Declaratory Judgment Claims

The Oakleys also request in their counterclaim declaratory judgment that the release executed by the Oakleys in favor of the Gochmans is null, void, and of no force and effect; that the Oakleys have not violated any material provision of the Texas Dune Protection Act or the Coastal Management Plan; that in connection with the construction of their new home, the Oakleys substantially complied with all material provisions of the Texas Dune Protection Act and Coastal Management Plan; and that the Gochmans' suit is frivolous, groundless, brought in bad faith and

for purposes of harassment.  (Amended Counterclaim at 7.)  The Gochmans, in their motion for summary judgment, refer only to the claim for declaratory relief as to the notices of lis pendens, and that only by reference to a paragraph number in the Oakleys' counterclaim.  (Gochmans' Motion, at 2.)  In their brief in support of their motion, the Gochmans appear to oppose all the declaratory relief requested by the Oakleys, which extends beyond the lis pendens notices, but that reference is somewhat oblique. (Unopposed Motion to Submit Supporting Authorities in Support of Plaintiffs' Motion for Summary Judgment on the Counterclaim of Defendants Ken Oakley and Andrea Oakley at 2; *see also* Amended Counterclaim at 7.) "It is the litigant's role to present their case to the court, not vice versa." Carpenter v. Vaughn, 888 F.Supp. 635, 648 (M.D.Pa. 1994); *see generally* Fed. R. Civ. P. 7(b)(1) (requiring that parties submit motions which "state with particularity the grounds therefor") *see also* United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) (judges need not hunt for issues or arguments "buried in briefs."). Accordingly, the court concludes that the Gochmans have not made a proper motion for summary judgment on these claims because the motion does not clearly state that they are a subject of the motion.

53

It is well settled, however, that the Court may dismiss a complaint on its own initiative for failure to state a claim where the inadequacy of the claim is apparent as a matter of law. Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1991), cert. denied, 503 U.S. 908, 112 S. Ct. 1267 (1992); Shawnee Int'l N.V. v. Hondo Drilling Co., 742 F.2d 234, 236 (5th Cir. 1984). Because the court concludes, as a matter of law, that all but one of the Oakleys' claims fail to state claims upon which relief may be granted, the court will dismiss those claims *sua sponte*.

Where a counterclaim for declaratory judgment merely restates defenses to issues already raised in the direct action brought by a litigant, the counterclaim is inappropriate. *See* Heritage Life v. Heritage Group Holding, 751 S.W.2d 229 (Tex. App. -- Dallas 1988, writ denied). A counterclaim for declaratory relief which in substance raises defenses to the plaintiff's claims is not viewed as a true declaratory judgment action. Morgan v. Deere Credit, Inc., 889 S.W.2d 360 (Tex. App. - Houston [14th Dist.] 1994, no writ). In Newman Oil v. Alkek, 614 S.W2d 653, 655 (Tex. App. -- Corpus Christi 1981, writ ref'd n.r.e.), the plaintiffs sued defendants for fraudulent representations, breach of contract and violations of the Deceptive Trade Practices-Consumer Protection Act (the "DTPA").

54

The defendants filed a counterclaim for declaratory relief and
moved for summary judgment on the basis that they had not
committed fraud, engaged in common law tort or deceptive trade
practices, breached any contracts with the plaintiffs and were
not liable under the DTPA.  Id. at 654-655.  Even though the
counterclaim was framed in the form of a request for declaratory
relief, the court of appeals held that the allegations were not
averments of fact upon which relief could be granted, but were
merely denials of the plaintiffs' causes of action.  Id. at 655.

     With the exception of the claim that the Oakleys' release is
void, all of the declaratory judgment claims addressed here are
simply refutations of the Gochmans' main causes of action.  The
Oakleys pray for judgment declaring that they "have not . . .
violated any material provision of the Texas Dune Protection Act
or the Coastal Management Plan" and that their construction
"substantially complied with all material provisions of the Texas
Dune Protection Act and Coastal Management Plan."  (Amended
Counterclaim at 7.)  These merely gainsay the allegations in the
Gochmans' first amended complaint: "In February 1999, Oakley . .
. began construction . . . contrary to the [Texas Dune Protection
Act]."  (Plaintiffs' First Amended Complaint at 5.)  For that
reason, they are not proper subjects of a declaratory judgments

55

action.  For similar reasons, the Oakleys' claim for a declaration that the Gochmans' suit is groundless, frivolous, etc., is not a proper basis for a declaratory judgment claim, as they do not advance any affirmative statements of fact that would not simply deny liability in the suit brought by the Gochmans.

Given the foregoing, the only claims remaining from the Oakleys' counterclaim are the action for a declaration that the release is null and void.  As to that claim, the Gochmans' motion for summary judgment is denied.  In open court on September 1, 2000, however, the Oakleys moved to dismiss that claim.  There being no objection from the other parties, the Court will dismiss the claim.

## IX.  ATTORNEY FEES

All parties have requested, under one theory or another, their attorney fees and costs.  All requests are denied, and each party will bear his or her own costs and attorney fees.

## X.  CANCELLATION OF LIS PENDENS NOTICES

Pursuant to Section 12.008 of the Texas Property Code, the following notices of lis pendens are hereby CANCELED:

1. The notice of lis pendens executed on or about the 9th day of September, 1999, by Max J. Luther, II, attorney for Arthur Gochman and Molly Gochman, pertaining to the action styled "Arthur Gochman and Molly Gochman vs. Ken Oakley and the City of Port Aransas, Texas; Cause No. 99-1891-H; in the 347th Judicial District, Nueces County, Texas", and regarding the property generally described as Lot 35, Beachwalk II Addition to the City of Port Aransas, Nueces County, Texas.

2. The notice of lis pendens executed on or about the 1st day of February, 2000, by Arthur Gochman, pertaining to the action styled "Arthur Gochman and Molly Gochman vs. Ken Oakley and the City of Port Aransas, Texas; Cause No. 99-1891-H; in the 347th Judicial District, Nueces County, Texas", and regarding the property generally described as Lot 35, Beachwalk II Addition to the City of Port Aransas, Nueces County, Texas.

## XI. CONCLUSION

For the foregoing reasons, the Court DENIES all parties' requests for attorney fees; with the exception of attorney fees, the Court GRANTS Starrett's Motion for Summary Judgment, GRANTS the City's Motion for Summary Judgment, and GRANTS Urban's Motion for Summary Judgment; the Court GRANTS in part and DENIES in part the Oakleys' Motion for Summary Judgment; the Court DENIES in part and GRANTS in part the Gochmans' Motion for Summary Judgment on the Oakley's Counterclaims. The Court CANCELS the notices of lis pendens described above. The Oakleys' claim for declaratory

relief as to the release they executed in favor of the Gochmans

is DISMISSED.

      ENTERED on this the ___1st___ day of September 2000.

                                    JANIS GRAHAM JACK
                                    UNITED STATES DISTRICT JUDGE