United States District Court
Southern District of Texas
FILED

SEP 1 8 2000

Michael N. Milby, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| ARTHUR GOCHMAN | § | CIVIL ACTION NO.C-00-126 |
| & MOLLY GOCHMAN | § | JURY |
| | § | |
| vs. | § | |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| KEN OAKLEY, URBAN ENGINEERING, A | § | |
| PARTNERSHIP, THE PERALLA | § | |
| CORPORATION, URBAN CONSULTING | § | |
| ENGINEERING, INC. | § | |
| AND THE CITY OF PORT ARANSAS, | § | |

**MOTION TO ALTER OR AMEND JUDGMENT
AND REQUEST FOR ORAL HEARING**

This motion (the "Motion"), to alter or amend judgment, is filed pursuant to Rule 59, FRCP, and is directed to the judgment ("Judgment") of this Honorable Court, entered September 7, 2000, captioned "Final Judgment", dismissing the claims of Plaintiffs, Arthur Gochman and Molly Gochman, ("Gochmans") pursuant to Amended Order (the "Order") signed September 6, 2000, granting summary judgment to each of the Defendants in the above cause. Plaintiffs hereby move to alter or amend the Judgment, and, as part, thereof, request oral hearing on this Motion, as follows:

**I.**

**Preliminary Statements**

The Gochmans, are, above all, concerned with the critical dune and anxious to restore it and protect it in accordance with the environmental scheme embodied in the Dune Protection Act and the Port Aransas Coastal Management Plan. Because the Dune

Protection Act awarded a role in the protection of the Dune to littoral owners, in our view including Gochmans, and because, surely, the Courts should apply the environmental laws in such a way as to give maximum protection to the environment, Gochmans respectfully move this Honorable Court to alter or amend its judgment, either by setting it aside, or by allowing Gochmans to go forward on legitimate causes of action which the Court should find to be supported by the authorities as we submit them.

Preliminarily, we point out to the Court that along the shoreline of Port Aransas, there are numerous houses built upon the critical dunes, including the Oakley house. The others are mostly to the north but as development continues, more and more building will be done in the south and the critical dunes will receive an enlarging threat. The summary judgment evidence reflects that the permitting process of the City of Port Aransas is seriously flawed. The flaw is the dual role of the Commission on Planning and Zoning in the plat approval and in approval of Dune Protection Permits. A more carefully drawn plat of Beachwalk II Subdivision could have avoided any necessity or desirability of building on the critical dune, and still given the developer the same number of beachfront lots and lots overall. See attached affidavit of Kenneth Smith, reflecting his opinion on this subject with his revisions of the Plat, attached as Exhibit #1, as a part hereof.

The developer, however, was not required to do such a replat at the dune permit stage, because, because at the platting stage, his plat had already been approved, considered strictly on the basis of planning and zoning concerns, but not environmental.

Therefore, at the dune permitting stage, Starrett's application, presented to the Commission, easily obtained approval, because the plat which "necessitated" the impact

2

on the critical dune had already been approved by the Commission once and it was not likely to revisit it.    The dual function of the Commission impaired its judgment and its review of the options, causing it to ignore environmental concerns to the unnecessary detriment of the critical dune, and the rights of the Gochmans therein.    One remedy provided for this is set out in the Act, a right of a littoral owner to appeal from such decisions.  We ask this Court to permit us to pursue this remedy.

## II.

## Procedural Due Process

As a part of the Order, on which the Judgment is based, this Honorable Court held the action of the City Council of Port Aransas, to be "legislative" in character  and, on that ground, held Gochmans were not entitled to procedural due process ("Due Process"). Gochmans were, therefore, thereby deprived of a cause of action for denial of such Due Process.  Respectfully, this ruling is in error and should be altered or amended to hold the dune permitting process to be an adjudicative one requiring Due Process to persons with property rights altered by the rulings of the Council.

In *Coleman v. Court of Appeals, Division Number Two Of State Of Oklahoma*, 550 F. Supp. 681 (U.S.D.C., W.D., Oklahoma) the Court considered the nature of a permit application for a landfill permit.  *Coleman* stated:

> When a city council seeks to grant or deny a permit to do business, it is exercising a quasi-judicial function.  See generally *Wolfenberger v. Hennessee*, 520 P.2d (Okla. 1974).  The City Council's function in the hearing in question was to determine whether Central had complied with existing ordinances.  (Citation of ordinances omitted).  This function appears to be in the nature of a judicial action applying facts to existing laws. (Our emphasis)

3

CMPDF—www.lexisa.com

By analogy, again, the function of the City Council in ruling on Starrett's dune permit was also "in the nature of a judicial function applying facts to existing laws", and their decision for its approval  was a quasi-judicial one.  A quasi-judicial power has been described as the power or duty to investigate and to draw conclusions from such investigation.  In *Town of S. Padre Island v. Jacobs*, 736 S.W.2d 134 (Tex. App.– Corpus Christi 1986, writ denied), the court delineated at least six powers as being indicative of whether a commission was acting in a quasi-judicial capacity:

> 1) the power to exercise judgment and discretion; 2) the power to hear and determine or to ascertain facts and decide; 3) the power to make binding orders and judgement; 4) the power to affect the personal or property rights of private persons; 5) the power to examiner witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and 6) the power to enforce decisions or impose penalties.

Id. at 144 (quoting *Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex. App.– Houston [1st Dist.] 1982, writ ref'd n.r.e.).   The City Council "need not have all of the above powers to be considered quasi-judicial, but certainly the more powers it has, the more clearly is it quasi-judicial in the exercise of its powers."   Taking these factors and applying them to the procedures promulgated by the Texas legislature in Chapter 63 of the Texas Natural Resources Code (the "Code"), as well as the factual determinations required by the Land Office regulations and the Port Aransas Coastal Management Plan, it is apparent that the City Council's decision in this cause was quasi-judicial.

**A.    Texas Natural Resources Code**

   **1.    Fact Findings Coupled With a Full Investigation Constitutes a Quasi-**

4

## Judicial Proceeding.

Under Section 63.051 of the Code, "[a]n owner of land or a person holding an interest in land under the owner who desires to perform any acts on the land which are prohibited in section 63.091 of this code must apply for a permit from the commissioner's court." Tex. Nat. Res. Code § 63.051 (Vernon Supp. 2000).   The commissioner's court or governing body of the municipality, such as the City Council, shall:

> (a) . . . evaluate the permit application, and if the commissioners court or governing body of the municipality **finds as a fact after full investigation** that the particular conduct proposed will not materially weaken the dune or reduce its effectiveness as a means for protection from the effects of high wind and water, it may grant the permit.
> (b) . . . consider the height, width, and slope of the dune, any significant environmental features of the dune, the feasibility and desirability or restoration of vegetation, and cumulative impacts and shall consider requirements for protection of critical dune areas.

*Id.* at § 63.054.  It is clear from this section that functions of the City Council regarding the review of dune permit, under Sections 63.051 and 63.054 of the Code, are quasi-judicial.  The City Council has, pursuant to the Code, the power to perform a "full investigation" and draw conclusions in the form of a "finding of fact."  Tex. Nat. Res. Code § 63.054(a); see also *Town of S. Padre*, 736 S.W.2d at 144; *Macias v. Rylander*, 995 S.W.2d 829, 833 (Tex. App.– Austin 1999, ???) (stating that because the Comptroller engaged in a factual inquiry into the conduct of a particular individual, the Comptroller "was clearly acting in a judicial or quasi-judicial capacity").   The City Council has the "power to exercise judgment and discretion" regarding the appropriateness of the permit application.  *Town of S. Padre*, 736 S.W.2d at 144.  The

5

City Council has "the power to determine or . . . ascertain facts and decide" the granting

of the dune permit. *Id.* The City Council has "the power to make binding orders and

judgments" regarding the ability of the landowner to impact the critical dune. *Id.* The

City Council's decision to approve the dune permit application affected the "property

rights" of Molly and Arthur Gochman. *Id.*

The differentiation of quasi-judicial and legislative functions is discussed in

*Conniston Corp. v. Village of Hoffman Estate*, 844 F.2d 461 (7th Cir. 1988) in which

property owners brought federal civil rights actions against the Village and related

parties challenging the rejection of a site plan for a parcel of property. The Gochmans

complained of denial of procedural due process. In discussing whether the decision

making in that case was legislative or quasi-judicial, the *Conniston* Court, in

determining that the "zoning decision" was not "adjudicative in nature", stated:

> The constitution does not require legislatures to use adjudicative type
> procedures, to give reasons for their enactments, or to act "reasonably" in
> the sense in which are required to do; as already noted, legislatures can
> base their actions on considerations – such as the desire of a special-
> interest group for redistributive legislative in its favor – that would be
> thought improper in judicial decision making.

*Id.* at 468. Therefore, another reason to classify the City Council's decision in this

cause as quasi-judicial is the Code's requirement that the City Council act "reasonably"

by making its decision only after conducting a "full investigation" and a "finding of fact."

By contrast, *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir. 1974),

cited by the Honorable Court in its Order states:

> A zoning commission is a quasi-legislative body. <u>It is not required to
> make findings of fact or state the reasons for the action taken.</u> It's actions

6

are entitled to a presumption of validity.  (Our emphasis.)

The function of the zoning commission in *Pruitt*, is not the same function as that of the City Council in the dune permitting process.  The City Council in our case <u>is required to find specific facts</u> as the basis for the action taken.  *Pruitt* was <u>not</u> a permitting case, it was instead an attempt to have property rezoned to an apartment classification.

*O'Neill v. Town of Nantucket*, 711 F.2d 469 (1st Cir. 1983) also cited by the Court held that even in a licensing context the issue was "legislative" because under the process in that case ". . . a local administrative agency . . . decides . . . primarily impersonal questions of community policy of a type traditionally intrusted to a legislative body rather than a judicial tribunal."

*O'Neill* characterized the legislative function as one where:

> The answer does not depend on the sort of data which can fairly be appraised only if the authorized agency has seen the witnesses and observed whether their testimony, reports, views and the like withstand cross-examination.  In determining permissible uses of land, the ultimate choice turns on impersonal considerations relating to public policy.

In our case the public policy has been determined by the legislature in the Dune Protection Act, by the Texas Land Commissioner through regulations, and by the City itself in the adoption of the Coastal Management Plan.  The duty in dune permitting is not to set policy but to administer it through adjudicative decisions as to compliance with the applicable rules conditioning the issuance of a permit.

**2.    An Appeal Available to the District Court is a Quasi-Judicial**

## Characteristic

The fact that the decision of the City Council, pursuant to the Code, is appealable to a district court is also indicative of the adjudicative nature of the City Council's decision regarding the dune permit. *See* **Tex. Nat. Res. Code § 63.151.**  In Conniston, Judge Posner, in his explanation of the differentiation between legislative and judicial action, pointed out the important elements:

> The very <u>absence of criteria</u>, coupled with the fact that the village board of trustees is the governing body of the Village of Hoffman, suggests that, as is usually true of zoning, the board's decision to approve or disapprove a site plan is a legislative rather than an adjudicative decision.  The difference is critical . . .

> . . . A potential criteria and considerations are too open-ended and ill-defined.  Granted, much modern adjudication has this character, but the difference is that modern courts hesitate to treat the decision making process as a wide open search for the result that is just in light of all possible considerations of distributive and corrective justice, while legislatures are free to range widely over ethical and political considerations in deciding what regulations to impose on society.  **The decision to make a judgment legislative is perforce a decision not to use judicial procedures, since they are geared to the making of more circumscribed, more "reasoned" judgments.**

*Id.*(emphasis added).  The decision, therefore, as to whether minimal standards of procedural due process, including notice and hearing, are required is one of determining whether the decision making process is legislative rather than adjudicative.  One factor that demonstrates the adjudicative character in our case is the specific provision that allows for the littoral owner to appeal to the district court.  Standing *Conniston*, above, on its head, the proposition could be stated:

> The decision to use judicial procedures is perforce a decision not

8

to make a judgment legislative because judicial procedures are "more circumscribed."

**B.     Land Office Regulations**

Section 15.4 of Chapter 31 of the Texas Administrative Code, relating to the General Land Office of Texas ("Land Office Regulations"), provides "the standards and procedures local governments shall follow in issuing, denying or conditioning dune protection permits." 31 Tex. Admin. Code, § 15.4. A local government, such as the City Council, "may approve a [dune] permit application only if it finds as a fact, after a full investigation, that the particular conduct proposed will not materially weaken any dune . . . ." 31 Tex. Admin Code 15.4 (emphasis added). Therefore, for the same reasons that the City Council's role under the Code is quasi-judicial, the City Council's decisions under the Land Office Regulations are quasi-judicial.

**C.     Port Aransas Coastal Management Plan**

Before issuing a dune protection permit, the Port Aransas Coastal Management Plan ("PACMP") requires the Council to make "affirmative findings." *See* the PACMP at 19, attached to *Plaintiffs' Response to Motion For Summary Judgment of Defendants, Urban Engineering, Urban Engineering Consultants, Inc., James Urban, and Peralla Corporation.* These findings of fact are similar to the findings required under the Code and the Land Office Regulations. In addition, the PACMP references the requirements of the Code and the Land Office Regulations. *See* PACMP at 18. Therefore, the

9

Council, in its own Coastal Management Plan contemplated the use of quasi-judicial proceedings.

**D.    The Zoning Analogy Does not Avoid the Need for Procedural Due Process**

This Honorable Court analogized the dune permitting process to zoning regulation.  Assuming the validity of this analogy, small-scale rezoning is viewed by many courts as quasi-judicial nature, and in this cause, the action by the City Council adversely affected only the Gochmans. In addition, as another analogy, we ask this Honorable Court to consider the right of individuals, under zoning, to apply for variances.  An Application for variance is strongly akin to the a dune permit application. Both are (1) pleas to the permitting authority for special permission (2) to act contrary to general regulatory requirements, based on (3) special circumstances of the applicant.  *See* Coastal Management Plan, Exhibit "A" to Plaintiffs' Response to Motion For Summary Judgment of City of Port Aransas, at 10, 18-19, attachment #6.  In such a quasi-judicial process, the Gochmans, claiming an interest in the critical dune, recognized by the Dune Protection Act as littoral owners, are entitled to notice and hearing respecting action by the regulatory body affecting such rights.  The fact that the permitting authority is the City Council, one normally legislative in character, is not conclusive.  In similar fact finding hearing opinions of quasi-judicial character, i.e., utility rate regulation, a city council is characterized as quasi-judicial, and as such, required to provide procedural due process to interested parties.

1.    <u>**Small-scale Rezoning is Quasi-Judicial**</u>

10

A growing number of states, now view small-scale rezonings, rezoning that involves a specific tract, as quasi-judicial and thus subject to basic due process requirements. *See* Mark W. Cordes, *Policing Bias and Conflicts of Interest in Zoning Decisionmaking*, 65 N.D. L. Rev. 161, 190-91 n.162 (1989)(citing several states that have adopted the view that a comprehensive zoning plan is legislative and planning for a specific tract of land is judicial). Justice Holmes, in *Bi-Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915), provided the rationale for distinguishing an action as legislative or adjudicative.  Justice Holmes ruled that a plan by the City of Denver to raise taxes, was legislative because it affected all the people of Denver and not just one individual or a small group of people. *See id.* at 445 (explaining that "[w]here a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.)  Justice Holmes then contrasted the *Bi-Metallic* decision with an earlier decision, *Landover v. Denver*, 210 U.S. 373 (1908).  In *Landover*, the Court determined that a tax levy by a local board which affected a small number of specific people was a quasi-judicial decision.  Justice Holmes distinguished the *Landover* opinion by stating:

> In *Landover v. Denver*, a local board had to determine 'whether, in what amount, an upon whom' a tax for paving a street should be levied for special benefits.  A relatively small number of persons was concerned, who were exceptionally affected, in each case upon individual grounds, and it was held that they had a right to a hearing.  But that decision is far from reaching a general determination dealing only with the principle upon which all the assessments in a county had been laid.

Id. at 142-43 (citations omitted).  Thus, it is clear from Justice Holmes' rationale, that an act, committed by a governmental body affecting the rights of particular party, is quasi-

11

judicial. *See Scott v. Tex. State Bd. of Med. Exam'rs*, 384 S.W.2d 686, 695-96 (Tex.

1964) (citing *Landover* and recognizing the relationship between the amount of people

affected by a governmental body's decision and the classification of the decision as

legislative or judicial)(Smith, J. concurring).

Justice Stevens, in *City of Eastlake v. Forest City Enterprises*, 426 U.S. 668

(1976), analyzed the procedural due process rights in the context of legislative actions

relating to zoning ordinances.   Justice Stevens, troubled by the way a zoning

ordinance might affect a particular parcel of land without affording the owner due

process rights, quotes a Washington state supreme court decision:

> "Generally, when a municipal legislative body enacts a comprehensive plan and
> zoning code it acts in a policy making capacity.  But in amending a zoning code,
> or reclassifying land thereunder, the same body, in effect, makes an adjudication
> between the rights sought by the proponents and those claimed by the
> opponents of the zoning change.  The parties whose interests are affected are
> readily identifiable.  Although important questions of public policy may permeate
> a zoning amendment, the decision has a far greater impact on one group of
> citizens than on the public generally."

*Id.* at 683-85 (quoting *Fleming v. City of Tacoma*, 502 P.2d 327, 331 (Wash.

1972))(Steven, J. dissenting).   Therefore, because the granting of the dune permit by

the City Council affected a particular issue, the protection of dune, involving specific

uses, building on the dune, of a specific parcel of land, the Gochman's property, the

City Council's decision was a quasi-judicial one.

Finally, the Texas Supreme Court, has stated that "[z]oning is a legislative act. . .

. To satisfy the requirements of procedural due process . . . the Town [the

governmental body that made the zoning decision] must . . . provide notice and an

12

opportunity to be heard . . . ."  *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939-40

(Tex. 1998)(involving the denial of a landowner's application for a planned

development).   Therefore, even if a court were to find small-scale "rezoning" by the

City Council as quasi-legislative, the Texas Supreme Court has ruled that the City

Council must satisfy the requirements of procedural due process by giving interested

parties notice and an opportunity to be heard.

      2.    **Decisions Regarding Variances are Quasi-Judicial**

      The decisions made by a zoning board of adjustment regarding an application

for a zoning variance is quasi-judicial in nature.  In *Galveston Historical Found. v.*

*Zoning Bd. of Adjustment of the City of Galveston, Tex.*, 17 S.W.3d 414 (Tex. App.–

Houston [1st Dist.] 2000,no writ), Plaintiffs, the Galveston Historical Foundation,

("GHF") appealed the decision of the city planning department granting a permit to an

entity wishing to erect a sign near GHF's historical mansion.  The GHF Court, while

determining the standard of review by which to review the decision of the trial court,

stated that a "board of adjustment [the city's planning department] is a quasi-judicial

body."  *Id.* at 416; *see also Shelton v. City of College Station*, 754 F.2d 1251, 1258 (5th

Cir. 1985) (stating that a "Board of Adjustment acts as a quasi-judicial body"); *Dengler*

*v. The City of Groves*, 997 S.W.2d 418, 420 (Tex. App.– Beaumont 1999, ???); *Board*

*of Adjustment of the City of Dallas v. Patel*, 887 S.W.2d 90, 91 (Tex. App.– Texarkana

1994, no writ).

      A comparison of  the critical dune permit application process with an application

for a zoning variation suggests that the action taken by the City Council is quasi-judicial

13

in nature.   Thus, even a zoning action may require due process.

1.      **Just Because it is the City Council Which Acts Does not Excuse it**

**From Affording Plaintiffs Their Procedural Due Process Rights.**

Just as boards of adjustments must afford procedural due process for its action,

so must city councils.  In *Glen Oaks Utilities, Inc., v. City of Houston*, 340 S.W.2d 783

(Tex. 1960), the court examined the decision by the city council of Houston to enact an

ordinance fixing the rates to be charged by the city of Houston for water and sewer

service in the city. See id. at 784.  The Texas Supreme Court ruled that "[i]t is settled

law that procedural due process requires that a rate-fixing body [such as the city

council of Houston] give due notice to the utility involved and grant a hearing before

enacting an ordinance." Id; see also Harris County Water Control & Improvement Dist.

v. City of Houston, 357 S.W.2d 789, 797 (Tex. Civ. App. – Houston 1962, no

writ)(explaining that the City of Houston must observe procedural due process,

requiring notice and hearing, when attempting to pass an ordinance reducing utility

rates).

This view of procedural due process requirements by a legislative body extends

beyond actions involving utility issues.  For example, in *Francisco v. Bd. of Dental

Exam'rs*, 149 S.W.2d 619 (Tex. Civ. App.– Austin 1941, no writ), the court examined

the issue of the state board's revocation of a dentist's license without affording the

dentist notice and a hearing.  The court, ruling that a procedure that summarily revokes

a license without notice and hearing as unconstitutional, stated that:

> It is generally conceded that due process includes reasonable notice and the
> right to be heard.  And this is true whether the tribunal exercising jurisdiction

14

over rights or privileges protected by the due process clause, be a judicial, legislative, executive, or administrative one. "The requirements of due process extend to every case of the exercise of governmental power."

*Id.* at 622 (quoting 12 Am. Jur. p. 283, § 586).   Therefore, Texas law required the City Council to provide the Gochmans with reasonable notice and a right to be heard before summarily granting a dune permit that adversely affects their property rights.

The Gochmans, therefore, seek alteration or amendment, recognizing and upholding  Gochmans' constitutional rights to Due Process respecting the dune permitting action of the Council on Lot 35, Beachwalk II, Port Aransas, Texas.  Due Process  would include a right to notice and hearing on the Dune Permit, which Gochmans, undisputedly, never received.  Likewise, Gochmans were denied Due Process by the failure of the City to provide an impartial tribunal, with the City Engineer, the chief technical advisor to the City, the designer of the City's Coastal Management Plan, in the pay of Starrett, the Applicant for Dune Protection Permit, and taking a leading role in pursuing the Permit on behalf of Starrett.

### III.

### Damages Under the Dune Protection Act

A.    Damages are Presumed Under the Code

When any person disturbs a dune protected by the Dune Protection Act, the Texas legislature, through a finding of fact, assumes damages. Section 63.001 of the Code states:

**The legislature finds and declares:**

15

**(1) that the mainland gulf shoreline, barrier islands, and peninsulas of this state contain a significant portion of the state's human, natural, and recreational resources;**

**(2) that these areas are and historically have been wholly or in part protected from the action of the water of the Gulf of Mexico and storms on the Gulf by a system of vegetated and unvegetated sand dunes that provide a protective barrier for adjacent land and inland water and land against the action of sand, wind, and water;**

**(3) that certain persons have from time to time modified or destroyed the effectiveness of the protective barriers and caused environmental damage in the process of developing the shoreline for various purposes;**

**(4) that the operation of recreational vehicles and other activities over these dunes have destroyed the natural vegetation on them;**

**(5) that these practices constitute serious threats to the safety of adjacent properties, to public highways, to the taxable basis of adjacent property and constitute a real danger to natural resources and to the health, safety, and welfare of persons living, visiting, or sojourning in the area;**

**(6) that it is necessary to protect these dunes as provided in this chapter because stabilized, vegetated dunes offer the best natural defense against storms and are areas of significant biological diversity;**

**(7) that vegetated stabilized dunes help preserve state-owned beaches and shores by protecting against erosion of the shoreline; and**

**(8) that different areas of the coast are characterized by dunes of various types and values, all of which should be afforded protection.**

Tex. Nat. Res. Code § 63.001 (Vernon Supp. 2000)(emphasis added). These findings of

fact demonstrate that when the dunes are "destroyed or modified . . . that these practices

**constitute serious threats to the safety of adjacent properties, to public highways, to the**

**taxable basis of adjacent property and constitute a real danger to natural resources and to the**

**health, safety, and welfare of persons living, visiting, or sojourning in the area. . . "** *Id.*

16

Therefore, the Texas legislature recognized that modification of dune areas, such as the one carried out by the Oakley permit, constitutes a serious threat to the adjacent property of the Gochmans and that such a dune modification constitutes a real danger to the health, safety, and welfare of persons living in the area.

The findings of fact by the Texas legislature are entitled to "very great although, of course, not conclusive weight." *Grant v. Mayor and City Council of Baltimore*, 129 A.2d 363, 370 (Md. App. 1957)(relating to a legislative finding "that residential neighborhoods 'are now blighted, or threatened with blight, by billboards, both illuminated and non-illuminated; that . . . always depreciate the value of residential property and are a menace to home atmosphere and home surroundings'").

## A.    Statutory Appeal

As a statutory appellate matter, damages would not be contemplated as relief, and their presence and absence could not affect the Gochmans' right to appeal.  See *Trail v. Harper*, 58 S.W.2d 883, 884 (Tex. Civ. App.– Dallas 1933, no writ) (restricting the county court's review to only the same issues and same parties contemplated by the justice of the peace court). The Judgment was in error to hold that Plaintiff had no claims under the Dune Protection Act because of a failure to show damages.  The Dune Protection Act gives Gochmans, as littoral owners, a right of appeal from the granting of the Dune Permit on Lot 35, and as an appellate right, Gochmans' appellate remedy would not have been damages, unavailable at the initial level (the City Council) from which the appeal was taken.  The Council could not grant or deny damages.  Its sole function was to grant or deny the Dune Permit.

17

By the same token, the district court to which Gochmans appealed (now, by removal, constituted in this Honorable Court) could, on Gochmans' appeal, either approve or set aside the action of the Council in granting the Permit, also without a showing of damages.   Under other rules and theories of law, the Court could grant injunctive relief, but as a bare minimum, in its *appellate function* it could only uphold or void the Permit.  It is undisputed that Gochmans were not notified of the application, so they were not able to present their opposition to the granting of the Permit, or even to appeal until long after the Permit was granted.  The proper relief for this Court to grant would not be damages, but a cancellation of the permit, sending it back for the Council to consider, with notice and hearing accorded to the Gochmans, and a mandatory injunction removing the Oakley House from the critical dune.  In conjunction with this, the Gochmans are willing to do equity by providing funds to move the Oakley House and procure, for its relocation, a beachfront lot in Beachwalk II, if same is available at a reasonable market price from Starrett, the developer, who should also be ordered to do equity, pursuant to Plaintiffs' suit against Starrett.

## B.     Substantive Due Process

With respect to substantive due process, Plaintiffs have a proprietary property interest in the critical dune, as reflected by the legislative findings, which extends over several tracts of land.  The City has allowed the invasion of the critical dune at the lot directly abutting that of the Gochmans, materially weakening the critical dune and reducing its effectiveness, as contemplated by the legislature, in protecting littoral property such as the Gochmans' lots from the flood and storm surge damages found by the Texas

18

legislature.  Other lots in Beachwalk II have been permitted for invasion of the critical dune line, making it even more likely that the function of the critical dune intended to be safeguarded for protection of those behind it, such as Gochmans, will be severely impaired.   Such damage, although real and apparent, cannot be quantified, which categorizes the damage to the dune as irreparable injury to Gochmans for which they have no adequate remedy at law.

## A.    The Affidavit of Arthur Gochman

The refusal of the Honorable Court to accept the affidavit of Arthur Gochman as evidence of damages is, respectfully, in error.   Texas law is applicable certainly to the DTPA claim, as well as to the Dune Protection Act, upon which the Constitutional claims are predicated.

## 1.    Arthur Gochman is an "Owner"

Texas law holds that the term "owner" includes not only the owner of the fee, but also a lessee for years as well as any other person who has an interest in property.   *See Weingarten Realty Investors v. Albertson's, Inc.*, 66 F.Supp.2d 825, 845 (S.D. Tex. 1999)(stating that term "owner" as used in eminent domain statutes "includes not only the owner of the fee, but also a lessee for years as well as any other person who has an interest in the property"); *see also Elliott v. Joseph,* 351 S.W.2d 879, 884 (Tex. 1961); *Marburger v. Seminole Pipeline Co., 957 S.W.2d 82, 90 n.13 (Tex. App. Houston [14 Dist.] 1997, writ denied); Colley v. Carleton 571 S.W.2d 571, 572, 573 (Texas Civ. App.-- Corpus Christi, 1978, no writ); Garrison v. Morrow*, 300 S.W.2d 175, 177 (Tex.Civ.App.–Beaumont 1957, writ dism'd) (Suit by lessee to validate his leasehold interest held, under venue

19

statute, to be a suit "for the recovery of land", defining a lease for a term of years as "a grant of an estate in land for a limited term, with conditions attached.", citing *Holcombe v. Lorino*, 79 S.W.2d 307, 310 (Tex. 1935)); see Tex. Prop. Code, § 5.021, "Instrument of Conveyance", listing a transfer of an "estate for more than one year" as a "conveyance" requiring a writing.   Arthur is, therefore an owner of an estate for twenty years in the property in question, conveyed to him under his sublease, and thus an owner competent to present evidence as to damages.

**2.     Arthur Gochman, as the Owner is Qualified to Give his Opinion as to Damages**

The summary judgment evidence reflects Arthur Gochman's involvement in the purchase of Lot 24, 25, and 26.  According to the Texas cases Arthur is qualified to give his opinion and any challenge thereto goes to weight, not admissibility. *See LaCombe v. A-T-O*, 679 F.2d 431, 434 (5th Cir. 1982)(stating that the "'opinion testimony of a landowner as to the value of his land is admissible without further qualification'")(quoting *United States v. 329.73 Acres of Land*, 666 F.2d 281, 284 (5th Cir. 1982)).   He is not disqualified from valuing the entire fee by his partial ownership.  Both Federal and Texas cases hold that a cotenant who holds jointly with another can testify to the value of the entirety. *See In Re Whitt*, 57 B.R. 206 (Bkrtcy. S.D. Ohio 1986); *In Re Taylor*, 96 B.R. 584, 588 fn4 (Bkrtcy. E.D. Pa. 1989) ("Colorably part owner" held "competent to present testimony as to value") *Western Union Telegraph Co. v. Dorough, 213 S.W. 282, 285 (Tex. Civ. App. --Beaumont 1919, writ dism'd).* Testimony of co-owners as to value held admissible and probative.  On principle, therefore, the opinion of a leasehold owner, a partial owner similar to a cotenant, should have the same competency to value the whole.

20

3.    **The Affidavit is Admissible Even if it Only Contains Conclusory Statements**

This Honorable Court stated in the Order that Arthur Gochman, in his affidavit, made conclusory statements without specific facts.    Regardless, the opinion is still admissible because an owner's opinion as to the value of his property is admissible even if based on conclusory statements. *See In re Petrella*, 230 B.R. 829, 834 n.5 (Bkrtcy. N.D. Ohio 1999)(noting that an "owner is competent to give his opinion as to the value of his property, often by stating the conclusion without stating a reason")(citing *South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas*, 614 F.2d 1056, 1061 (5th Cir. 1980); See *Fairfield Estate L.P. vs. Griffith , supra,  p.723*

Arthur Gochman's estimate was close to that of a qualified real estate appraiser. Attached hereto as Exhibit #2 is the affidavit of Matthew Deal, a well qualified appraiser of real estate, reflecting his estimate of the DTPA and fraud loss,  reasonably near to that of Arthur's; the loss being $500,000, according to Deal, and $600,000, according to Arthur. While this opinion is offered late, as we recognize, it demonstrates the soundness of Arthur's opinion.  Gochmans were unable to procure an appraiser for this purpose until the date of their designation of Mr. Deal as their expert on value.  His carefully researched opinion, therefore, was unavailable to Gochmans at the time of filing their responses to the Motions for Summary Judgment of the Defendants.

**PRAYER**

**Request for Oral Hearing**

Plaintiff request oral hearing on his motion.  The Court has issued a long opinion

and has verbally classified certain facts and matters of law. Many issues considered by the Court were not briefed by the parties and the several motions for summary judgment. Plaintiff requests oral argument because plaintiff believes that it would be helpful to the Court for a full discussion in the application of the facts to the law.

Premises considered, therefore, Plaintiffs pray that the Judgment be altered and amended by order of this Court withdrawing and setting aside the Order and Judgment, or alternatively, such order to:

1.     Allow Plaintiffs as littoral owners to proceed on appeal, herein, from the decision of the City Council granting the Dune Protection Permit to impact the critical dune at Lot 35, Beachwalk II Subdivision, challenging the validity of the decision under the Dune Protection Act, as well as its Constitutional infirmity;

2.     Allow Plaintiff Molly Gochman, as a consumer, under the DTPA and The Texas Fraud Statute, along with Plaintiff Arthur Gochman as Plaintiffs under the Civil Rights Act of 1871, to proceed against Defendant Starrett, accepting the affidavit of Arthur Gochman as well as the recitals of Section 63.001 of the Dune Protection Act as some evidence of damages in such suit against Starrett;

3.     Allow Plaintiffs to proceed with their suit against Defendant Oakley for mandatory injunction removing the Oakley House from the critical dune at Lot 35,   Beachwalk II Subdivision, conditioned on Plaintiffs doing equity as they have proposed;

4.     Allow Plaintiffs to proceed with their suit for violation and conspiracy to violate their Due Process Constitutional Rights, against the Urban Engineering Defendants and the City of Port Aransas, including injunction cancelling the Dune Protection Permit referred

22

to at 1., above, and reasonable attorneys fees to Plaintiffs, pursuant to The Civil Rights Act of 1871, as amended, and exemplary damages for wilful and intentional violation of such rights of Plaintiffs;

5.      For such other and further orders the the Court shall deem proper.


For all of which Plaintiffs will ever pray.


Respectfully submitted,


MAX J. LUTHER, III, P.C.
& Associates
1350 Frost Bank Plaza
802 North Carancahua
Corpus Christi, Texas  78470
Telephone:  (361)888-5544
Facsimile:  (361)887-6835


BY:
    MAX J. LUTHER, III
    Federal I.D. Number: 298
    State Bar No. 12706000


and


**EDMUND L. COGBURN**
DOW, COGBURN, & FRIEDMAN, P.C.
9 Greenway Plaza
Houston, Texas 77046
Telephone: (713)940-6000
Telecopier: (713)940-6099
Federal I.D. No.:  2105
State Bar No.: 04501000


and


23

**DAVID R. DOW**
DOW, COGBURN, & FRIEDMAN, P.C.
9 Greenway Plaza
Houston, Texas 77046
Telephone: (713)940-6000
Telecopier: (713)940-6099
Federal I.D. No.: 8107
State Bar No. : 06064900
**ATTORNEYS FOR PLAINTIFFS**
**ARTHUR AND MOLLY**
       **GOCHMAN**

24

CMxPDF - www.fesite.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Instrument was served on the

following parties in accordance with the Federal Rules of Civil Procedure on this the 18th

day of September, 2000, via return receipt requested.

MAX J. LUTHER, III

EDMUND L. COGBURN
Dow, Cogburn & Friedman, P.C.
9 Greenway Plaza
Houston, Texas 77046
**VIA CMRRR# 7099 3220 0001 4298 4769**

MATTHEW J. SULLIVAN
Haynes and Boone, L.L.P.
1600 One American Center
600 Congress Avenue
Austin, Texas 78701
**VIA CMRRR# 7099 3220 0001 4298 4806**

FRED D. DREILING
Attorney at Law
Bank of America
500 North Water St., Suite 714
Corpus Christi, Texas 78471
**VIA CMRRR# 7099 3220 0001 4298 4776**

E. R. FLEURIET
The Fleuriet Schell Law Firm, L.L.P.
621 E. Tyler
Harlingen, Texas   78550
**VIA CMRRR# 7099 3220 0001 4298 4813**

JAMES F. MCKIBBEN, JR.
Barger, Hermansen, McKibben
    & Villarreal, L.L.P.
800 N. Shoreline Blvd., Ste. 2000 N.Tower
Corpus Christi, Texas 78401
**VIA CMRRR# 7099 3220 0001 4298 4783**

JORGE C. RANGEL
The Law Offices of Jorge C. Rangel
P. O. Box 2683
Corpus Christi, Texas   78403-2683
**VIA CMRRR# 7099 3220 0001 4298 4820**

MICHAEL GENE MORRIS
Attorney at Law
5350 S. Staples, Suite 222
Corpus Christi, Texas 78411
**VIA CMRRR# 7099 3220 0001 4298 4790**

# TABLE OF CONTENT

PAGE

| | | |
|---|---|---|
| 1. | Preliminary Statement | 1 |
| 2. | Procedural Due Process | 3 |
| 3. | Texas Natural Resource Code | 4 |
| 4. | Appeal Available to the District Court in a Quasi-Judicial Characteristic | 7 |
| 5. | Land Officer Regulations | 8 |
| 6. | Port Aransas Control Management Plan | 8 |
| 7. | The Zoning Analogy does not avoid the need for Procedural | 9 |
| 8. | Small Scale Rezoning is Quasi-Judicial | 9 |
| 9. | Decisions Regarding Variance are Quasi-Judicial | 12 |
| 10. | Just Because it is the City Council which Acts does not Excuse it from Affording Plaintiffs their Procedural Due Process Rights | 12 |
| 11. | Damages Under the Dune Protection Act | 14 |
| 12. | Statutory Appeal | 15 |
| 13. | Substantive Due Process | 16 |
| 14. | The Affidavit of Arthur Gochman | 17 |
| 15. | Arthur Gochman is an "Owner" | 17 |
| 16. | Arthur Gochman a owner is Qualified to give his Opinion as to Damages | 18 |
| 17. | Gochman Affidavit is Admissible even if it only Contains Conclusionary Statements | 18 |
| 18. | Request the Oral Hearing | 19 |
| 19. | Prayer | 19 |
| 20. | Certificate of Service | 21 |

# TABLE OF AUTHORITIES

Page

1.  Coleman vs. Court of Appeals, Division Number Two of the
    State of Oklahoma, 550 F. Supp. 681 (U.S.D.C., W.D. Okla)        3

2.  Town of South Padre Island vs. Jacobs, 736 S.W. 2d 134 (Tex.
    App. - Corpus Christi 1986, writ denied)                        4,5

3.  Parker vs. Holbrook, 647 S.W. 2d 692, 695 (Tex App. - Houston
    1st Dist. 1982, writ ref'd n.r.e.)                               4

4.  Texas Natural Resources Code                              4, 5, 7 14

5.  Macias vs. Rylander, 995 S.W. 2d 829, 833 (Tex.App. - Austin
    1999)                                                            5

6.  Conniston vs. Village of Hoffman Estate, 844 F, 2nd 461 (7th Cir
    1988)                                                            5

7.  South Gwennett Venture vs. Pruitt, 491 F, 2nd 5,7 (5th Cir 1974)  6

8.  O'Neill vs. Town of Nontucket, 711 F, 2nd 469 (1st Cir 1983)      6

9.  Texas Administrative Code                                         8

10. Port Aransas Control Management Plan                              8

11. Mark W. Cordes, Policing Bias and Conflict of Interests in Zoning
    Decision making, 65 N.D.L. Ren 161, 190-91, n 162 (1989)         9

12. Bi-Metallic Investment Co. vs. State Bd of Equalization, 239 U.S.
    441 (1915)                                                       10

13. Landowner vs. Denner, 210 U.S. 273 (1908)                        10

14. Scott vs. Texas State Bd of Medical Examiners, 384 S.W. 2d 686,
    695 - 96 (Tex. 1964)                                             10

15. City of Eastlake vs. Forest City Enterprices, 426 U.S. 668 (1976)  10,11

16. Flemming vs. City of Tacoma, 502 P 2d 322, 331 (Wash. 1972)      11

17. Mayhew vs. Town of Sunnyvale, 964 S.W. 2d 922, 939-40 (Tex.
    1998)                                                           11

18. Galveston Historical Fund vs. Zoning Board of Adjustment of the City of Galveston Tx., 17 S.W. 3rd 414 (Tex. App. - Houston 1st Dist) 2000  11

19. Shelton vs. City of College Station, 754 F, 2d 125 1, 125 8 (5th Cir. 1985)  12

20. Dengler vs. City of Groves, 997 S.W. 2d 418, 420 (Tex.App. Beaumont 1999)  12

21. Glen Oaks Utilities vs. City of Houston, 340 S.W. 2d 783 (Tex. 1960)  12

22. Francisco vs. Board of Dental Examiners, 149 S.W. 2d 619 (Tex.Civ.App. - Austin 1941)  14

23. Dune Protection Act  14

24, Grant vs. Mayor & City Council of Baltimore, 129 A 2d 363, 340 (Md. App.1957)  17

25. Trail vs. Harper, 58 S.W. 2d 883, 884 (Tex.App. - Dallas 1933, no writ)  17

26. Dune Protection Act  19

27. Weingarten Realty Investors vs. Albertson's Inc., 66 F Supp 2d 825 (S.D. Tex. 1999)  19

28. Elliott vs. Joseph, 351 S.W. 2d 879, 884 (Texas 1961)  19

29. La Combe vs. ATO, 679 Fd 431, 434 (5th Cir. 1982)  19

30. In Re Whitt, 57 BR 206 (Bkrtcy S.D. Ohio 1986)  19

31. In Re Petrella, 230 B.R. 829, 834 n 5 (Bkrtcy N.D. Ohio 1999)  19

32. Fairfield Estate L.P., 986 S.W. 2d 719, 723 (Tex.App. - Earthland 1999 No Pet.)  20

Case 2:00-cv-00126 Document 99 Filed in TXSD on 09/18/2000 Page 29 of 39

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND<br>MOLLY GOCHMAN, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CV ACTION NO. C-00-126 |
| STANLEY A. STARRETT, JR.<br>KEN OAKLEY, URBAN ENGINEERING,<br>A PARTNERSHIP, THE PERALLA<br>CORPORATION, URBAN CONSULTING<br>ENGINEERS, INC., JAMES URBAN AND<br>THE CITY OF PORT ARANSAS, TEXAS, | §<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

AFFIDAVIT OF KENNETH C. SMITH

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before me the undersigned authority, personally appeared KENNETH C. SMITH, who after being by me duly sworn, stated upon his oath the following:

My name is Kenneth C. Smith. I am a licensed professional engineer under the laws of the State of Texas and the matters contained herein are my own personal knowledge or my own opinion as an expert on engineering related to land development. Attached hereto is my resume as a professional engineer and also attached hereto is a report which I have prepared with respect to the Gochman house on Lot 25 of Beachwalk Addition, City of Port Aransas, Nueces County, Texas (the "Property"). This report represents a professional opinion submitted by me in connection with the above cause. It is based on my own inspection of the Property and the area around it. It is also based on a review of aerial photographs, and the land plan, plat, dune permit and construction drawings

EXHIBIT #1

Case 2:00-cv-00126 Document 99 Filed in TXSD on 09/18/2000 Page 30 of 39

related to the adjacent property, which I performed in evaluating the engineering and land planning for the adjacent property, and its impact on the critical dune adjacent to the Property. The opinions stated in my report were formed by me at the completion of my inspection of the property and the documents related to the adjacent subdivision. My conclusion is based on my expert opinion as a professional engineer.

Kenneth C. Smith, P. E.

SWORN TO AND SUBSCRIBED before me this __18th__ day of September, 2000.

Notary Public, State of Texas

MIREYDA VELA
MY COMMISSION EXPIRES
April 18, 2003

O:\100\100026\0190\DEAL_AFF\091820000075 4

Case 2:00-cv-00126   Document 99   Filed in TXSD on 09/18/2000   Page 31 of 39



# **Rimkus**
CONSULTING GROUP, INC.

### KENNETH C. SMITH, P.E.
### PROJECT MANAGER

Mr. Smith is a graduate of Texas A&I University with a degree in general engineering. He has extensive engineering and management experience in the areas of engineering design, public and private bidding of projects, construction management, feasibility studies, cost estimating, agency approvals and hearings, bond sales for public financing, boundary surveys, platting and subdivision of property, and topographic surveys.

Mr. Smith's consulting engineering experience includes design and construction management of residential, municipal, commercial, and aviation projects. He has acted as district engineer for several municipal utility districts and has managed all aspects of public and private developments from undeveloped acreage and creation of taxing entities to full development and platting.

Mr. Smith has extensive experience dealing with public projects and procedures, including the City of Houston, Harris County, METRO, Texas Natural Resources Conservation Commission, and Texas Water Development Board.

### EDUCATION AND PROFESSIONAL ASSOCIATIONS

B.S - General Engineering, Texas A&I University, Kingsville, Texas, 1971
Registered Professional Engineer, Texas, Arizona, Georgia, Colorado, and Louisiana
Registered Public Land Surveyor, Texas
Member:  American Society of Civil Engineers
         Texas Society of Professional Engineers
         National Society of Professional Engineers

### EMPLOYMENT HISTORY

| | |
|---|---|
| 1997 - Present | Rimkus Consulting Group, Inc. |
| 1976 - 1997 | Dannenbaum Engineering Corporation |
| 1973 - 1976 | Lockwood, Andrews and Newnam |
| 1971 - 1973 | Ogletree & Gunn |

HOUSTON    DALLAS/FT. WORTH    SAN ANTONIO    CORPUS CHRISTI

AUSTIN    NEW ORLEANS    ATLANTA    CHICAGO    TAMPA

Case 2:00-cv-00126  Document 99  Filed in TXSD on 09/18/2000  Page 32 of 39

## KENNETH C. SMITH, P.E.

### · DETAILED PROFESSIONAL EXPERIENCE:

**RIMKUS CONSULTING GROUP, INC.**                              **1997 - Present**

Project Manager

Researches and analyzes distress to residential, commercial, municipal, and industrial facilities created by geotechnical and/or structural deficiencies. Conducts foundation failure analyses; verifies that all construction work is in compliance with building codes and contract documents.

**DANNENBAUM ENGINEERING CORPORATION**                        **1976 - 1997**

Senior Project Manager

*Land Development* - Responsible for all aspects of engineering services necessary to develop raw land into single- and multi-family, commercial and industrial subdivisions including water district creation and management. Developed land use studies and land planning, platting, surveying, design of drainage, paving and underground utilities, bidding, construction management and agency approval.

*Municipal/Public Works* - Project manager in charge of: new construction and reconstruction of roadway and drainage projects for the City of Houston, Harris County, METRO, and Harris County Flood Control District; first phase of the warehouse facility at IAH, and taxiway improvements at Hobby Airport for Department of Aviation, City of Houston; facility planning, waster treatment plant and sewer system construction plans for three colonias (economically distressed areas) in southern Webb County for Texas Water Development Board.

**LOCKWOOD, ANDREWS AND NEWNAM**                              **1973 - 1976**

Project Engineer

Designed wastewater treatment plants, single-family residential paving and utilities; prepared preliminary engineering reports for proposed developments; prepared preliminary and final plats; prepared land plans; performed infiltration/inflow analysis; performed drainage studies as required.

**OGLETREE & GUNN**                                           **1971 - 1973**

Staff Engineer

Prepared fabrication drawings for major highway contractor; designed a seawater clarifier for the University of Texas Marine Science Institute; designed erection equipment for JFK Causeway post-tensioned segmental bridge; performed field surveys for property disputes; provided underwater inspection services in the Mississippi River for a Port of New Orleans wharf improvement project.

Case 2:00-cv-00126   Document 99   Filed in TXSD on 09/18/2000   Page 33 of 39





**Rimkus Consulting Group, Inc.**
**Eight Greenway Plaza, Suite 500**
**Houston, Texas 77046**
**(713) 621-3550 Telephone**
**(713) 623-4357 Facsimile**

August 21, 2000

Mr. Ed Cogburn, Attorney
Dow, Cogburn & Friedman
9 Greenway Plaza, Suite 2300
Houston, Texas 77046

Re: Cause No.:   C-00-126;
    Style:       Arthur Gochman and Molly Gochman vs. Stanley A. Starrett,
                 Jr., et al
    Subject:     Preliminary Report of Findings
    File No:     18809

Dear Mr. Cogburn:

In our report dated August 14, 2000, we stated our opinion that, based on our preliminary review of certain related documents, a land plan could have been developed which would have resulted in a practicable alternative to the proposed land plan which would have provided the following: minimal or no impact to the critical dune complex located at the southeast corner of Beachwalk Unit 2 N.U.D.; an identical lot count; essentially identical lot sizes and shapes; and little or no increase in development costs for utilities or paving for Beachwalk Unit 2 N.U.D". At your request we have prepared the enclosed a preliminary land plan for your review. This land plan is an example of a practicable alternative to the existing land plan for Beachwalk Unit 2 N.U.D. We have also enclosed the original work copy of the revised preliminary land plan to illustrate the modifications involved to the existing land plan.

This Preliminary Report of Findings was prepared for the exclusive use of our client and is not intended for any other purpose. Our response is based on information made available to us at this time. Should additional information

Case 2:00-cv-00126   Document 99   Filed in TXSD on 09/18/2000   Page 34 of 39

become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of additional information.

Thank you for allowing us to provide this service.  If you have any questions or need additional assistance, please call.

Sincerely,

Rimkus Consulting Group, Inc.

Kenneth C. Smith, P.E.
Project Manager

KCS/mv

Enclosure

Case 2:00-cv-00126   Document 99   Filed in TXSD on 09/18/2000   Page 35 of 39



This document is released for the purpose of preliminary land planning under the authority of Kenneth C. Smith, P.E. 42764 on August 21, 2000; it is not to be used for construction.

GULF OF MEXICO

Case 2:00-cv-00126   Document 99   Filed in TXSD on 09/18/2000   Page 36 of 39



This document is released for the purpose of preliminary land planning under the authority of Kenneth C. Smith, P.E. 42760 on August 21, 2000; it is not to be used for construction.

GULF OF MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTHUR GOCHMAN AND<br>MOLLY GOCHMAN, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CV ACTION NO. C-00-126 |
| STANLEY A. STARRETT, JR.<br>KEN OAKLEY, URBAN ENGINEERING,<br>A PARTNERSHIP, THE PERALLA<br>CORPORATION, URBAN CONSULTING<br>ENGINEERS, INC., JAMES URBAN AND<br>THE CITY OF PORT ARANSAS, TEXAS, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | § | |

AFFIDAVIT OF MATTHEW DEAL

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

Before me the undersigned authority, personally appeared MATTHEW DEAL, who after being by me duly sworn, stated upon his oath the following:

> My name is Matthew Deal. I am a licensed appraiser under the laws of the State of Texas and the matters contained herein are my own personal knowledge or from my own opinion as an expert on the appraisal of real property. Attached hereto is my resume as an appraiser and also attached hereto is an appraisal which I have prepared with respect to the Gochman house on Lot 24 and the adjoining Lots 25 and 26 of Beachwalk Addition, City of Port Aransas, Nueces County, Texas (the "Property"). This appraisal represents a professional opinion submitted by me in connection with the above cause. It is based on my own inspection of the Property and the area around it, including the

EXHIBIT #2

Case 2:00-cv-00126   Document 99   Filed in TXSD on 09/18/2000   Page 38 of 39

view. It is also based on a survey of real estate values comparable to the Property, which I performed in ascertaining its market value and also in ascertaining market value of the Property without the nearby house blocking the view. The opinions stated in the appraisal were formed by me at the completion of my survey after careful study of all of the available data. My conclusion is based on my expert opinion as an appraiser.



Matthew Deal

SWORN TO AND SUBSCRIBED before me this ___18___ day of September, 2000.

ANDREA FELT
NOTARY PUBLIC
State of Texas
Comm. Exp. 07-30-2002

Notary Public, State of Texas

O:\1DO\100028\0190\DEAL_AFF\091820000830

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| ARTHUR GOCHMAN | § | CIVIL ACTION NO.C-00-126 |
| & MOLLY GOCHMAN | § | JURY |
| | § | |
| vs. | § | |
| | § | |
| STANLEY A. STARRETT, JR., | § | |
| KEN OAKLEY, URBAN ENGINEERING, A | § | |
| PARTNERSHIP, THE PERALLA | § | |
| CORPORATION, URBAN CONSULTING | § | |
| ENGINEERING, INC. | § | |
| AND THE CITY OF PORT ARANSAS, | § | |

## ORDER GRANTING MOTION TO ALTER OR AMEND JUDGMENT

On this the _____ day of September, 2000, the Court, considered the motion of

Plaintiffs to alter and/or amend the Judgment previously entered

herein and determining that such motion was well taken, it is

ORDERED that the Judgment herein be withdrawn and the amended order of the

Court upon which the Judgment is based is, along with the Judgment, set aside

Signed and Ordered enter on this the _____ day of September, 2000.


_____

United States District Judge Presiding